## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **MARTHA VASSALLE**<br>1426 Lindsley Street<br>Sandusky, Ohio 44870 | Case No. |
| and | Judge |
| **JEROME JOHNSON**<br>1601 North Larchmont Drive<br>Sandusky, Ohio 44870 | **CLASS ACTION COMPLAINT** |
| vs. | |
| **MIDLAND FUNDING LLC**<br>8875 Aero Drive<br>San Diego, California 92123 | Jury Demand Endorsed Hereon |
| and | |
| **MIDLAND CREDIT MANAGEMENT, INC.**<br>8875 Aero Drive<br>San Diego, California 92123 | |
| and | |
| **ENCORE CAPITAL GROUP, INC.**<br>8875 Aero Drive<br>San Diego, California 92123, | |
| Defendants. | |
| Also serve: CSC Lawyers Incorporating Service (Corporation Service Company)<br>50 W. Broad Street<br>Suite 1800<br>Columbus, OH 43215 | |

Martha Vassalle and Jerome Johnson, through their undersigned counsel, file this Complaint against Defendants, Midland Funding LLC ("Midland Funding"), Midland Credit Management, Inc. ("MCM") and Encore Capital Group, Inc. ("Encore"), collectively referred to as Midland. These claims are brought pursuant to the common laws of the United States which unequivocally prohibit fraudulent misrepresentations of facts and upon the statements and actions hereinafter set forth all of which were committed by Midland and its agents, resulting in individual and class damages hereinafter stated.

## JURISDICTION AND VENUE

Jurisdiction is proper in this Court in under the Class Action Fairness Act of 2005, Pub.L.No. 109-2, § 4, codified at 28 U.S.C. § 1332(d) ("CAFA") in that "the matter is controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which…any members of a class of plaintiffs is a citizen of a state different from any defendant." 28 U.S.C . § 1332(d)(2). Venue is proper in this Court in that this is a judicial district in which a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2).

## PARTIES

1. Plaintiff Martha Vassalle ("Vassalle") is a natural person residing in Sandusky, Erie County, Ohio.

2. Plaintiff Jerome Johnson ("Johnson") is a natural person residing in Sandusky, Erie County, Ohio.

3. Midland Funding is a Delaware Limited Liability Company, with a regular place of business in San Diego, California. Midland Funding regularly conducts business in the state of Ohio and throughout the United States of America. Midland Funding acquires consumer

debts which are merely alleged to be in default and it is engaged in the business of collecting accounts purchased by it, in gross, from third parties.

4. MCM is a Kansas corporation engaged in the business of collecting debts in Ohio and throughout the country. MCM's headquarters are located in San Diego, California. MCM regularly attempts to collect debts alleged to be due to another.

5. Midland Funding and MCM are direct or indirect wholly owned companies and subsidiaries of Encore Capital Group, Inc. ("Encore"), a NASDAQ listed company trading under the NASDAQ exchange symbol of ECPG, which describes itself and its subsidiaries as "a systems-driven purchaser and manager of charged-off consumer receivable portfolios and provider of bankruptcy services to the finance industry." Encore is a Delaware holding company. Encore, as parent of Midland Funding and MCM, as of September 30, 2010, had paid for the purchase of collection accounts, the sum of approximately $580,154,000. During just the three months ending September 30, 2010, the parent company, Encore, paid only $77,900,000 to acquire more than $ 2,600,000,000 face value of such collection accounts, or approximately three (3) cents on the dollar. By the quarter ending on September 30, 2010, the parent company had collected for the 9 months more than $281,000,000 of net income from its collection activities which it engaged in through MCM and Midland Funding.

## FACTUAL ALLEGATIONS

6. Midland, through its attorneys filed a complaint on December 7, 2007 in Sandusky, Ohio Municipal Court in an attempt to collect a debt allegedly owed by Vassalle (the fraudulent act) and engaged in deceptive and misleading representations.

7. Midland, through its attorneys filed a complaint on July 30, 2007, in Sandusky, Ohio Municipal Court in an attempt to collect a debt allegedly owed by Johnson (the

fraudulent act) and engaged in deceptive and misleading representations.

8. Midland is and has been a plaintiff in tens of thousands of similar debt collection lawsuits across the country. Throughout the United States Midland has used approximately 65 law firms as its stable of lawyers.

