**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MARTHA VASSALLE, <br> 1426 Lindsley Street <br> Sandusky, Ohio 44870 <br><br> and <br><br> JEROME JOHNSON <br> 1601 North Larchmont Drive <br> Sandusky, Ohio 44870 <br><br> Plaintiffs, <br><br> vs. <br><br> MIDLAND FUNDING, LLC <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> and <br><br> MIDLAND CREDIT MANAGEMENT, INC. <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> and <br><br> ENCORE CAPITAL GROUP, INC. <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> Defendants | Case No. 3:11-cv-00096 <br><br> Hon. David A. Katz <br><br> **And Related Cases:** <br><br> Case No. 3:08-cv-01434, N.D. Ohio <br> Case No. 3:10-cv-0091, N.D. Ohio <br><br> **RESPONSE TO CONSUMER LITIGATION ASSOCIATES' DISCLOSURE OF SOLICITATIONS; REQUEST FOR CURATIVE CLASS NOTICE** |

## I.  INTRODUCTION

In their zeal to thwart this nationwide class action settlement by encouraging large numbers of putative class members in Virginia to opt out of the settlement, Virginia attorneys Leonard Bennett and Matt Erausquin, and their firm, Consumer Litigation Associates ("CLA") have interfered with the court-approved notice process and prejudiced the rights of Virginia class

1

members to make independent and informed decisions about whether to remain in or opt out of the class. As the Court is aware, before the official class notice was mailed, CLA sent putative class members in Virginia claim forms with the section for contact information crossed out and the opt-out box preselected, and/or with an enclosed form letters requesting exclusion from the class. *See* May 17, 2011 Memorandum Opinion and Order (the "May 17 Order"), Dkt. 156, p. 12; *see also* Midland's Motion For Order Requiring CLA to Disclose Opt-Out Solicitations ("Midland's Motion"), Dkt. 154, Exs 3 & 6. As a result of CLA's confusing pre-notice mailings, a large number of putative class members (that we know of and we would know only of a fraction) in Virginia have submitted opt-out requests that are, on their face, invalid – either because the class member's election was ambiguous, because the opt-out request did not contain the information necessary to verify the individual's membership in the class, or because the opt-out request was submitted before the class notice was mailed. And the confusion created by CLA's opt-out campaign calls into question the validity of <u>all</u> of the opt-outs they procured – which now number over 350.

Recognizing the problems CLA has created, on May 17, 2011 this Court ordered CLA to produce copies of all mailings, solicitations, and other non-privileged communications with putative class members, so that the parties and the Court could determine whether a curative notice or sanctions will be necessary. *See* May 17 Order, p. 12. In response, CLA announced that all of their communications with putative class members relating to the settlement were protected by the attorney-client privilege. Specifically, Mr. Erausquin represented that CLA only communicated about the settlement with individuals with whom they had a signed retainer agreement, and that they only provided their altered claim forms and form opt-out letters to these people. However, CLA did not identify which putative class members retained them, ***nor when that might have happened***, making it impossible to verify that the 350 plus Virginia consumers

who submitted CLA's altered claim form or form opt-out letter to Class Counsel were in fact CLA's clients — before the improper mailings by CLA. Nor did CLA explain why some of their purported clients (such as the person who called the Class Action Administrator because he believed CLA's form opt-out letter was sent by Class Counsel, or the people who sent back CLA's claim forms with both boxes checked) did not appear to know who CLA was, why they received CLA's mailing, and/or what to do with it. Instead, the bulk of CLA's "Response" focuses on attacking the fairness of the settlement. CLA also misrepresents other lawsuits involving Midland, and brazenly violates the confidentiality of the *Rubio* mediation by providing a detailed – but false – description of the parties' settlement negotiations.[1]

