**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARTHA VASSALLE,
1425 Lindsley Street
Sandusky, Ohio 44870

and                                                              Case No. 3:11-cv-00096

JEROME JOHNSON                                                   Hon. David A. Katz
1601 North Larchmont Drive
Sandusky, Ohio 44870                                            **And Related Cases:**

                                                                Case No. 3:08-cv-01434
                Plaintiffs,                                      Case No. 3:10-cv-0091
vs.

MIDLAND FUNDING, LLC.                                           **OBJECTION OF CLASS MEMBERS**
8875 Aero Drive                                                **CLAWSON AND HERRING TO**
San Diego, California 92123                                    **PROPOSED SETTLEMENT**

and

MIDLAND CREDIT MANAGEMENT, INC.
8875 Aero Drive
San Diego, California 92123

and

ENCORE CAPITAL GROUP, INC.
875 Aero Drive
San Diego, California 92123

                Defendants

64179

# TABLE OF CONTENTS

PAGE(S)

I.  INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II.  APPLICABLE LEGAL STANDARDS ..................................................................... 3

III.  THE PROPOSED SETTLEMENT IS INADEQUATE, UNFAIR, AND
UNREASONABLE .................................................................................................. 3

    A.  The Proposed Settlement Is Inadequate Because It Offers No
Meaningful Benefit To Class Members and Because it Deprives
Many of Them of Valuable Rights ................................................................ 4

        1.  Monetary Relief is Inadequate in Light of the Rights Being
Released. ................................................................................................ 5

        2.  The Proposed Settlement Provides Inadequate Injunctive
Relief ...................................................................................................... 6

        3.  The Settling Parties Make No Attempt to Justify a
Nationwide Class .................................................................................. 7

    B.  The Proposed Settlement's Release is Unreasonable ................................. 9

        1.  The release is overbroad and uncertain as to whom it
pertains. ................................................................................................. 9

        2.  The release is not limited to the facts of the case before the
Court. ................................................................................................... 10

        3.  The release improperly discharges persons that are not
before the Court. ................................................................................. 12

    C.  The Disparity Between the Benefits of the Settlement to the
Named Plaintiffs and the Settlement Benefit Available To Class
Members Precludes Approval Of the Proposed Settlement ...................... 12

    D.  The Claim Form is Unnecessary and Is Intended to Disguise the
Inadequacy of the Settlement .................................................................... 14

    E.  The Settlement's Notice Provisions Are Constitutionally Infirm ............... 16

        1.  The notice is inaccurate ...................................................................... 17

        2.  The notice omits important information .............................................. 18

        3.  The Notice Does Not Adequately Advise Class Members
Currently in Litigation With Midland .................................................. 19

        4.  The Parties Failed to Obtain Court Approval of A Notice
Plan ...................................................................................................... 21

        5.  The Notice Fails to Inform Class Members of the Basis of
the Award of Attorneys' Fees Sought by Plaintiffs' Counsel ............... 22

IV.  CONCLUSION ................................................................................................... 23

i

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Amchem Products v. Windsor,* 521 U.S. 591; 117 S. Ct. 2231; 138 L. Ed. 2d 689 (1997) ...... 9, 16

*Benacquisto v. Am. Express Fin. Corp.*, 2001 U.S. Dist. LEXIS 23914 (D. Minn. 2001) ........... 21

*Boren v. Am. Nat'l Ins. Co.*, 2006 U.S. Dist. LEXIS 79392 (W.D. Tex. 2006) ........................... 20

*Bremiller v. Cleveland Psychiatric Inst.*, 898 F. Supp. 572 (N.D. Ohio 1995) ........................... 18

*Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684 (D.Minn. 1994) ........................... 3, 10, 15

*Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314 (E.D. Pa. 1993) ........................................... 16

*Carnegie v. Mut. Sav. Life Ins. Co.*, 2004 U.S. Dist. LEXIS 29404 (N.D. Ala. 2004) ................. 21

*Casey v. Coventry Healthcare of Kan.*, 2011 U.S. Dist. LEXIS 47663 (W.D. Mo. 2011) ........... 21

*Don v. Cruz*, 131 Cal. App. 3d 695 (1982) ................................................................................ 5

*Fradette v. American Service Corp.*  1979 WL 1756 (S.D.Fla.1979) ........................................ 19

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ............................................................................. 4

*Gottfried v. Germain (In re CP Ships Ltd. Sec. Litig.)*, 578 F.3d 1306 (11th Cir. 2009) ............. 19

*Hartless v. Clorox Co.*, 2011 U.S. Dist. LEXIS 5427 (S.D. Cal. Jan. 20, 2011) ........................ 20

*Holmes v. Continental Can Co.,* 706 F.2d 1144 (11th Cir. 1983) .............................................. 14

*In re Diet Drugs Prod. Liab. Litig.*, 226 F.R.D. 498 (E.D. Pa. 2005) ........................................ 16

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 807 ............................... 3, 23

*In re Mexico Money Transfer Litig.* 164 F.Supp.2d 1002 (N.D.Ill. 2000) .................................... 8

*In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088 (5th Cir. 1977) ............................ 16, 19

*In re Traffic Executive Ass'n -- Eastern Railroad,* 627 F.2d 631 (2d. Cir. 1980) ........................ 4

*International Union, United Auto., Aerospace, and Agr. Implement Workers of America v.*
    *General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)................................................................. 3

*Karvaly v. eBay, Inc.,* 245 F.R.D. 71 (E.D.N.Y 2007).  .............................................................. 13

*Kleiner v. First Nat'l Bank*, 102 F.R.D. 754 (D. Ga. 1983) .................................................. 16, 21

*Kleiner v. First Nat'l Bank*, 751 F.2d 1193 (11th Cir. 1985). ..................................................... 17

*Machulsky v. Lilliston Ford, Inc.* 2008 WL 2788073 (N.J. Super.A.D.2008),............................. 8

*Marshall v. Holiday Magic, Inc.,*  550 F.2d 1173 (9th Cir. 1977)............................................. 16

*Meijer, Inc. v. 3M*, 2006 U.S. Dist. LEXIS 56744 at 30(D. Pa. 2006). ...................................... 16

*Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010) ................................................................................................................................. 22

*Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869 (U.S. 2010) ................................................. 19

*National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981)... 11, 14

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) .................................................................................................................. 3

*Plummer v. Chemical Bank,* 91 F.R.D. 434 (S.D.N.Y. 1981) ...................................................... 14

*Rodriguez v. West Publ'g Corp.,* 563 F.3d 948 (9th Cir. 2009) .................................................. 13

*Ryan v. Ohio Edison Co.*, 611 F.2d 1170 (6th Cir. 1979)............................................................. 11

*Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662 (D. Kan. 2008).................................................... 18

*State v. Homeside Lending, Inc.* 826 A.2d 997 (Vt. 2003) ........................................................... 8

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................................... 12

*Sykes v. Mel Harris & Assocs., LLC*, 2010 U.S. Dist. LEXIS 137461 (S.D.N.Y. 2010) ............. 11

*Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34 (D. Me. 2005) ...................................................... 15

*Valentino v. Carter-Wallace, Inc*, 97 F.3d 1227 (9th Cir. 1996)…………………………………16

*Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782 (D. La. 1977)............................................. 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ................................ 10, 19

*Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713 (E.D.N.Y. 1989) .................................... 12

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).................................................................... 14

*Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173 (S.D.N.Y. 1977) ................................................................................................................... 12

*Zimmerman v. Zwicker & Assocs., P.C.*, 2011 U.S. Dist. LEXIS 2161 (D.N.J. 2011) ............. 4, 7

## Statutes

Fed. R. Civ. P. 23.......................................................................................................... 8, 18, 19

Fed. R. Civ. P. 60................................................................................................................... 13

## Other

255F.R.D. 215 (2009), Guideline 2……………………………………………………………….8

**Treatises**

3 Newberg on Class Actions § 8:40 (4th Ed.) ................................................................. 15

3 Newberg on Class Actions § 8:44 (4th Ed.) ................................................................. 22

*Hillebrand & Torrence, Claims Procedures In Large Consumer Class Actions and Equitable*

  *Distribution of Benefits*, 28 Santa Clara L. Rev. 747 (1988) ...................................... 15

Manual for Complex Litigation § 21.222 (4th Ed. 2005) .............................................. 18

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

The following objections are filed on behalf of Mr. Robert Clawson,[1] a Newport Beach, California resident and Ladon Herring, a resident of Newport News, Virginia (together, "Objectors").  Clawson and Herring are members of the class preliminarily certified by this Court.  The Court granted Herring permission to intervene in this action on May 17, 2011.  Dkt. 156.

Objectors ask this Court to disapprove the proposed settlement because it is not in the best interest of class members.  Indeed this proposed settlement is worse for the class than the *status quo*. The Settling Parties seek Court approval of a deal under which class members would be paid, at most, a **pittance.**[2]  In exchange, class members would:  (a) relinquish potentially valuable rights to claim that judgments based on Midland's false affidavits[3] should be vacated; (b) expose their current address and other personal information to the same debt collector that is

---

[1] Mr. Clawson, a resident of Newport Beach, California, was sued by Midland Funding LLC in 2008.  In an affidavit that Midland Funding filed *twice* in that lawsuit, Elizabeth Neu, an employee of Midland Credit Management, Inc., falsely claimed that she had personal knowledge of the alleged debt on which the suit was based.  Midland Funding first used Neu's false affidavit to obtain a default judgment against Mr. Clawson, and then used it again to oppose Mr. Clawson's motion for relief from that default judgment.

Mr. Clawson is also a member of the putative class action pending in the Alameda County Superior Court in California (the "*Reimann* Action").  In that action, plaintiffs Judith Reimann and Michael DaRonco have sued several Midland entities under California's Fair Debt Collection Practices Act, known as the Rosenthal Act.  Plaintiffs have also sued a lawyer representing Midland in California collection actions, Erica Brachfeld, and her law firm, Brachfeld Law Group P.C.  Plaintiffs allege that defendants have submitted false affidavits and evidence in support of requests for default judgment in collection lawsuits.  Plaintiffs also allege that the Brachfeld defendants have filed and pursued collection lawsuits on Midland's behalf without prior reasonable investigation or meaningful attorney involvement.  A true copy of the Complaint in the *Reimann* Action may be found in Dkt. 144-1.  The *Reimann* Action was enjoined by this Court's Order dated March 11, 2011.  Dkt. 110.

[2] The maximum possible amount is $10 per class member, and then only "if the Settlement Fund is sufficient" to pay it (Dkt. 107-1 at p.7).  In exchange, Midland safeguards its fraudulently-obtained judgments, for thousands or even tens of thousands of dollars each.

[3] Notably, the release extends to claims based on any kind of falsity in a Midland affidavit, not just false attestations of personal knowledge.  For example, as explained below, it also would bar a claim for a false affidavit of personal service of the underlying debt collection lawsuit.  Yet the former is the only type of falsity that has been at issue in the three cases which the Settling Parties invoke to support their agreement.  See Dkt. 107-1, Exhibit A, at pp. 2-4, summarizing the three actions.

1

often still suing them and garnishing their wages; and (c) sacrifice the right to prosecute comparable claims against Midland's third-party collection mills.   Under the settlement, as Midland has recently explained, only "[c]lass members who validly opt out will have the right to challenge the judgments against them."   (Dkt. 150 at p.4).   However, "class members who remain in the class will give up the right to any such relief [vacating judgments that were based on false affidavits]."  Id.  This is, of course, a glaring deficiency in the Settlement Agreement.

However, it is only one of many critical problems in the proposed settlement.   The settlement fails entirely to recognize differences in state law remedies in states other than Ohio which often provide more meaningful relief.   Despite these differences, the settlement, for unexplained reasons, would expand this Ohio action to encompass claims of class members nationwide.   Thus, every litigant from Maine to Hawaii would be precluded from seeking to vacate a judgment that was based upon a fraudulent affidavit.  Each state court system would be powerless to grant relief to affected consumers.   And each state court would be powerless to redress a fraud that was perpetrated repeatedly in its own courthouse.   While a proposed class settlement that dramatically expands the scope of the class (for settlement purposes) is not categorically forbidden, the Settling Parties bear a heavy burden to justify what they propose here.  Given the paucity of relief offered, that burden cannot be met.

The inadequacy of the settlement from the class's perspective is all the more shocking because class plaintiffs came to the settlement table in a position of strength.   They obtained summary judgment against Midland on liability and obtained an injunction in the State of Ohio.  (Dkt. 56, p.6)  This advantage was squandered in favor of a result that is good for the named plaintiffs and their attorneys, but not for the unjustifiably-expanded class they now seek to represent.

Making matters even worse, the settlement approval process in this case is rife with procedural defects that foreclose any possibility of final approval.   Among many other intractable problems, the Settling Parties have sent an incomplete, inaccurate, and unclear notice that fails to adequately inform persons potentially affected by the settlement of their rights or the

effects of the settlement.  For that reason too, it would be a grave injustice for this Court to place its imprimatur on the proposed Settlement.

## II.  APPLICABLE LEGAL STANDARDS

The most basic prerequisite to approval of a class action settlement is the Court's determination that the settlement is "fair, reasonable, and adequate." *International Union, United Auto., Aerospace, and Agr. Implement Workers of America v. General Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)*.  The purpose of this requirement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 624 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983).

Plaintiffs and Midland have the burden of demonstrating that the settlement they propose is "fair, reasonable and adequate."  *See, e.g., In re General Motors Corp. Pick Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3rd Cir. 1995), *cert. den.*, 516 U.S. 824 (1995). That burden cannot be met here for many reasons, including:

- The settlement deprives many class members of valuable rights and provides no correspondingly meaningful benefits;
- The benefits to the named plaintiffs are excessive; and
- The notice sent to class members is inaccurate, omitted important information, and did not adequately inform class members.

