FILED

2011 JUN -1 PM 4:05

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| MARTHA VASSALLE, et al., | ) | |
| | ) | CASE NO.: 3:11-cv-0096 |
| Plaintiff, | ) | |
| | ) | HON. DAVID A. KATZ |
| vs. | ) | |
| | ) | **And Related Cases:** |
| MIDLAND FUNDING LLC, et al., | ) | Case No. 3:10-cv-0091 |
| | ) | |
| Defendant. | ) | |

---

**BRIEF *AMICUS CURIAE* OF THE ATTORNEYS GENERAL OF NEW YORK, OHIO, ALASKA, ARIZONA, ARKANSAS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, GEORGIA, HAWAII, IDAHO, ILLINOIS, IOWA, KANSAS, KENTUCKY, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, MICHIGAN, MISSOURI, NEVADA, NEW HAMPSHIRE, NEW MEXICO, NORTH CAROLINA, NORTH DAKOTA, OREGON, RHODE ISLAND, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, TEXAS, UTAH, VERMONT, WASHINGTON, WEST VIRGINIA, AND WYOMING IN OPPOSITION TO THE PROPOSED SETTLEMENT**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

INTRODUCTION.............................................................................................1

INTEREST OF *AMICI CURIAE*.......................................................................1

BACKGROUND...............................................................................................3

ARGUMENT....................................................................................................4

    I.  The Proposed Settlement Should Be Rejected Because it is Not Fair,
        Reasonable, and Adequate.....................................................................4

        A. The relief provided to individual class members is inadequate to
            address the harm incurred.................................................................5

        B. The class members' broad release of legal rights is disproportionate
            to the paltry relief provided to class members...................................7

        C. The benefits to the named plaintiffs are disproportionate to the
            benefits to the absent class members.................................................9

        D. The injunctive relief provisions are inadequate to the extent that the
            injunctive relief is limited in duration to one year............................9

        E. The notice provided to class members about the proposed settlement
            was inadequate.................................................................................10

        F. Approval of the proposed settlement would not serve the public interest...............11

CONCLUSION.................................................................................................12

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Bowling v. Pfizer, Inc.*, 143 F.R.D. 141 (S.D. Ohio 1992)............................................. 4, 5

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)........................................................4

*Figueroa v. Sharper Image Corp.*, 517 F.Supp.2d 1292 (S.D. Fla. 2007).......................................2

*In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D 330
    (N.D. Ohio 2001).........................................................................................4

*International Union, United Auto., Aerospace, and Agr. Implement Workers
    of America v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).....................5, 11

*Jamon T. Brim v. Dell Financial Services, LLC, et al.*, No. CV-10-J-369-NE
    (N.D. Ala. Feb. 28. 2011)..............................................................................8

*Menkes v. Stolt-Nielsen, S.A.*, 270 F.R.D. 80 (D. Conn. 2010).........................................4

*Midland v. Brent*, 644 F.Supp. 2d 961 (N.D. Ohio 2009)............................................3, 5

*Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir.1982)..................................................9

*Romstadt v. Apple Computer, Inc.*, 948 F. Supp. 701 (N.D. Ohio 1996)............................. 4

*Thompson v. Midwest Foundation Independent Physicians*, 124 F.R.D. 154
    (S.D.Ohio 1988)........................................................................................ 2

*Weingberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982).................................................. 4

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).................................................... 4, 9

*Wilson v. Directbuy, Inc.*, 3:09-CV-590 (D. Conn. May 16, 2011).................................... 2

STATUTES

28 U.S.C. § 1715...................................................................................... 1, 2

OTHER AUTHORITIES

Federal Rule of Civil Procedure 23(c)................................................................. 10

Federal Rule of Civil Procedure 23(e)..................................................................4

S. Rep. No. 109-14 at 29 (2005)................................................................................2

Class Action Complaint at 5, *Vassalle v. Midland Funding LLC*, 3:11-CV-0096
    (N.D. Ohio January 17, 2011)..........................................................................6

