UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARTHA VASSALLE, et al., | **Case No. 3:11-cv-00096** |
| Plaintiff, | HON. DAVID A. KATZ |
| vs. | <u>**And Related Cases:**</u> |
| MIDLAND FUNDING, LLC, et al., | Case No. 3:10-cv-00091, N.D. Ohio<br>Case No. 3:08-cv-01434, N.D. Ohio |
| Defendant. | |

**FEDERAL TRADE COMMISSION'S BRIEF AS *AMICUS CURIAE***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.      SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FTC'S INTEREST  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    BACKGROUND ON DEBT BUYERS AND DEBT COLLECTION LITIGATION  . . . 5

IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.      The Proposed Class Settlement Must Be Fair, Reasonable, and Adequate to the
                Entire Settlement Class  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.      The Proposed Release and Benefit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        C.      The Broad Class Release Compared to the *De Minimis* Class Benefit Is Unfair
                and Unreasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        D.      The Class Notice Does Not Adequately Advise Consumers About the Scope of
                the Proposed Class Release  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        E.      Unprotected Personal Information Exposes Class Members to Harm  . . . . . . . . 16

        F.      The Public Interest is Not Served by the Proposed Class Settlement  . . . . . . . . 17

V.      CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

# TABLE OF AUTHORITIES

## Cases

*Amchen Products, Inc. v. Windsor*, 521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Asset Acceptance v. Lodge*, 325 S.W.3d 525 (Mo. Ct. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . 9

*Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 11

*Bowling v. Pfizer, Inc.*, 143 F.R.D. 141 (S.D. Ohio 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Girsh v. Jepson*, 521 F.2d 153 (3rd Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Grimes v. Vitalink Comm'ns Corp.*, 17 F.3d 1553 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gruinn v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Pfau v. Forster & Garbus*, Index No. 2009-8236
 (Erie County Supreme Court) (July 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In the Matter of Educ. Research Ctr. Of Am., Inc.*, FTC Dkt. No. C-4079 (May 6, 2003) . . . . . 17

*In the Matter of Sears Holdings Mgmt. Corp.*, FTC Dkt. No. C-4264 (Sept. 9, 2009) . . . . . . . . 16

*In the Matter of The Nat'l Research Ctr. For College & Univ. Admissions*,
 FTC Dkt. No. C-4071 (Jun. 28, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Int'l Union, U.A.W. v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) . . . . . . . . . . . 11, 17

*Martinez v. Midland Credit Mgmt.*, 250 S.W.3d 481 (Texas App. 2008) . . . . . . . . . . . . . . . . . . 9

*Midland Funding v. Mitsos,* Index No. 953/07, 2011 N.Y. Misc. LEXIS 1055
 (N.Y. Super. Ct. Jan. 6, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9 (2d Cir. 1981) . . . . . . . . . . 12

*People v. Zmod Process Corp. DBA Am. Legal Process & Singler*, Index No. 2009-4228
 (Erie County Supreme Court) (Apr. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Romstadt v. Apple Computer, Inc.*, 948 F. Supp. 701 (N.D. Ohio 1996) . . . . . . . . . . . . . . . . . . 10

*United States v. Allied Interstate, Inc.*, No. 10-cv-04295 (D. Minn. 2010) . . . . . . . . . . . . . . . . . 3

*United States v. Brand Jewelers, Inc.*, 318 F. Supp. 1293 (S.D.N.Y. 1970) . . . . . . . . . . . . . . . . 7

*United States v. Credit Bureau Collections Servs., et al.*, No.2:10-cv-169 (S.D. Ohio 2010) . . . 3

*United States v. West Asset Mgmt., Inc.*, No. 1:11-cv-0746 (N.D. Ga. Mar. 14, 2011). . . . . . . . 3

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Statutes**

15 U.S.C. § 45(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

15 U.S.C. §§ 1692 - 1696p . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

15 U.S.C. § 1692k . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 U.S.C. §§ 6801-6809 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

15 U.S.C. § 6809(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fla. Stat. Ann. § 95.11(1) (West 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Ind. Code Ann. § 34-11-2-12 (West 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Iowa Code Ann. § 614.1.6 (West 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mass. Gen. Laws Ann. Ch. 260, § 1 (West 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

N.J. Stat. Ann. § 2A:14-5 (West 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

