# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MARTHA VASSALLE, <br> 1426 Lindsley Street <br> Sandusky, Ohio 44870 <br><br> and <br><br> JEROME JOHNSON <br> 1601 North Larchmont Drive <br> Sandusky, Ohio 44870 <br><br> Plaintiffs, <br><br> vs. <br><br> MIDLAND FUNDING, LLC <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> and <br><br> MIDLAND CREDIT MANAGEMENT, INC. <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> and <br><br> ENCORE CAPITAL GROUP, INC. <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> Defendants | Case No. 3:11-cv-0096, N.D. Ohio <br><br> HON. DAVID A. KATZ <br><br> **And Related Cases:** <br> Case No. 3:08-cv-01434, N.D. Ohio <br> Case No. 3:10-cv-0091, N.D. Ohio <br><br> **DEFENDANTS' RESPONSE TO *AMICUS CURIAE* BRIEF OF THE ATTORNEY GENERAL OF NEW YORK, ET. AL.** |

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Midland Funding LLC and Midland Credit Management, Inc. (collectively, "Midland") submit this brief in response to the *Amicus Curiae* Brief filed by the Attorneys General of thirty-eight states (the "State AGs") who oppose the proposed nationwide class settlement in the above-captioned cases. As the Court is aware, the proposed class settlement, if approved, will resolve three pending lawsuits in which the plaintiffs assert FDCPA and state law claims based on allegations that Midland filed affidavits in debt collection lawsuits that were defective because the person who signed the affidavit lacked personal knowledge. The proposed settlement represents the culmination of three years of litigation – including extensive discovery, rulings on the merits, and class certification – and months of arms-length settlement negotiations.

By any account, the settlement fairly and adequately compensates the class. Contrary to the State AGs' suggestion, this Court did not find (and no court has ever found) that Midland's affidavits resulted in judgments being rendered against people who did not actually owe the debts sued upon. The individuals sued by Midland borrowed money and refused to pay it back. There is a world of difference between suing people on debts they owe using accurate – but improperly authenticated – evidence, and suing people on made-up debts. Although this Court found that Midland did the former, it <u>never</u> found that Midland did the latter. In light of this fact, the settlement is generous: Midland will pay <u>up to six times</u> the maximum statutory penalty for a class action brought under the FDCPA, for violations that caused <u>no</u> harm to class members. And even though Midland revised its internal procedures years ago to ensure that the violations did not recur, the settlement also includes a Stipulated Injunction that subjects Midland's affidavit procedures to the review and approval of former U.S. District Judge Richard McQuade.

The arguments made by the State AGs reflect a fundamental misunderstanding of the proposed settlement. The State AGs' primary objection is that the release is too broad because it

1

bars class members from seeking to vacate judgments even when the debt collection complaint was not served, the debt was not owed, the amount was inaccurate, there was identity theft, or the debtor was in bankruptcy. But this is not what the release says. Consistent with the rule that a class settlement may only release claims based on the same factual predicate as the settled case, the release was tailored to only release claims "arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." Class Settlement Agreement ("Settlement Agt."), § V.D.1, *Brent* ECF Dkt. #107-1. It contains no language "immunizing" Midland's judgments from challenges available under existing law not related to the use of affidavits. Although a motion to vacate brought on the ground that the judgment was supported by a defective affidavit would be barred by the release, a motion brought on the ground of improper service, the debt not being owed, the amount being inaccurate, identity theft, or bankruptcy would not be barred by the release because it would not arise out of or relate to the use of affidavits.

Likewise, the State AGs argue that $10 per person will not fairly compensate class members who have judgments against them for amounts not owed. But as explained above, the class release does not prevent class members from challenging the judgments if they do not owe the debt. The payments to class members are commensurate with the limited release and the lack of harm caused by affidavits that accurately describe the debt but were made without the personal knowledge of the affiant. Moreover, because the statutory award for an FDCPA class action is capped at the lesser of $500,000 or one percent of the defendant's net worth, the class payment in this case is substantially more generous than any FDCPA settlement of which Midland is aware. The State AGs also insinuate that the settlement is collusive because Midland released the class representatives' debts as part of the settlement, but was not required to do the same for the absent class members. This argument overlooks the fact that unlike the absent class

2

members, the class representatives released <u>all claims</u> against Midland and the law is clear that they are entitled to receive additional compensation.

