**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MARTHA VASSALLE, <br> 1426 Lindsley Street <br> Sandusky, Ohio 44870 <br><br> and <br><br> JEROME JOHNSON <br> 1601 North Larchmont Drive <br> Sandusky, Ohio 44870 <br><br> Plaintiffs, <br><br> vs. <br><br> MIDLAND FUNDING, LLC <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> and <br><br> MIDLAND CREDIT MANAGEMENT, INC. <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> and <br><br> ENCORE CAPITAL GROUP, INC. <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> Defendants | Case No. 3:11-cv-0096, N.D. Ohio <br><br> HON. DAVID A. KATZ <br><br> **And Related Cases:** <br> Case No. 3:08-cv-01434, N.D. Ohio <br> Case No. 3:10-cv-0091, N.D. Ohio <br><br> **DEFENDANTS' RESPONSE TO *AMICUS CURIAE* BRIEF OF THE FEDERAL TRADE COMMISSION** |

I. **INTRODUCTION**

The *amicus* brief submitted by the Federal Trade Commission ("FTC") opposing the proposed class settlement should be given no weight, since it is based on a misreading of the class release. Specifically, the FTC reads the class release as barring <u>all</u> claims against Midland based on debt collection practices, prohibiting class members from challenging judgments against them for <u>any</u> reason, and preventing class members from mounting <u>any</u> defense in collection lawsuits filed by Midland. *See* Federal Trade Commission's Brief as *Amicus Curiae*, *Vassalle* ECF Dkt. #53-1 ("FTC Brief"). Based on this view, the FTC asserts that the release is overly broad, and that the settlement does not adequately compensate class members for what they would be giving up.

The class release is not this broad. Consistent with the rule that a class settlement may only release claims based on the same factual predicate as the settled case, the release <u>only</u> releases claims "arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." Class Settlement Agreement ("Settlement Agt."), *Brent* Dkt. 107-1, § V.D.1. It does not bar claims against Midland that are unrelated to affidavits, it does not prohibit class members from challenging judgments for reasons unrelated to affidavits, and it does not prevent class members from defending debt collection lawsuits. *See id*. Given the narrow scope of the release, the proposed settlement is unquestionably fair and adequate. It requires Midland to pay <u>up to six times</u> the maximum statutory penalty for a class action brought under the Fair Debt Collection Practices Act ("FDCPA"), even though the narrow, technical violation at issue in the settled cases – using affidavits in debt collection lawsuits where the information about the debt sued upon was correct but the affiant lacked personal knowledge – caused no harm to class members. And even though Midland revised its internal procedures years ago to ensure that the violations did not recur, the settlement also includes a Stipulated

1

Injunction that subjects Midland's affidavit procedures to the review and approval of a former United States District Judge.

In addition to being premised on a misunderstanding about the scope of the class release, the FTC's *amicus* brief is also unpersuasive because it focuses largely on issues that are irrelevant to the Court's analysis of the proposed class settlement. Most of the FTC's brief is dedicated to summarizing reports of workshops and roundtables regarding debt collection that were hosted by the FTC and attended by plaintiffs' lawyers such as Mr. Kinkley, who represents objector Kelli Gray, Mr. Lyngklip, who represents objector Elaine Pelzer.[1] Relying on statements made by "consumer advocates" at these meetings, the FTC asserts that there is an epidemic of people being sued by debt buyers for debts they do not owe or for the wrong amount, and being sued without ever being served with the complaint. The FTC then speculates – based on no evidence whatsoever – that many of Midland's judgments against class members must be based on invalid debts or improperly served complaints, and posits that the settlement in this case must address these alleged harms in order to pass muster.

As a preliminary matter, the FTC's allegations are wrong: the process by which Midland obtains data about delinquent accounts from credit-issuers is fundamentally sound and designed to ensure that debt collection lawsuits are only filed against individuals who legitimately owe the debts and have the ability to repay them. Indeed, after months of discovery and summary judgment motions in the Brent case, this Court found <u>no evidence</u> that the substantive information in Midland's affidavits – such as the amount of the debt, the fact that it is unpaid, or other vital account information – was false. *See* Memorandum Opinion (Aug. 11, 2009), p. 12, *Brent* ECF Dkt. #50.

