**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **MARTHA VASSALLE, et al.** | Case No. 3:11-cv-0096 |
| Plaintiffs, | |
| vs. | Judge David A. Katz |
| | **And Related Cases:** |
| **MIDLAND FUNDING LLC, et al.** | Case No. 3:08-CV-1434, N.D. Ohio |
| Defendants. | Case No. 3:10-cv-0091, N.D. Ohio |

**NAMED PLAINTIFFS' RESPONSE TO OBJECTIONS TO SETTLEMENT**
**& AMICUS OF FEDERAL TRADE COMMISSION**

## I.  INTRODUCTION

Named Plaintiffs, through Class Counsel, submit this Response to the objections to the Settlement filed by a certain, few Class Members. There are several very similar themes that emerge in those objections. For the sake of brevity and completeness, these objections will be addressed for the group, rather than by filing a written response as to each specific objector.

The vast majority base their objections on an inaccurate interpretation of the Settlement, primarily concerning an erroneous conclusion about the breadth of the Release. Because these objections are based upon demonstratively flawed interpretations, they are easily addressed at the beginning.

There seems to be a common misconception that the Release addresses *judgments* obtained by Midland in debt collection cases. (See Objection of Persuad, Vassalle Dkt #82; Objection of Ossers #88). Yet, there is no requirement that Midland obtain a judgment for an individual to be a Class Member. The Class definition spells out that the Class is comprised of persons sued by Midland, where an affidavit was used attesting to the facts about the underlying debt . Midland did receive a judgment against some Class Members. Some Class Members' cases were dismissed. Some Class Members' cases are still pending. Judgments are not relevant.

The Settlement is for claims asserting that the <u>use</u> of the Midland affidavit containing language that is deceptive and misleading is an unfair and deceptive practice. Whether the underlying debts are valid or not, has no bearing on the violation. In fact, this Court, in granting summary judgment to Brent, clearly articulated that it was not basing its decision on the validity of the information provided about the debt, just that the affidavit was not supported by personal knowledge of the affiant. *Brent* Dkt. # 50. The fairness of the Settlement cannot be judged by the failure to address the underlying debts of Class Members, which may, or may not be valid. (See Objection of Dumit #75 "there has been no holding that the underlying debts in the collection lawsuits are invalid"). It also cannot be judged by any failure to address judgments granted by state courts in the debt collection actions.

### A. THE SUFFICIENCY OF THE SETTLEMENT FOR THE RELEASED CLAIMS FOR THE USE OF THE MIDLAND AFFIDAVIT.

The most prevalent objection made is that a payment of $10 is too low a figure to settle the claims in these cases. It has been depicted as unfair and improper in comparison with the valuable rights the Class Members are giving up. Several Objectors comment that Class

Members would be giving up claims worth far more that $10 under the FDCPA and state consumer statutes.[1]

To properly analyze this objection, the analysis must be conducted in conjunction with a careful review of the claims that *are asserted in this class action* and the value of those claims. The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Although this inquiry does not require the Court to decide the cases on the merits, the fairness of the settlement must weigh "the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) quoting *Arson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n14 (1981).

"True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing FDCPA's objectives." *Mace v. Van Ru Credit Corporation*, 109 F.3d 338, 344 (7th Cir. 1997). In a class action, the statutory damages under the FDCPA are capped at the lesser of $500,000 or one percent of the debt collector's net worth. Midland/Encore's consolidated net worth being greater that $50,000,000, the $500,000 cap applies.

---

[1] See Objections of Persaud #82 and Ossers #88, asserting that the claims would easily be worth more than $10 under the FDCPA or New York's deceptive acts and practices statute (NY Gen Bus.Law § 349). A review of that NY statute reveals that it prohibits deceptive acts or practices and that "any person who has been injured by reason of any violation of this section may bring an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section." An individual action under the FDCPA or the NY Gen. Bus.Law could provide a larger amount of relief to the claimant, but the size of the amount would be dependent upon the proof of actual damages arising from the use of the affidavit, something that is very difficult to establish.

The compensatory payment under the Settlement obviously exceeds this amount. The FDCPA also has a provision for payment of actual damages, as do some state consumer protection statutes. Most Class Members, as was found with respect to Brent, cannot establish actual damages proximately caused by the language used in the affidavit. Some Class Members could have suffered some compensable actual damages that would likely be greater than the amount provided in this settlement. These individuals are protected by the provision for opt outs. As this Court has pointed out in its decision in *Brent* of November 4, 2010, to be compensable, the actual damages must result from the unlawful conduct of Midland – the false attestation that the affidavit was based on personal knowledge – not from the debt collection lawsuit.

