# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MARTHA VASSALLE, <br> 1426 Lindsley Street <br> Sandusky, Ohio 44870 <br><br> and <br><br> JEROME JOHNSON <br> 1601 North Larchmont Drive <br> Sandusky, Ohio 44870 <br><br>        Plaintiffs, <br><br> vs. <br><br> MIDLAND FUNDING, LLC <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> and <br><br> MIDLAND CREDIT MANAGEMENT, INC. <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> and <br><br> ENCORE CAPITAL GROUP, INC. <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br>        Defendants | Case No. 3:11-cv-0096, N.D. Ohio <br><br> HON. DAVID A. KATZ <br><br> **And Related Cases:** <br> Case No. 3:08-cv-01434, N.D. Ohio <br> Case No. 3:10-cv-0091, N.D. Ohio <br><br> **DEFENDANTS' JOINT RESPONSE TO THE OBJECTIONS OF PERSAUD, OSSERS, GUEST, RIVERA, YEADO, AND CARTER** |

## I. INTRODUCTION

Lutchmin Persaud, Sarai Ossers, Christopher Guest, Manuela Rivera, Sylvia Yeado, and Ada Carter (the "Objectors") are members of the preliminarily approved settlement class before this Court. Each of the Objectors have submitted their own objections.[1] However, with one exception, the objections raise identical arguments and/or significantly overlap. In that regard, they all fail to meet the mark for largely the same reasons. Simply put, the Objectors make incorrect assumptions about: (1) the factual and procedural background of the cases that make up the settlement; and (2) the plain language of the proposed settlement. Given their failings, the Objectors should simply withdraw their objections. Irrespective, this Court should reject the objections and grant final approval to the class action settlement.

## II. ARGUMENT

The Sixth Circuit has made clear that when a class settlement has been preliminarily approved "[a]n individual who objects, consequently, has a heavy burden of demonstrating the decree is unreasonable." *Williams*, 720 F. 2d 921 (citations omitted); *see also*, *Bronson v. Board of Education,* 604 F. Supp. 68, 71-72 (S.D. Ohio 1984)(noting the high burden placed on objectors when a class settlement has been preliminarily approved and was the result of arms-length negotiations).

As previously explained by former Chief Judge Lambros from this Court:

> The proponents of the settlement have the burden of persuading the Court that the compromise is fair, reasonable and adequate. *In re General Tire,* 726 F.2d at 1080. **With the Court's preliminary approval of the stipulation, the proponents satisfy this burden and the settlement is presumptively reasonable.** *Williams*, 720 F.2d at 921; *Stotts v. Memphis Fire Department*, 679 F.2d 541, 551 (6th Cir.1982), *cert. granted,* 462 U.S. 1105, 103 S.Ct. 2451, 77 L.Ed.2d 1331 (1983); *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 616 F.2d 1006, 1013 (7th Cir.1980);

---

[1] The objections are listed in the *Vassalle* docket as follows: Persaud (Dkt. # 82); Ossers (Dkt. # 88); Guest (Dkt. # 68); Riveria (Dkt. # 83); and Carter & Yeado (Dkt. # 57).

> *United States v. City of Miami,* 614 F.2d 1322, 1333 (5th Cir.1980). **The burden then shifts to the objecting shareholders who have a heavy burden of demonstrating that the decree is unreasonable.** *See Williams*, 720 F.2d at 921; *Stotts,* 679 F.2d at 551; *Village of Arlington Heights*, 616 F.2d. at 1014.

*Granada Investments, Inc. v. DWG Corp.,* 823 F. Supp. 2d 448, 454 (N.D. Ohio 1993)(emphasis added).

A.  **There Was No Collusion Between Class Counsel and Defendants.**

Without any support, Objectors Yeado and Carter allege collusion between Class Counsel and Defendants' counsel in reaching the preliminary approved settlement. (Dkt. # 57, pp. 11-13). In this regard, both appear to stand alone among the Objectors. Nevertheless, Yeado and Carter's counsel alleges that Defendants and Class Counsel engaged in a "reverse auction." As this Court is well-aware, nothing could be further from the truth.

This Court is intimately familiar with the factual and procedural background of the *Brent*, *Franklin*, and *Vassallee* cases, including the circumstances which led to the granting of the Preliminary Approval Orders. Likewise, contrary to Yeado and Carter's lack of knowledge, this Court is also familiar with the history of Court-supervised settlement negotiations between Class Counsel and the Defendants, including: (1) the four mediation sessions with former Federal Judge Richard McQuade as the mediator, which were unsuccessful in resolving the *Brent* and *Franklin* litigation; (2) a settlement conference with this Court after the filing of the *Vassalle* case and after liability and class certification issues had been decided in the *Brent* and *Franklin* cases; and (3) several mediation sessions with a U.S. Sixth Circuit Court of Appeals Mediator after the *Franklin* appeal was filed.