9. The deceptive and misleading misrepresentations in the Vassalle and Johnson collection actions consisted of the use of a uniform sworn statement by a duly authorized representative of Midland attesting to facts, under oath, which were untrue. The fraudulent acts consisted of the use of the uniform deceptive and misleading affidavits by agents of Midland and by the stable of attorneys acting on their own behalf and on behalf of Midland, which were filed in support of a Motion for Default Judgment against Vassalle on January 29, 2008 and a Motion for Default Judgment against Johnson on September 19, 2007.

10. Vassalle and Johnson, as was typical of the members of the Class, had no knowledge of the continuing existence of the alleged debts, nor of the existence of Midland, prior the state court collection actions. Vassalle and Johnson, as was typical of the members of the Class, had no prior contact from Midland either in person, by telephone or by mail, prior to the commencement of the collection activities engaged in by Midland and through its agents, including the stable of attorneys.

11. Vassalle and Johnson, upon reading the falsely sworn affidavit, seeking payment for a debt that they believed they did not owe, were upset and aggravated, with the affidavit itself. Because the affidavit and statements were made under oath; because they were filed with a duly authorized court of law; and because of the inordinate lapse of time, Vassalle and Johnson accepted that the false statements must have been true, and thereafter allowed a default judgment to be taken against them.

12. Midland purchased Vassalle's and Johnson's alleged debts from another. In Vassalle's case it was a Tribute Mastercard account. In Johnson's case it was an Aspire Visa account. In both cases the Plaintiffs believed that the debt had been paid off by agreement, many years before.

13. Midland, as was typical, upon the purchase of Vassalle's and Johnson's alleged accounts (and as was typical for the thousands of other entities that sold their accounts to Midland) was provided with a computer tape or other electronic data which contained only scanty and *often* inaccurate and/or incomplete information about the alleged debts of Vassalle, Johnson and/or their Class members.

14. Midland, as transferee/purchaser of the alleged Vassalle and Johnson accounts sent the accounts to one of the hired stable of counsel to engage in collection efforts. In those cases, and as was uniformly the case with respect to the members of the Class, Midland's hired counsel secured default judgment in those court collection actions by utilizing sworn statements in which Midland made deceptive and misleading recitations of facts, as exhibits to their legal proceedings against Vassalle, Johnson and the members of their Class. The false exhibits, as was typical, purported to represent facts pertaining to the alleged debts, which were alleged to be within the personal knowledge of the affiants, who were agents for Midland, when, in fact such affidavits contained false misrepresentations, resulting in individual and class damages.

15. In the uniform affidavits, Midland swore, under penalty of perjury, that such Midland employee possessed personal knowledge that: (a) Vassalle and Johnson and the Class members owed money on accounts it had purchased from another; (b) that Vassalle and Johnson and the Class members failed to make payments on the accounts purchased; (c) that

5

demand had been made of Vassalle and Johnson and the Class members to make payments on the account more than thirty (30) days previous to the execution of the false affidavit; (d) that the balance was due as of a particular date; (e) that the balance continued to earn annual interest at a specific rate; and (f) that Vassalle and Johnson and the Class members were not minors nor mentally incapacitated, "based upon business dealings with [them] the defendant".

16. In Vassalle's case the uniform false form affidavit was used to secure a default judgment from the court on January 29, 2008.

17. In Johnson's case the uniform false form affidavit was used to secure a default judgment from the court on September 19, 2007.

18. Default judgments have similarly been granted against the Class members in tens of thousands of cases filed throughout the United States, through the use of the uniform false affidavits.

19. Form affidavits, such as the one attached to the Vassalle and Johnson proceedings were generated automatically by a Midland computer upon request and were routinely provided to Midland employees who signed hundreds of these each day. They, however, possessed no such personal knowledge of many of the facts asserted, in complete contradiction to the sworn affidavits filed by Midland in courts throughout the United States and knowingly used by the Midland stable of attorneys throughout the United States against the members of the Class.

20. After the Midland employees and agents placed their signatures on the affidavits, the affidavits were given to another Midland employee to notarize. Such signatures were not witnessed by the notary. Many times, it appeared obvious on the face of the affidavit that it had not been witnessed by the Notary. This was the typical practice of Midland

6

throughout the period, hereafter defined.