CLA's attacks on the settlement will be addressed at the Fairness Hearing, and their other misrepresentations and misconduct will be addressed at the appropriate time. However, the fact remains that there is evidence that CLA's mailings confused putative class members in Virginia and, as a result, a large number of them submitted ambiguous or invalid claim forms or opt-out requests. At the Fairness Hearing, the Court will have to decide what to do with these class members. This will create a problem, since, absent a detailed inquiry into CLA's privilege claims and disclosure of CLA's communications with putative class members about the settlement, there is no way to determine whether these class members' opt-out requests were the product of informed consent. Midland respectfully submits that the most reasonable and efficient way to address this issue is for the Court to order that a curative class notice be sent – at CLA's expense – to all of the putative class members who elected to opt out via CLA's pre-marked claim form or form opt-out letter. Giving these individuals a second opportunity to elect

---

[1] Virginia law specifically provides for confidentiality of materials and communications divulged during a "dispute resolution program." Va. Code Ann. § 8.01-576.10 (Michie 2000). Likewise, the Local Rules of the Eastern District of Virginia provide that **"[t]he substance of communication in the mediation process shall not be disclosed to any person other than the participants in the mediation process[.]"** E.D. Va. L.R. 83.6(E) (emphasis added).

whether to remain in or opt out of the class will ensure that they can exercise their right to make this election independently and on the basis of accurate information. It will also eliminate the need to litigate over CLA's privilege assertions. To avoid delaying the Final Approval hearing, the second notice should be sent on or before June 2, 2011, with a response deadline of July 1, 2011. A proposed form for the curative notice is attached hereto as Exhibit A.

## II. ANALYSIS

### A. THE COURT SHOULD ORDER A CURATIVE NOTICE BE SENT TO THE VIRGINIA OPT-OUTS, AND CLA SHOULD BEAR THE COST

#### 1. CLA's Pre-Notice Mailings Have Confused Putative Class Members In Virginia And Have Caused A Substantial Number Of Invalid Opt-Outs

Even without knowing what communications CLA sent to putative class members along with their altered claim forms and form opt-out letters, it is indisputable that CLA's unauthorized, pre-notice mailings confused class members and caused many of them to submit invalid opt-outs. Several types of invalid opt-outs were submitted. First, over fifty opt-outs were received by Class Counsel before the first batch of class notices were mailed on April 12. *See* Brent's Response to Motion for Relief From Preliminary Injunction, Dkt. 123, p. 3, fn. 1. As this Court recognized in its May 17 Order, opt-out elections received prior to the mailing of class notice are not valid, because until the class notice is mailed there is no way to ensure that the putative class members who submitted the opt-outs were validly apprised of their rights under the settlement. May 17 Order, p. 6 ("Because the Class Notices had not yet been mailed at the time Rubio and James submitted their opt-out forms, the Court cannot find that Rubio and James have been validly apprised of their rights under the settlement. Therefore the Court cannot find that they have yet validly opted out of the class . . . .").

Additionally, because CLA crossed out the contact information section of the claim form they sent to Virginia consumers, most of the people who returned these forms did not provide the

4

identifying information required to determine whether they are really class members. *See*, *e.g.,* Midland's Motion, Ex. 3. Another subset of Virginia class members sent CLA's claim forms or form letters to Class Counsel, but were apparently confused about what they were and therefore filled them out so that they were ambiguous as to whether the class member was electing to remain in or opt out of the class. For example, more than one potential class member returned CLA's form opt-out letter to Class Counsel with a notation that they wanted to be <u>included</u> in the class. *See* Midland's Motion, Exs. 1 & 2. Similarly, a number of the pre-filled-out claim forms had <u>both</u> boxes checked – the "opt out" box, which was pre-selected by CLA, and the box indicating a desire to remain in the class, which was checked by the class member. *See* Midland's Motion, Ex. 3. These responses from putative class members are not valid as opt-outs or as claims. Further evidencing class member confusion, as noted in the briefs filed by both Midland and class Counsel, a Virginia class member called the toll-free number for the Settlement Administrator, confused because he received two mailings: the court-approved Class Notice and CLA's mailing, which he believed was from Class Counsel. It is highly likely that the confusion created by CLA's mailing was widespread, and the ambiguous claim forms and class member phone call are just the tip of the iceberg.