## III.  THE PROPOSED SETTLEMENT IS INADEQUATE, UNFAIR, AND UNREASONABLE

It goes without saying that courts have refused to approve settlements where the consideration provided by the settlement was not adequate. *See, e.g., In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, *supra*, 55 F.3d at 807 (District Court abused its discretion in concluding that $1,000 coupon settlement was fair, adequate, and reasonable); *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 692 (D.Minn. 1994) (coupons settlement disapproved);

*In re Traffic Executive Ass'n -- Eastern Railroad*, 627 F.2d 631 (2d. Cir. 1980) (rejecting inadequate cash settlement).

The Court should reach the same result here.  The proposed settlement provides little relief to class members.  Worse still, it would benefit a defendant who should instead be punished for its nationwide fraud upon state courts.  But the settlement suffers from other problems as well.  In exchange for a paltry sum, the Defendant would receive a release that is impermissibly broad and vague.  In addition, it is procedurally unfair and unreasonable and the notice that the parties rushed to send was inadequate.  The settlement should be disapproved for all of these reasons.

> **A.      The Proposed Settlement Is Inadequate Because It Offers No
>           Meaningful Benefit To Class Members and Because it Deprives
>           Many of Them of Valuable Rights**

In considering whether to approve a proposed settlement, the Court assumes a fiduciary responsibility as the guardian of the rights of the absentee class members.  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  This case calls out for the Court's protection.  **No reasonable class member would knowingly give up his or her right to seek to vacate a wrongfully procured default judgment in exchange for a payment of, at most, $10.00.**

Moreover, the settlement places the burden on class members to affirmatively opt out of the settlement to preserve these valuable rights.  Few class members are likely to comprehend the valuable rights they would forego and many will not even yet be aware that Midland has obtained a potentially invalid judgment against them.   (Declaration of Stephen Gardner ("Gardner Dec'l"), ¶ 7).   The maximum benefit of $10 offered in the settlement is hardly sufficient to command their attention or overcome debtor resistance to have any contact with Midland. Id., ¶ 6. Thus, this Court should protect class members from this proposal not simply because the amount is inadequate but because it will deprive class members of a right so valuable that it cannot be compared to the paltry amount offered in settlement.  See, *Zimmerman v. Zwicker & Assocs., P.C.*, 2011 U.S. Dist. LEXIS 2161, 20-21 (D.N.J. 2011) (rejecting proposed FDCPA settlement because "[i]t is unlikely that a class member who has a presently pending

claim would agree that trading this settlement for his or her own filed claim is fair and reasonable.")

### 1.    Monetary Relief is Inadequate in Light of the Rights Being Released.

The settlement in this case is well below the range of recovery that would be fair, adequate, or reasonable because plaintiffs have a strong likelihood of success on the merits, yet class members give up so much for so little in return (or nothing if they fail to file a claim). Midland has defrauded courts and consumers across the county by submitting false affidavits in support of its collection activities.  In California, for example, Midland submits such affidavits in support of a request for entry of default when it claims to have served a defendant who did not answer.  This is precisely what happened to Michael DaRonco, one of the class representatives in the *Reimann* Action.  As plaintiffs allege in the complaint, "Mr. Daronco was never personally served with the DaRonco Collection Action and was unaware of its existence until after [Midland funding] sought and obtained a default judgment in the case." Complaint, ¶29.  Under California law, a court may set aside a judgment which was entered based upon a false affidavit. California Code of Civil Procedure section 473; *Don v. Cruz*, 131 Cal. App. 3d 695, 702 (1982) ("The court's power to vacate a judgment procured by intrinsic fraud is beyond question…".)

The harm in California (and elsewhere) occasioned by Midland's practice is that these false affidavits permitted Midland to obtain judgments against class members without proper proof.  Those judgments can be executed upon immediately through levy or garnishment, or can be recorded and can act as a lien against class members' property.  See, California Code of Civil Procedure section 697.310.  Once recorded, the lien will last for 10 years and can be renewed for successive 10 year periods.  *Id*.  The judgments will also be reported on class members' credit reports.

The settling parties have confirmed that the proposed release is intended to prevent all class members from vacating judgments that were based upon Midland's fraudulent affidavits:

> Additionally, class members who remain in the class will give up
> the right to any such relief.  [Dkt. #111, Preliminary Approval
> Order, Exh. 1, Settlement Agreement, pp. 11-12 ("releasing all

> causes of action, suits, claims and demands, whatsoever, known or unknown, in law or in equity . . . arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits")]. Class members who **validly** opt out will have the right to challenge the judgments against them, on an individual basis, **after** the settlement is approved [Dkt. 150, p. 4]. *Emphasis in original*.

The proposed settlement would do harm to class members in that it would blunt an important weapon they possess to vacate improperly-obtained judgments. The proposed settlement would give legitimacy to hundreds of thousands of unlawfully-obtained judgments, rendering them fully enforceable despite the falsity of the underlying proof and Midland's abuse of the judicial process, in exchange for a payment of not more than $10 per class member, and zero for anyone not filing a claim. And, of course, class members would *also* be giving up their affirmative claims for monetary relief under the FDCPA (including statutory damages of $500,000 per statewide class action) and any state laws.

By any measure, this settlement is inadequate.

### 2. The Proposed Settlement Provides Inadequate Injunctive Relief

The parties propose a stipulated injunction whereby "procedures" will be crafted to prevent the use of affidavits filed without personal knowledge in the future. This is in stark contrast to the Injunction this Court previously ordered in the *Brent* case: "Midland and MCM are enjoined under the OCSPA from using form affidavits that falsely claim to be based on the affiant's personal knowledge." [Dkt. 56, p.6]. In addition, the stipulated injunction does not provide any relief to class members who have already suffered the effects of defendants' illegal conduct. Whether it provides any relief to the *general public* is also dubious at best.

If an affiant does not have personal knowledge, the only proper "procedure" is to refrain from filing any affidavit (or any debt collection action) at all. That is precisely what the Court ordered Midland to do in its previous injunction: to refrain from filing affidavits with false claims of personal knowledge. The development of "procedures" is a poor substitute for "refraining." As Objectors' expert declared, "[T]he Court's order puts defendants at risk of contempt, but the settlement only requires defendants to try hard not to do wrong again."

Gardner Dec'l, ¶ 12.  The Court got it right the first time around and the stipulated injunction provides little or no additional benefit.

Again, the Settling Parties bear a heavy burden to explain why a settlement should be approved when it provides for less effective injunctive relief than has already been ordered through litigation.

### 3. The Settling Parties Make No Attempt to Justify a Nationwide Class

This case began as an Ohio-only class action.  Dkt. 1-1.  Subsequently, this Court *rejected* Plaintiff's attempt to expand the scope of the complaint to assert a nationwide class. Dkt. 72.  The proposed settlement, however, attempts to resolve all claims on a nationwide basis. The parties have offered no justification at all for resolving claims that the Court initially refused to consider.