Class Settlement Agreement, Exhibit B - Notice, *Midland Funding LLC v. Brent*,
    3:08-CV-1434 (N.D. Ohio March 9, 2011)........................................................ 10

New York City Civil Court Directive: *Entry of Default Judgments DRP-191*...................... 7

New York City Civil Court Directive: *Default Judgments on Purchased Debt DRP-182*...........7

*Fairfax County, Virginia General District Court Best Practices: Default Judgments/*
    *Debt Buyers* (2009), *available at* http://www.ftc.gov/os/comments/
    debtcollectroundtable2/091119bestpractices.pdf................................................. 6

Jessica Silver-Greenberg, "Boom in Debt Buying Fuels Another Boom in
    Lawsuits," Wall St. J., Nov. 28, 2010..............................................................6

**INTRODUCTION**

The Attorneys General of 38 States urge this Court to reject the proposed class settlement. The settlement provides essentially no value to class members, and in fact leaves class members in a significantly worse position. In return for something less than $10, class members will lose not only their right to pursue strong and valuable claims under state and federal law, but also the right to seek vacatur of judgments and to defend against actions brought based on affidavits that this Court has already determined to be false and misleading.

**INTEREST OF *AMICI CURIAE***

The Attorneys General of New York, Ohio, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Michigan, Missouri, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, and Wyoming (the "Attorneys General"), in their capacity as *amici curiae*, hereby urge this Court to reject the proposed class action settlement in this case.[1] Under any interpretation, the ten-dollar-per-class-member payment is not fair, reasonable, or adequate to address the harm incurred. In fact, the settlement would adversely affect the rights of our residents to defend lawsuits against them and to seek to vacate judgments that were based on false and misleading affidavits.

A significant portion of the class members are residents of the States that join in this *amicus* brief. As reported by Defendants to the Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1715(b)(7)(B), an estimated 253,247 class members are New York residents, comprising 17.55% of the total 1.44 million class members. In total, 1,104,207 class members, comprising

---

[1] The Attorneys General are not submitting to the Court's jurisdiction except as *amici* and the submission of this brief is without prejudice to the States' ability to enforce and investigate claims related to the issues under dispute.

76.53% of the total class, reside in the States in which the Attorneys General join in this *amicus* brief. In addition, the New York State Attorney General's Office and a number of other Attorneys General are conducting independent investigations of Defendants and their affiliates with respect to debt collection practices, including those practices alleged in this class action.

The Attorneys General perform a unique role for the Court by informing it of the fairness of class action settlements. This role is expressly recognized in the Class Action Fairness Act, which requires parties to provide information to the Attorneys General about the proposed settlement before the fairness hearing. 28 U.S.C. § 1715(b). This provision "is intended to combat the 'clientless litigation' problem by adding a layer of independent oversight" and permitting Attorneys General to object to inequitable settlements. S. REP. NO. 109-14, at 29 (2005).

Because of this role, courts have frequently recognized that the opposition of a significant number of Attorneys General weighs strongly against a proposed class action settlement. As one court noted:

> What distinguishes this case from other class actions, however, is the singular appearance of the Attorneys General of thirty-five states and the District of Columbia, representing hundreds of thousands, if not millions, of eligible class members. Appearing as *amicus curiae* on behalf of their citizens, the Attorneys General have objected at every turn to each version of the parties' proposed coupon settlement. . . . The vigor and substance of the objections presented counsels against a finding favorable to the parties on this [Fed. R. Civ.P. 23(e)] factor.

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1328 (S.D. Fla. 2007). Another recent decision rejecting a proposed class action settlement recognized that the *amicus* brief of the Attorneys General should be viewed as "a placeholder for many absent class members' objections." *Wilson v. DirectBuy, Inc.*, No. 3:09-CV-590, slip op. at 19 (D. Conn. May 16, 2011). Other courts have also found that an Attorney General's opinion "is an important factor for the court's consideration in determining the fairness of the proposed settlement." *Thompson v. Midwest Found.*

2

*Indep. Physicians*, 124 F.R.D. 154, 161 (S.D. Ohio 1988). The Attorneys General therefore set forth their objections to the proposed settlement in this brief.