N.Y. C.P.L.R. § 211 (McKinney 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Va. Code Ann. § 8.01-251 (West 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 23(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

iii

**Miscellaneous**

Federal Trade Commission, COLLECTING CONSUMER DEBTS: THE CHALLENGES OF CHANGE
(2009), *available at* http://www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf  . . 3, 5, 6

Federal Trade Commission*, Agenda,* PROTECTING CONSUMER INTERESTS IN CLASS ACTIONS
(2004), *available at* http://www.ftc.gov/bcp/workshops/classaction/agenda.shtm . . . . . . 5

Federal Trade Commission, REPAIRING A BROKEN SYSTEM: PROTECTING CONSUMERS IN DEBT
COLLECTION LITIGATION AND ARBITRATION (2010), *available at*
http://www.ftc.gov/os/2010/07/debtcollectionreport.pdf. . . . . . . . . . . . . . . . . . . . . . 3, 7, 8

Colloquy, *Protecting Consumer Interests in Class Actions, September 13-14, 2004*
18 GEO. J. LEGAL ETHICS 1161 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    SUMMARY

The Federal Trade Commission ("FTC" or "Commission") submits this brief as *amicus curiae* to express its concerns about the fairness of the class action settlement agreement preliminarily approved by the Court on March 11, 2011.  The broad "Class Release" may deprive over a million consumers across the nation of their existing rights to challenge improper judgments entered against them, to defend themselves in ongoing debt collection actions, and to vindicate violations of collections laws in state and federal court by Midland Funding, LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc. (collectively "Defendants") and their agents.  The language of the Class Release, which exempts from challenge the use of *any* affidavit in a debt collection lawsuit, would prohibit, *inter alia,* consumers from challenging judgments where they were not properly served but where Defendants submitted an affidavit of service attesting otherwise; where Defendants sought improper or unauthorized interest or fees, as attested to in an affidavit; or where Defendants did not have admissible evidence proving ownership or existence of the debt, because the affiant was not a proper records custodian or otherwise.

In exchange for losing these significant substantive rights, class members receive only a small payment, capped at $10.  This bargain leaves class members in a significantly worse position than the *status quo*.  By contrast, Defendants, in essence, have insulated from attack over a million judgments entered nationwide, many of them defaults, thus protecting future collections on these judgments.  In addition, Defendants have agreed to a limited injunction that addresses only affidavit procedures in future proceedings, but does not require Defendants to take any action to remedy consumer harm resulting from judgments already obtained using false affidavits.  The disproportionate breadth of the Class Release and the significant advantages it

1

provides Defendants, as compared to the *de minimis* benefits to the class, cast serious doubts as to the fairness, reasonableness, and adequacy of the proposed settlement.  Thus, we respectfully suggest that the Court reject the proposed settlement.

Additionally, the proposed claim process lacks important safeguards for class members' personal information.  If Defendants' access to and use of information obtained through the claim process is not restricted, consumers may unwittingly provide Defendants with current information that can be used against them in future collection actions by Defendants.  It is deceptive to trick consumers into providing personal information for one reason, and then use the information for another, undisclosed, purpose.  We therefore respectfully suggest that the Court enter an order limiting Defendants' use of any personal information gathered in the claims process to the claims process itself.

## II.      STATEMENT OF FTC'S INTEREST

The FTC is an independent law enforcement agency whose mission is to promote the efficient functioning of the marketplace by protecting consumers from unfair or deceptive acts or practices.  The Commission enforces the Federal Trade Commission Act ("FTC Act"), which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.  15 U.S.C. § 45(a).  The Commission also enforces the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 - 1696p, the federal statute at issue in the class actions here.

As the chief federal enforcer of the FDCPA, the Commission is uniquely situated to comment on the proposed class action settlement.  Enforcement of the FDCPA is a priority of the FTC's financial practices program.  To that end, the Commission has filed numerous law

enforcement actions against individuals and companies that violated the FDCPA.[1]  In addition to

the expertise the Commission has developed in enforcing the FDCPA, the Commission monitors

the debt collection industry and develops policy proposals.  Recently, as part of a comprehensive

assessment of the debt collection system, the FTC convened a workshop that examined changes

in the debt collection landscape.  The subsequent Workshop Report, *Collecting Consumer Debts:*