Percolating within the *Amicus* Brief is the suggestion that these cases cannot be fairly resolved without vacating the judgments against all of the class members. This idea reflects yet another fundamental misunderstanding of the settling cases. The debts underlying the judgments have never been found invalid. In the *Brent* action, this Court found no evidence that Midland's affidavit contained false information about the amount of the debt or the fact that it was unpaid. Likewise, no court in any of the copycat affidavit cases currently pending has held that the underlying debts were invalid. The State AGs themselves do not appear to have any evidence that the underlying debts are invalid.[1] Mass vacatur would subject the states to the substantial costs associated with opening and relitigating up to over one million judgments – while providing little benefit to the class members who would still owe the debt. The only real "winners" in such a scenario would be plaintiffs' lawyers like Leonard Bennett, counsel for a number of objectors, whose retainer agreement allows him to help himself to a whopping 45% of any vacated judgment, but neglects to inform his clients that after the judgment is vacated, Midland can still obtain a new judgment and collect on it.[2]

---

[1] The State AGs have attached to their *Amicus* Brief the declaration of Max Dubin, a Volunteer Assistant Attorney General from New York which describes three consumer complaints that were apparently filed against Midland. The declaration does not state whether the Attorney General's office investigated the complaints or what the results of the investigation were. One of the consumers identified by Mr. Dubin (Charles Doren) was never sued by Midland, so he is not even in the class. Another of the consumers (Makeda Davis) apparently complained that Midland obtained a default judgment against her on an invalid debt and garnished her wages. In actuality, Ms. Davis informed Midland's counsel in 2009 that the debt was a result of identity theft, all collection activity was ceased, and the judgment against her was vacated in February 2010.

[2] *See* Exhibit 1 to Midland's Motion for an Order Requiring Virginia Counsel to Disclose Opt-Out Solicitations, Dkt. 154-1 (Consumer Litigation Associates Retainer Agreement). On a June 24, 2011 conference call, Mr. Bennett stated that he had been working with the State AGs and FTC to encourage them to oppose the settlement.

Finally, the State AGs' concern that the 12-month duration of the stipulated injunction is too short is unfounded. Twelve months is sufficient to ensure that the changes to Midland's affidavit procedures – which were put in place after this Court issued its September 2009 injunction and were based on the Court's explicit guidance in its summary judgment opinion – are permanent, and to make any additional changes required by Judge McQuade. If the Court is not satisfied with the injunction's duration, then it can simply retain jurisdiction to enforce the injunction for as long as the Court considers proper.

In sum, the State AGs have not presented any new or valid reasons why the proposed class settlement should not be approved. Regardless of how many State AGs oppose a class action settlement, the Court is not obligated to reject the settlement based solely on their say-so, especially when their opposition is as misguided as it is here. *See Radosti v. Envision EMI, LLC,* 717 F. Supp. 2d 37, 43 (D.D.C. 2010) (approving settlement over objections of 22 state attorneys general); *In Re Baldwin-United Corp. Litig.,* 607 F. Supp. 1312, 1327-28 (S.D.N.Y. 1985) (approving settlement over objections of 22 state attorneys general); *Hall v. Midland Group and Midfirst Bank*,[3] 2000 WL 1725238, *5 (E.D. Pa. 2000) (approving settlement over objections of state attorneys general, where the objections were solicited by plaintiffs' lawyer opposed to the settlement). Accordingly, Midland respectfully submits that the opposition of the State AGs poses no impediment to approval of the proposed class action settlement.

## II.   THE CLASS RELEASE DOES NOT "IMMUNIZE" THE JUDGMENTS AGAINST CLASS MEMBERS

The Court should reject the State AGs' assertion that the class release "immunizes" the collection judgments against class members, and therefore prevents class members who did not owe the debt or who have other valid defenses from challenging the judgments against them.