---

[1] Federal Trade Commission, REPAIRING A BROKEN SYSTEM: PROTECTING CONSUMERS IN DEBT COLLECTION LITIGATION AND ARBITRATION (2010), APPENDIX A, P. 73 (identifying panelists) available at http://www.ftc.gov/os/2010/07/debtcollectionreport.pd.

More importantly however, the FTC's allegations are wholly immaterial to this proceeding. The parties in this case are settling private FDCPA and state law claims based on allegations that Midland used affidavits in debt collection lawsuits where the affiant did not have personal knowledge of the facts contained in the affidavit. The settling cases have nothing to do with improper service or with suits being filed against the wrong people for the wrong amounts. There is no reason that the proposed settlement should compensate class members for these alleged harms, since class members are not giving up the right to sue Midland or vacate judgments if they were improperly served or if they did not owe the debt. The concept that the fairness of a proposed class settlement is determined by reference to the claims <u>asserted in the lawsuit</u> underlies essentially the entire body of jurisprudence governing class action settlements. *See, e.g., Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."). Nothing in Rule 23 or the case law even hints that it is appropriate to judge the fairness of a settlement based on whether it compensates class members for unpled (and unproven) violations that are outside the scope of the litigation and not released in the settlement.

Finally, the FTC contends that the settlement is improper because Midland might use class member contact information or bank account information obtained through the claims process to collect delinquent debts. The FTC's concern is misguided. The settlement is being administered by an independent class action administrator, not Midland. Moreover, the class notices were sent out using the class members' last known addresses as reflected in Midland's own records. Since this is Midland's own information, it can be used for any legal purpose, including debt collection. In any event, since Midland never had any intention of using information from the claims process to collect debts, the FTC's concern is easily resolved:

Midland will stipulate that none of the information obtained through the claims process will be used for the purpose of collecting the class members' debts. Accordingly, as detailed more fully herein, Midland respectfully submits that the opposition of the FTC poses no impediment to the approval of the proposed class action settlement.

## II. THE CLASS RELEASE IS LIMITED TO CLAIMS ARISING OUT OF OR RELATING TO THE USE OF AFFIDAVITS IN DEBT COLLECTION LAWSUITS

The central premise of the FTC's opposition to the proposed class settlement is that it believes the class release would prevent class members from (i) asserting <u>any</u> claims against Midland based on state and federal collection laws; (ii) challenging judgments against them for <u>any</u> reason (including improper service or where the debt was invalid); and (iii) raising any defenses in collection lawsuits brought by Midland. *See* FTC Brief, pp. 1, 13, 14. Based on this reading of the release, the FTC asserts that the class payment does not adequately compensate class members for giving up such a broad swath of rights. *Id.* at 13 ("The extraordinary breadth of the class release compels absent class members to waive significant legal rights and remedies in exchange for only nominal relief. Class members forfeit all rights to bring affirmative actions against Defendants under the Fair Debt Collection Practices Act and relevant state consumer protection laws . . . .").

The FTC has misread the release. The release provides that class members who do not opt out of the class will release all claims "<u>arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits</u>." Settlement Agt., § V.D.1 (emphasis added). In other words, the release only bars class members from asserting claims against the Released Parties where the basis for relief is the <u>affidavit</u> used in the debt collection action. It is not a general

4

release that requires class members to give up all FDCPA and state law claims against Midland.[2] It does not prohibit class members from filing actions to vacate judgments on grounds unrelated to the affidavit (for example, if they did not owe the debt or if they were not served with the complaint). And it does not prevent class members from defending collection lawsuits. Accordingly, the release complies with the well-settled rule that a class action settlement can only release claims by absent class members that arise from the same factual predicate as the settled case, and is therefore not overbroad. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009); *Olden v. Gardner*, 294 Fed. Appx. 210, 220 (6th Cir. 2008); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 342, n.36 (S.D.N.Y. 2005).[3]