Any actual damages for the use of the affidavits, if they would be available, would be extremely individual and fact specific. A court would have to review the precise facts of each Class Member's situation to sort out, first, whether there were any actual damages; and second, if those damages were the result of the false claim of personal knowledge in the affidavit. These damages would be difficult to prove in the context of those specific and quite discreet claims. As this Court held, it would be necessary to first prove that actual damages were sustained *not* by "the discovery that she was being sued on a debt she did not know about and was unable to pay…", but rather, because "…the representation that the affidavit attached to the Complaint was based on the affiant's personal knowledge." Providing Class Members with the right to opt-out of the Settlement if they wish to pursue individual cases and/or they believe they have considerable actual damages, remedies this objection.

The Settlement does not attempt to compensate Class Members for all of the numerous violations of federal and state debt collecting practices that are asserted by the various objectors.[2]

---

[2] Class Member Objectors are of the belief that the compensation should be provided for any harm that they have suffered as a result of the entire debt collection process. These objectors seek compensation for the negative effects

The fairness of the Settlement must be determined by the claims that are asserted in the lawsuits that are being settled. Alleged violations that are beyond the scope of the litigation and that are not released in the Settlement, can still be pursed. The compensation awarded to Class Members is not intended to encompass those claims.

### B. SOME CLASS MEMBERS SIMPLY OBJECT TO THE AMOUNT

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 369 (S.D.Miss. 2003) quoting *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000). It is appropriate to use a compromise figure to reflect the uncertainty of the ability to recover certain damages. *Bailey v. Great Lakes Conning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). The fact that a Class Member "'might have received more if the case had been fully litigated is no reason not to approve the settlement.' A settlement, after all is a compromise, reflecting real concessions on all sides." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) quoting *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989). In addition to the payment amount per person, there is significant equitable relief. The settlement amounts to be paid are not unreasonably low in the overall picture.

### C. THE EFFECT OF THE SETTLEMENT ON OTHER CLASS MEMBERS' CLAIMS AGAINST MIDLAND.

Many objectors assert that they have potential claims against Midland for alleged violations, distinct from the use of a Midland affidavit attesting to facts about the underlying debt in a debt collection lawsuit. These claims are not being settled in this action. As examples,

---

of information placed on credit reports (Kleipeter-Baker Objection #60), wage garnishments initiated without the Class Members' knowledge (Redden Objection #104) and numerous other unrelated results of the debt collection process, none of which are addressed in the Settlement Agreement.

James Balestire and Sylvia Yeado assert that Midland filed a collection suit when the debts were beyond the statute of limitations. (Balestire Objection. #77; Yeado & Carter Objection #57). Michael Marino states that Midland sued on a credit agreement that mandated binding arbitration, failed to verify the validity of the debt on request, sent a defective dunning letter, and attempted to collect on a stale debt. (Marino Objection. #86).  Robert and Dana Redden's objection seems to imply that they had no knowledge of the suit or garnishment and, therefore, may not have been properly served.  (Redden Objection #104).  Barbara Sims has asserted that Midland improperly levied funds from her bank account, as a result of fraudulent claims/identity theft. (Sims Objection #62).  Manuela Rivera and Christopher Guest did not receive proper service of their lawsuits and were unaware they were being sued. (Rivera Objection #83; Guest Objection #68).  Thomas Crew alleges that Midland's actions cost his household employment and community embarrassment. (Crew Objection #113).

These are just some of the claims made by Objectors, upon which they base their conclusions that the settlement is defective.  These, and any other, unrelated potential causes of action are not released as part of this Settlement and certainly can be pursued under any Federal or state laws applicable.  Attorneys' fees can be sought under the FDCPA or state consumer protection statutes.

### D.  THE SCOPE OF THE RELEASE

By far the most prevalent, and most seriously inaccurate set of objections, is that the Release would prevent Class Members from raising defenses to collection actions in pending, and even future cases.  (See Objection of Rivera #83).  There is nothing in the Release that supports this conclusion.  The fact that an affidavit is not based upon personal knowledge is not a defense to a collection action.  The affidavit may be subject to a motion to strike or could be

6

grounds for an evidentiary objection, but these are not barred by the plain language of the Release, which releases the Midland parties from "all causes of action, suits, claims and demands". In the Class definition, the affidavits in question must attest "to facts about the underlying debt", and, to be a Class Member, the individual must have been sued by Midland between January 1, 2005 and March 9, 2011.