As explained by a court within the Sixth Circuit, the "participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F, Supp. 2d 668,

673 (S.D. Ohio 2007)(Beckwith, C.J.)(approving class settlement over several objections)(citing *Hemphill v. San Diego Ass'n of Realtors, Inc.,* 225 F.R.D. 616, 621 (S.D. Cal. 2005); *In re Toys R Us Antitrust Lit.*, 191 F. R. D. 347, 352 (E.D.N.Y. 2000). The same holds true with the proposed class settlement in this case. Thus, Carter and Yeado's argument otherwise must be summarily rejected[2]

### B. The Objectors Misconstrue The Plain Language and Scope of Class Release.

As a general matter, it is readily apparent that none of the Objectors and/or their counsel have taken much time, if any, to review the plain language of the class release. As noted previously in the Defendants' responses to the amicus filings by the State Attorneys Generals, the Federal Trade Commission, and the objections submitted by competing class counsel, the class release unambiguously provides that class members who do not opt out of the class will release all claims "arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits." Settlement Agt., § V.D.1.

On its face, the release only bars class members from asserting claims against the Released Parties where the basis for relief is the <u>affidavit</u> used in the debt collection action. Thus, class members who do not opt out may not sue based on Midland's use of affidavits in debt collection lawsuits, and they may not seek vacatur of their judgments on the basis that the affidavit supporting the judgment was defective. But as stated on several occasions, nothing in the release prevents class members from attempting to vacate their judgments on grounds

---

[2] Moreover, Objector Yeado's arguments must be qualified by the fact that she is named plaintiff in a pending class action against Defendants. (Dkt. # 57, p. 2) In this regard, Yeado's objections should be accorded even less weight and actually militate in favor of approving the class settlement. *See In re Prudential Ins. Co. of America Sales Practices Litigation*, 148 F. 3d 283, 318 (3d Cir. 1998)(the "most vociferous objectors are . . . litigants represented by counsel in cases that compete with or overlap [class claims]" a factor weighing in favor of approving settlement); *Smith v. Tower Loan of Mississippi, Inc.,* 216 F. R. D. 338, 370 (S.D. Miss. 2003)(explaining same and rejecting objections by competing class counsel in approving class settlement of state and federal consumer claims, including those brought under the Fair Debt Collection Practices Act).

unrelated to the affidavit, and the Objectors have identified no language in the release that would bar vacatur on non-affidavit related grounds.

The distinction between what the release does and does not prohibit is perhaps best illustrated by comparing two categories of class members. The first category consists of judgment-debtors who have no colorable grounds for seeking vacatur of their judgments other than that the affidavit was defective. These individuals, if they elect to remain in the class, will remain bound by the judgments and have no further recourse against the Released Parties. The second category consists of judgment-debtors who claim the judgment against them is improper for some reason <u>other than</u> the defective affidavit – for example, they were not served with the complaint, they were victims of identity theft, they did not owe the debt sued upon, the amount was inaccurate, or the debt was discharged in bankruptcy. These individuals, if they elect to remain in the class, will give up the right to seek relief based on the defective affidavit. However, they will <u>retain</u> the right to seek relief, including vacatur of the judgment to the extent permissible in their jurisdiction, on the basis of lack of service, identity theft, the debt was not owed, the amount was inaccurate, or bankruptcy. These types of claims would not be barred by the release because they would not arise out of or relate to the affidavit.

Importantly, the class settlement in this case could not have released claims unrelated to the affidavits even if the parties had wanted it to. A class action settlement can only release claims by absent class members that arise from the same factual predicate as the settled case. *Moulton v. United States Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) ("The question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a 'factual predicate' with 'the claims pled in the complaint.'"); *Olden v. Gardner*, 294 Fed. Appx. 210, 220 (6th Cir. 2008) ("Because

such [released] claims have an identical factual predicate as the claims pled in the complaint, no problem is posed by their release.").