21. For example, the Form 400 affidavits in the Vassalle and Johnson collection cases indicate that they were executed by an employee in California, but they contain the notary seal and signature of a notary public for the State of Minnesota. (Attached as Exhibits 1 and 2).

22. Upon information and belief, no actual account records were attached to the complaints filed throughout the United States because Midland did not have them.

23. Midland filed suit and obtained judgment against Vassalle, Johnson and hundreds of thousands of other members of the Class using deceptive and misleading statements to which a representative of Midland falsely swore or attested and which was knowingly used by the stable of attorneys acting on behalf of themselves and Midland.

24. Midland has engaged in a pattern and practice of pursing collection lawsuits knowingly using affidavits signed by persons who lacked personal knowledge of the matters attested to.

25. Johnson, as was the case with many Class members, did not owe the alleged debt. Vasalle, as was the case with many of the class members, did not owe the alleged debt.

26. Vassalle and Johnson, as is typical of the members of their Class, suffered a judgment having been wrongfully and illegally obtained against them, and as typical of the members of their class, suffered distress, anger and humiliation that naturally accompanies the discovery that false representations resulted in payments on debts not owed and for which a court was used to perpetrate the fraudulent act, resulting in individual and Class damages.

27. Vassalle and Johnson, as was the case with most Class members, did not

dispute the "facts" attested to in the false affidavit. Even though they questioned the amount and/or the existence of the debts, they nevertheless allowed a default judgment to be taken by Midland, because the false affidavit was filed with a court of record and appeared, on its face, to be incontestable.

28. Midland, using the default judgments, as was typical with the Class, was able to secure orders of garnishment of Vassalle's and Johnson's personal earnings, or otherwise to collect monies from the Class.

29. Midland has used virtually identical form affidavits in bogus lawsuits commenced throughout the United States, attesting to facts that are not in the possession of Midland and to which neither the MCM employees nor the stable of their attorneys had personal knowledge.

## CLASS ALLEGATIONS

30. Plaintiffs bring this action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on their own behalf and on behalf of a class of Plaintiffs ("the Class") defined as:

31. All natural persons (a) sued in the name of Midland, an MCM related company, or a company directly or indirectly controlled by Encore, (b) in any state court (c) where a form affidavit, such as Form 400 was filed with a Court in which affidavit an MCM employee untruthfully swore that the statements contained in the affidavit were based upon personal knowledge, (d) in which a default judgment was granted and (e) the affidavit used in the suit was filed on or after four years prior to December 9, 2009, the filing date of Franklin v. Midland, Erie County Common Pleas Case No. 2009-CV-1042.

32. The Class members are so numerous that joinder is impracticable.

33. There are questions of law and fact common to the Class members, which common questions predominate over any questions that affect only individual Class members. The predominant common questions are:

    a. Whether Midland had a routine practice of filing deceptive and misleading and fraudulent form affidavits;

    b. Whether the class members are entitled to actual damages, punitive damages, or both; and

    c. Whether such practice entitled the class to recover attorney fees and expenses.

    d. Whether the conduct complained of constituted a cause of action for

        i.) fraudulent misrepresentation

        ii.) negligence

        iii.) unjust enrichment

34. The claims of Vassalle and Johnson are typical of the claims of Class members. All are based on the same facts and the same legal theories.

35. Vassalle and Johnson will fairly and adequately represent the interests of the class members. Vassalle and Johnson have retained counsel experienced in class actions and consumer credit and debt collection abuse cases.

36. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible. Most class members do not know that their rights had been violated by the use of such uniform false affidavits.

## COUNT ONE
**(Fraudulent Misrepresentations Resulting in Individual and Class Damages)**

37. Vassalle and Johnson re-allege and incorporate every allegation contained

9

in each of the preceding paragraphs as if fully set forth herein.

38. Midland executed and utilized affidavits containing the deceptive and misleading information in debt collection lawsuits throughout the United States.

39. The affidavits signed by Midland employees affirmed that the employee had personal knowledge of the alleged debtors, their financial information, and the alleged debts, when Midland knew that the employees did not possess such personal knowledge.