### 2. Since CLA Will Not Produce The Communications By Which They Procured Their Opt-Outs, A Second Notice Should Be Sent To Putative Class Members Who Opted Out Via CLA's Pre-marked Claim Forms And Form Letters

At the Fairness Hearing, the Court will have to decide how to treat the invalid opt-outs and ambiguous claim forms and letters that resulted from CLA's mailings. If CLA is not willing to disclose their communications with putative class members about the settlement and the opt-out process, there is no way for the Court to determine whether CLA interfered with these class members' ability to exercise their rights under Rule 23, and no way for the Court to address the validity of the opt-outs procured by CLA. The solution to this problem is to require a second

notice be mailed to all of the class members who returned CLA's opt-out forms and form letters, advising them that they will have a second opportunity to decide whether to remain in or opt out of the class. This will ensure that these putative class members have the opportunity to make an informed decision whether to remain in or opt out of the class, and will eliminate the need to look behind CLA's dubious privilege claim to ascertain whether the opt-outs previously received should be treated as valid.

There is ample authority for such an order. Under Rule 23 and the relevant case law, "it is essential that the district court closely monitor the notice process and take steps necessary to ensure that class members are informed of the opportunity to exclude themselves or to participate in the judgment." *Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 490 (E.D. Pa. 1995) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985)). The district court "has 'a substantial interest in communications that are mailed for single actions involving multiple parties'" and may counter "misleading communications ... by court-authorized notice." *Moulton v. U.S. Corp.,* 581 F.3d 344, 353 (6th Cir. 2009) (quoting *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).

Accordingly, courts may order curative notices or an extended opt-out period for putative class members affected by a misleading opt-out campaign. *See Moulton*, 581 F.3d at 353 (where lawyer opposed to settlement made ethically questionable communications to class members, providing an extended opt-out period for affected class members was "at the very least a reasonable way, if not an essential way, to unwind the confusion" the lawyer caused); *see also Georgine*, 160 F.R.D. at 490 (invalidating opt-outs and requiring curative class notice to be sent, where lawyers had engaged in a misleading campaign to solicit opt-outs); *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1239, 1246 (N.D. Cal. 2000) (requiring curative notice be sent to class members who received confusing and misleading opt-out solicitation).

CLA should be ordered to pay for this second mailing, since it was caused by their conduct. *See Tedesco v. Mishkin*, 629 F. Supp. 1474, 1485 (S.D.N.Y. 1986) ("[B]ecause the explanatory notice is necessitated by Mishkin's previous misconduct . . . Mishkin is hereby required to reimburse plaintiffs' attorneys for the cost of preparing and distributing notice of this opinion to the class members."); *see also In re Lupron*, No. MDL 1430, Civ. A. 01-10861, 2005 WL 613492, at *1 (D. Mass. Mar. 16, 2005) (counsel for intervenors who sent misleading opt-out solicitations to class members were required to pay for the distribution of a corrective notice).

### III. CONCLUSION

For the foregoing reasons, Midland respectfully requests that the Court order a curative notice be sent, in the Form attached hereto as Exhibit A, to all putative class members who submitted the claim forms or form opt-out letters provided to them by CLA. In light of the rapidly approaching July 11 Final Approval Hearing, Midland respectfully requests that the curative notice be mailed on or before June 2, 2011, and that the deadline for returning the claim forms be on or before July 1, 2011.

Date: May 27, 2011                                    Respectfully Submitted:

*/s/ Theodore W. Seitz*
Theodore W. Seitz
Dykema Gossett PLLC
Counsel for Midland Funding, LLC, Midland
Credit Management, Inc. and Encore Capital
Group, Inc.
Capitol View
201 Townsend Street, Suite 900
Lansing, MI 48933
Tele: (517) 374-9149
tseitz@dykema.com

## **PROOF OF SERVICE**

I hereby certify that on May 27, 2011 a copy of the foregoing was filed electronically in accordance with the Court's Electronic Filing Guidelines. Notice of this filing will be sent to parties by operation of the court's electronic filing system and was served via First Class Mail to any non-ECF users.

>*/s/ Theodore W. Seitz*
>Theodore W. Seitz

LAN01\235370.1
ID\TWS - 097356/0045

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY· CAPITOL VIEW 201 TOWNSEND STREET SUITE 900·LANSING, MICHIGAN 48933