In touting the benefits of the proposed settlement, the parties point to the FDCPA's $500,000 liability cap in any one action.  Dkt. 107, p. 10.  They claim to have secured many times that amount in a single action and posit that this should garner court approval.  Of course, the attorneys' fees and notice and costs of administration will drastically reduce the amount actually available for class members.  However, the argument is misplaced in any event, because the parties utterly fail to show that a nationwide resolution is the superior alternative for affected class members.  Indeed, the mere *possibility* of separate actions caused the court in *Zimmerman v. Zwicker & Assocs.*, P.C., 2011 U.S. Dist. LEXIS 2161 (D.N.J. 2011) to reject a proposed settlement of FDCPA claims on a nationwide basis:

> If there is even a fair possibility that consumers in other states can obtain a monetary recovery from defendant arising from the collection letters defendant sent out from August 6, 2008 to the present, they should have the right to pursue their claims. The phantom benefit from the proposed settlement is not adequate consideration for the release of tens of thousands of potential FDCPA claims.  *Id*. at 19.

The alternative here is not a hypothetical one.  Class action lawsuits have been filed in California, Washington, Illinois, Virginia and Mississippi.  Dkt. 108, pp. 7-8.  The State of Minnesota has also filed a complaint against Midland entities for the fraudulent conduct that

occurred within its borders.  Some of the cases, such as the California and Washington class actions, further seek to impose liability on Midland's attorneys for their participation in this fraudulent scheme.  In addition, countless individual FDCPA claims are pending in states across the nation.

The Settling parties' only response is to suggest that the competing class actions filed in California, Mississippi, Virginia, Illinois and Washington are "copycat" cases.  This contention is misleading, but more importantly, it camouflages the untenable reality behind the Settlement that has been presented to this Court for approval.

The Settling Parties' "copycat" argument ignores three important and indisputable facts: (1) on February 22, 2010, this Court denied leave to Andrea Brent, as Counterclaim Plaintiff, to file a Third Amended Complaint seeking to add, for the first time, a request for nationwide certification; (2) on October 6, 2010, this Court dismissed with prejudice the complaint in *Franklin v. Midland*, which had asserted a claim on behalf of a nationwide class; and (3) the *Vassalle v. Midland* action in this Court was not filed until January 17, 2011, long after all of the other state court cases were commenced.  Thus, at the time the so-called "copycat cases" were begun, the attorneys filing them had every reason to believe that the victims of Midland's fraud in their states remained in need of protection and compensation.  Of course, the "copycat argument" also ignores the existence of stronger state law consumer remedies in states other than Ohio.

In agreeing to this settlement, *Brent* class counsel violated an important dictate of the Standards and Guidelines for Litigating and Settling Consumer Class Actions (Second Ed. 2006) issued by the National Association of Consumer Advocates:[4]

---

[4] 255F.R.D. 215 (2009), Guideline 2.  As noted in *Machulsky v. Lilliston Ford, Inc.* 2008 WL 2788073, 4, n. 1 (N.J. Super.A.D.2008), "The National Association of Consumer Advocates (NACA) supports the interests of consumers in this country.  Its advocacy includes publication of these guidelines and testimony before the federal judiciary Committee on Rules of Practice and Procedure relating to proposed amendments to *Fed.R.Civ.P.* 23.  Courts have found the NACA guidelines to be instructive.  *State v. Homeside Lending, Inc.* 826 A.2d 997, 1009-11 (Vt. 2003), and useful, *In re Mexico Money Transfer Litig.* 164 F.Supp.2d 1002, 1028-30 (N.D.Ill. 2000), and have referred to them in evaluating settlements."

> Class counsel should not agree to expand the class definition at the settlement stage, except in rare circumstances and only if the expanded definition results in significant relief to the newly-added members of the class.  Class counsel should refrain from agreeing to unnecessarily broad releases that wipe out claims asserted in other pending individual or class cases.

The settling parties have not attempted to justify the expansion of their case into a settlement of nationwide claims.  They have failed to demonstrate, *inter alia,* that a nationwide class action settlement is superior to other available methods for fairly and efficiently adjudicating the controversy as they must under prevailing law.  *Amchem Products v. Windsor,* 521 U.S. 591, 622, 117 S. Ct. 2231; 138 L. Ed. 2d 689 (1997) (The parties must show that all of the requirements of Rule 23(a) and 23(b)(3) are met; the only difference between certification of a contested class and certification of a settlement class is that "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").  This Court should not approve the proposed settlement of such claims.

**B.  The Proposed Settlement's Release is Unreasonable**

If this settlement is approved, the class will be deemed to have "consented" to a release that would be embodied in an order of this Court.  That release would apply to all class members whether they submitted a claim or not. As explained above, the release is a bad bargain for class members who give up important rights in exchange for, at most, a pittance.  In addition, however, the release is impermissibly broad, releasing claims and individuals that were never before the Court in the underlying litigation.  The release is also vague as a result of which class members do not receive adequate notice of its actual scope.  This will no doubt chill some class members' exercise of their right to contest the use of false affidavits and will cause further litigation as to its intention and scope.  For these reasons, the settlement which is based upon this release should be rejected.

**1.  The release is overbroad and uncertain as to whom it pertains.**

The release discharges "Encore Capital Group, Inc., Midland Credit Management, Inc., Midland Funding LLC, MRC Receivables Corp., and Midland Funding NCC-2 Corp., and all of

their … affiliated corporations." It releases defendants' "agents." It releases defendants' "affiliates," which presumably means something other than "affiliated corporations." Finally, it releases defendants' "partners." [Dkt.107, Exhibit A, ¶D1].

The words "affiliates" and "affiliated corporations" are extremely vague and will only create uncertainty and further litigation as to whom the release pertains. The words "agents" and "partners" are similarly vague and could operate to release a myriad of entities that are not parties to the litigation and whom class members have no way to identify. Defendant is well aware of the precise identity of any "related" or "affiliated" entities that may have been involved in its unlawful scheme. No justification has been offered for using this ambiguous terminology instead of simply naming the entities that would be released.

In the context of the class definition, there is simply no reason to have such an overbroad release. Individuals are class members if they have been *sued* by a Midland entity. If there are other "related" entities that participated in some way in the use of fraudulent affidavits they should be named in the release so that class members can properly evaluate what they are giving up. Sloppy and overbroad labels such as "affiliates" may serve the purpose of expedience but they should not be permitted in a nationwide settlement of class action claims. Class members should not be forced to guess whether their claims are being released by this settlement. *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 697 (D. Minn. 1994) (proposed class action settlement disapproved where class members would have to perform research "to know whether he or she had a viable cause of action" under the release). Words such as "affiliates", "partners" and "agents" are too broad and uncertain and should not be permitted here. The Court should not approve a proposed settlement with such an overbroad release.

2. <b><u>The release is not limited to the facts of the case before the Court.</u></b>

Only claims based on the "identical factual predicate" at issue in the litigation may be released. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 107 (2d Cir. 2005) ("The law is well established in this Circuit and others that class action releases may include claims not

presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."); *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 18 n.7 (2d Cir. 1981) ("A settlement could properly be framed so as to prevent class members from subsequently asserting claims relying on a legal theory different from that relied upon in the class action complaint but depending upon the very same set of facts").