## BACKGROUND

This Court has already determined that because the affidavits contained false statements concerning the affiant's personal knowledge of the facts attested to in the affidavit, Defendants routinely used affidavits in debt collection actions that were "false and misleading". *Midland v. Brent*, 644 F. Supp. 2d 961, 969 (N.D. Ohio 2009). Further, the Court found that the false statements in these affidavits were "materially related to supporting the proposition of whether the debt [was] valid." *Id.* at 970.

The parties now propose to certify and settle a class action including all persons sued by Defendants between January 1, 2005 and March 11, 2011 where Defendants "used an affidavit attesting to facts about the underlying debt." The proposed settlement offers nominal monetary relief of up to $10 to each individual class member who mails in a claim form. It also provides for modest injunctive relief—Defendants must create procedures to prevent the use of false affidavits in future debt collection proceedings. However, that injunction automatically expires after one year. In exchange for this modest potential relief (which is only provided if the class members return a claim form), class members must release "all causes of action, suits, claims and demands, whatsoever, known or unknown, in law or in equity, based on state or federal law" that they could assert related to Defendants' "use of affidavits in debt collection lawsuits." This language would potentially bar class members from defending against existing actions and from seeking to challenge judgments against them based on false and misleading affidavits.

3

Meanwhile, class counsel will receive $1.5 million in attorneys fees and the named plaintiffs will collectively receive up to $8,000 and will have their debts to Defendants released. Defendants' total obligations (including attorney's fees and administrative expenses) are capped at $5.7 million.

As explained below, the Court should reject the proposed settlement. The paltry monetary relief it would provide to individual class members does not address the harm incurred by class members as a result of Defendants' misconduct and is not commensurate with the strong and valuable claims that class members are waiving. Furthermore, the settlement strips class members of their right to defend against existing lawsuits and to seek to vacate judgments obtained through Defendants' use of false and misleading affidavits. In addition, the far more generous payments to the named plaintiffs and class counsel and the limited injunctive relief weigh against approving the settlement. Finally, the inadequacy of the notice given to absent class members confirm that this settlement should not be adopted.

## ARGUMENT

I.     <u>The Proposed Settlement Should Be Rejected Because it is Not Fair, Reasonable,</u> <u>and Adequate.</u>

Before approving a proposed class action settlement, the court must determine that a class action settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983). Moreover, when the fairness of a proposed settlement is evaluated prior to class certification, the settlement is subject to a higher level of scrutiny. *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 151 (S.D. Ohio 1992); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 349-50 (N.D. Ohio 2001); *Romstadt v. Apple Computer, Inc.*, 948 F. Supp. 701, 706 (N.D. Ohio 1996); *Weingberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *Menkes v. Stolt-Nielsen, S.A.*, 270 F.R.D. 80, 89 (D. Conn. 2010). While a statewide class was certified in the *Brent* action before the settlement was proposed, the much

broader nationwide class contemplated in the proposed settlement has not been certified. Accordingly, a heightened level of scrutiny should be employed in determining whether the proposed settlement is fair, reasonable, and adequate. *See Bowling*, 143 F.R.D. at 151.

In evaluating whether a proposed settlement is fair, reasonable, and adequate, a court must "compare the strength of the plaintiff's case with the amount and form of relief offered by the settlement." *Bowling*, 143 F.R.D. at 151. Courts also consider other factors, including whether the settlement is in the public interest. *See International Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

As set forth below, the proposed settlement should be rejected because it provides essentially no value to—and will likely harm—class members who are releasing strong claims.

A.     The relief provided to individual class members is inadequate to address the harm incurred.

The proposed settlement provides that class members who return a claim form will receive a one-time monetary payment of up to ten dollars. This relief is inadequate, both in amount an in kind, to address the harm incurred by class members. Class members face lawsuits that rely on false and misleading affidavits, or judgments that were obtained using false and misleading affidavits. Many of the lawsuits and judgments may be for debts that were not owed or for inaccurate amounts. The proposed settlement strips class members of the ability to defend against or challenge these judgments. And the relief provided, a monetary payment of up to ten dollars, does not address this widespread and severe harm to consumers who were defrauded and whose judgments based on the false and misleading affidavits are immunized by the settlement.