*The Challenges of Change*,[2] identified the advent and growth of the debt buying industry as the

most significant change in debt collection practices since the enactment of the FDCPA more

than 30 years ago, and discussed some of the consumer challenges raised by this industry

change.  Following the 2009 Workshop Report, the Commission held a series of Roundtables

that convened consumer advocates, industry representatives, and members of the judiciary

specifically to discuss issues related to debt collection litigation.  The Commission's 2010 Debt

Collection and Arbitration Roundtables Report, *Repairing a Broken System: Protecting*

*Consumers in Debt Collection Litigation and Arbitration*[3] examined the evidentiary deficiencies

---

[1]  Most recently, in March 2011, the Commission announced a settlement agreement with collector West Asset Management, Inc., resulting in a $2.8 million civil penalty.  *United States v. West Asset Mgmt., Inc.*, No. 1:11-cv-0746 (N.D. Ga. Mar. 14, 2011).  In October 2010, the FTC reached a settlement agreement with Allied Interstate, Inc., one of the nation's largest debt collectors, resulting in a $1.75 million civil penalty.  *United States v. Allied Interstate, Inc.*, No. 10-cv-04295 (D. Minn. 2010).  In March 2010, the Commission announced a settlement agreement with collector Credit Bureau Collection Services and two of its officers, resulting in a civil penalty of more than $1 million.  *United States v. Credit Bureau Collections Servs., et al.*, No.2:10-cv-169 (S.D. Ohio 2010).

[2]  Federal Trade Commission, COLLECTING CONSUMER DEBTS: THE CHALLENGES OF CHANGE (2009) (hereafter "WORKSHOP REPORT"), *available at* http://www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf.

[3]  Federal Trade Commission, REPAIRING A BROKEN SYSTEM: PROTECTING CONSUMERS IN DEBT COLLECTION LITIGATION AND ARBITRATION (2010) (hereafter "ROUNDTABLE REPORT"), *available at* http://www.ftc.gov/os/2010/07/debtcollectionreport.pdf.

3

in debt collection lawsuits at the filing and default stages, particularly in actions brought by debt buyers.  Thus, the FTC has considerable experience in issues related to debt buyers and debt collection litigation.

The Commission also actively seeks to safeguard consumers' privacy and the security of their personal information.  Section 5 of the FTC Act, 45 U.S.C. § 45(a), and the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. §§ 6801-6809, cover the practices of debt buyers and debt collectors such as Defendants with respect to the privacy and security of personal information.  *See* 15 U.S.C. § 6809(3) (governs the collection, sharing, and safeguarding of nonpublic personal information by "financial institutions," a term that includes debt collectors).  Among other things, GLBA requires debt collectors to implement appropriate safeguards to protect the security and integrity of "customer" information.  Finally, under Section 5 of the FTC Act the Commission has challenged data collection practices as unfair or deceptive if information collected for one purpose was used for another without adequate disclosure and authorization.

In addition to its specific experience with the FDCPA, debt collection, and privacy and data collection issues, the FTC has also studied how best to protect consumer interests and other fairness issues in the class action context, and has a tradition of filing *amicus* briefs commenting on potentially unfair class settlements.  As part of its Class Action Fairness Project, the FTC convened a workshop on class action lawsuits in 2004, "Protecting Consumer Interests in Class

Actions,"[4] and has filed numerous *amicus* briefs commenting on proposed class action settlements.[5]

Given this regulatory framework and institutional expertise, the FTC has an interest in private class actions insofar as they may result in settlements that fail to adequately protect the interests of injured consumers.  In such situations, unlike the parties to this litigation who represent their own private interests, the FTC represents the public interest.

## III.    BACKGROUND ON DEBT BUYERS AND DEBT COLLECTION LITIGATION

The Commission's 2009 Workshop Report identified inaccurate information as a serious problem with current debt collection practices.  Debt buyers, in particular, often receive "only a computerized summary of the creditor's business records when [they] purchase a portfolio."[6] One consumer advocate asserted that debt buyers "typically do not have access to the original credit application with the consumer's signature, the specific contract that applied to the consumer's account, copies of original credit statements, or customer service records that could confirm or clarify a fraud claim or a legitimate consumer dispute."[7]  The Report concluded that

---

[4] *See* Federal Trade Commission, *Agenda,* PROTECTING CONSUMER INTERESTS IN CLASS ACTIONS (2004), *available at* http://www.ftc.gov/bcp/workshops/classaction/agenda.shtm (detailing the workshop agenda and papers submitted in connection with the workshop); *see also,* 18 Geo J. Legal Ethics 1161 (2005) (containing a transcript of the workshop proceedings).