---

[3] Midland Group and Midfirst are not related to or affiliated with the defendants in the settling cases.

The class release says nothing about immunizing judgments. Rather, it provides that class members who do not opt out of the class will release all claims "arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." Settlement Agt., § V.D.1. (emphasis added.)

On its face, the release only bars class members from asserting claims against the Released Parties where the basis for relief is the affidavit used in the debt collection action. Thus, class members who do not opt out may not sue Midland for filing false affidavits in debt collection lawsuits, and they may not seek vacatur of their judgments on that basis. But nothing in the release prevents class members from attempting to vacate their judgments on grounds unrelated to the affidavit, and the State AGs have identified no language in the release that would bar vacatur on non-affidavit related grounds.[4]

The distinction between what the release does and does not prohibit is perhaps best illustrated by comparing two categories of class members. The first category consists of judgment-debtors who have no colorable grounds for seeking vacatur of their judgments other than that the affidavit was defective. These individuals, if they elect to remain in the class, will remain bound by the judgments and have no further recourse against the Released Parties. The second category consists of judgment-debtors who claim the judgment against them is improper for some reason other than the defective affidavit – for example, the debt collection complaint was not served, the debt was not owed, the amount was inaccurate, there was identity theft, or the debtor was in bankruptcy. These individuals, if they elect to remain in the class, will give up the right to seek relief based on the defective affidavit. However, they will retain the right to seek relief, including vacatur of the judgment to the extent permissible in their jurisdiction, on

---

[4] The release does state that "[n]othing herein shall prevent Defendants from continuing to attempt to collect the debts owed by the other [absent] Class Members" – but this language does not in any way limit the class members' ability to challenge the debts. Settlement Agt., § V.D.1.

5

the basis that the debt collection complaint was not served, the debt was not owed, the amount was inaccurate, identity theft, or bankruptcy. These types of claims would not be covered by the release because they would not arise out of or relate to the use of the affidavit.

Importantly, the class settlement here could not have released claims unrelated to the affidavits even if the parties had wanted it to. A class settlement can only release claims by absent class members that arise from the same "factual predicate" as the settled case. *TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 460 (2d Cir.1982); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) ("The question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a 'factual predicate' with 'the claims pled in the complaint.'"); *Olden v. Gardner*, 294 Fed. Appx. 210, 220 (6th Cir. 2008) ("Because such [released] claims have an identical factual predicate as the claims pled in the complaint, no problem is posed by their release.").

Here, the *Brent*, *Vassalle*, and *Franklin* complaints asserted that Midland violated the FDCPA and state law by filing affidavits in state court collection actions where the affiant lacked personal knowledge of the facts contained in the affidavit. Claims that Midland's judgments were improper for reasons independent of the defective affidavits (*e.g.*, improper service, the debt was not owed, etc.) would presumably not be based on the same factual predicate as the settling cases. The same is true of claims based on affidavits not prepared and signed by Midland, such as process server affidavits. Thus, the release in the proposed class settlement cannot be read as barring these claims, and the State AGs' unfounded speculation that Midland may someday urge such an interpretation is not a basis to reject the settlement. *In re WorldCom, Inc. Secs. Litig.*, 388 F. Supp. 2d 319, 342, n.36 (S.D.N.Y. 2005) (court approved settlement and rejected argument that release could be read to bar claims not based on the same factual predicate

6

as the settled cases, noting that "[i]t is, after all, a given that the Release will only be applied insofar as its application conforms to the law.").[5]

Likewise, although the State AGs repeatedly assert that the release would prevent class members from defending collection lawsuits brought by Midland, they do not explain why this is so. The release would not impact any class members' right to defend a collection lawsuit. The fact that an affidavit was filed without personal knowledge is not a defense to a collection action. At most, it may be grounds for an evidentiary objection or a motion to strike. *See, e.g., Collins Fin. Services v. Vigilante*, 915 N.Y.S. 2d 912 (2011); *Chase Bank, USA v. Curren*, 191 Ohio App. 3d 507 (2010).