Given the narrow scope of the release, there is nothing disproportionate about the class payment, which is in line with other FDCPA settlements. *See, e.g.*, *Catala v. Resurgent Capital Services L.P.,* 2010 WL 2524158 at *3 (S.D. Cal. June 22, 2010) (approving FDCPA settlement of $35,000 distributed to *cy pres,* with no payment to class members); *Cope v. Duggins*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA class action settlement where class members who returned claim forms would receive $11.90 apiece); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138 at *7 (E.D.N.Y. Dec. 11, 2006) (approving FDCPA settlement of $45,000 to cy pres, with no payment to class members); *see also Carroll v. United Compucred Collections, Inc.,* 399 F.3d 620 (6th Cir.2005) (rejecting defendant's assertion that a class action was not a superior method of adjudicating FDCPA because the estimated 164 members of the putative class would only recover about $60.00); *Jerman v. Carlisle, McNellie,*

---

[2] By contrast, the named plaintiffs are providing a general release; they will release Midland and the other released parties from "all causes of action, suits, claims and demands, whatsoever, known or unknown, in law or in equity, based on state or federal law, under any legal theory." Settlement Agt., § V.D.2.

[3] The scope of the release was briefed in detail in Midland's June 23, 2011 Letter Brief, and its Response to the Amicus Brief filed by the Attorney General of New York, et. al. Midland respectfully refers the Court to those filings for further discussion of this issue.

*Rini, Kramer & Ulrich*, 271 F.R.D. 572, 576-77 (N.D. Ohio 2010) (certifying class even though FDCPA damage cap would limit recovery to $3.10 per class member); *Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541, 546-47 (N.D.Cal.2005) (certifying class even though FDCPA damage cap would limit recovery to 25 cents per class member).

Moreover, contrary to the FTC's assertion, it is highly unlikely that any class members suffered significant actual damages as a result of an affidavit unsupported by personal knowledge being filed in a debt collection lawsuit. The difficulty of establishing such damages is illustrated by this Court's order granting summary judgment for Midland on Brent's claim for emotional distress damages. Brent's damage claim failed because she was unable to establish that any emotional distress was caused by the affidavit's allegedly false assertion of personal knowledge, as opposed to the fact that she was being sued on a debt. *See* Memorandum Opinion (Nov. 4, 2010), p. 12, *Brent* ECF Dkt. #104 (Brent's claimed emotional distress appears to have been caused by "the discovery that she was being sued on a debt she did not know about and was unable to pay, and not the representation that the affidavit attached to the Complaint was based on the affiant's personal knowledge.").[4] Given the significant hurdles to establishing actual damages on the facts of the settled cases, the settlement is a fair compromise for the value of any actual damage claims.

### III. THE FTC'S CONCERNS ABOUT IMPROPERLY SERVED COLLECTION COMPLAINTS ARE COMPLETELY IRRELEVANT TO THIS PROCEEDING

In its *amicus* brief, the FTC expresses concern about improper service of debt collection complaints, citing a number of lawsuits filed in New York against process servers who allegedly failed to serve complaints then falsified affidavits of service. *See* FTC Brief at 7. The FTC speculates that "[i]t is likely that at last some class members were not properly served and thus

---

[4] Likewise, the Court dismissed Plaintiff Franklin's misrepresentation claim because she could not establish she relied on the representations in the affidavit. *Franklin* Dkt. No. 18.

6

have no notice that a default judgment against them exists." *Id*. at 8. Since the FTC did not cite any evidence or identify any class members who claim they were not served, it is impossible for Midland to respond substantively to this accusation. But it does not matter. Whether or not collection complaints were properly served has no bearing on this proceeding or whether the proposed class settlement should be approved. None of the settling cases alleged that the collection lawsuits Midland filed were not properly served, the issue of service was never so much as raised in this litigation, and the settlement agreement does not address or release claims based on improper service. *See* Settlement Agt., § V.D.1.