Another concern is that the Release applies to all affidavits, such as a faulty affidavit of service, used in the course of the litigation. This concern is also belied by the language of the Release. The claims released are those "arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." The Release bars only claims against the Released Parties where the basis of the relief is the affidavit used in the debt collection action. A falsified affidavit, submitted by a process server, would not fall into this category.

Another common misconception is that the Release will prevent Class Members from seeking to vacate state court judgments obtained by Midland in collection actions, for any reason. Nothing in the release will prevent a Class Member from seeking to vacate a judgment, to the extent and on the grounds that that relief is available under the governing law of the jurisdiction.[3]

---

[3] It has been suggested by some Objectors that the Settlement is defective on the basis that it does not include a provision vacating all state court judgments obtained by Midland in which an affidavit was used. (See Objection of Witt #81). Although this would be highly desirable, such relief is beyond the scope of this litigation and is relief that is simply not available from this Court. Under the *Rooker-Feldman* doctrine, the Federal Court cannot challenge a valid state court judgment and actual damages could not be derived from that final judgment of the state court. The origin of the *Rooker-Feldman* doctrine is 28 U.S.C. § 1257(a), which states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1922), the Supreme Court interpreted this statute to mean that only it can hear appeals from final judgments of state courts, and, therefore, by negative inference a federal district court does not have subject matter jurisdiction to review a case that was resolved by state courts. *Id.* at 415-16. The Supreme Court elaborated on this principle in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), when it held that challenges to a state court judgment are barred not only if the claims forming the basis of the challenge were raised in the state court proceedings, but also if the claims presented to the district court are "inextricably intertwined" with the state court's decision of the plaintiff's claims. *Id.* at 483 n. 16.

7

The breadth of a release does not establish unfairness. *Maher v. Zapata Corp.*, 714 F.2d 436, 459 (5th Cir. 1983). The individual components of an agreement are to be evaluated in light of the settlement as a whole. *Armstrong v. Board of School Directors, Inc.*, 616 F.2d 305, 315 (7th Cir. 1980). The language of the Release does not mention any inability to raise a defense in a lawsuit, vacate a judgment, or bring an unrelated action against the Released Parties.

### E. THE CONTENTS OF THE NOTICE

Objectors contend that the Class Notice is deficient because it does not inform Class Members that they will lose their ability to raise defenses or claims pertaining to affidavits (See Objections of Persaud #82, Ossers Objection #88; Rivera Objection #83; Guest Objection #68). According to one objector, the Notice did not tell the Class Members that Midland entered a judgment against them. (Objection of Persaud #82). It has also been asserted that the Notice is defective because it does not inform Class Members that they may be able to vacate default judgments entered against them. (Rivera Objection #83; Guest Objection #68)

The Notice does not address these issues, because they are unrelated to the claims being settled, or are not necessarily true statements. Class Members do not lose the ability to raise defenses to collection actions. Not all Class Members have judgments against them. Whether a Class Member is able to vacate a judgment is a question of state law that is beyond the scope of this Settlement. It is not the purpose of a Class Notice to give legal advice to Class Members about potential actions they may be able to take based upon their individual circumstances and any applicable state laws specific to their jurisdiction. Rule 23(c)(2) requires that Class Members by informed of "the class claims, issues, or defenses" that are actually germane to the Settlement. Discussion of unrelated or irrelevant claims, issues or defenses is not required.

The Release will not prevent any Class Member from defending against a lawsuit. If any Class Member has any claim at all that can be asserted against Midland, with the exception of the very narrow claim that the use of such an affidavit is deceptive and misleading in attempting to collect a debt, the claim that is being settled in these actions, Class Members may certainly prosecute those claims.

### F. THE ADEQUACY OF THE INJUNCTIVE RELIEF

The effectiveness of the injunctive relief provided is also being challenged by many Objectors. The stipulated injunction will be in effect for a period of 12 months. Several Objectors have concluded that this means that Midland will be able to revert back to using improper affidavits after this 12 month period. (Objection of Persuad #82; Rivera Objection #83)

Of course, if the injunction is no longer in effect, Midland cannot be held in violation of the terms of the injunction. If, after its' expiration, Midland would decide to disregard the policies and business practices implemented under the direction of Judge McQuade and begin using improper affidavits once again, this would not absolve Midland from any future liability for the use of improper affidavits. The continued scrutiny of the courts, the attorneys practicing in the area of consumer protection, and regulatory agencies should be a deterrent to Midland to continue to adhere to the business policies adopted with the oversight and direction of Judge McQuade.