Here, as the Court is aware, the *Brent*, *Vassalle*, and *Franklin* complaints asserted that Defendants violated the FDCPA and state law by filing affidavits in state court collection actions where the affiant lacked personal knowledge of the facts contained in the affidavit. Thus, claims that Defendants improperly obtained judgments because the debtor was not served with the collection complaint, the debt was not owed, the amount was inaccurate, there was identity theft, or the debtor was in bankruptcy would presumably not be based on the same factual predicate as the settled cases. Likewise, contrary to the Objectors subjective belief otherwise, the same is true of claims based on affidavits not prepared and signed by Midland, such as affidavits of service signed by process servers. In other words, the class release cannot be read as barring these claims, and the Objectors' unfounded speculation that Midland may someday urge such an interpretation is not a basis to reject the settlement since "[i]t is, after all, a given that the Release will only be applied insofar as its application conforms to the law." *In re Worldcom, Inc. Secs. Litig.*, 388 F. Supp. 2d 319, 342, n.36 (S.D.N.Y. 2005) (court approved settlement and rejected argument that release could be read to bar claims not based on the same factual predicate as the settled cases; since the scope of the release is limited by law it was unnecessary to expressly limit the release to claims arising from the same facts as the settled case, and including such language "would certainly not reduce litigation over the release of specific claims and may even be more likely to produce claims that Class members were confused or misled.").

Moreover, although the Objectors' also assert that the release would prevent class members from defending collection lawsuits brought by Midland, none have explained why they believe this is so. The fact that an affidavit was filed that contained accurate information but was made without personal knowledge is not a defense to the collection action. It may be grounds for

an evidentiary objection or a motion to strike – but that would only mean that additional evidence was required, not that the debtor is entitled to a judgment in his or her favor. *See, e.g., Collins Fin. Services v. Vigilante*, 915 N.Y.S. 2d 912 (2011) (vacating default judgment based on affidavit without personal knowledge; court specifically noted that the plaintiff could reinstate the judgment by submitting proper documentation or bringing a witness to explain how the amount due was calculated); *Chase Bank, USA v. Curren*, 191 Ohio App. 3d 507 (2010) (reversing summary judgment based on affidavit without personal knowledge and remanding for further proceedings).

B.  **The Class Settlement Is Fair And Adequately Compensates The Class.**

   1.  **The Class Payment Is Appropriate Compensation For The Limited Release Being Given By The Absent Class Members.**

As with the other objections submitted to this Court, the Objectors' primary objection to the class payment is based on the same misunderstanding as their objections to the release. Specifically, they claim that a ten dollar per person payment does not fairly compensate class members who will be bound by judgments for debts not owed. As explained above, however, the release only bars class members from seeking to have judgments vacated based on the defective affidavits – it does <u>not</u> bar them from attempting to vacate judgments on any other grounds permitted by state law. Since class members are only releasing a narrow set of claims that have nothing to do with the validity of the debt, the class payment is not disproportional to the release.[3]

   2.  **The Class Payment Is Appropriate.**

---

[3] Some of the Objectors contend that the settlement should have required Midland to send a payment to every class member rather than requiring a claim form. This is not a valid objection, as it is commonplace and reasonable to require class members to fill out a claim form to prevent fraudulent claims. *See, e.g.*, *In re New Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1032 (N.D. Ill. 2000).

6

Despite the Objector's musings otherwise, the class payment in this case is not out of line with other FDCPA settlements, because the FDCPA caps statutory damages in class actions at the lesser of one percent of the defendant's net worth or $500,000. 15 U.S.C. 1692k. *See also Wright v Finance Serv. of Norwalk, Inc.,* 22 F. 3d 647 (6th Cir. 1994)(noting the FDCPA limits damages to "per action, not per violation" of the FDCPA, including for class actions). Thus, settlements in FDCPA class actions are typically very low and can result in minimal or even nonexistent cash payments to class members. *See, e.g.*, *Catala v. Resurgent Capital Services L.P.,* 2010 WL 2524158 at *3 (S.D. Cal. 2010) (approving FDCPA settlement of $35,000 distributed to *cy pres,* with no payment to class members); *Cope v. Duggins*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA class action settlement where class members who returned claim forms would receive $11.90 apiece); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138 at *7 (E.D.N.Y. 2006) (approving FDCPA settlement of $45,000 to cy pres, with no payment to class members).

Although the plaintiffs in the settled cases asserted damage claims under the FDCPA and state law, and the class could theoretically have as well, it is highly unlikely that any class members suffered significant actual damages as a result of an affidavit containing accurate information about the delinquent debt but unsupported by personal knowledge being filed in a debt collection lawsuit. The difficulty of establishing such damages is illustrated by this Court's order granting summary judgment for Midland on Brent's claim for emotional distress damages. Brent's damage claim failed because she was unable to establish that any emotional distress was caused by the affidavit's allegedly false assertion of personal knowledge, as opposed to the fact that she was being sued on a debt. *See* Dkt. # 104, Brent Opinion at 12 (Brent's claimed emotional distress appears to have been caused by "the discovery that she was being sued on a

debt she did not know about and was unable to pay, and not the representation that the affidavit attached to the Complaint was based on the affiant's personal knowledge.").