40. The affidavits were filed with various courts as evidence of the existence and amount of the alleged debts, when Midland had no such evidence in its possession, and therefore they were material.

41. Midland acted through the use of numerous law firms throughout the United States, all of whom were acting on behalf of Midland when the deceptive and misleading affidavits were used.

42. The representations of personal knowledge set forth in the affidavits were false, deceptive and misleading at the time they were made and Midland knew of such fact, or acted with such utter disregard and recklessness as to the truth of those statements that knowledge must be inferred.

43. Class members' reliance upon the validity of the affidavits was justifiable and/or presumed.

44. As a result of their reliance on Midland's fraudulent misrepresentations, class members incurred substantial damages, including, but not limited to, the payment of funds to Midland and/or MCM on debts that they did not owe or in an amount that was less than the amount collected for Midland.

## COUNT TWO
**(Negligence)**

45. Plaintiffs Vassalle and Johnson re-allege and incorporate every allegation contained in each of the preceding paragraphs as if fully set forth herein.

46. Midland drafted and/or approved the use of the language contained in the Form 400 affidavits and in such other form affidavits wherein the Midland employees claimed to have personal knowledge of the facts contained in such affidavits, when they had no such knowledge.

47. Midland was negligent in drafting and using these form affidavits which falsely stated that the Midland employees were in possession of certain actual information, when they were not.

48. Midland, as a debt collector and successor in interest to those debts that it had purchased from third parties, owed to the Plaintiffs and their Class members a common law and statutory duty to accurately represent the nature and amount of the debts that it was attempting to collect.

49. Midland breached that duty in the negligent manner by which it drafted the affidavits in question and authorized the use of affidavits containing misleading, inaccurate and false information in court collection actions.

50. The use of those affidavits in Class members' court collection actions caused injuries to Class members also in that they allowed default judgments to be taken against them for which they were, or are now, liable.

## COUNT THREE
**(Unjust Enrichment)**

51. Vassalle and Johnson re-allege and incorporate every allegation contained

in each of the preceding paragraphs as if fully set forth herein. §

52. Class members have paid substantial amounts of monies to Midland in the form of payments on default judgments obtained from the use of factually inaccurate and misleading form affidavits.

53. The benefit of the payments on such default judgments, obtained through the use of such false affidavits has conferred monetary benefits on Midland.

54. Allowing Midland to retain these monetary benefits from judgments obtained through fraud, deception and/or misrepresentation would be unjust. Midland should not be unjustly enriched and the monies collected should be returned to the Class members.

## PRAYER FOR RELIEF

Plaintiffs, Vassalle and Johnson pray that this Court grant the following relief in their favor and in favor of the Class members, as against Midland:

1. certify this action as a Class Action, appoint Vassalle and Johnson representatives of the Class and designate Murray and Murray Co., L.P.A. as counsel for the Class;

2. enter judgment in favor of Vassalle and Johnson and the members of their class against Midland for actual damages, punitive damages, costs, pre and post judgment interest, and reasonable attorneys' fees; and

3. grant such further and further relief as maybe equitable.

## JURY DEMAND

Vassalle and Johnson hereby demand trial by jury of the above case.

Respectfully submitted,

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
E-Mail Address:  dms@murrayandmurray.com
Donna J. Evans, Esq. (0072306)
E-Mail Address:  dae@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 E. Shoreline Drive
Sandusky, Ohio  44870
Telephone:  (419) 624-3000
Facsimile:    (419) 624-0707

Attorneys for Plaintiffs

**PRÆCIPE TO THE CLERK**

Please cause the Complaint to be served upon Midland Funding LLC, 8875 Aero Drive, San Diego, California 92123, Midland Credit Management, Incorporated, 8875 Aero Drive, San Diego, California 92193; Encore Capital Group, Incorporated, 8875 Aero Drive, San Diego, California 92123; and CSC Lawyers Incorporating Service (Corporation Service Company), 50 W. Broad St., Suite 1800, Columbus, OH 43215. Said service is to be by certified mail.

> */s/Dennis E. Murray, Sr.*
> Dennis Murray, Sr.
> Donna Jean Evans
> MURRAY & MURRAY CO., L.P.A.
>
> Attorneys for Plaintiffs