Here, the parties have purported to release all claims "arising out of or relating to the Released Parties' *use of affidavits in debt collection lawsuits*."  [Dkt.107, Exhibit A, ¶D1].  That is far from the "identical factual predicate" of the lawsuit.[5]  The Ohio actions concerned only the filing of affidavits falsely attesting to personal knowledge of the amount of the debt in support of collection lawsuits.  However, the release purports to release claims based upon the "use" of *any* affidavit in debt collection lawsuits.  The most egregious example of the overbreadth of this provision is that it would release a claim for use of a falsified affidavit of service.  Gardner Dec'l ¶ 35.  A release of all process servers (Midland's "agents") for performing "sewer service,"[6] is indisputably unjustified here.  And even a release of such conduct as to Midland entities should not be permitted as such claims are not "based upon the identical set of facts" as the Ohio litigation.  Midland may not immunize itself from any and every challenge to any "use of affidavits" in contexts completely distinct from the scope of the underlying litigation.

---

[5] Indeed, the Court need look no further than the proposed class definition to reach this conclusion.  The class is limited to situations "where an affidavit *attesting to facts about the underlying debt* was used by Midland in connection with the debt collection lawsuit." [Dkt. 111, ¶2].  Yet, the settlement would release *all* claims these class members have arising from Midland's "use of affidavits in debt collection lawsuits.

[6] "Sewer service" is a phrase used to describe the practice whereby service is not actually effectuated on the defendant but an affidavit attesting to service is fraudulently signed and returned to the Court.  *See*, *Ryan v. Ohio Edison Co*., 611 F.2d 1170, 1174 (6th Cir. 1979).  The practice has been the subject of recent class action complaints.  *See*, *Sykes v. Mel Harris & Assocs., LLC*, 2010 U.S. Dist. LEXIS 137461 (S.D.N.Y. 2010) ("Plaintiffs allege that a debt-buying company, a law firm, a process service company, and others engaged in a 'massive scheme' to fraudulently obtain default judgments against them and more than 100,000 other consumers in state court.") Victims of sewer service generally do not discover that they have even been sued until their bank accounts or wages are garnished, which is exactly what happened to California Class representative Michael DaRonco.  Yet these individuals too are being asked to release claims of which they may be completely unaware.

### 3.    The release improperly discharges persons that are not before the Court.

The release purports to discharge Defendants' "attorneys" from liability.  However, no attorneys were sued in any of the three cases at issue.  No issue of attorney involvement in preparing or filing the false affidavits is before this Court.  No consideration was paid by any third party for the release that this settlement provides them.  That release is particularly troubling because many such attorneys have been sued for using Midland's false affidavits to collect debts allegedly owed Midland.[7]  The proper sanction for attorney involvement in such a scheme is particularly a matter of local state interest and should not be resolved in a case concerning Midland's improper conduct in the state of Ohio.

### C.    The Disparity Between the Benefits of the Settlement to the Named Plaintiffs and the Settlement Benefit Available To Class Members Precludes Approval Of the Proposed Settlement

The proposed settlement would release all of the indebtedness that Midland asserts against the named representatives at the same time it bars all other class members from vacating judgments against them that Midland fraudulently obtained.  Proposed class representatives are inadequate whenever their interests diverge from those of the members of the class.  The danger in granting excessively favorable benefits to the named plaintiffs is obvious.  "[I]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard."  *Staton v. Boeing Co*., 327 F.3d 938, 975 (9th Cir. 2003) *quoting*, *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989); *see also Women's Comm. for Equal Employment Opportunity v. Nat'l Broad. Co*., 76 F.R.D. 173, 180 (S.D.N.Y. 1977) ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised.").  The benefits that only the named plaintiffs here receive are so substantial as to create an irresistible temptation for these

---

[7] The California class action includes attorney Erica Brachfeld and her law firm as defendants. Likewise, the Washington class action includes attorneys Suttell & Associates as defendants.

plaintiffs to put their own interests ahead of the class. In such circumstances, proposed representatives have been deemed inadequate. *See, e.g.*, *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948 (9th Cir. 2009); *Karvaly v. eBay, Inc.,* 245 F.R.D. 71, 83 (E.D.N.Y 2007).

This case purports to resolve all claims against Midland entities for its use of falsified affidavits in debt collection cases. Since most states' Rules of Civil Procedure mimic Fed. R. Civ. P. 60(b), demonstrating to the court that Midland had obtained a default by using a falsified affidavit would entitle the judgment debtor to have that judgment vacated and would entitle him to affirmative relief under the FDCPA or a state law counterpart. If successful, the debtor might settle for a reduced amount or have the underlying debt eliminated altogether. And that is precisely what the proposed representatives here would receive if the settlement is approved -- a complete exoneration of the debt: "Defendants shall release the debts owed to Midland by Brent, Franklin, Johnson, and Vassalle that were the subject of the collection lawsuits described in their complaints in the above-captioned actions." Dkt. 107, Exhibit A, ¶ VD2, p. 13.

Absent class members explicitly do not receive the same benefit: "Nothing herein shall prevent Defendants from continuing to attempt to collect the debts owed by the other Class Members."

The benefit to the named plaintiffs is truly excessive in comparison with the meager, or non-existent, benefits that most of the class members would receive under the settlement. Midland claimed that plaintiff Brent defaulted on a debt of $4,516.57 on November 10, 2000 and interest on that amount accrued at the rate of 8% per year. By Objectors' calculation, this results in a total amount owing of more than $10,500 in November, 2010. That entire debt is being discharged as to proposed representative Brent. Brent thus will receive more than 1,000 times the maximum amount that any class member could possibly receive under the settlement.

It is not difficult therefore, to understand the proposed representatives' motives for signing the settlement agreement. Their entire debt would be forgiven and they would receive an incentive payment to boot. But it is difficult to imagine an absent class member signing that same agreement knowing she would receive a maximum of $10, waive any defenses and claims

based upon the fraudulent affidavit, and explicitly permit Midland to continue to collect the underlying debt.  Such a disparity demonstrates the unfairness of this settlement to the class.  *See e.g., Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983) ("When a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness."); *Plummer v. Chemical Bank,* 91 F.R.D. 434, 441-42 (S.D.N.Y. 1981) ("such disparities [in the awards to class representatives and the class at large] must be regarded as *prima facie* evidence that the settlement is unfair to the class. . . . and a heavy burden falls on those who seek approval of such a settlement"), *aff'd,* 668 F.2d 654 (2d Cir. 1982).  Indeed, some 30 years ago Judge Friendly criticized similar conduct by class representatives who were "willing to throw to the winds [absent class members' claims] in order to settle their own." *National Super Spuds, Inc. v. New York Mercantile Exchange,* 660 F. 2d 9, 17 n.6 (2d Cir. 1981).

This has long been the rule within the Sixth Circuit.  *Williams v. Vukovich,* 720 F.2d 909, 925 (6th Cir. 1983).  There, the Court considered a proposed settlement of a class action alleging racial discrimination in the Youngstown police department.  Pursuant to the agreement, most named plaintiffs would receive a promotion, however unnamed class members only received the possibility of a promotion if a vacancy occur in the minority track.  The Court rejected the proposed agreement because, among other reasons, "[i]t gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members."  *Id.*

The same result should obtain here.