This Court has already held that Defendants routinely used false and misleading affidavits in debt collection actions that were material to establishing the debt's validity. *Midland*, 644 F. Supp. 2d at 969-70. While the Court found that in the case of named plaintiff Brent, the

5

amount of debt alleged to be owed was likely correct, *see id.* at 969, no determination has been made as to the validity of the debt of any of the other 1.44 million class members. The Attorneys General have received numerous consumer complaints alleging that Defendants brought debt collection actions where the amount allegedly owed was inaccurate or the debts were not owed as a result of prior payment, bankruptcy discharge, settlement, or mistaken identity. *See* affidavit of Max Dubin, attached as Exhibit A. Accordingly, a substantial number of class members may have outstanding judgments against them, or may be currently facing lawsuits, where the amount of debt alleged is inaccurate or where the debt is not owed. If the settlement is approved, those class members could not contest those lawsuits or judgments. In addition, these class members also face severe and lasting harm to their credit record. A nominal monetary payment does not address any of this harm. Instead, an appropriate remedy would require vacatur of the judgments obtained through the use of false and misleading affidavits. Far from providing this form of relief, the proposed settlement would strip class members of their rights to seek such relief on their own.

Furthermore, because the vast majority of debt collection actions result in default judgments,[2] it is likely that the vast majority of class members are the subjects of default judgments obtained through the use of false and misleading affidavits. It has been alleged[3] that Defendants possess only an electronic file for each alleged debtor and do not have the ability to generate affidavits attesting to the amount or validity of the debt based on personal knowledge. If this is the case, then Defendants would not be able to sustain a default judgment obtained against the vast majority of class members. This is especially likely in those jurisdictions that impose rigorous documentary requirements in debt collection lawsuits. For example, in Fairfax County, Virginia, a

---

[2] An estimated 94% of debt collection cases result in default judgments. *See* Jessica Silver-Greenberg, "*Boom in Debt Buying Fuels Another Boom in Lawsuits*," Wall St. J., Nov. 28, 2010.

[3] *See* Class Action Complaint at 5, *Vassalle v. Midland Funding LLC*, No. 3:11-CV-0096 (N.D. Ohio January 17, 2011), par. 13, p. 5.

debt collection action must show original documentation verifying the debt, unless production of original documentation is excused by the court for good cause. *See Fairfax County, Virginia General District Court Best Practices: Default Judgments/Debt Buyers* (2009). In New York City, applicants for a default judgment must provide an affidavit based on personal knowledge attesting to the underlying facts, as well as an affidavit setting forth the chain of title to purchased debt. *See Civil Court Directives, Entry of Default Judgments DRP-191 and Default Judgments on Purchased Debt, DRP-182.* Default judgments based on false and misleading affidavits are unlikely to survive challenges in such jurisdictions and could not be successfully relitigated by Defendants. An appropriate remedy for class members facing such judgments would be vacatur of the judgments, not a nominal monetary payment.

Even if nominal monetary relief were an appropriate component of a settlement here, the proposed claims process is inadequate. To be eligible to receive the small payments contemplated by the settlement, class members must mail in a claim form. But Defendants have the information to determine which individuals are eligible for a payment without requiring the class members to return a form. Under these circumstances, payment should be provided to all eligible class members without requiring class members to send in a claim form.

B.    The class members' broad release of legal rights is disproportionate to the paltry relief provided to class members.

The small monetary payment to class members of up to ten dollars is grossly disproportionate to the strong and potentially valuable legal claims and defenses that class members must waive under the proposed settlement. The broad language of the release strips class members of not only their legal claims under the Fair Debt Collection Practices Act, but also, arguably: (a) the right to seek to vacate improperly obtained judgments, including judgments where the validity or amount of the debt is in question, and default judgments that could not have been obtained without the use of a false

7

affidavit; (b) the right to defend against pending lawsuits brought on the basis of false affidavits, including pending lawsuits in which the validity or amount of the debt is in question or where Defendants lack proper documentary evidence of the alleged debt; (c) the right to pursue claims for violations of state consumer protection laws; and (d) the right to pursue claims of violations of the Fair Credit Reporting Act.