[5] For a list of some the FTC's *amicus* filings, *see* Federal Trade Commission, *Index,* PROTECTING CONSUMER INTERESTS (2004), *available at* http://www.ftc.gov/bcp/ workshops/classaction/index.shtm.

[6] WORKSHOP REPORT, *supra* note 1 at 22.

[7] *Id*. at 31.

5

"information received by debt collectors is often inadequate and results in attempts to collect from the wrong consumer or the wrong amount."[8]

There is no reason to believe that Defendants receive significantly more or higher quality information about the debts they seek to collect than other debt buyers; problems with inadequate information are endemic to the industry. Indeed, in the *Vassalle* class complaint, plaintiffs allege that Defendants possess only a computer tape or other electronic listing of debts. (Dkt. 1 at 5.) Moreover, as noted in the *amicus* brief filed by the Attorneys General of 38 states, consumer complaints "allege that Defendants have brought debt collection actions where the amount allegedly owed was inaccurate or the debts were not owed as a result of prior payment, bankruptcy discharge, settlement, or mistaken identity." (Dkt. 27 at 6.) A review of the Commission's own complaint database also reveals more than three thousand consumer complaints alleging inaccurate collections by Defendants. Some complainants specifically commented that they had been sued for debts that they did not owe.[9]

The Commission's 2009 Workshop Report also found significant concerns with debt collection lawsuits, especially in light of the vast number of such suits filed in recent years, and suggested further study.[10] Public comments were solicited and three public roundtables were held to discuss the issue. The resulting 2010 Roundtable Report identified numerous problems with debt collection lawsuits, especially those by debt buyers. One serious problem noted by the FTC was the lack of participation by consumers in debt collection lawsuits. Estimates of the

---

[8] *Id*. at 24

[9] *See* Exhibit 1, Declaration of Tracy Thorleifson.

[10] WORKSHOP REPORT, *supra* note 1 at 55-58.

6

default judgment rate ranged from 60 percent to 95 percent, with most commenters suggesting that the default rate in their jurisdictions was close to 90 percent.[11]

Contributing to the high number of default judgments are the serious problems associated with inadequate service of process, as noted by many consumer advocates.[12] Consumers might not get notice of an action if the summons is delivered to an old or otherwise incorrect address or if it is delivered to the wrong person, such as someone with a similar name. In some cases, process servers simply do not serve the consumer but falsely attest that they have done so.[13] The number of documented systemic problems with service, particularly in large metropolitan areas, caused the Commission to recommend changes in service of process at the state and local level.[14]

---

[11] ROUNDTABLE REPORT, *supra* note 2 at 7.

[12] *Id.* at 7-10.

[13] This is sometimes referred to as "sewer service" – the server throws the documents "down the sewer" and then falsifies its affidavit of service. *See, e.g., United States v. Brand Jewelers, Inc.*, 318 F. Supp. 1293 (S.D.N.Y. 1970). The New York Attorney General has filed civil and criminal actions against process servers that falsified affidavits of service. *People v. Zmod Process Corp. DBA Am. Legal Process & Singler*, Index No. 2009-4228 (Erie County Supreme Court) (Apr. 2009) (civil suit); *People v. Singler & Zmod Process Corp. dba Am. Legal Process, Inc.* (Apr. 2009) (felony complaint). *See also In re Pfau v. Forster & Garbus et al.*, Index No. 2009-8236 (Erie County Supreme Court) (July 2009) (civil petition to vacate default judgments obtained against consumers in debt collection cases, filed against numerous attorney collectors who used American Legal Process to serve process and obtained default judgments in New York). An analysis of the records of the process servers in those cases revealed numerous instances in which process servers claimed to: be at two or more locations at the same time; be at two locations in sequence when physically impossible in light of the time required to travel the distance between them; have served documents at times before those documents were received; have attempted service at times before the court index number had been purchased; and have notarized signatures when physically impossible to do so. *In re Hon. Ann Pfau v. Forster & Garbus,* Index No. 2009-8236 (Erie County Supreme Court), Attorney Affirmation of James M. Morrissey (July 2009). *See* ROUNDTABLE REPORT at 8, 9.