### III. THE CLASS SETTLEMENT FAIRLY AND ADEQUATELY COMPENSATES THE CLASS

#### A. The Class Payment Is Appropriate Compensation For The Limited Release Being Given By The Absent Class Members

The State AGs' primary objection to the class payment is based on the same misunderstanding as their objection to the release. Specifically, they claim that a ten dollar per person payment does not fairly compensate class members who will be bound by judgments for debts not owed. As explained above, however, the release only bars class members from seeking to have judgments vacated based on the defective affidavits – it does <u>not</u> bar them from attempting to vacate judgments on any other grounds permitted by state law. Since class

---

[5] The State AGs also object to the class notice because it did not inform class members they were "losing their right to defend against existing collection actions . . . and their right to challenge existing judgments brought on the basis of false and misleading affidavits." Not only is this objection based on a misreading of the class release, it is contrary to settled law. "[T]here is no principle of law that requires a settlement notice to list every conceivable claim or cause of action that could have been asserted in the litigation." *Mangone v. First USA Bank*, 206 F.R.D. 222, 234 (S.D. Ill. 2001). To the contrary, Rule 23(e) notice is designed to be only "a summary of the litigation and the settlement." 3 HERBERT B. NEWBERG ET AL., NEWBERG ON CLASS ACTIONS § 8:32 (4th ed. 2010); *see also Grunin v. International House of Pancakes,* 513 F.2d 114, 122 (8th Cir. 175) ("Class members are not expected to rely upon the notices as a complete source of settlement information"), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124 (1975).

7

members are only releasing a narrow set of claims that have nothing to do with the validity of the debt, the class payment is not disproportional to the release.[6]

### B. The Class Payment Is Appropriate In Light Of The FDCPA Damage Cap And Minimal Damages Suffered By Class Members

The class payment in this case is not out of line with other FDCPA settlements. Because the FDCPA caps statutory damages in class actions at the lesser of one percent of the defendant's net worth or $500,000, settlements in FDCPA class actions are typically very low and can result in minimal or even nonexistent cash payments to class members, with fee awards to class counsel that can equal or exceed the total amount paid to the class. *See, e.g.*, *Catala v. Resurgent Capital Services L.P.,* 2010 WL 2524158, *3 (S.D. Cal. June 22, 2010) (approving FDCPA settlement of $35,000 distributed to *cy pres* and no payment to class members; class counsel was awarded $35,000 in fees); *Cope v. Duggins*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA class action settlement where class members who returned claim forms would receive $11.90 apiece; class counsel was awarded over three times the total amount paid to the class); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138, *7 (E.D.N.Y. Dec. 11, 2006) (approving FDCPA settlement of $45,000 to *cy pres*, with no payment to class members; class counsel was awarded $50,000); *see also Carroll v. United Compucred Collections, Inc.,* 399 F.3d 620, 625 (6th Cir.2005) (rejecting assertion that class action was not a superior method of adjudicating FDCPA claims because the estimated 164 members of the putative class would only recover about $60.00); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 271 F.R.D. 572, 576-77 (N.D. Ohio 2010) (certifying class even though FDCPA damage

---

[6] The State AGs contend that the settlement should have required Midland to send a payment to every class member rather than requiring a claim form. This is not a valid objection, as it is commonplace and reasonable to require class members to fill out a claim form to prevent fraudulent claims. *See, e.g.*, *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1032 (N.D. Ill. 2000). This objection is particularly unpersuasive given the minimal requirements to fill out the claim form. Class members simply had to check a box, provide a current address to which the check could be sent, and drop the postage-prepaid postcard in the mail.

cap would limit recovery to $3.10 per class member); *Jordan v. Commonwealth Fin. Sys., Inc.*, 237 F.R.D. 132 (E.D. Pa. 2006) (certifying FDCPA class despite risk of *de minimis* recovery; "any concern about the financial detriment to individual class members through class action litigation is sufficiently redressed through the Rule 23 opt-out procedure, which leaves up to each person falling within the class definition the methodological decision of how to pursue potential claims."); *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 546-47 (N.D. Cal. 2005) (certifying class where FDCPA damage cap would limit recovery to 25 cents per class member).