The FTC asserts that the class release could be read as barring class members from challenging judgments where the complaint was not properly served, since presumably those cases would have involved a falsified process server affidavit. This is not a reasonable reading of the class release. First, a claim that a debt collection complaint was not properly served would obviously arise from or relate to the <u>improper service itself</u>, not the document falsely attesting to service. Second, the affidavit regarding service of process is a document prepared and signed by the process server that is completely different from the Midland affidavits at issue in this case. Thus, because a claim based on improper service would involve completely different facts and a completely different affidavit from the ones at issue in the settling cases, the class release <u>cannot be read</u> as barring claims based on improper service. As noted above, a class action settlement can only release class members' claims that are based on the same factual predicate as the settled cases. *Moulton*, 581 F.3d at 349. It is "a given that the Release will only be applied insofar as its application conforms to the law." *In re WorldCom,* 388 F. Supp. 2d at 342, n.36 (approving class settlement and rejecting argument that class release could arguably be interpreted as barring claims not based on the same factual predicate as the settled cases). The mere fact that the FTC can conceive of an interpretation of the release that would bar claims based on improper service

7

is not a basis for rejecting the proposed settlement – especially since the FTC's interpretation is unreasonable, contrary to law, and would not be accepted by courts. *Id*.

**IV. THE FTC'S SPECULATION ABOUT THE ACCURACY OF MIDLAND'S ACCOUNT INFORMATION IS WRONG, AND IRRELEVANT TO THIS SETTLEMENT PROCEEDING**

The majority of the FTC's brief focuses on unsubstantiated complaints about debt collectors suing the wrong people for the wrong amounts. Citing only its own reports (which are essentially a compilation of unsupported hearsay statements by plaintiffs' lawyers), the FTC asserts that debt buyers often receive inaccurate information about the accounts that they purchase, and that this has resulted in an epidemic of people being sued for debts they do not owe or for the wrong amount. FTC Brief at 5-6. The FTC then speculates that many of Midland's judgments must be against people who did not really owe the debt. *Id*. at 6 ("There is no reason to believe that Defendants receive significantly more or higher quality information about the debts they seek to collect than other debt buyers . . . .").

The FTC's speculation that Midland sues consumers for debts they do not owe or for the wrong amount is wrong. In its summary judgment opinion in the *Brent* case, this Court held that although the affidavits at issue were not supported by the personal knowledge of the affiant, <u>the substantive information that they contained about the delinquent debts was likely accurate</u>. Specifically, the Court held that: "Brent has provided no evidence that the amount of the debt, the fact that it is unpaid, or other vital account information, is false. As discussed infra, the actual account information is probably either correct or likely thought correct in good faith by Midland and MCM[.]" Memorandum Opinion (Aug. 11, 2009), p. 12, *Brent* ECF Dkt. #50.

As reflected in the FTC's reports, lawyers who make their living suing debt buyers like to claim that because Midland relies on electronic data and does not take possession of all of the original account documentation at the time it purchases debts, it necessarily follows that Midland

8

regularly sues the wrong people for the wrong amounts. But this argument is based on a misunderstanding of the information Midland obtains at the time of purchase. The electronic data transferred with a portfolio of debt is typically original data from the original creditor's files. Among other things, it identifies the debtor and the amount owed. Its accuracy is backed by contractual representations and warranties from the sellers, who are established credit-issuers with an incentive to provide Midland with accurate data. Midland bases its purchase decisions on an analysis of the specific accounts in each portfolio using its proprietary valuation and underwriting processes. At the time of purchase, Midland also receives a portion of the underlying account documentation (*i.e.*, account statements, applications, and cardholder agreements), as well as the right to obtain additional documentation upon request. However, since the electronic data Midland receives is the <u>same data</u> that the account statements and other hard-copy records are based on, the account statements and other records do not add anything from an accuracy standpoint. There is nothing inherent in this process that would result in the wrong people being sued for the wrong amounts.

The FTC's claim that Midland regularly sues consumers for debts they do not owe is not supported by any evidence, and should not be given any credence by this Court. As a preliminary matter, the fact that only about 4,000 people have opted out of the 1.4 million member class strongly suggests that there is not a vast number of people out there who claim to have been wrongly sued by Midland. The only "support" the FTC cites consists of a few lines from the *Vassalle* complaint and undated, incomplete, and obviously edited snippets of a half-dozen consumer complaints that were apparently located by searching an FTC complaint

database.[5] Tellingly, the FTC says nothing about whether it ever investigated the complaints or found them to be valid, and since the FTC did not provide any information that would allow Midland to identify the complainants or research their concerns, there is no way for Midland to address the claims.