Several Objectors interpret the provision in the Stipulated Injunction that permits either party to seek relief from, or modification of, the Stipulated Injunction based on an unfair burden or a change in the law, to mean that Midland can choose to violate the injunction if compliance becomes too burdensome. This interpretation overlooks the fact that the parties must make a

9

"request for alteration or modification" to Special Master McQuade. The request may or may not be granted, at the discretion of Judge McQuade.

If the Court determines that a 12-month injunction is inadequate, the Court can simply retain jurisdiction to extend the injunction at the request of Class Counsel for good cause shown.

### G. MIDLAND'S FUTURE USE OF CLASS INFORMATION

It is no surprise that the general public, and most certainly Class Members, are skeptical about the motives and practices of all in the business of debt collection. A few objectors have stated concerns that Midland will get updated information about Class Members through this Settlement and that this information will be used to the detriment of Class Members in Midland's future debt collection activities.

Objectors state that Midland will pursue collection actions against Class Members with renewed vigor because of updated address information and bank account information from unsuspecting Class Members who cash their Settlement checks. (Persuad Objection #82). This position ignores the fact that the current address information of the Class Members came from Midland's records. Any changes or updates in the addresses found by the Settlement Administrator through the U.S. Postal Service's National Change of Address database is also accessible to Midland.[4] Any concerns that Midland would use the address or banking information obtained directly from the Class Members can be allayed by a stipulation from Midland that none of the information obtained through the claims process be used for collection purposes, something that Midland has already agreed to do.

---

[4] Midland routinely uses this National Change of Address data in its customary business operations when "scrubbing" addresses for new accounts it has purchased and in checking those addresses for accounts that no longer have valid current addresses.

10

## H. RELIEF GIVEN NAMED PLAINTIFFS

Several Objectors have observed that they believe the relief given the Named Plaintiffs is disproportionate to that provided to the Class. One specific misconception is that the settling Named Plaintiffs will have judgments vacated as a result of this Settlement. (Ossers Objection #88, Persuad Objection #82; Rivera Objection #83). First of all, in the Settlement Agreement Midland does not agree to vacate any judgments. In the Agreement it is stated that "Defendants shall release the debts owed to Midland by Brent, Franklin, Johnson and Vassalle that were the subject of the collection lawsuits described in their complaints". The collection actions filed by Midland against Brent and Franklin were never reduced to judgment. Brent's debt will be discharged as a part of this Settlement Agreement, while Franklin's collection case was dismissed when Midland could not prove that she was the correct debtor. Midland had secured default judgments in Johnson and Vassalle's collection actions, but these judgments had been paid in full prior to the filing of their Complaint in these actions. Therefore, Brent will receive an added benefit that the other Named Plaintiffs and Class Members will not receive, but the perceived benefit is illusory for the other Named Plaintiffs.

The incentive payments sought, totaling $8,000 for the four Named Plaintiffs are not disproportionate. Despite the objections received "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D.Pa. 2000). Both Andrea Brent and her husband submitted to cross-examination in depositions and answered discovery requests for interrogatories and document production. Franklin and Brent were very active in the settlement mediations. Vassalle and Johnson also participated, although to a lesser extent.

In addition, the Named Plaintiffs are providing a general release that gives up all known and unknown claims against the Released Parties, not just the causes of action, suits, claims and demands that are based upon the use of affidavits in debt collection actions. In light of the greater breadth of the Named Plaintiffs' Release, the compensation they receive should be greater than the other Class Members.

### I. ATTORNEY FEES ARE FAIR AND REASONABLE

Objectors state that the attorney fees sought are disproportionate. (Potter Objection #69; Redden Objection #104; Starzyk Objection #108). It was suggested that if the fees were limited there would be more money available to pay the claimants. (Owuo Objection #92). None of these Class Members give any reasons or facts on which they base their objections. Counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services. An attorney's award must be reasonable. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). As stated by the United States Supreme Court, "this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing C. v. Van Gemert*, 444 U.S. 472, 478 (1980); see also *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970).

Class Counsel has spent over three years litigating these cases on a contingent basis, to the exclusion of other legal work that could have been taken. The common fund fee award sought here is approximately 29% of the total $5.2 million settlement amount. This amount is comparable to the percentage of recovery approved in other cases. *Robinson v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 12071 *6 (S.D. Ohio 2006) and *New England Employees Pension Fund v. Fruit of the Loom* 234 F.R.D. 627 (25% awarded); *In re Telectronics Pacing Sys., Inc.*, 137 F.