### 3. The Class Members' Other Possible Federal Or State Law Claims Had Little If Any Value.

The Objectors also speculate that the class members may have more valuable claims under the consumer protection statutes of various states. However, they do little to explain how other states' consumer protection laws would have given rise to claims that were more valuable than the Ohio Consumer Sales Practices Act claims asserted and litigated in the settled cases. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022-23 (9th Cir. 1998) (certifying nationwide class for settlement and explaining that "the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims"); *In re M3 Power Razor System Marketing and Sales Practices Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (same, citing *Hanlon*); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 244 (2001) (same, citing *Hanlon*). The idea that some class members could recover significant damages under state law based on a claim that a debt collector filed an affidavit in a collection lawsuit that contained accurate information about the debt owed but was not based on personal knowledge is highly speculative and does not justify rejecting the proposed settlement. *In re M3 Power Razor,* 270 F.R.D. at 61 (certifying national settlement class over objections of California plaintiffs; noting that "California consumer protection laws present differences that are, in the context of this case, both minimal and speculative); *In re WorldCom, Inc. Secs. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) ("highly speculative" objection no impediment to approving class action settlement).

In this regard, even the state law examples provided by the Objectors do not support their arguments. For example, Objectors Persaud and Ossers assert that their claims would easily be worth more than $10 under New York's deceptive acts and practices statute (NY Gen Bus.Law §

349). However, a review of that statute reveals that it only prohibits deceptive acts or practices and that "any person who has been injured by reason of any violation of this section may bring an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." The state court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section." Thus, while New York Act could provide a larger amount of relief to the claimant, the size of the amount would be dependent upon the proof of actual damages arising from the use of the affidavit, something that is very difficult to establish. In sum, this does not support the assertion that state law claims would allow more recovery. Indeed, as further proof, this Court also dismissed the state law fraud claim asserted in the *Franklin* case at the pleading stage for failure to state a claim. (Dkt. #18). Memorandum Opinion, pp. 5-6 *Franklin*.

    **4.**    **Any Class Members Who Believe They Can Obtain A Greater Recovery Have The Right To Opt Out Of The Class.**

It is axiomatic that the opt-out right is the traditional mechanism for protecting the rights of class members who believe they could recover more individually than as part of a class. *See Jerman*, 271 F.R.D. at 576-77. Any class member who believes he or she can obtain a greater recovery by pursuing an individual claim under the FDCPA, FCRA, state consumer protection statutes, or any other legal theory has the right to opt out of the class. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952-953 (7th Cir. 2006) ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently."); *Chakejian v. Equifax Information Services, LLC*, 256 F.R.D. 492, 499-500 (E.D. Pa. 2009) (same). The fact that only 0.2% of the class has elected to opt out strongly suggests that the class members – the overwhelming majority of whom are likely fully aware they owe the debts – do not view their

potential claims in the same positive light that the competing class counsel for the Objectors seem to.

5. **The Benefits To The Named Plaintiffs Are Appropriate.**

The Objectors also assert that the settlement should be rejected because the named plaintiffs are receiving $8,000 collectively, as well as a complete release of the debts they owe to Defendants. This argument is also misplaced. It is well-settled that incentive payments of a few thousand dollars to class representatives are appropriate and will not invalidate a class settlement. *See, e.g.*, *Huguley v. Gen. Motors Corp.*, 128 F.R.D. 81, 85 (E.D. Mich. 1989) *aff'd*, 925 F.2d 1464 (6th Cir. 1991) (holding that named plaintiffs are entitled to more consideration than class members generally); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving $2,000 incentive awards to named plaintiffs); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive awards of $5,000 each to named plaintiffs).

Moreover, unlike the absent class members, the named plaintiffs in this case are providing a <u>general release</u> that gives up <u>all known and unknown claims</u> against the Released Parties. Settlement Agt., § D.2. Unlike the absent class members, the named plaintiffs do not have the option of seeking to vacate their judgments on the ground that the debts were not owed. The named plaintiffs are getting more because they are giving up more.[4]

6. **The Injunctive Relief Provision Provides A Substantial Benefit To The Class.**

---

[4] The Objectors insinuate that the only acceptable resolution in this case would have been vacatur of all of the judgments Midland obtained against the class members. This is contrary to this Court's rulings in the *Brent* case. *See* Brent MSJ Op. at 12 ("In finding assertions in the affidavit to be false and misleading, this Court is not concluding that all of the information in the affidavit is incorrect. Brent has provided no evidence that the amount of the debt, the fact that it is unpaid, or other vital account information, is false."). Further, relief from the judgment or underlying debt is not a required element of an FDCPA settlement, since FDCPA claims have to do with the method of collecting the debt, not whether the underlying debt is valid. *See Azar v. Hayter,* 874 F. Supp. 1314, 1317 (N.D. Fla. 1995) ("Plaintiff's FDCPA claim has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt.").