### D.  The Claim Form is Unnecessary and Is Intended to Disguise the Inadequacy of the Settlement

The proposed settlement provides a "financial benefit" only to those class members who receive and review the class notice, fill out a claim and mail[8] it in a timely fashion.  See, Dkt.

---

[8] Apparently, the parties have afforded class members the ability to submit a claim form via the settlement webpage. See,https://secure.ntcsol.com/softniche/easyclaim/Forms/Login.aspx?ReturnUrl=%2fsoftniche%2feasyclaim%2fSecure%2fClaimInfo.aspx.  However, one can only do so by entering a "Claim ID" (found in the notice).  The mechanics are unknown as the Court did not approve any such procedure.

107, Exh. A ¶VC1, p. 7.  Other class members will receive nothing, but will nevertheless be bound by the release contained in the settlement documents.

In seeking preliminary approval, the parties did not inform the Court of any reason why the use of claim forms in this case is necessary or appropriate.  No good reason exists.

In general, claim forms should be avoided.  NACA Guidelines #12.[9]  This is not a situation where class members cannot be identified from defendants' records, as those very records were used to give notice.  Nor is this a situation where class members must provide some information to establish either their eligibility for inclusion or entitlement to a certain amount of damages.  Indeed, it seems that the claim form is being used exclusively to disguise the inadequacy of the settlement fund being proposed – by using claim forms to artificially reduce[10] the number of class members receiving cash, the settling parties can pretend that their proposed settlement provides relief of $10 per class member rather than the true figure that is likely to be only a tiny fraction of that number – since class members who do not file a claim will get nothing.[11]

Indeed, using unnecessary claim forms in a case arising from unlawful debt collection practices raises particular concerns.  It is likely that class members will shy away from responding to any contact from, or volunteering information about themselves to, any entity seen as related to Midland's collection activities.  Gardner Dec'l ¶¶ 27, 29, 31.  This is particularly so

---

[9] 206 F.R.D. 215 (2009).

[10] "Especially when the potential individual recoveries are relatively small or modest or unknown when the claim forms are required to be filed, and when the claim information sought is for some period of years in the past, it is reasonable to conclude that the number of claims filed will vary directly with the ease of filing and will vary inversely with the burdens associated with the claim filing requirement."  3 Newberg on Class Actions § 8:40 (4th Ed.)

[11] While the specific return rates for claim forms varies between cases, they almost always fall within a limited range between zero and about 20%.  *See*, *e.g.*, *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 41-42, 44 (D. Me. 2005) (noting expert testimony that return rates for claim forms are 10% or less in the vast majority of settlements); *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 694-695 (D. Minn. 1994) and as modified at 858 F.Supp. 944 (noting class members' rate of actually using future discounted services in a previous financial services settlement was far below 1%); *Hillebrand & Torrence, Claims Procedures In Large Consumer Class Actions and Equitable Distribution of Benefits*, 28 Santa Clara L. Rev. 747, 752 (1988) (between 3% and 20% rate typical).

since most class members who have suffered judgments as a result of Midland's falsified affidavits remain subject to enforcement of judgment efforts against them.  Given the paltry maximum payment of $10, the claims response rate is likely to be particularly low.  Id. ¶ 32.

   E.   **The Settlement's Notice Provisions Are Constitutionally Infirm**

   "The due process demands of the Fifth Amendment and the Federal Rules of Civil Procedure require adequate notice to class members of a proposed settlement."  *Meijer, Inc. v. 3M*, 2006 U.S. Dist. LEXIS 56744 at 30(D. Pa. 2006).  In a Rule 23(b)(3) settlement class, "notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e)." *In re Diet Drugs Prod. Liab. Litig.*, 226 F.R.D. 498, 517 (E.D. Pa. 2005) *citing Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25 (E.D. Pa. 1993)).  Rule 23(c)(2) provides that class members must receive the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

   To meet the requirements of Rule 23(c)(2), a class notice must "adequately describe" the substantive claims and "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class…"  *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977); *see also Marshall v. Holiday Magic, Inc.,*  550 F.2d 1173, 1177 (9th Cir. 1977).  Potential class members cannot make that decision if the class notice does not provide potential class members with the means to determine even "if they are part of the class."  *Valentino v. Carter-Wallace, Inc,* 97 F.3d 1227, 1234 (9th Cir. 1996).

   The Court has been described as the "manager of the notification process." *Kleiner v. First Nat'l Bank*, 102 F.R.D. 754, 772 (D. Ga. 1983), aff'd in part, rev'd in part, 751 F.2d. 1193. Evaluating the propriety of notice falls within the "special province and responsibility of the court to direct the 'best notice practicable' to class members, advising them of their privilege to exclude themselves from the class." *Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782, 790 (D. La. 1977). "[I]t is critical that the class receive accurate and impartial information regarding the

status, purposes and effects of the class action."  *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202 (11th Cir. 1985).  The proposed notice falls far short of this requirement in several respects.

### 1.     The notice is inaccurate

The notice inaccurately describes the benefits granted to the class representatives.  Under the title, "How much will the Class Representatives Receive?", the Notice informs class members that "Defendants have agreed to pay up to $8,000 to [the named] plaintiffs…for their service as the Class Representatives."  In reality, the proposed Class Representatives will receive far more than this.  In the settlement agreement, Defendants also agreed to release the class representatives from all debt they owe to Midland.  Dkt. 107, Exhibit A, ¶ VD2, p. 13.[12]  As explained above, this amount is material, exceeding $10,500 to plaintiff Brent alone.

The notice also inaccurately describes who will be released by the settlement.  Under the title, "What am I giving up to receive these benefits", the notice says that class members will "give Defendants and their affiliates a 'release.'"  But that it not accurate either.  Gardner Dec'l, ¶ 18.  The actual release broadly exonerates all of the Defendants, their affiliated corporations *and their attorneys too*.  [Dkt.107, Exhibit A, ¶D1.]   Attorneys representing Midland in collection suits are not "affiliates" of their client.  As explained above, class members in California and other states have valid claims against Midland's attorneys under the Rosenthal Act and should be informed that the release would extinguish[13] any such claims.  The notice, thus, inaccurately describes the release and does not inform class members of important rights they will give up in this settlement.

The notice recites on page 2 that "The Court has also entered an injunction against Midland, *which may be extended* as part of this proposed settlement."  This is simply false.

---

[12] In contrast, class members receiving the notice explicitly do not receive the same benefit: "Nothing herein shall prevent Defendants from continuing to attempt to collect the debts owed by the other Class Members."  *Id.*

[13] Objectors  believe that the release is overly broad in this respect as is explained above. Nonetheless, the parties are *proposing* to release Midland's lawyers in this action and class members should be informed that their rights against those lawyers would be extinguished if the settlement is approved.