Some of these legal claims are potentially very valuable. For example, in a recent action, an individual litigant against defendant Midland was awarded $723,000 in compensatory and punitive damages under the Fair Credit Reporting Act. *See Jamon T. Brim v. Dell Financial Services, LLC, et al.*, No. CV-10-J-369-NE (N.D. Ala. Feb. 28. 2011). In addition, a substantial portion of class members would likely be successful in vacating the judgments against them, leading to significant monetary benefit for those class members. Because this Court has already held that Defendants repeatedly and routinely violated the federal Fair Debt Collection Practices Act and Ohio consumer protection laws by using false and misleading affidavits to support complaints in debt collection lawsuits, these claims have a high probability of success. Where there is such a likelihood of success on the merits, a fair settlement must provide a substantial benefit to the plaintiffs in relation to the rights that the plaintiffs waive. The $10 cap on relief to individual class members is in no way commensurate with the value of the claims the class members are releasing.

Furthermore, class members who do not opt out of the class waive all claims under federal law, including the Fair Debt Collection Practices Act, that permit attorneys' fees for successful litigation. These attorneys' fees provisions are important to claimants in debt collection actions because without these provisions, many claimants would be unable to secure representation. Thus, even if the relief in the proposed settlement were modified to permit class members to seek vacatur

8

of judgments obtained through the use of false and misleading affidavits, class members would have difficulty obtaining representation in such actions if they had waived their federal claims.

C.     The benefits to the named plaintiffs are disproportionate to the benefits to the absent class members.

The proposed settlement is also suspect because the benefits provided to named plaintiffs are disproportionate to the benefits provided to absent class members. The named plaintiffs collectively receive $8,000 and the *complete release of their debts owed* to Defendants. The principal remedy afforded to named plaintiffs, erasure of their debt, stands in stark contrast to the outcome for absent class members, which is the immunization of their debt judgments. This disproportionate benefit to named plaintiffs weighs in favor of rejection of the proposed settlement. *See Williams,* 720 F.2d at 923 (6th Cir. 1983) ("The court should ensure that the interests of counsel and the named plaintiffs are not unjustifiably advanced at the expense of unnamed class members."); *Plummer v. Chem. Bank,* 668 F.2d 654 (2d Cir.1982).

D.     The injunctive relief provisions are inadequate to the extent that the injunctive relief is limited in duration to one year.

The proposed settlement requires Defendants to develop and implement procedures "reasonably assured to prevent the use of affidavits in debt collection law suits where the affiant does not have personal knowledge of the facts set forth in the affidavit." But the injunctive provisions are in effect for a period of only one year. A one-year sunset is inappropriate in light of the fact that it was Defendants' standard practice over a number of years to rely on false and misleading affidavits that defrauded not only individual class members but also the nation's court systems. Defendants' business relied on the use of these false affidavits, which were used in lawsuits against 1.44 million individuals. Given the scope of the practice and its apparent importance to Defendants' business model, limiting injunctive relief to one year provides no

assurance that Defendants will not resume their improper debt collection practices and is inadequate. Thus, there is no reason for the injunction to be limited in duration.

      E.    <u>The notice provided to class members about the proposed settlement was inadequate</u>.

The notice provided to class members about the proposed settlement was inadequate because it did not alert them that failing to act would waive their right to seek to vacate existing judgments or defend against existing actions. Federal Rule of Civil Procedure 23(c)(2)(B) requires that notice to class members must "clearly and concisely state in plain, easily understood language" the "binding effect of a class judgment on members under Rule 23(c)(3)." The notice did not state in plain, easily understood language that failure to opt out of the class would result in class members' losing their right to defend against existing collection actions brought by Defendants and their right to challenge existing judgments brought on the basis of false and misleading affidavits. The notice states:

> What am I giving up to receive these benefits?
> By staying in the class, all of the Court's orders will apply to you, and you give Defendants and their affiliates a "release." A release means you can't sue or be part of any other lawsuit against Defendants about the claims or issues in this lawsuit, or any other claims arising out of affidavits attached or executed in support of collection complaints filed against Class Members by Defendants or any of their subsidiaries or affiliates.