[14] ROUNDTABLE REPORT at 10.

The Commission also reported systematic problems with evidence of indebtedness in the litigation process.  Some consumer advocates noted that debt collection actions "too often are filed against the wrong consumer, seek the wrong amount, or both, or are otherwise based on erroneous information."[15]  Concerns were raised about default judgments and the evidence on which they were based.  The Commission described actions by some jurisdictions to apply appropriate and consistent standards – including legal standards and court rules – in deciding whether to grant such judgments and recommended that other jurisdictions consider adopting similar measures.[16]

Again, there is no reason to believe that Defendants are substantially different from other debt buyers with respect to debt collection lawsuits.  It is likely that at least some class members were not properly served and thus have no notice that a default judgment against them exists.  For example, in a 2011 case against defendant Midland Funding in New York, the court found that service of process was inadequate because Midland left the complaint at a different place from where the consumer lived.  *Midland Funding, LLC v. Mitsos*, Index No. 953/07, 2011 N.Y. Misc LEXIS 1055 (N.Y. Sup. Ct. Jan. 6, 2011).  In addition, complaints filed with the Commission indicate that some consumers had not received notice of a Midland lawsuit prior to entry of a default judgment.  Other complainants commented that they did not learn of the judgment until after a wage garnishment was instituted.[17]

---

[15]  *Id.* at 15.

[16]  *Id.* at 20-21.

[17]  Exhibit 1, Declaration of Tracy Thorleifson.

It is also likely that, in at least some lawsuits against class members, evidentiary problems exist with affidavits used by Defendants – problems that would seriously call into question the validity of the underlying judgment if the affidavit were challenged.  This Court has already found that Defendants filed a false affidavit in which the affiant had no personal knowledge about the debt, including the date of last payment or the outstanding balance. Although the Court found that the account information in the Brent affidavit was "likely" correct, this issue was not litigated. The validity of the information in the other 1.44 million accounts of class members cannot be assumed.  Consumer complaints report that at least some judgments obtained by Defendants are not accurate, seeking the wrong amount or targeting the wrong person.[18]

Nor can it be assumed that Defendants could carry their burden of proof in debt collection lawsuits if the affidavits were challenged as not falling within the business records exception to the hearsay rule.  In some jurisdictions, Defendants' affidavits would not be admissible to prove the existence, ownership, or amount of the debt because the affiant is not qualified to testify about the record-keeping practices of the creditor from whom the debt was purchased.  *See Martinez v. Midland Credit Mgmt*., 250 S.W.3d 481, 485 (Texas App. 2008) (affidavit filed by Midland not admissible because affiant not qualified to testify about the record-keeping practices of the predecessor owner of the debt (and did not even identify the predecessor)); *see also Asset Acceptance v. Lodge,* 325 S.W.3d 525, 528 (Mo. Ct. App. 2010) (affidavit of debt buyer filed to support debt collection lawsuit not admissible under business

---

[18]  *Id*.

9

records exception to hearsay rule because affiant did not have knowledge about the original creditor's preparation of the documents).

Inaccurate affidavits in debt collection lawsuits cause real harm to consumers, whether based on inaccurate information about the amount of the debt or authorized fees and interest, false attestations about service of process, or erroneous assertions regarding the admissibility of an underlying fact. These problems are exacerbated by the large number of default judgments against consumers based on such affidavits. The proposed settlement does not adequately redress these harms.

## IV.   ARGUMENT

### A.   The Proposed Class Settlement Must Be Fair, Reasonable, and Adequate to the Entire Settlement Class

Class action settlements may only be approved if the Court determines that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Amchen Products, Inc. v. Windsor,* 521 U.S. 591, 627 (1997) (rejecting settlement agreement as a "global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected"). "The court 'acts as a fiduciary who must serve as guardian of the rights of absent class members . . . [t]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate.'" *Romstadt v. Apple Computer, Inc.*, 948 F. Supp. 701, 705 (N.D. Ohio 1996), *quoting Gruinn v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); s*ee also Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (reversing class settlement where district court "did not live up to its fiduciary responsibility as the guardian of the rights of the absentee class members"). Where, as here, the proposed nationwide class has

10

not yet been certified, the fairness of a proposed settlement is subject to higher scrutiny.