Although the plaintiffs in the settling cases asserted actual damage claims, it is highly unlikely that any class members suffered significant actual damages as a result of an affidavit containing accurate information about the delinquent debt, but unsupported by personal knowledge, being filed in a debt collection lawsuit. The difficulty of establishing such damages is illustrated by this Court's order granting summary judgment for Midland on Brent's claim for emotional distress damages. Brent's damage claim failed because she was unable to establish that any emotional distress was caused by the affidavit's allegedly false assertion of personal knowledge, as opposed to the fact that she was being sued on a debt. *See* Memorandum Opinion (Nov. 4, 2010), p. 12 *Brent* ECF Dkt. #104 (Brent's claimed emotional distress appears to have been caused by "the discovery that she was being sued on a debt she did not know about and was unable to pay, and not the representation that the affidavit attached to the Complaint was based on the affiant's personal knowledge."). Given the significant hurdles to establishing actual damages on the facts of the settling cases, the settlement is a fair compromise for the value of any actual damage claims.

**C. The Class Members' Other Possible Federal Or State Law Claims Had Little If Any Value**

The State AGs speculate that the class members may have had more valuable claims under the consumer protection statutes of various states. However, they do not explain how

9

other states' consumer protection laws would have given rise to claims that were more valuable than the Ohio Consumer Sales Practices Act claims asserted and litigated in the settling cases. Conjecture that some class members could recover significant damages under state law based on a claim that a debt collector filed an affidavit in a collection lawsuit that contained accurate information about the debt owed but was not based on personal knowledge is highly speculative and does not justify rejecting the proposed settlement. *In re M3 Power Razor System Marketing & Sales Practice Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (certifying national settlement class over objections of California plaintiffs; noting that "California consumer protection laws present differences that are, in the context of this case, both minimal and speculative); *In re WorldCom, Inc. Secs. Litig.*, 388 F. Supp. 2d at 344 ("highly speculative" objection no impediment to approving class action settlement).

Perhaps the best evidence that the State AGs have significantly overestimated the value of the class members' potential state and federal claims is the fact that most of the lawyers who filed affidavit class actions after this Court entered summary judgment in *Brent* alleged only FDCPA claims. Only three of the other affidavit cases assert state law claims: *Vallow* in Illinois, *Gray/Lauber* in Washington, and *Reimann* in California. *Vallow* recently settled on an individual basis and has been dismissed. The consumer protection claims in the *Gray/Lauber* case were subject to a motion to dismiss for failing to allege a cognizable injury, which is an element of that statute, when this Court enjoined litigation of affidavit claims. The consumer protection claims in *Reimann* are very weak since under well-established California Supreme Court precedent, the contents of all litigation pleadings – including affidavits – are protected by the litigation privilege and may not form the basis of any claim. *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993) (holding that privilege barred claims based on contents of pleadings and amended pleadings and noting that "[f]or well over a century, communications with 'some relation' to

10

judicial proceedings have been absolutely immune from tort liability"); *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006) (privilege applies to false or perjurious testimony or pleadings). Similarly, the state law fraud claim asserted in *Franklin* was dismissed for failure to state a claim.

The only support the State AGs' cite for their contention that the class members in this lawsuit are giving up "potentially very valuable" claims is *Brim v. Dell Financial Services, LLC*. *Brim* was a Fair Credit Reporting Act case in which the plaintiff alleged that Midland reported inaccurate information about his account to the credit bureaus despite having notice that the information was disputed. *See* Ex. 1 hereto.[7] *Brim* had nothing to do with an affidavit or a debt collection lawsuit, and therefore has no conceivable relevance to the fairness of the settlement in this case.