In any event, as with the issue of improper service, approval of the proposed settlement does not hinge on whether the FTC's concern about people being sued on debts they do not owe is valid or not. That issue has nothing to do with the settlement. As explained above, the settlement will not bar class members from attempting to vacate judgments or filing affirmative FDCPA or state law claims on the ground that they were sued for debts they did not owe. The FTC cannot reasonably demand that the settlement compensate class members for alleged practices that are not the subject of the settlement and are not being released by the class members. A class action settlement is a negotiated compromise of the claims being litigated, "not a 'wish-list' of class members that the Defendants must fulfill." *Bowling v. Pfizer, Inc.,* 143 F.R.D. 141, 169 (S.D. Ohio 1992) (Spiegel, J.), *appeal dism'd without opinion,* 995 F.2d 1066 (6th Cir.1993).

## V. THE STIPULATED INJUNCTION IS ADEQUATE AND BENEFITS THE CLASS

The FTC's criticism of the stipulated injunction is equally off the mark. As the Court is aware, the proposed settlement includes a stipulated injunction requiring Midland, under the supervision of former United States District Judge Richard McQuade, to develop and implement procedures "reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit." Settlement Agt., § V.C.2. Confusingly, the FTC asserts that the stipulated injunction is inadequate because

---

[5] The FTC also references the three consumer complaints cited by the State AGs – one of which was from a consumer who was never sued by Midland and is therefore not in the class, and one of which was from a consumer whose judgment Midland voluntary vacated after she provided an affidavit establishing she was a victim of identity theft.

it does not require procedures to "ensure that affidavits are based on credible and accurate information and supported by admissible evidence." FTC Brief at 12. But Judge McQuade is not going to approve the submission of inaccurate and inadmissible affidavits that do not comply with the rules of evidence, and the FTC has no basis for suggesting he would do so.

The FTC also contends that a 12-month injunction is too short. But this ignores the fact that Midland has already revised its affidavit processes. Among other things, Midland redesigned its affidavit form so that it was based on the accuracy of the company's records and data, rather than on the affiant's personal knowledge. Midland also hired and trained legal specialists to review and sign the affidavits, confirm that any consumer and account information referenced resides in Midland's business records, and review attachments to proposed affidavits to confirm that accurate documents are provided. Once the stipulated injunction is in place, the Special Master will have the opportunity to review Midland's procedures and determine whether additional modifications are necessary to ensure compliance. Midland respectfully submits that a one-year term for the stipulated injunction is reasonable and sufficient to ensure a permanent change in its business practices and implement any additional changes Judge McQuade finds necessary. The term is also consistent with stipulated injunctions entered in other cases involving debt collection practices. *See, e.g. Bellows v. NCO Fin. Sys., Inc.*, 2009 WL 35468 (S.D. Cal. Jan. 5, 2009) (court approved settlement with 12-month stipulated injunction requiring defendant to implement a formal, company-wide training program to ensure compliance with statute governing debt collection).

In any event, if the Court determines that a 12-month injunction is too short, there is a simple solution that should address any concern about the duration of the injunction: the Court can simply retain jurisdiction to extend the injunction at the request of Class Counsel for good cause shown. *See In re New Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1030 (N.D.

Ill. 2001) (rejecting objectors' contention that duration of stipulated injunction was too short, but noting that "[i]n any event, the court will retain jurisdiction to extend the injunction at the request of Class Counsel for good cause shown.").