Supp.2d 985, 1029 (27% plus expenses); *In re Nord Res. Corp. Sec. Litig.*, No. C-3-90- 380 (S.D. Ohio, Dec. 9. 1994) (30% plus expenses); *Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. LEXIS 20446 *21 (N.D. Ohio, March 8, 2010) (33 1/3% awarded).

In comparison, the lodestar in this case amounts to nine hundred thirty-nine thousand, two hundred dollars ($939,200). The requested fee thus constitutes a multiplier of approximately 1.5, which is well within the acceptable range of multipliers awarded. A multiplier between approximately 1.75 and 2.5 existed in the fee awards. *In re: Oral Sodium Phosphate Solution – Based Products Liability Action*, Case No. 1:09-SP-80000 (MDL Docket No. 2066), 2010 U.S. Dist. LEXIS 128371 (N.D. Ohio, Dec. 6, 2010) (multiplier of 2.0); *Barnes v. Cincinnati*, 401 F.3d 729 (6th Cir. 2005) (upholding the use of multiplier of 1.75); *Rawlings v. Prudential – Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) (multiplier of 2.0 granted); *In re Revco Sec. Litigation*, Case No. 89CV593, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio, May 5, 1992) (approving multiplier of 2.5).

The requested attorneys' fees are reasonable, under the circumstances. A detailed discussion of the propriety of the fee amount sought is presented to this Court in Class Counsels' Motion for Award of Attorneys' Fees and Reimbursement of Expenses, which is incorporated by reference herein.

### J. OBJECTION RAISED BY FEDERAL TRADE COMMISSION

With respect to the Amicus of the Federal Trade Commission, we are joining with the response of the Defendants to the Attorney Generals' Amicus and believe nothing further is required regarding the arguments raised by the Federal Trade Commission. Class counsel is confident that the Federal Trade Commission will withdraw its Amicus upon reading the Joint Motion for Approval of the Settlement.

## II.     CONCLUSION

The objections filed by the various Class Members are based upon fundamental misperceptions about the case, the relief that would be available, and the scope and breadth of the Release to be given.  The proposed Settlement in this case is reasonable, fair, and adequate and should be approved.

        Respectfully submitted,

        */s/Dennis E. Murray, Sr.*
        Dennis E. Murray, Sr., Esq. (0008783)
        dms@murrayandmurray.com
        Donna J. Evans, Esq. (0072306)
        dae@murrayandmurray.com
        MURRAY & MURRAY CO., L.P.A.
        111 East Shoreline Drive
        Sandusky OH  44870
        Telephone:     (419) 624-3000
        Facsimile:     (419) 624-0707
        Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

       This is to certify that on July 5, 2011 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic system and a copy has been forwarded to the following by electronic mail:

David M. Cullen
Office of the Attorney General
State of Minnesota
david.cullen@state.mn.us
Ste. 1200
445 Minnesota Street
St. Paul, MN 55101

Daniel E. Birkhaeuser
Bramson, Plutzik, Mahler & Birkhaeuser
dbirkhaeuser@bramsonplutzik.com
Ste. 120
2125 Oak Grove Roas
Walnut Creek, CA 94598

Charles Delbaum
Stuart Rossman
The National Consumer Law Center
cdelbaum@nclc.org
7 Winthrop Square, 4th Fl.
Boston, MA 02110

Ian D. Chowdhury
Law Offices of Ian Chowdhury
ian@ianchowdhury.com
8853 Fullbright Avenue
Winnetka, CA 91306
Michael D. Kinkley
Scott M. Kinkley
Law Office of Michael D. Kinkley
mkinkley@qwestoffice.net
Ste. 914
4407 North Division Street
Spokane, WA 99207

A copy of the forgoing has also been forwarded by ordinary mail to the following:

Anamaria Segura
Carolyn E. Coffey
MYF Legal Services
4th Floor
299 Broadway
New York, NY 10007

Karuna B. Patel
Center for Responsible Lending
Ste. 500
910 17th Street, NW
Washington, DC 20006

Tashi T. Lhewa
Legal Aid Society of New York
120-46 Queens Blvd.
Kews Garden, NY 11415

on this 5th day of July, 2011.

                                                */s/Dennis E. Murray, Sr.*
                                                Dennis E. Murray, Sr., Esq. (0008783)
                                                Donna J. Evans, Esq. (0072306)

                                                Attorneys for Plaintiffs