The Objectors disapprove of the Stipulated Injunction, which they assert is inadequate. This objection is, again, based on a misunderstanding of the facts of this case. In September 2009, this Court enjoined Midland from "using form affidavits that falsely claim to be based on the affiant's personal knowledge." Memorandum Opinion and Order, *Brent* Dkt. #56. In the related summary judgment opinion, the Court provided guidance on what Midland needed to do to make its affidavits FDCPA-compliant: "Midland, MCM, or JBR could easily prepare a form affidavit that achieved the same goals without being misleading by reflecting the truth, plain and simple. Rather than basing the affidavit on false personal knowledge, they could base it on the accuracy of the records kept and the accuracy of the data." (*Brent* Dkt. #50).

Midland has already completely revised its process for generating affidavits so as to be consistent with the Court's order. Once the Stipulated Injunction is in place, Judge McQuade will have the opportunity to review Midland's procedures and determine whether additional modifications are necessary to ensure compliance. Midland respectfully submits that a one-year term for the stipulated injunction is reasonable and sufficient to ensure that the nearly two year old changes in its business practices are now permanent, and to make any modifications required by the Judge McQuade. The term is also consistent with stipulated injunctions entered in other cases involving debt collection practices. *See Bellows v. NCO Financial Systems, Inc.*, 2009 WL 35468 (S.D. Cal. 2009) (court approved settlement with 12-month stipulated injunction requiring defendant to implement a formal, company-wide training program to ensure compliance with statute governing debt collection).

C. **The Court Approved Notice Meets Applicable Standards.**

Some Objectors attempt to take a shot at the Court approved notice. However, there is nothing to support that the notice in this case was inadequate or failed to meet Due Process standards. It is axiomatic that '[t]he court has "virtually complete discretion" in determining

11

what constitutes reasonable notice of a class settlement under Rule 23(e), in form as well as method. *International Union et al v. Ford*, 2009 WL 3757040 (E.D. Mich. Nov. 9, 2009) (Cleland, J.), citing 7B Wright & Miller, Federal Practice & Procedure § 1797.6 (3d ed. 2005)." All that the notice must do is 'fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Int'l Union, UAW v. Ford Motor Co.,* 2006 WL 1984363 (E.D.Mich. July 13, 2006)). Such notice "should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818, 831 (E.D. Mich. 2008)).

Nevertheless, the Objectors also object to the class notice because they claim it did not inform class members they were losing rights relating to challenge the debts upon which the Defendants may have filed suit. Not only is this objection based on a misreading of the class release, it is contrary to settled law. "[T]here is no principle of law that requires a settlement notice to list every conceivable claim or cause of action that could have been asserted in the litigation." *Mangone v. First USA Bank*, 206 F.R.D. 222, 234 (N.D. Ill. 2001). To the contrary, Rule 23(e) notice is designed to be only "a summary of the litigation and the settlement." 2 *Newberg on Class Actions*, § 8.32, at 8–109; *see also Grunin v. International House of Pancakes,* 513 F.2d 114, 122 (8th Cir.) ("Class members are not expected to rely upon the notices as a complete source of settlement information"), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124 (1975). Thus, this objection fails as well.

### III. CONCLUSION

For the foregoing reasons, Defendants' respectfully request that Objectors' objections be rejected and the Class Settlement approved.

Date: July 5, 2011						Respectfully Submitted:


								*/s/ Theodore W. Seitz*
								Theodore W. Seitz
								Gary P. Gordon (*pro hac vice* pending)
								Dykema Gossett PLLC
								Counsel for Defendants Midland Funding, LLC, Midland Credit Management, Inc. and Encore Capital Group, Inc.
								Capitol View
								201 Townsend Street, Suite 900
								Lansing, MI 48933
								Tele:  (517) 374-9149
								tseitz@dykema.com

								Richard L. Stone (*pro hac vice* pending)
								Amy M. Gallegos (*pro hac vice* pending)
								Hogan Lovells US LLP
								1999 Avenue of the Stars, Suite 1400
								Los Angeles, CA 90067
								Tele: (310) 785-4600
								richard.stone@hoganlovells.com
								amy.gallegos@hoganlovells.com


## **CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.  I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

								*/s/ Theodore W. Seitz*
								Theodore W. Seitz


LAN01\236523.1
ID\TWS - 097356/0097

13