There is no such provision in the settlement agreement.  As discussed above, the only injunctive relief which the Settling Parties propose as part of their settlement is far more limited than the Court's injunction presently in place.  The notice should have accurately explained this fact to class members considering whether, *inter alia*, to object to the settlement terms or to exclude themselves from its provisions.  *Bremiller v. Cleveland Psychiatric Inst.*, 898 F. Supp. 572, 581 (N.D. Ohio 1995) ("The notice should contain information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or to opt out of the action.")

2.      <u>**The notice omits important information**</u>

The Notice is also deficient because it is vague as to the class composition.  Class members are advised in paragraph 3 that they may benefit from the settlement if certain listed Midland entities "or their affiliates" filed a lawsuit against them.  But what is meant by affiliates?  This phrase is simply too vague to permit a reader to determine whether he or she is a member of the class.

This problem is exacerbated by the fact that the class definition included in the notice is inaccurate. Gardner Dec'l, ¶¶ 16-17.  It claims that people are members of the class if they were sued "in the name of Midland…".  But that is not the class that this Court preliminarily certified. This Court granted preliminary approval to a class consisting of all  "persons … sued in the name of Encore Capital Group, Inc., Midland Funding LLC, Midland Credit Management, Inc., or any other Encore and/or Midland-related entity…"  An accurate class definition is of "critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action…The definition must be precise, objective and presently ascertainable." *Sibley v. Sprint Nextel Corp*., 254 F.R.D. 662, 670 (D. Kan. 2008) (citing Manual for Complex Litigation § 21.222, at 270 (4th ed. 2005) and Fed. R. Civ. P. 23(c)(1)(B) (court certification order must define class and class claims, issues or defenses)).  This concern rises to a constitutional level

here.  If class members cannot determine whether they are members of the proposed class, they may not make an informed decision whether to opt out or remain in the class.

Finally, the settlement does not inform class members that other class actions are pending against Midland that will be thwarted if the settlement is approved.  Information about related litigation is something that "a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *Fradette v. American Service Corp.*  1979 WL 1756, 1 (S.D.Fla.1979) *quoting In Re Nissan Motor Corp. Antitrust Litigation* [1977-1 TRADE CASES P 61,450], 552 F. 2d 1088, 1105 (5th Cir. 1977).  Such information should be included in the notice.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 n. 22 (2d Cir. 2005); *see also Gottfried v. Germain (In re CP Ships Ltd. Sec. Litig.)*, 578 F.3d 1306, 1314 (11th Cir. 2009) *abrogated on other grounds in Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2877 (U.S. 2010) (Finding no violation of Fed. Rule Civ. Proc. 23 (e) because parties issued supplemental notice expressly informing class members of the related actions and stating that failure to opt out of the present settlement might preclude participation in the related actions.).

Here, the settling parties believed it was important to notify the Court about other class actions to obtain an injunction staying those actions.  They did not, however, wish to inform class members of the related actions or inform them that failure to opt out of the present settlement might preclude participation in the related actions.  The notice should not have omitted this relevant information.

> 3.  **The Notice Does Not Adequately Advise Class Members Currently in Litigation With Midland**

As the Court is aware, many class members are currently involved in litigation with Defendants.  Procedurally, the litigation can arise in several different ways.  Some class members have been sued by Midland and have filed or will file cross complaints or motions to vacate based upon the false affidavits.  Others may have sued Midland directly under various

state law claims such as California's Rosenthal Act for Midland's use of the falsified affidavits. *See*, Reimann v. Brachfeld, et. al., Dkt. 144-1.

As the Court is also aware, if final approval is granted, this settlement would extinguish all class members' claims and defenses against Defendant (and their affiliates and agents) based upon the fraudulent affidavits. Thus, any class member with a current complaint, cross complaint, or motion to vacate against Midland will find that pleading dismissed if the Court grants final approval. The notice does not tell class members that any case for affirmative relief will be dismissed if the settlement is approved. In addition, the notice was apparently not sent to attorneys representing class members even though Midland obviously knows that they are represented and knows how to contact the attorneys. The notice is deficient for both reasons.

As to class members representing themselves, the Notice should have clearly informed them that the settlement would result in their affirmative claim, case or counterclaim being dismissed. It did not. Telling class members that they "can't sue or be part of any lawsuit against Defendants" is not the same as telling them that their own pending litigation will be dismissed. Since the dismissal of pending litigation is plainly one object of the settlement from the defendants' perspective (*See e.g*, Dkt. 110, Order Enjoining Parallel Litigation), class members should have been informed of this fact in a clear and unambiguous manner.

This failure is compounded by the fact that the notice apparently[14] was not sent to the attorneys of record for class members with pending litigation that will be affected. The notice should have been sent to attorneys representing parties in all such cases. *Hartless v. Clorox Co*., 2011 U.S. Dist. LEXIS 5427 (S.D. Cal. Jan. 20, 2011) (class notice was mailed to counsel for plaintiff in any related litigation); *Boren v. Am. Nat'l Ins. Co.*, 2006 U.S. Dist. LEXIS 79392 at*9 (W.D. Tex. 2006) ("Where [defendant] is aware that the Class Member has pending litigation against the Company relating to any matter proposed to be released by the Settlement Agreement, the Notice Administrator shall also send the Class Notice Packages to any legal

---

[14] It is uncertain who received the Notice because, as discussed below, the parties did not file a notice plan for the Court's approval as is typically done in class action cases. However the motion for preliminary approval only discussed sending notices to class members.

counsel known to represent the Class Member."); *Benacquisto v. Am. Express Fin. Corp.*, 2001 U.S. Dist. LEXIS 23914 (D. Minn. 2001)(same); *Carnegie v. Mut. Sav. Life Ins. Co.*, 2004 U.S. Dist. LEXIS 29404 (N.D. Ala. 2004) (ordering notice by certified mail, return receipt requested to all legal counsel known to represent any Class Member in any separate pending litigation).

### 4. The Parties Failed to Obtain Court Approval of A Notice Plan

In paragraph VII of the settlement agreement, the parties promised to "submit to the Court proposed class action administrators and proposed procedures for notice to the Class and claims administration." In their joint motion for preliminary approval, the parties promised to disseminate notice by first class mail *and by publication*, but did not specify the mode of publication. [Dkt. 107, ¶ 12]. The parties further promised to "submit to the Court proposed procedures for notice to the class and claims administration." That would have been the proper procedure, as it is the Court's role to oversee all such efforts. For some reason, this was never done.

As noted above, the Court has been described as the "manager of the notification process." *Kleiner v. First Nat'l Bank*, 102 F.R.D. 754, 772 (D. Ga. 1983). The parties here assumed this role; deciding for themselves who was qualified to act as claims administrator, how notice was to be published, and by what means. The parties did not submit a proposed notice plan to the Court for its approval. Therefore, the Court did not approve the manner, frequency, or size of any publication, or the periodicals or other means by which the notice should be published. *See, e.g. Casey v. Coventry Healthcare of Kan.*, 2011 U.S. Dist. LEXIS 47663 (W.D. Mo. 2011).