Class Settlement Agreement, Exhibit B - Notice, *Midland Funding LLC v. Brent*, 3:08-CV-1434 (N.D. Ohio March 9, 2011).

While the notice does provide information that class members will be giving up certain rights, it states only that class members who do not opt out "can't sue or be part of any lawsuit against Defendants" (a) "about the claims or issues in this lawsuit" or (b) about "any other claims arising out of the affidavits." Thus, a reasonable person could read the notice to mean that failing to opt out would result only in that individual being precluded from bringing an affirmative claim under state

10

consumer protection laws or other laws, rather than precluding him from defending against an existing lawsuit or challenging an existing judgment.

In addition, the notice is deficient in that it does not apprise class members of the benefits to the named plaintiffs in the action, making it difficult for class members to properly evaluate the fairness of the proposed settlement. While the notice states that named plaintiffs will receive $8,000, it does not state that the judgments against the named plaintiffs will be forgiven. Release of the named plaintiffs' debt, together with the incentive payment, provides a strong incentive for the named plaintiffs to accept this proposed settlement.

    F.    Approval of the proposed settlement would not serve the public interest.

A final factor courts consider in determining whether a proposed class action settlement should be approved is whether approval of the settlement serves the public interest. *See International Union,* 497 F.3d at 631. The Attorneys General respectfully urge the court to reject the proposed settlement because the public interest is not served by the approval of this settlement. The settlement would potentially preclude 1.44 million class members from seeking to defend against lawsuits or vacate judgments that were obtained through the use of false affidavits that mislead both the class members and the court systems within our jurisdictions. The public interest is not served by stripping a vast number of consumers of their right to challenge these fraudulently obtained judgments. Furthermore, it is not in the public interest to permit a settlement that benefits Defendants so strongly over class members when the Defendants' business involved years of routine, repeated, widespread fraud on the court system and on individual litigants.

11

## CONCLUSION

For the reasons set forth above, the Attorneys General respectfully urge the Court to reject the proposed settlement because it is not fair, reasonable or adequate.


Respectfully Submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By and Through:

_Carolyn Fast_                                        May 31, 2011
Carolyn Fast (Bar No. 4095535)
Assistant Attorney General
New York Office of the Attorney General
120 Broadway, 3rd Floor
New York, NY 10271
(212) 416-6250 / (212) 419-6003 (fax)
Carolyn.Fast@ag.ny.gov

The following Attorneys General join in this brief:

John J. Burns                             Kamala D. Harris
Attorney General of Alaska                Attorney General of California
P.O. Box 110300                           110 West A Street
Juneau, AK 99811                          San Diego, CA 92101

Tom Horne                                 John W. Suthers
Attorney General                          Attorney General
State of Arizona                          Colorado Department of Law
400 West Congress                         1525 Sherman St.
South Building                            Denver, CO 80203
Tucson, AZ 85701-1367                     (303) 866-4500
(520) 628-6504

                                          George C. Jepsen
Dustin McDaniel                           Attorney General
Attorney General                          State of Connecticut
State of Arkansas                         55 Elm St.
323 Center Street, Suite 200              Hartford, CT 06106
Little Rock, AR 72201                     (860) 808-5318
(501) 682-2007

12

Joseph R. Biden, III
Attorney General
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801
(302) 577-8600

Samuel S. Olens
Attorney General
State of Georgia
40 Capitol Square, S.W.
Atlanta, GA 30334

David M. Louie
Attorney General
State of Hawaii
425 Queen Street
Honolulu, HI 96813

Lawrence G. Wasden
Idaho Attorney General
P.O. Box 83720
Boise, ID 83720-0010

Lisa Madigan
Illinois Attorney General
100 W. Randolph Street
Chicago, IL 60601

Tom Miller
Attorney General
State of Iowa
1305 E. Walnut Street
Des Moines, IA 50319
(515) 281-5164