*Bowling v. Pfizer*, *Inc*., 143 F.R.D. 141, 151 (S.D. Ohio 1992); *see also Weinberger v. Kendrick*,

698 F.2d 61, 73 (2d Cir. 1982).  Factors to be considered by the Court in assessing fairness

include the comparative strength of the plaintiffs' claims with the scope of the relief offered by

the settlement, the impact on absent class members, and the public interest.  *Int'l Union, U.A.W.*

*v. General Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007); *see also Bailey v. Great Lakes*

*Canning, Inc.,* 908 F.2d 38, 42 (6th Cir. 1990) (a court should determine if the settlement is

"fair, adequate, and reasonable, as well as consistent with the public interest").

### B.    The Proposed Release and Benefit

Under the proposed settlement, class members who do not opt out:

> release and forever discharge Encore Capital Group, Inc. [and its affiliates,
> agents, and representatives] ("the Released Parties") from all causes of action,
> suits, claims and demands, whatsoever, known or unknown, in law or in equity,
> based on state or federal law, which the class now has, ever had or hereafter may
> have against the Released Parties, arising out of or relating to the Released
> Parties' use of affidavits in debt collection lawsuits.

(*Brent* Dkt. 107-1, at §V(D)(1).)

Notably, this broad release is not limited to Defendants' conduct at issue in the

underlying class actions.  Rather, the release appears to cover any affidavit-related claim,

including a claim in an offensive lawsuit, counterclaim, or, if read broadly, affirmative defense.

The far narrower class complaints focus on Defendants' use of affidavits signed by employees

who falsely attested to personal knowledge about the account being collected.  The release,

covering all claims arising out of or relating to Defendants' – *and* their agents' – use of affidavits

in debt collection suits, is not so limited.  Instead, its sweeping language would potentially apply

to claims related to affidavits that may have improperly relied on inadmissible evidence or

11

affidavits falsely attesting to service of process.  It would also shield affidavits used by Defendants' agents, including attorneys filing suit on behalf of Defendants.  These factually different scenarios were not addressed by the class plaintiffs and issues related to such situations were not litigated.  *Cf. Grimes v. Vitalink Comm'ns Corp.,* 17 F.3d 1553, 1563-64 (3rd Cir. 1994) (settlement may release claims based on different legal theory from that alleged in complaint only when the claims "[depend] upon the very same set of facts"), *quoting, Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9, 18 (2d Cir. 1981).  In exchange for this sweeping release, class members are eligible to claim a check of up to $10 (and only if they timely submit a claim form).

The proposed settlement also provides for a stipulated injunction that requires Defendants to implement certain affidavit procedures for use in future proceedings.  Unlike the broad class release, however, these procedures are narrowly tailored to the facts of the underlying class action:  Defendants must only implement affidavit procedures aimed to "prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of facts set forth in the affidavit."  Defendants need not establish procedures to ensure that affidavits are based on credible and accurate information and supported by admissible evidence.  Moreover, this injunctive relief is limited to twelve months, and it does not require Defendants to take any action to address judgments already obtained using false affidavits.

12

### C.    The Broad Class Release Compared to the *De Minimis* Class Benefit Is Unfair and Unreasonable

The extraordinary breadth of the class release compels absent class members to waive significant legal rights and remedies in exchange for only nominal relief.  Class members forfeit all rights to bring affirmative actions against Defendants under the Fair Debt Collection Practices Act and relevant state consumer protection laws – rights which might well be valuable given Defendants' documented violations of the FDCPA and the Ohio consumer protection laws in the *Brent* action.

By waiving all rights under the FDCPA and similar state statutes, consumers also are, in effect, losing the ability to retain counsel to challenge default judgments entered against them.  It is only through the attorney fee provisions of the FDCPA and similar state statutes that most consumers can afford to retain counsel to challenge the default judgments that Defendants have obtained through faulty affidavits.[19]  Absent the attorney fee provisions of these statutes, most consumers are unlikely or unable to pay a lawyer to challenge the default judgment when there is no mechanism for recouping the fees paid to counsel.  Thus, by extinguishing consumers' statutory rights, the settlement insulates from challenge many of the defective judgments that Defendants wrongfully obtained.  When viewed against the paltry consideration provided under this settlement, such an outcome is contrary to the interests of class members and the public.  Moreover, the settlement (if read broadly) arguably extinguishes class members' right to

---

[19]  Section 813(a)(3) of the FDCPA authorizes the payment of costs and reasonable attorneys fees in any successful action.  15 U.S.C. § 1692k(a)(3).