### D. Any Class Members Who Believe They Can Obtain A Greater Recovery Have The Right To Opt Out Of The Class

In criticizing the adequacy of the settlement payment, the State AGs overlook the fact that this is an opt-out class. The opt-out right is the traditional mechanism for protecting the rights of class members who believe they could recover more individually than as part of a class. *See Jerman*, 271 F.R.D. at 576-77. Any class member who believes he or she can obtain a greater recovery by pursuing an individual claim under the FDCPA, FCRA, state consumer protection statutes, or any other legal theory has the right to opt out of the class. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently."); *Chakejian v. Equifax Information Services LLC*, 256 F.R.D. 492, 499-500 (E.D. Pa. 2009) (same). The fact

---

[7] Leonard Bennett represented the plaintiff in *Brim*, and he has touted his victory repeatedly in papers he has filed on behalf of the objectors. The State AGs' uncritical acceptance of Mr. Bennett's inaccurate characterization of *Brim* is troubling, and it casts serious doubt on the credibility of their objections to the proposed settlement.

that only 0.2% of the class has elected to opt out strongly suggests that the class members – most of whom knew they owed the debts – do not view their potential claims in the same positive light that the State AGs' seem to.

### E. The Benefits To The Named Plaintiffs Are Appropriate, And Commensurate With The Broader Release They Are Providing

Finally, the State AGs assert that the settlement is "suspect" because the named plaintiffs are receiving $8,000 collectively, as well as a complete release of the debts they owe to Midland. This argument has no merit. As a preliminary matter, it is well-settled that incentive payments of a few thousand dollars to class representatives to compensate them for the inconvenience of participating in litigation are appropriate. *See, e.g.*, *Huguley v. Gen. Motors Corp.*, 128 F.R.D. 81, 85 (E.D. Mich. 1989) *aff'd*, 925 F.2d 1464 (6th Cir. 1991) (holding that named plaintiffs are entitled to more consideration than class members generally); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving $2,000 incentive awards to named plaintiffs); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive awards of $5,000 each to named plaintiffs). Here, both Brent and her husband submitted to depositions, and Brent and Franklin were both very active in the settlement mediations. Vassalle and Johnson were involved to a lesser extent, but still actively participated in their case. Moreover, unlike the absent class members, the named plaintiffs in this case are providing a <u>general release</u> that gives up <u>all known and unknown claims</u> against the Released Parties. Settlement Agt., § D.2. Unlike the absent class members, the named plaintiffs do not have the option of seeking to vacate their judgments on <u>any</u> grounds. The named plaintiffs are getting more because they are giving up more.

### IV.  IT IS NOT IMPROPER TO SETTLE THIS CASE WITHOUT VACATING JUDGMENTS

Underlying the State AGs' objections to the proposed class settlement is their insistence that the settlement should have included a provision requiring Midland to vacate its judgments against the class members. However, a class settlement does not become unfair just because it does not contain all of the features that class members would like. *See Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 169 (S.D. Ohio 1992) (Spiegel, J.) ("[T]he proposed settlement is just that, a settlement. It is not a wish-list of class members that the Defendants must fulfill."); *Bailey v. AK Steel Corp.*, 2008 WL 495539, *1 (S.D. Ohio 2008) (the fairness of a class action settlement depends on "'whether it falls within the range of reasonableness, not whether it was the most favorable possible result in the litigation.'"), quoting *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993).

Moreover, there is no reason mass vacatur of judgments should be required here. As this Court recognized, the fact that the affiant lacks personal knowledge about the information contained in the affidavit does not mean that the information itself is inaccurate or that the debt is not valid and owed. *See* Memorandum Opinion (Aug. 11, 2009), p. 12, Brent ECF Dkt. #50 ("In finding assertions in the affidavit to be false and misleading, this Court is not concluding that all of the information in the affidavit is incorrect. Brent has provided no evidence that the amount of the debt, the fact that it is unpaid, or other vital account information, is false."). Likewise, the State AGs offer no evidence to support their conclusory assertion that the judgments could not be successfully relitigated. Mass vacatur would simply impose on the court system massive costs associated with reopening up to over a million judgments on debts which are valid and owed.

Moreover, district courts have recently approved settlements in FDCPA cases that do not involve vacating judgments. For example, in April 2011, the Southern District of Ohio (Watson, J.) approved a class action settlement in which the plaintiff alleged that the debt collector filed

13

time-barred collection lawsuits. *Wess v. Storey*, 2011 WL 1463609 (S.D. Ohio April 14, 2011). Settlement funds of $37,500 were distributed to the class members, and the settlement did not include vacating the allegedly time-barred judgments. *Id*. Likewise, it is common for FDCPA class actions to settle without releasing the class members' debts. *See e.g. Catala,* 2010 WL 2524158 at *3; *Cope*, 203 F. Supp. 2d at 653; *Reade-Alvarez*, 2006 WL 3681138 at *7.