## VI. THE CLASS NOTICE IS PROPER

The FTC also claims that the class notice is defective because it did not advise class members that they were giving up the right to defend collection lawsuits or vacate judgments. Again, this argument is premised on a misreading of the class release, which does <u>not</u> require class members to give up the right to defend collection lawsuits or vacate judgments. Moreover, "there is no principle of law that requires a settlement notice to list every conceivable claim or cause of action that could have been asserted in the litigation." *Mangone v. First USA Bank*, 206 F.R.D. 222, 234 (N.D. Ill. 2001). To the contrary, Rule 23(e) notice is designed to be only "a summary of the litigation and the settlement." 3 HERBERT B. NEWBERG ET AL., NEWBERG ON CLASS ACTIONS § 8:32 (4th ed. 2010); *see also Grunin v. International House of Pancakes,* 513 F.2d 114, 122 (8th Cir.) ("Class members are not expected to rely upon the notices as a complete source of settlement information"), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124 (1975).

## VII. THE FTC'S CONCERNS ABOUT HOW CONSUMER INFORMATION RECEIVED THROUGH THE CLAIMS PROCESS WILL BE USED ARE BASELESS

Finally, the FTC opposes the settlement on the ground that the information about class members obtained through the claims process could be misused by Midland. This argument has no factual basis: the FTC merely speculates that if class members provide their claims information to Midland, they "<u>may</u> unknowingly be providing personal information to adverse parties that <u>could</u> be used against them" and "<u>might</u> also unwittingly provide Defendants with their account information" leading to "<u>potential</u> harm to consumers" because of the additional purposes "for which the information <u>could</u> be used" by Midland. FTC Brief at 16-17 (emphasis

added). In essence, the FTC appears to be concerned that Midland will (i) use the contact information provided by class members on the claim forms for collection purposes, (ii) sell the contact information, and/or (iii) get the class members' bank account information from the canceled settlement checks and use it to levy their accounts.

The FTC's concerns are unfounded. Midland already <u>has</u> the class members' contact information; the class notice was mailed out to class members at the addresses provided by Midland. Midland is entitled to use this information for any legal purpose (including collection). Moreover, the settlement cannot be administered without requiring class members to provide updated contact information, since the class administrator needs to know where to mail checks to class members who learned about the settlement via the publication notice or through a mailed notice that was forwarded by the post office.

Midland's privacy record is excellent. Midland is a financial institution subject to the privacy provisions of the Gramm Leach Bliley Act, 15 U.S.C. § 6801 *et seq.* As such, it maintains and adheres to a privacy policy that covers and protects from misuse the information of concern to the FTC. *See* http://www.midlandcreditonline.com/privacy-policy.aspx. The cases cited by the FTC are misleading and irrelevant, since they involved <u>actual</u> misuse of personal information by the targets of FTC enforcement, whereas here the FTC is merely speculating that the claims process in this case theoretically creates the possibility of misuse of personal information.

As a practical matter – setting aside the question of whether it could legally do so – Midland has no intention of using the information obtained through the settlement claims process to collect debts. Thus, Midland has no objection to resolving the FTC's concerns by stipulating that none of the information obtained through the claims process will be used for the purpose of collecting the class members' debts.

## VIII. CONCLUSION

As detailed herein, the objections of the FTC are premised on fundamental misperceptions about the class release, the cases being settled, and the proper scope of the fairness hearing. Accordingly, they should be given no weight.

Date: July 5, 2011                                Respectfully Submitted:

                                                */s/ Theodore W. Seitz*
                                                Theodore W. Seitz
                                                Gary P. Gordon (*pro hac vice* pending)
                                                Dykema Gossett PLLC
                                                Counsel for Defendants Midland Funding, LLC, Midland Credit Management, Inc. and Encore Capital Group, Inc.
                                                Capitol View
                                                201 Townsend Street, Suite 900
                                                Lansing, MI 48933
                                                Tele: (517) 374-9149
                                                tseitz@dykema.com

                                                Richard L. Stone (*pro hac vice* pending)
                                                Amy M. Gallegos (*pro hac vice* pending)
                                                Hogan Lovells US LLP
                                                1999 Avenue of the Stars, Suite 1400
                                                Los Angeles, CA 90067
                                                Tele: (310) 785-4600
                                                richard.stone@hoganlovells.com
                                                amy.gallegos@hoganlovells.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record. I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

                                                */s/ Theodore W. Seitz*
                                                Theodore W. Seitz

LAN01\236546.1
ID\TWS - 097356/0045