Nor did the parties obtain the Court's informed approval of the procedures to be employed in mailing notice. The joint motion for preliminary approval merely states that notice will be sent "to Class Members at their last known address reflected in the Settling Defendants [sic] records, as well as by publication." [Dkt. 107, ¶ 12]. Such notice would not be the best practicable notice since those addresses are very likely out of date, particularly given the recent

recession and foreclosure crisis.  Importantly, the settlement class certified by this Court commences on January 1, 2005.  The parties have not disclosed, much less obtained approval for, the procedures that will be necessary to update the many stale addresses in defendants' records dating back more than 6 years.  This is a serious error, as "[e]fforts made to locate missing or potential class members will have an obvious impact on increasing the potential number of class members who may respond."  3 Newberg on Class Action § 8:44 (4th Ed.).

The settling parties' failure to seek approval of these procedures—and even to honor their own agreement to submit a notice plan—has improperly usurped an important role of the Court in directing that notice be given to the class.

5.    **The Notice Fails to Inform Class Members of the Basis of the Award of Attorneys' Fees Sought by Plaintiffs' Counsel**

The settlement of this case would establish a common fund.  Under the settlement agreement, plaintiffs' counsel would take a large portion of this fund as a fee.  The notice requires class members to file any briefs in opposition to the settlement on or before June 1, 2011, before a motion for final approval has been filed and before the plaintiffs file a motion attempting to justify any such fee.

The schedule plaintiffs propose violates Rule 23(h).  As the Court held in *Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 995 (9th Cir. 2010), "a schedule that requires objections to be filed before the fee motion itself is filed denies the class the full and fair opportunity to examine and oppose the motion that Rule 23(h) contemplates."  This opportunity is important because class counsel is  in an adversarial relationship with the class with respect to the fee request.  As the Court explained in *Mercury*:

> During the fee-setting stage of common fund class action suits such as this one, "[p]laintiffs' counsel, otherwise a fiduciary for the class, . . . become[s] a claimant against the fund created for the benefit of the class." *Class Plaintiffs v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1302 (9th Cir. 1994) (internal quotation marks omitted). This shift puts plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class at odds with the class' interest in securing the largest possible recovery for its members. Because "the relationship between plaintiffs and their attorneys turns

adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district  court must assume the role of fiduciary for the class plaintiffs." *Id*. As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is." *Id*. Included in that fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests. **When the district court sets a schedule that denies the class an adequate opportunity to review and prepare objections to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class**.

*Id*. at  994-995 (Emphasis added).

The schedule that the parties submitted for Court approval violates the rule set forth above.   The notice informed class members of this improper schedule and, therefore, is inadequate.

Each of the foregoing deficiencies in the notice are troublesome.   Together, however, they result in a notice that failed to provide class members and their attorneys with sufficient information to make an informed decision. Indeed, many class members may have received no notice at all.   "Informational deficiencies" preventing class members from fairly evaluating their position relative to a proposed settlement implicate due process concerns and require heightened judicial scrutiny.   *In re GMC Pick-Up Truck Fuel Tank Products Liability Litig*., supra, 55 F.3d at 789.   This poorly-drafted[15] notice was both inaccurate and  inadequate and, as a result, final approval should not be granted for that reason alone.   If, for any reason, the Court approves some revised form of agreement between the parties, the Court should require the parties to send a proper notice, free of the above deficiencies.

## IV.  CONCLUSION

The proposed settlement would prevent class members from seeking to vacate judgments that were based upon fraudulent affidavits.   It would do so nationwide.   It attempts to release parties that are not before the Court and claims that have nothing to do with the facts underlying

---

[15] The parties did not even proofread the notice for typographical errors before it was disseminated.  The following garbled sentence appears on the first page, "You received this notice because you have been identified from the Defendants' records as a person whom Defendants filed a lawsuit that may have included an affidavit…"

the once operative complaint in this action.  The proposed settlement was reached in a case that is no longer before the Court, in another that has been dismissed, and a third that was filed in January of this year.  The notice to class members is wrong in some places, misleading in others and omits crucial information necessary for class members to make an informed decision.

The proposed settlement is absolutely a good deal for the defendants who will safeguard unlawfully-obtained judgments.  It may also be a good deal for plaintiffs' lawyers and the named representatives who will be relieved of tens of thousands of dollars of debt.

But with all respect to the foregoing parties, the proposed settlement is a horrible deal for the class.  It simply gives up too much for so little in return.  Any one of the problems identified herein should cause the Court grave concern.  Together, the arguments against approval are overwhelming.

For the foregoing reasons, Objectors request that this Court deny approval to the proposed settlement.

Date:  June 1, 2011                         Respectfully Submitted,

                                            By:  /s/ Adam S. Nightingale
                                              Reginald S. Jackson, Jr. (0003558)
                                              E-Mail: rjackson@cjc-law.com
                                              Adam S. Nightingale (0079095)
                                              E-Mail: anightingale@cjc-law.com
                                              CONNELLY, JACKSON & COLLIER LLP
                                              405 Madison Avenue, Suite 2300
                                              Toledo, Ohio 43604
                                              Telephone:  (419) 243-2100
                                              Facsimile:   (419) 243-7119

| | |
|---|---|
| LEONARD A. BENNETT, VSB#37523 CONSUMER LITIGATION ASSOCIATES, P.C. 12515 Warwick Boulevard, Suite 100 Newport News, VA 23606 (757) 930-3660 (757) 930-3662 facsimile lenbennett@clalegal.com | Daniel E. Birkhaeuser (*Pro Hac Vice* pending) BRAMSON PLUTZIK MAHLER & BIRKHAEUSER, LLP 2125 Oak Grove Road, Suite 120 Walnut Creek, CA  94598 Telephone:  925-945-0200 Facsimile:  925-945-8792 Email:  dbirkhaeuser@bramsonplutzik.com |

| MATTHEW J. ERAUSQUIN, VSB#65434<br>CONSUMER LITIGATION ASSOCIATES,<br>P.C.<br>1800 Diagonal Road, Suite 600<br>Alexandria, VA 22314<br>(703) 273-7770<br>(888) 892-3512 facsimile<br>Email: matt@clalegal.com | THE NATIONAL CONSUMER LAW<br>CENTER<br>Charles Delbaum<br>Stuart Rossman<br>7 Winthrop Square, 4th Fl.<br>Boston, MA  02110<br>Telephone: (617) 542-8010<br>Facsimile:  (617) 542-8028<br>Email:  cdelbaum@nclc.org |
| LAW OFFICE OF IAN CHOWDHURY<br>Ian D. Chowdhury (Bar No. 199018)<br>8853 Fullbright Avenue<br>Winnetka, CA  91306<br>Telephone: (818) 407-0510<br>Facsimile:  (818) 337-2215<br>Email:  ian@ianchowdhury.com | |

**PROOF OF SERVICE**

This is to certify that a copy of the foregoing has been filed electronically this 1st day of

June, 2011.  Notice of this filing will be sent to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.

By   /s/ Adam S. Nightingale
*Counsel for Robert Clawson and
Ladon Herring*