Derek Schmidt
Attorney General
State of Kansas
120 SW 10th Street
Topeka, KS 66612
(785) 296-2215

Jack Conway
Attorney General
State of Kentucky
Capitol Suite 118
700 Capitol Avenue
Frankfort, KY 40601-3449

William J. Schneider
Maine Attorney General
State House Station 6
Augusta, ME 04333

Douglas F. Gansler
Attorney General of Maryland
200 Saint Paul Place
Baltimore, MD 21202

Martha Coakley
General Counsel
State of Massachusetts
One Ashburton Place
Boston, MA 02108
(617) 727-2200

Lori Swanson
Attorney General of Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155-1609

Bill Schuette
Michigan Attorney General
P. O. Box 30212
Lansing, MI 48909

Chris Koster
Missouri Attorney General
207 W. High St.
P.O. Box 899
Jefferson City, MO 65102
(573) 751-3321

Catherine Cortez Masto
Attorney General for the State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701
(775) 684-1112

Michael A. Delaney
Attorney General of New Hampshire
33 Capitol Street
Concord, NH 03301

Gary King
Attorney General
State of New Mexico
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 827-6000

Roy Cooper
Attorney General
State of North Carolina
9001 Mail Service Center
Raleigh, NC 27699-9001
(919) 716-6400

Wayne Stenehjem
Attorney General of North Dakota
600 E. Boulevard Avenue
Bismarck, ND 58505-0040
(701) 328-2210

Mike Dewine
Attorney General
State of Ohio
30 E. Broad St.
Columbus, OH 43215

John R. Kroger
Attorney General
State of Oregon
1162 Court St. N.E.
Salem, OR 97301

Peter F. Kilmartin
Attorney General
State of Rhode Island
150 South Main Street
Providence, RI 02903
(401) 274-4400

Alan Wilson
Attorney General
State of South Carolina
P.O. Box 11549
Columbia, SC 29211

Marty J. Jackley
Attorney General
State of South Dakota
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501
(605) 773-3215

Robert E. Cooper, Jr.
Attorney General and Reporter of Tennessee
425 Fifth Avenue North
Nashville, TN 37243
(615) 741-3491

Greg Abbott
Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548

Mark L. Shurtleff
Utah Attorney General
Utah State Capitol Suite #230
PO Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600

William H. Sorrell
Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3173

14

Robert M. McKenna
Attorney General of Washington
1125 Washington Street SE
P.O. Box 40100
Olympia, WA   98504-0100

Darrell McGraw
Attorney General
State of West Virginia
812 Quarrier Street
Charleston, WV  25326-1789
(304) 558-8986

Gregory A. Phillips
Attorney General of Wyoming
123 State Capitol
Cheyenne, WY 82002

15

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| MARTHA VASSALLE, et al.,         ) | |
|                           ) | CASE NO.: 3:11-cv-0096 |
|         Plaintiff,       ) | |
|                           ) | HON. DAVID A. KATZ |
|   vs.                       ) | |
|                           ) | **And Related Cases:** |
| MIDLAND FUNDING LLC, et al.,     ) | Case No. 3:10-cv-0091 |
|                           ) | |
|         Defendant.      ) | AFFIDAVIT OF SERVICE |
|                           ) | BY U.S. MAIL |

STATE OF NEW YORK   )
                     ) ss.
COUNTY OF NEW YORK  )

CAROLYN FAST, being first duly sworn, deposes and says:

That at the City of New York, County of New York and State of New York, on June 1, 2011, she caused to be served the attached documents:

> Brief *Amicus Curiae* of the Attorneys General of New York, Ohio, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Michigan, Missouri, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, and Wyoming in Opposition to the Proposed Settlement; and Affidavit of Max Dubin in Support of *Amicus* brief,

by depositing the same in the United States mail at said city and state, true and correct copies

thereof, properly enveloped with prepaid first class postage, and addressed to:

| | |
|---|---|
| Brian C. Block<br>Melissa A. Hager<br>Javitch, Block & Rathbone - Cleveland<br>19th Floor<br>1100 Superior Avenue<br>Cleveland, OH 44114 | Theodore W. Seitz<br>Dykema Gossett<br>Ste. 900<br>201 Townsend Street<br>Lansing, MI 48933 |
| Dennis E. Murray, Sr.<br>Donna Jean A. Evans<br>Murray & Murray<br>111 East Shoreline Drive<br>Sandusky, OH 44870 | Leonard A. Bennett<br>Consumer Litigation Associates<br>Ste. 100<br>12515 Warwick Blvd.<br>Newport News, VA 23606 |
| Matthew J. Erausquin<br>Consumer Litigation Associates<br>Ste. 600<br>1800 Diagonal Road<br>Alexandria, VA 22314 | Reginald S. Jackson , Jr.<br>Connelly, Jackson & Collier<br>Ste. 2300<br>405 Madison Avenue<br>Toledo, OH 43604 |

CAROLYN FAST

Subscribed and sworn to before me on
June 1, 2011

NOTARY PUBLIC

JOAN TAYLOR
Notary Public, State of New York
No. 4999162
Qualified in Bronx County
Commission Expires July 20, 2014

Case No.:  3:11-cv-0096

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARTHA VASSALLE, et al.,

                                        Plaintiff,


                         v.

MIDLAND FUNDING LLC, et al.,

                                        Defendant.


**BRIEF *AMICUS CURIAE* OF THE ATTORNEYS GENERAL OF NEW YORK, OHIO, ALASKA, ARIZONA, ARKANSAS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, GEORGIA, HAWAII, IDAHO, ILLINOIS, IOWA, KANSAS, KENTUCKY, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, MICHIGAN, MISSOURI, NEVADA, NEW HAMPSHIRE, NEW MEXICO, NORTH CAROLINA, NORTH DAKOTA, OREGON, RHODE ISLAND, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, TEXAS, UTAH, VERMONT, WASHINGTON, WEST VIRGINIA, AND WYOMING IN OPPOSITION TO THE PROPOSED SETTLEMENT**


**ERIC T. SCHNEIDERMAN**
Attorney General of New York
Attorney for *amici curiae*
Office and Post Office Address
120 Broadway, 3rd Floor
New York, N.Y. 10271
Tel: (212) 416-6250

Personal Service of a Copy of
within.................................................................
is admitted this ...................................................
.............................................................2011

| Case No.:  3:11-cv-0096 |
|---|
| **UNITED STATES DISTRICT COURT**<br>**FOR THE NORTHERN DISTRICT OF OHIO**<br>**WESTERN DIVISION** |
| MARTHA VASSALLE, et al.,<br><br>                           Plaintiff,<br><br><br>                v.<br><br>MIDLAND FUNDING LLC, et al.,<br><br>                        Defendant. |
| **AFFIDAVIT OF SERVICE OF BRIEF *AMICUS CURIAE* OF THE ATTORNEYS GENERAL OF NEW YORK, OHIO, ALASKA, ARIZONA, ARKANSAS, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, GEORGIA, HAWAII, IDAHO, ILLINOIS, IOWA, KANSAS, KENTUCKY, MAINE, MARYLAND, MASSACHUSETTS, MINNESOTA, MICHIGAN, MISSOURI, NEVADA, NEW HAMPSHIRE, NEW MEXICO, NORTH CAROLINA, NORTH DAKOTA, OREGON, RHODE ISLAND, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, TEXAS, UTAH, VERMONT, WASHINGTON, WEST VIRGINIA, AND WYOMING IN OPPOSITION TO THE PROPOSED SETTLEMENT** |
|                   **ERIC T. SCHNEIDERMAN**<br>                  **Attorney General of New York**<br>                  **Attorney for *amici curiae***<br>                  **Office and Post Office Address**<br>                  **120 Broadway, 3rd Floor**<br>                  **New York, N.Y. 10271**<br>                  **Tel: (212) 416-6250**<br><br>Personal Service of a Copy of<br>within.......................................................................<br>is admitted this ...................................................<br>.................................................................2011 |