13

challenge Defendants' use of affidavits in pending debt collection lawsuits and in actions to set aside improperly obtained judgments.

The judgments insulated under this settlement would include default judgments where the consumer was not properly served, judgments for the wrong amount or against the wrong person, and judgments relying on inadmissible hearsay where Defendants could not sustain their burden of proof if their affidavits were disallowed.  Although the number of class members affected by these issues is unknown, such problems were reported frequently in the Commission's studies, especially in actions brought by debt buyers.[20]  Given the uncontroverted evidence that Defendants favored expediency over accuracy in their litigation practices – this Court has already found that Defendants' employees failed to check the accuracy of affidavits prior to signing them, and falsely swore to personal knowledge of the affidavits' contents – other errors are especially likely.

These judgments, likely for hundreds or thousands of dollars, can be enforced against consumers for as long as fifteen or twenty years,[21] accruing interest all the while.  They negatively impact consumers' credit reports and subject consumers to wage garnishments and levies against bank accounts and tax refunds.  Where the judgment accurately reflects the underlying debt and Defendants carried their burden of proof with admissible evidence, such

---

[20]  *See supra* at 4-9.

[21]  In many states, including Florida, Indiana, Iowa, New Jersey, New York, and Virginia, the statute of limitations on a judgment runs 20 years.  *See, e.g.*, Fla. Stat. Ann. § 95.11(1) (West 2011) (20 years); Ind. Code Ann. § 34-11-2-12 (West 2011) (20-years); Iowa Code Ann. § 614.1.6 (West 2011) (20 Years); Mass. Gen. Laws Ann. Ch. 260, § 1 (West 2011) (20 years); N.J. Stat. Ann. § 2A:14-5 (West 2011) (20 years); N.Y. C.P.L.R. § 211 (McKinney 2011) (20 years); and Va. Code Ann. § 8.01-251 (West 2011) (20 years).

judgments play an important role in the collections process, and fairly hold consumers accountable for their actions.  However, especially where there are questions about the validity of the debt or the amount owed, or where Defendants played fast and loose with the rules of evidence and disadvantaged a defaulting debtor, the value to consumers of being able to defend against a collection action or set aside a judgment is incalculable.

Weighed against this, the proposed class benefit is grossly disproportionate.  It is not fair, adequate, or reasonable to require consumers to give up significant and valuable defenses to potentially erroneous legal claims for, at most, $10.  The waiver applies to over a million judgments with known defects, many of which could not be successfully relitigated.  If anything, this settlement provides a windfall to Defendants, who are purchasing *res judicata* for a bargain basement price.

**D.**     **The Class Notice Does Not Adequately Advise Consumers About the Scope of the Proposed Class Release**

The notice provided to class members failed to explain to members the extent to which they would be giving up significant legal rights.  Such notices must state in plain language "the binding effect of a class judgment on members."  Fed. R. Civ. P. 23(c)(2)(B).  While the notice does explain that consumers are releasing their rights "to sue or be part of any other lawsuit against Defendants about the claims or issues in this lawsuit, or any other claims arising out of affidavits attached or executed in support of collection complaints," the notice fails to advise consumers that they are losing the right to defend against an ongoing action or seek to set aside an existing judgment.  This omission is critical.  To make an informed decision about participating in the class, consumers need to understand the legal rights they are forfeiting.

15

### E.     Unprotected Personal Information Exposes Class Members to Harm

In addition to the unfairness aspects of the extraordinary sweep of the class release, the proposed settlement exposes consumers who submit a claim form to additional harm.[22]  The order does not appear to restrict the ability of Defendants to obtain and use class members' contact information provided on claims forms as well as personal bank information identified if they deposit checks in their banking accounts.  It also does not prohibit Defendants from selling the information to others.  As a result, by claiming and depositing a token settlement payment, class members may unknowingly be providing personal information to adverse parties that could be used against them.  The Commission has found it to be unfair and deceptive to collect consumer information for one purpose and then use the information for a completely different purpose, especially where that purpose is detrimental to the consumer.  *See, e.g., In the Matter of Sears Holdings Mgmt Corp.*, FTC Dkt. No. C-4264 (Sept. 9, 2009) (consent order).  In the *Sears* complaint, the FTC charged that Sears solicited consumers to download and install a software application that would track their "online browsing" in return for a $10 payment.  The Commission alleged, however, that Sears failed to adequately disclose the scope of the tracking software, which monitored nearly all of the Internet behavior that occurred on consumers' computers.  Here, the proposed release raises similar concerns by offering consumers a nominal payment for personal information ostensibly for one reason while failing to disclose the broader purposes for which the information could be used.  *See also In the Matter of Educ. Research Ctr.*