## V. THE INJUNCTIVE RELIEF PROVISION PROVIDES A SUBSTANTIAL BENEFIT TO THE CLASS

Importantly, monetary relief is not the only benefit to the class members provided for by the proposed settlement. The proposed settlement also includes a stipulated injunction requiring Midland, under the supervision of former United States District Judge McQuade, to develop and implement procedures "reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit." Settlement Agt., § V.C.2. The State AGs do not disapprove of the substance of the Stipulated Injunction, but they assert that it is inadequate because it will last only one year.

This objection is, again, based on a misunderstanding of the facts. In September 2009, this Court enjoined Midland from "using form affidavits that falsely claim to be based on the affiant's personal knowledge." Memorandum Opinion and Order (Sept. 23, 2009), *Brent* ECF Dkt. 56. In the related summary judgment opinion, the Court explained what Midland needed to do to make its affidavits FDCPA-compliant: "Midland, MCM, or JBR could easily prepare a form affidavit that achieved the same goals without being misleading by reflecting the truth, plain and simple. Rather than basing the affidavit on false personal knowledge, they could base it on the accuracy of the records kept and the accuracy of the data." Memorandum Opinion (Aug. 11, 2009), p. 12, Brent ECF Dkt. #50.

In 2009, Midland completely revised its process for generating affidavits so as to be consistent with the Court's order. Once the Stipulated Injunction is in place, the Special Master

14

will have the opportunity to review Midland's procedures and determine whether additional modifications are necessary to ensure compliance. Midland respectfully submits that a one-year term for the stipulated injunction is reasonable and sufficient to ensure that the changes in its practices are permanent, and to make any modifications required by Judge McQuade. The term is also consistent with stipulated injunctions entered in other cases involving debt collection practices. *See Bellows v. NCO Financial Systems, Inc.*, 2009 WL 35468 (S.D. Cal. Jan. 5, 2009) (twelve-month stipulated injunction requiring defendant to implement a formal, company-wide training program to ensure compliance with statute governing debt collection).

In any event, if the Court determines that a 12-month injunction is too short, there is a simple solution that should address any concern about the duration of the injunction: the Court can simply retain jurisdiction to extend the injunction at the request of Class Counsel for good cause shown. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1030 (N.D. Ill. 2000) (rejecting objectors' contention that duration of stipulated injunction was too short, but noting that "[i]n any event, the court will retain jurisdiction to extend the injunction at the request of Class Counsel for good cause shown.").

## VI.    CONCLUSION

The proposed class settlement is fair and adequate. The objections of the State AGs are premised on fundamental misperceptions about the case being settled, appear to have been filed at the urging of plaintiffs' lawyers opposed to the settlement, and accordingly should be given little or no weight.

Date: July 5, 2011                                        Respectfully Submitted:

*/s/ Theodore W. Seitz*
Theodore W. Seitz
Gary P. Gordon (*pro hac vice* pending)
Dykema Gossett PLLC
Counsel for Defendants Midland Funding,

15

                LLC, Midland Credit Management, Inc. and
                Encore Capital Group, Inc.
                Capitol View
                201 Townsend Street, Suite 900
                Lansing, MI 48933
                Tele: (517) 374-9149
                tseitz@dykema.com

                Richard L. Stone (*pro hac vice* pending)
                Amy M. Gallegos (*pro hac vice* pending)
                Hogan Lovells US LLP
                1999 Avenue of the Stars, Suite 1400
                Los Angeles, CA 90067
                Tele: (310) 785-4600
                richard.stone@hoganlovells.com
                amy.gallegos@hoganlovells.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record. I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

                                      */s/ Theodore W. Seitz*
                                      Theodore W. Seitz

LAN01\236544.1
ID\TWS - 097356/0045