---

[22]  The claim form sent to consumers instructs them to provide their current address and phone numbers.  (*Brent* Dkt.107-2.)  Class members who timely submit the claim forms will receive a check from the settlement fund.  (*Brent* Dkt. 107-1, at §V(C)(1)(d)).  Consumers who choose to deposit claim checks in their bank accounts might also unwittingly provide Defendants with their account information.

16

*of Am., Inc.*, FTC Dkt. No. C-4079 (May 6, 2003) (consent order) (alleging that it was deceptive to collect personal data from students for educational purposes and then sell the data to commercial marketers); *In the Matter of The Nat'l Research Ctr. for College & Univ. Admissions,* FTC Dkt. No. C-4071 (Jun. 28, 2003) (consent order) (same).

To avoid potential harm to consumers from participating in the settlement, the Court's order governing the claims process should explicitly require Defendants to limit the use of consumers' personal information to only the processing of claims.

**F.      The Public Interest is Not Served by the Proposed Class Settlement**

In assessing the fairness of a class settlement, the Court should also consider whether the settlement serves the public interest.  *Int'l Union*, 497 F.3d at 631.  More than a million consumers may lose important rights to defend against or seek to set aside potentially improperly obtained judgments.  The impact of the proposed settlement in instances where Defendants have improperly obtained judgments for the wrong amount or against the wrong person is particularly egregious.  Class members also forfeit the affirmative right to seek recompense for injury under the FDCPA and state consumer protection laws.  Moreover, given the fraudulent and deceptive practices that the Court found Defendants to have engaged in, there is little justice in allowing Defendants to shield themselves from all future liability, while also insulating 1.44 million judgments from collateral attack for the paltry sum of $10 per judgment.  Finally, the stipulated injunctive relief is almost wholly inadequate.  It provides no relief to class members who have already been harmed by Defendants' false affidavits and, even though Defendants engaged in the underlying bad conduct over a period of at least six years, the requirement that Defendants develop and follow appropriate affidavit procedures is limited to twelve months.  While the

17

proposed settlement clearly benefits Defendants, class counsel, and the named plaintiffs, it leaves the other million consumers that Defendants harmed in a worse position. This is not in the public interest.

## V.     CONCLUSION

For the reasons stated above, the Commission respectfully requests that the Court reject the proposed settlement. It is not fair, adequate, or reasonable and its entry would not serve the public interest.

Dated: _____                      Respectfully submitted,

OF COUNSEL:                                 WILLARD K. TOM

                                            General Counsel

Tracy S. Thorleifson                        _____
Telephone: (206) 220-4481
Email: tthorleifson@ftc.gov                 Larissa L. Bungo (OH Bar # 0066148)
                                            Telephone: (216) 263-3403
Darren H. Lubetzky                          Email: lbungo@ftc.gov
Telephone: (212) 607-2808                   Facsimile: (216) 263-3426
Email: dlubetzky@ftc.gov                    Federal Trade Commission
                                            Eaton Center
                                            1111 Superior Avenue, Suite 200
Federal Trade Commission                    Cleveland, Ohio 44114

18

**PROOF OF SERVICE**

I hereby certify that on _____, a copy of the foregoing was filed electronically with the Court's Case Management/Electronic Case Files (CM/ECF) docketing system.  Notice of this filing will be sent by operation of the CM/ECF system.  Parties may access this filing through the CM/ECF.

_____
Larissa L. Bungo (OH Bar 0066148)
Federal Trade Commission
Eaton Center
1111 Superior Avenue, Suite 200
Cleveland, OH 44114
Telephone: (216)263-3403
Facsimile: (216)263-3426
Email:  lbungo@ftc.gov

19