# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **MARTHA VASSALLE, et al.** | Case No. 3:11-cv-0096 |
| Plaintiffs, | |
| | Judge David A. Katz |
| vs. | **And Related Cases:** |
| **MIDLAND FUNDING LLC, et al.** | Case No. 3:08-CV-1434, N.D. Ohio |
| Defendants. | Case No. 3:10-cv-0091, N.D. Ohio |

---

## NAMED PLAINTIFFS' AND DEFENDANTS' JOINT MOTION FOR ORDER GRANTING APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

---

Named Plaintiffs, Andrea Brent, Hope Franklin, Martha Vassalle, and Jerome Johnson, along with Defendants, Midland Funding LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc., move this Court for an Order approving the March 11, 2011 Settlement Agreement as fair, reasonable and adequate, and authorizing disbursement of the Settlement Fund to the Class Members who have filed valid claims with the Settlement Administrator.

A Memorandum in Support is attached.

Respectfully submitted,

/s/Dennis E. Murray, Sr.
Dennis E. Murray, Sr., Esq. (0008783)
dms@murrayandmurray.com
Donna J. Evans, Esq. (0072306)
dae@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky OH  44870
Telephone:     (419) 624-3000
Facsimile:      (419) 624-0707

Attorneys for Plaintiffs

/s/ Theodore W. Seitz  (w/permission)
Theodore W. Seitz
Dykema Gossett PLLC
Counsel for Midland Funding, LLC and
Midland Credit Management, Inc.
Capitol View
201 Townsend Street, Suite 900
Lansing, MI 48933
Tele: (517) 374-9149
tseitz@dykema.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iii

I.      INTRODUCTION.........................................................................................1

II.     OVERVIEW OF THE LITIGATION AND SETTLEMENT ............................................2

        A.  The Litigation Was Hard Fought and Adversarial ..................................................2

        B.  The Settlement Negotiations Were at Arm's Length with the Services of a Most
            Respected Mediator..........................................................................................6

        C.  Summary of the Settlement Terms......................................................................8

                        1.  Creation of a $5.2 - $5.7 Million Dollar Settlement Fund 8

                        2.  Provisions for Injunctive Relief ....................................... 10

                        3.  Attorneys' Fees ............................................................... 11

                        4.  Release Provisions ........................................................ 11

                        5.  Entry of Judgment and Continuing Jurisdiction............. 12

        D.  The Class Notice .................................................................................... 12

        E.  Settlement Administration...................................................................... 13

III.    THE SETTLEMENT MERITS THE COURT'S FINAL APPROVAL........................... 14

        A.  The Settlement Approval Procedure ..................................................... 14

        B.  Factors to be Considered by the Court.................................................. 15

        C.  An Analysis of the Requisite Factors Show the Settlement is Fair, Adequate and
            Reasonable as a Whole.......................................................................... 16

                        1.  The Risk of Fraud or Collusion...................................... 16

                        2.  The Complexity, Expense and Likely Duration of
                            Continued Litigation ...................................................... 18

                        3.  The Amount of Discovery Engaged in by the Parties.... 20

4.  The likelihood of Success on the Merits ......................... 21

5.  The Opinions of Class Counsel and Class Representatives ................................................. 24

6.  The Reaction of Absent Class Members ........................ 25

7.  The Public Interest .......................................................... 27

IV.  THE CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION UNDER FED.R.CIV.P.23 .......................................................................................... 28

V.  THE NOTICE PROGRAM SATISFIES DUE PROCESS ................................................ 31

A.  The Dissemination Plan Satisfies Due Process ...................................................... 31

B.  The Contents of the Notice Satisfy Due Process ..................................................... 32

VI.  INJUNCTION AGAINST RELITIGATION OF RELEASED CLAIMS ........................ 33

VII.  CONCLUSION .......................................................................................................... 34

# **TABLE OF AUTHORITIES**

## **Cases**

*Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541 (N.D.Cal.2005) ................................................ 23

*Allen v. Decision One Mortgage Co.*, 2010 WL 1930148 (D. Mass. 2010) ................................ 34

*Amchem Prods, Inc. v..Windsor*, 521 U.S. 591 (1997) .................................................................. 30

*Anderson v. Nextel Retail Stores, LLC*, Case No.: CV-07-4480, 2010 U.S. Dist. LEXIS 43377.....

........................................................................................................................................... 32, 33

*Bronson v. Bd. of Education*, 604 F.Supp. 68, (S.D. Ohio 1984). ......................................... 15, 21

*Brotherton v. Cleveland*, 141 F.Supp.2d 894 (S.D. Ohio 2001) .................................................. 25

*Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974) ............................................. 25

*Carroll v. United Compucred Collections, Inc.,* 399 F.3d 620 (6th Cir.2005) ............................ 23

*Catala v. Resurgent Capital Services L.P.,* 2010 WL 2524158 (S.D. Cal. 2010) ....................... 23

*Cope v. Duggins*, 203 F. Supp. 2d 650 (E.D. La. 2002) ............................................................. 23

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D.Pa. 2000)................................................. 17

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454 (9th Cir. 2000) ............... 23

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) ................................................................. 31

*Elkins v. Am. Showa, Inc.*, 219 F.R.D. 414 (S.D.Ohio 2002) ....................................................... 29

*Everett v. Verizon*, 3:00-CV-7763 (N.D.Ohio) ............................................................................ 18

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998) ............................................. 28

*Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981) ............................................................ 14, 31

*Granada Investments, Inc. v. DWG Corp.* 962 F.2d 1203 (6th Cir. 1992) ............................ 14, 15

*Hainey v. Parrot*, 617 F. Supp. 2d 668 (S.D. Ohio 2007)........................................................... 17

*Hanlon v. Chrysler Corp*, 150 F.3d 1011 (9th Cir. 1998)....................................................... 28, 33

*Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616 (S.D.Cal. 2005).........................17

*Hoffman v. Honda Manufacturing of America, Inc,* 191 F.R.D. 530 (S.D.Ohio 1999)................30

*In re American Medical Sys.*, 75 F.3d 1069 (6th Cir. 1996) ............................................................29

*In re Cardizem Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)...............................................25

*In re Delphi Corporation Securities Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008)...........................25

*In re Folding Carton Antitrust Litigation,* 744 F.2d 1252 (7th Cir. 1984) ....................................10

*In re Linerboard Antitrust Litig.*, 2008 WL 4461914 (E.D. Pa. 2008) ..........................................34

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........................................................24

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 261 F.3d 355 (3d Cir. 2001) ................34

*In re Reliance Securities Litig.*, 2003 WL 1943320 (D. Del. 2003) ...............................................34

*In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985 (S.D.Ohio 2001) ....................................18, 20

*In re Toys R Us Antitrust Lit.*, 191 F.R.D. 347 (E.D.N.Y. 2000).....................................................17

*In re Warner Communications Sec. Litig.*, 618 F.Supp. 735 (D.C.N.Y. 1985) ............................21

*Internat'l Union, United Auto, Aerospace, and Implement Workers of America v. General
    Motors Corp.*, 477 F.3d 615 (6th Cir. 2007) ...........................................................................16

*Jerman v. Carlisle*, 271 F.R.D. 572 (N.D.Ohio 2010) ...................................................................23

*Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496 (E.D Mich. 2000)..........................................20

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) ...................................................................14

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D.Cal.
    2004) ...........................................................................................................19, 20, 21, 24

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)...............................15, 16

*Oppenlander v. Standard Oil Co.*, 64 F.R.D. 596 (D.Colo. 1974) ................................................19

*Petrovic v. Amoco Oil Co.*, 200 F.3e 1140 (8th Cir. 1999)............................................................32

*Powell v. Georgia-Pacific Corp.*, 843 F. Supp. 491 (W.D. Ark. 1994)........................................ 10

*Powers v. Hamilton County Public Defender Comm.*, 501 F.3d 592 (6th Cir. 2007).................... 30

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138 (E.D.N.Y. 2006) ........... 23

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002) ................................ 18

*Senter v. GMC*, 532 F.2d 511 (6th Cir. 1976) ............................................................................... 29

*Shlensky v. Dorsey*, 574 F.2d 131 (3d Cir. 1978)......................................................................... 16

*Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338 (S.D.Miss. 2003) .............................. 22

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)...................................................................... 17

*Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830 (E.D.La. 2007) .......................................... 24

*UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007) ................................................................................. 16

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982).................................................................... 31

*Wess v. Storey*, No. 2:08cv623, 2011 WL 1463609 (S.D. Ohio April 14, 2011) ........................ 19

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)..................................................................... 15

*Wilson v. Southwest Airlines, Inc.*, 880 F.2d 807 (5th Cir. 1989).................................................. 10

## **Statutes**

28 U.S.C. § 1651(a).......................................................................................................................... 33

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*.................................................... 3, 22

## **Rules**

Fed.R.Civ. P. 23(a) or (b)......................................................................................... 5, 29, 30, 31

Fed.R.Civ.P. 23 ................................................................................................................................ 28

Fed.R.Civ.P. 23(e)........................................................................................................................... 31

Fed.R.Civ.P. 23(e)(1)(A) ................................................................................................................ 14

**Other Authorities**

Albert Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ................. 14, 19, 26

*Manual for Complex Litigation*  §§ 21.632-635 (4th ed. 2004) ..................................................... 14

## MEMORANDUM IN SUPPORT

I.     **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23(e), Named Plaintiffs Andrea Brent, Martha Vassalle, Jerome Johnson and Hope Franklin, on behalf of themselves and the conditionally certified class,[1] jointly with the Defendants Midland Funding LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc., seek an order from the Court granting final approval of the settlement preliminarily approved by the Court on March 11, 2011. The settlement is the product of vigorously contested litigation and negotiations with determined and very competent adversaries.

This was not a pre-packaged settlement deal arranged before the litigation began and without any intent to litigate the claims. This litigation has been hard fought over the last three years. Class Counsel took substantial discovery, including deposing Midland company representatives, and identifying, obtaining and inspecting documents produced by Midland and third parties. There were summary judgment rulings and an Ohio class was certified. In August 2009, this Court entered summary judgment in favor of the plaintiffs in the *Brent* case, in the first ruling finding a debt collector liable under the FDCPA and OCSPA for using affidavits without personal knowledge.

The settlement was only reached after over a year of arms-length settlement negotiations. The parties attempted to mediate a resolution of this case with assistance of the Honorable Richard McQuade on four separate all-day sessions spanning an entire year. They met with no success. Despite these prior failures, the parties continued periodic discussions and finally

---

[1] The class is defined as "All natural persons (a) sued in the name of Encore Capital Group, Inc., Midland Funding LLC, Midland Credit Management, Inc., or any other Encore and/or Midland-related entity (collectively "Midland"), (b) between January 1, 2005 and the date the Order of Preliminary Approval of Class Action Settlement is entered by the Court, (c) in any debt collection lawsuit in any court (d) where an affidavit attesting to facts about the underlying debt was used by Midland in connection with the debt collection lawsuit."

engaged in settlement negotiations with the Honorable David A. Katz before preparing for trial. An agreement in principle was reached on February 11, 2011 and the Settlement Agreement that followed on March 9, 2011 was the result of hard-fought and intense mediation and settlement negotiations.

The Settlement, which consists of five million, two hundred thousand dollars to five million seven hundred thousand dollars ($5,200,000 – $5,700,000), will be used for cash payments to Class Members, notice and settlement administration, payment of attorneys' fees, reimbursement of expenses and payment of incentive awards.  On top of the significant cash fund, the Settlement contains provisions for non-monetary relief that address the goals in the litigation and will create procedures and oversight to reasonably prevent the use of affidavits in debt collection lawsuits, where the affiant does not have personal knowledge of the facts set forth in the affidavit.  Class Counsel, who are highly skilled and experienced in complex litigation, believe that the Settlement is fair, reasonable and adequate in light of the strengths and weaknesses of the claims and defenses, and the risks, expense and complexities of continued litigation.  Defendants' counsel agrees. Accordingly, the Named Plaintiffs, Class Counsel, Defense Counsel and the Defendants respectfully request that the Court grant final approval of the Settlement.[2]

## II.    OVERVIEW OF THE LITIGATION AND SETTLEMENT

### A.  The Litigation Was Hard Fought and Adversarial

On April 17, 2008, Midland Funding filed a debt collection action against Andrea Brent in the Municipal Court, Sandusky, Ohio.  After a careful review of the Midland Complaint and attachments, Brent filed an answer to the Complaint, along with a Counterclaim, alleging

---

[2] The Court has presided over these related cases from their inception and is thus familiar with the background, complexity and intensity with which the parties have prosecuted and defended the litigation.  Accordingly, Class Counsel will only briefly summarize the history of the litigation and settlement here.

violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") for the use of false, deceptive and misleading representations in connection with the collection of the debt, seeking to proceed on behalf of a class of individuals.  On June 13, 2008, on the basis of Federal Question jurisdiction, Midland removed the case to the United States District Court for the Northern District of Ohio, Western Division. (See Declaration of Dennis E. Murray, Sr., attached).

The litigation entered the discovery phase in August 2008.  Class Counsel undertook substantial discovery relating to liability, damages and class certification issues, ultimately deposing representatives of Midland and analyzing the documents produced.  As is often the case in litigation such as this, Plaintiffs and Defendants also had numerous discovery disputes.

On December 1, 2008, Brent filed her Amended Counterclaim.  Specifically, Brent now alleged that Defendants filed debt collection lawsuits using affidavits that contained false attestations of personal knowledge by affiants, and thereby used unfair and deceptive means to attempt to collect debts in violation of the FDCPA and the Ohio Consumer Sales Practices Act ("OCSPA").  Brent sought to recover statutory damages as provided by 15 U.S.C. § 1692k, as well as actual damages.

On February 19, 2009, Brent filed a Motion for Summary Judgment on her Counterclaims.  The following day, Midland filed its competing Motion for Summary Judgment. On August 11, 2009, by Order of this Court, Brent successfully defeated Midland's request for summary judgment in her action and obtained a favorable decision on her motion for summary judgment (Brent ECF Dkt # 50).  This Court found that Midland *had* violated the Fair Debt Collection Practices Act and the Ohio Consumer Sales Practices Act by attempting to collect a debt using an affidavit that falsely represented that the affiant had personal knowledge.  The

Court found that this was a violation even though the substantive information the affidavit contained about the delinquent debt may have been accurate.  (Memorandum Opinion, ECF Dkt. # 50) ("Brent has provided no evidence that the amount of the debt, the fact that it is unpaid, or other vital account information, is false.  As discussed infra, the actual account information is probably either correct or likely thought correct in good faith by Midland and MCM[.]").  The Court further held that Brent was entitled to a declaratory judgment and injunctive relief under the OCSPA, and enjoined Midland from using false affidavits in attempts to collect debts.  This was the first instance in which a Court held a debt collector accountable for filing affidavits without personal knowledge, and it was followed by a wave of class actions in other states in which the complaints relied on and cited this Court's summary judgment opinion. Midland filed a motion for reconsideration, which was opposed by Class Counsel.  In response, the Court ordered certain changes to the Memorandum Opinion of August 11, 2009, but again ordered that an injunction would stand.

In August 2009, after the decision of the Court on Summary Judgment, Midland sought to engage in mediation and asked the Court to stay the proceedings.  The Plaintiff objected to mediation, without success, arguing futility.  The Court nevertheless ordered the parties into mediation with the Honorable Richard McQuade (Ret.) and stayed the proceedings, despite the objection of Class Counsel.  The parties first met with Judge McQuade for mediation on October 29, 2009.  The parties engaged in intense discussions and negotiations at the session, which lasted the entire day.  The parties left the mediation session without a settlement, but nevertheless agreed to continue to attempt resolution through Judge McQuade, while still maintaining the underlying litigation.

While the parties continued to litigate, they nevertheless met three more times in full-day mediation sessions with Judge McQuade.  On September 10, 2010, mediation was terminated.  It had been unsuccessful.  The parties were thus unable to resolve the litigation in all settlement mediations, even with the assistance of Judge McQuade.

In December 2009, Hope Franklin (along with a co-Plaintiff, Thomas Hyder) filed the related class action lawsuit against Midland Funding, Midland Credit Management, Inc. and Encore Capital Group, Inc. in the Erie County Court of Common Pleas, Erie County, Ohio.  That matter was also removed to the United States District Court for the Northern District of Ohio, Western Division.  Franklin had alleged on behalf of herself and her nationwide class members, that Midland had filed affidavits in state courts throughout the United States which contained false attestations of personal knowledge.  The *Franklin* Action stated a claim for "Unintentional and/or Intentional Misrepresentations Resulting in Individual and Class Damages" and sought certification of a nationwide class.

Thereafter, Class Counsel examined the prevalence of the use of form affidavits by Midland, along with its standardized policies and practices.  On March 24, 2010, Class Counsel filed a Motion for Class Certification, together with a Memorandum of Law explaining in detail Midland's business operations and the methodology used in collection efforts, including the generation and use of affidavits in debt collection litigation.  Midland challenged every aspect of the class certification motion, asserting that the class proposed could not *meet* a *single element* necessary for certification under Fed.R.Civ. P. 23(a) or (b).

On May 26, 2010, Midland filed a Motion for Partial Summary Judgment as to Brent's claim for actual damages.  Midland argued that any actual damages incurred by Brent were the result of the debt collection action itself, *not* the established FDCPA violation (i.e., the affidavit

filed without personal knowledge).  Midland argued that the affidavit containing the false assertions of actual knowledge caused no actual damage.  Class Counsel vigorously opposed this motion.

In the meantime, Franklin's claims were challenged by Midland by a Motion to Dismiss the Complaint.  On October 6, 2010, the Court granted Midland's motion as to Franklin. Franklin immediately appealed this decision to the Sixth Circuit.  This appeal is still pending.[3]

On November 4, 2010, this Court rendered an Opinion in the *Brent* case (ECF Dkt. # 104) certifying a class of individuals in Ohio who were sued by Midland on or after June 16, 2007, where a form affidavit was filed with a court in which a Midland employee swore that the statements made in the affidavit were based upon personal knowledge.  In this same opinion, the Court granted Midland's motion for partial summary judgment and dismissed Brent's claim for actual damages.  The Court found that Brent had no compensable damages because any actual damages she alleged arose from the filing of the debt collection lawsuit, and not from the representation that the affidavit was based upon personal knowledge.

In January 2011, Martha Vassalle and Jerome Johnson filed the related cause of action on behalf of a national class against the Defendants in the United States District Court for the Northern District of Ohio.  Vassalle and Johnson alleged that Midland regularly filed the false affidavits in state courts throughout the United States.  The *Vassalle* action, which still pends, sets forth three common law causes of action:  Fraudulent Misrepresentation; Negligence; and Unjust Enrichment.

### B. The Settlement Negotiations Were at Arm's Length with the Services of a Most Respected Mediator

---

[3] The Sixth Circuit has granted the parties' motion for a limited remand and has remanded the case to this Court in order to allow the Court to effectuate this Settlement.

In August 2009, as indicated before, following this Court's decision on Summary Judgment, Midland sought to engage in mediation.  Midland sought a stay to the proceedings. Despite the objection of Class Counsel, the Court ordered the parties into mediation with former United States District Judge, Richard McQuade and stayed the proceedings.

On October 29, 2009, the parties first met with Judge McQuade, who has substantial experience in resolving class action cases.  In addition to the attorneys of record for the parties, also present was Brian Frary, in-house counsel for Midland and Attorney Steven Janik, another attorney very well qualified to defend class actions in general and these cases in particular.  The mediation was directed at resolving both the *Brent* and *Franklin* cases.  The parties engaged in intense discussions and negotiations at the first session.  The mediation of October 29, 2009 lasted the entire day (and preparation took weeks and included the exchange of informal discovery regarding the class claims and potential damages).  The parties left the mediation session without a settlement, but agreed to continue to attempt resolution through mediation with Judge McQuade, even while they continued with litigation efforts.

At all times, the negotiations were unquestionably arm's length and very hard fought. Throughout the mediation, Class Counsel's primary goal was to craft a settlement that would fairly, reasonably, and adequately address the concerns underlying the litigation while acknowledging the potential risks and benefits of taking the matter to trial.

Negotiations with Judge McQuade continued for the greater part of a year. The second mediation session was held on December 8, 2009.  This session was also unsuccessful and Class Counsel requested that the case be returned to active status on the Court's Docket.  Also on December 8, 2009, Class Counsel sought leave of the Court to file another Amended Complaint,

seeking a nationwide class, to reflect their understanding from the discussions held to that date.[4] On September 10, 2010, after two additional mediation sessions with Judge McQuade, the mediation was finally terminated as unsuccessful.

In the meantime, the parties in *Franklin* were scheduled for Mediation with the Sixth Circuit Mediator on appeal. Formal mediation discussions began on December 22, 2010 with the Sixth Circuit.

On January 28, 2011, the parties participated in a settlement conference in the court room of the Honorable David A. Katz. These settlement negotiations, that had begun on January 28, 2011, continued over the next two weeks. On Friday, February 11, 2011, the parties reached an agreement-in-principle to resolve the litigation. Even then the parties remained as staunch adversaries, and it took another whole month of negotiations, including further assistance from the Court, to finalize the agreement. This agreement-in-principle was only finally memorialized into an actual Settlement Agreement on March 9, 2011 when it was presented to the Court.

### C.  Summary of the Settlement Terms

#### 1.  Creation of a $5.2 - $5.7 Million Dollar Settlement Fund

Consistent with the terms of the Settlement Agreement, Midland agreed to pay $5.2 million into an interest bearing fund for the benefit of the Class. An additional amount of $500,000 was to be paid by Midland if claims rates were sufficiently high. The Class is defined as "All natural persons (a) sued in the name of Encore Capital Group, Inc., Midland Funding LLC, Midland Credit Management, Inc., or any other Encore and/or Midland-related entity (collectively "Midland"), (b) between January 1, 2005 and the date the Order of Preliminary Approval of Class Action Settlement is entered by the Court, (c) in any debt collection lawsuit in

---

[4] Midland opposed Brent's motion for leave to file the amended pleading to expand the Class and the Court later denied it on concerns of timeliness and futility.

any court (d) where an affidavit attesting to facts about the underlying debt was used by Midland in connection with the debt collection lawsuit." Excluded from the Class are those who validly and timely requested exclusion pursuant to the Class Notice disseminated in April 2011.

Under the terms of the Settlement Agreement, the $5.2 – $5.7 million, plus interest, (the "Settlement Fund"), will be used to pay for the costs of the notice program, settlement administration, and any award of attorneys fees and costs.[5] After these payments are made from the Gross Settlement Fund, the balance will be used to make payments to class members who have timely returned a claim form and are determined to be eligible by the claims administrator and approved by the Court (the "Eligible Class Members").

Under the terms of the Settlement Agreement, if the Settlement Fund is sufficient to pay every Eligible Class Member $10, then each Eligible Class Member shall receive $10. If sufficient funds remain, the named plaintiffs will collectively receive $8,000, Class Counsel will be reimbursed for out of pocket expenses up to $9,000, and any remaining funds would be awarded *cy pres* to an organization to be determined by Class Counsel with approval of the Court. Midland is not entitled to a reversion of any money. The Parties anticipated that as much as an additional $500,000 might be needed in order that each eligible Class Member would receive the full $10. It was discussed with the Court that in the unlikely case that there would be something more than a *de minimis* amount of money, after claims processing, that a simple arithmetic calculation would be made so that the payments to Class Members could be greater.

Based upon the number of Eligible Class Members now filing claims, there will be sufficient funds to pay *at least* $10 per claimant. It is the intention of Class Counsel to seek approval of the Court to distribute the remaining funds to each Eligible Class Member on a *pro*

---

[5] Thus far, payments of just over $1,000,000 have been made to Class Action Administration, the settlement claims administrator, from the funds, to cover the costs of notice.

*rata* basis.  This is permitted under the Settlement Agreement, which, with certain exceptions, can be modified by the Court, Settlement Agt., § VII, as well as the Court's discretion and authority over this settlement proceeding and the distribution of the *cy pres* funds. *Powell v. Georgia-Pacific Corp.,* 843 F. Supp. 491, 495 (W.D. Ark. 1994)*; Wilson v. Southwest Airlines, Inc.,* 880 F.2d 807, 912 (5th Cir. 1989)*; In re Folding Carton Antitrust Litigation,* 744 F.2d 1252, 1254 (7th Cir. 1984).  This option had been discussed among the parties and the Court in the settlement negotiations, and it appears to both Class Counsel and Defendants' counsel to be the most equitable manner to distribute the funds.

### 2.  Provisions for Injunctive Relief

For purposes of settlement, Midland has agreed that a Stipulated Injunction be entered by the Court.  The Stipulated Injunction *mandates* that Midland create and implement written procedures for the generation and use of affidavits in debt collection lawsuits in order to address the unlawful conduct alleged by the Named Plaintiffs.  The parties have requested that the Honorable Richard McQuade be appointed as the Special Master to monitor Midland's compliance with the injunction.  That fee will be paid by Midland and not out of the funds for the benefit of the Class.

Midland must submit written procedures for the generation and use of affidavits to Special Master McQuade within 30 days of the entry of the Stipulated Injunction.  After a review of the procedures, Special Master McQuade will make a determination whether these procedures will reasonably assure that the affidavits used by Midland in debt collection lawsuits will reasonably prevent any future use of affidavits where the affiant does not have personal knowledge of the facts set forth in the affidavit.  Any defects noted by Special Master McQuade must be cured through a revision by Midland within thirty days.  The Stipulated Injunction will

expire at the end of 12 months.  When it does, Midland must submit to Special Master McQuade a declaration from the responsible person confirming that the Affidavit Procedures approved by Special Master McQuade have been implemented.  During the 12 month term of the Stipulated Injunction, either party has the right to seek a modification of the Stipulated Injunction from Special Master McQuade.   Alterations or modifications of the Stipulated Injunction are contemplated for any change in the law or some provable unfair burden.   Nothing in the Stipulated Injunction requires Special Master McQuade to grant any such request.

A number of objectors have suggested that the 12-month term is too short, and that Midland is likely to revert back to their previous affidavit procedures once the injunction expires. However, 12 months is more than sufficient to ensure permanent compliance, since it is highly unlikely that after investing in and developing new procedures, Midland would immediately abandon them when the injunction elapsed – especially since doing so would expose it to increased expenses and substantial potential liability given this Court's prior rulings.

### 3.  Attorneys' Fees

Consistent with the terms of the Settlement Agreement, Class Counsel have concurrently applied to the Court for an award of attorneys' fees in the amount of $1,500,000.00.  Midland agreed not to oppose Class Counsel's application for attorneys' fees in an amount not to exceed $1,500,000.00.

### 4.  Release Provisions

If the Court grants final approval of the Settlement, in exchange for the consideration provided pursuant to the Settlement, Class Members will release the Midland entities and specified third parties from all causes of action, suits, claims and demands, whatsoever, known or unknown, in law or in equity, based on state or federal law, which the class now has, ever had

or hereafter may have, against the released parties, **arising out of or relating to the use of affidavits in debt collection lawsuits**.

As has been exhaustively briefed in response to various objections, nothing in this release will prevent a Class Member from 1) defending a collection lawsuit; 2) seeking to vacate a state court judgment, improperly obtained, except where the *sole* reason for vacating the judgment is that an affidavit made without personal knowledge was used in the case; 3) pursuing any and all non-affidavit claims against Midland under the FDCPA, state consumer protection statutes, or the common law; or 4) asserting claims based on affidavits not prepared and signed by Midland, such as affidavits of service prepared and signed by process servers. [6]

### 5.  Entry of Judgment and Continuing Jurisdiction; Injunction

If the Court grants final approval of the Settlement, the settling parties will request that the Court enter a final judgment of dismissal.  The Court will retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement, and the settling parties agree to submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.  Additionally, the settlement provides for an injunction against the litigation of released claims.

### D.  The Class Notice

In the Preliminary Approval Order, the Court approved the Class Notice to be distributed by publication and mail to the last known address of the Class Members as shown on Midland's records.

---

[6] Class Counsel notes this because a review of the objections filed in this case clearly shows that there apparently has been a great deal of misinformation disseminated about the scope of the Release.  Certain Class Members have been interpreting the scope of the release in a manner that extends beyond the plain language contained in the Settlement Agreement.

The Court appointed Class Action Administration ("CAA") as the Claims Administrator. Pursuant to the Preliminary Approval Order, CAA caused a copy of the Notice and Claim Form to be sent by mail to the last known postal address of each Class Member, as updated through the United States Postal Service National Change of Address service.  A total of 1,443,897 forms were mailed, of which 183,362 (12.7%) were returned as undeliverable.  New addresses were obtained for 6,314, and these were forwarded to new addresses provided by the U.S. Postal Service.  A postage paid Claim Form, included in the mailing, was used to file a claim or to opt-out of the settlement.

A copy of the Class Notice was published in: *USA Today – Legal Section* on April 18, 2011 and *USA Today – Marketplace Section* on April 21, 2011.

### E.  Settlement Administration

A website was established to provide Class Members with information at www.BrentSettlement.com.  The website provided Class Members with important dates regarding the Settlement, answers to frequently asked questions, and copies of the Class Notice, Preliminary Approval Order and the Settlement Agreement.  Class Members were given the option to file a claim through the website with on-line processing, or to return the postage paid postcard they received with the Class Notice.

Under Class Counsel's direction and supervision, CAA established a toll-free interactive voice response system which provided answers to frequently asked questions.  Class Members could also speak to a live operator.  Additionally, Class Members who wished additional information could contact CAA through an e-mail box set up on the settlement website.

Finally, Class Counsel responded to questions for Class Members about the settlement. These inquiries were made by telephone, e-mail and through the U.S. Mail.  To date, Class

Counsel has responded to more than one hundred calls and emails. Class Counsel have responded to all inquiries in a timely and complete manner.

## III.     THE SETTLEMENT MERITS THE COURT'S FINAL APPROVAL

### A.  The Settlement Approval Procedure

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, costs and rigors of prolonged litigation. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise.").

In evaluating settlements, such as this one, courts have recognized that complex litigation is "notoriously difficult and unpredictable." *Granada Investments, Inc. v. DWG Corp.* 962 F.2d 1203, 1205 (6th Cir. 1992) quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). "Absent evidence of fraud or collusion, such settlements are not to be trifled with." *Granada*, 962 F.2d at 1205.

Where, as here, the settling parties propose to resolve the claims of a certified class through settlement, they must obtain the Court's approval. *See* Fed.R.Civ.P. 23(e)(1)(A). Federal Rule of Civil Procedure 23(e) provides, in part,

> The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable and adequate.

The typical process for approval of class action settlements in federal courts is described in the *Manual for Complex Litigation* §§ 21.632-635 (4th ed. 2004) ("*Manual*"). The steps are:

1. Preliminary approval of the proposed settlement at an informal hearing;

2. Dissemination of mailed and/or published notice of the settlement to all affected Class members; and

3. A "formal fairness hearing", or final approval hearing, at which *class members* may be heard regarding the settlement, and at which presentations concerning the fairness, adequacy, and reasonableness of the settlement is presented.

See also *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).

The first two steps have been completed here. Now, at the final approval stage, the decision facing the Court is whether the Settlement is fair, reasonable and adequate.

### B. Factors to be Considered By the Court

In assessing whether a class action settlement is fair, reasonable and adequate, the trial court should consider the following factors: 1) the risk of fraud or collusion; 2) the complexity, expense and likely duration of the litigation; 3) the amount of discovery engaged in by the parties; 4) the likelihood of success on the merits; 5) the opinions of class counsel and class representatives; and 7) the public interest. *Granada*, 962 F.2d at 1205; *Vukovich*, 720 F.2d at 922-23. A settlement is "presumptively reasonable" once preliminary approval is entered and "[a]n individual who objects, consequently, has a heavy burden of demonstrating that the [settlement] is unreasonable." *Bronson v. Bd. of Education*, 604 F.Supp. 68, 71-72 (SD Ohio 1984).

Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

615, 625 (9th Cir. 1982).  As the Sixth Circuit has held:  "Our task is not to decide whether one side is right or even whether one side has the better of these arguments.  Otherwise we would be compelled to defeat the purpose of a settlement in order to approve a settlement.  The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement."  *Internat'l Union, United Auto, Aerospace, and Implement Workers of America v. General Motors Corp.*, 477 F.3d 615, 632 (6th Cir. 2007).  In making that determination, the trial court has "wide discretion."  *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978).  As the Sixth Circuit has explained, "no court of appeals, to our knowledge, has demanded that district courts invariably conduct a full evidentiary hearing with live testimony and cross-examination before approving a settlement.  Our court, and several others, have instead deferred to the district court's traditionally broad discretion over the evidence it considers when reviewing a proposed class action settlement."  *UAW v. GMC*, 497 F.3d 615, 636 (6th Cir. 2007); *Officers for Justice*, 688 F.2d at 625 (fairness hearing should not be turned into a trial or rehearsal for trial on the merits).

### C.  An Analysis of the Requisite Factors Show the Settlement is Fair, Adequate and Reasonable as a Whole

#### 1.  The Risk of Fraud or Collusion

In this case, the proposed Settlement was negotiated in an adversarial manner.  It was only arrived at after numerous rounds of motion practice, intensive depositions and discovery, and many hours and days of negotiations, the later spread out more than a year.  It was also only achieved after this Court's seminal ruling that filing affidavits in debt collection lawsuits where the affiant lacked personal knowledge violates the FDCPA, and its ruling that the plaintiff did not incur any actual damages.  Both parties vigorously attempted to secure the most desirable conclusion for their respective clients.  The parties reached their settlement with the assistance of

the Honorable Richard McQuade and the Honorable David A. Katz. The settlement negotiations also included four all-day mediation sessions over the course of the one-year period.

"The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrot*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) (Beckwith, J.), citing *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D.Cal. 2005) and *In re Toys R Us Antitrust Lit.*, 191 F.R.D. 347, 3521 (E.D.N.Y. 2000). The negotiations were so hard fought that the assistance of the Court was still necessary before the parties could finalize their agreement, after they were unable to find a resolution in mediation. Even after the agreement-in-principle, the Parties required further assistance of this Court in order to conclude the Settlement Agreement.

In assessing possible fraud or collusion, courts address whether the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain Class Members at the expense of other Class Members. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).[7] Here, a number of objectors have alleged that this settlement was the result of a "reverse auction" to undercut any competing class actions. There is no evidence whatsoever of a reverse auction. This case is by far the most procedurally advanced of the pending affidavit cases. All of the others are still in the pleading stages. By contrast, counsel for both parties

---

[7] Several objectors have concluded that the Named Plaintiffs, who have the possibility to receive an incentive award, and for whom Midland has agreed to suspend collection actions, have improperly received special treatment. However, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D.Pa. 2000); *see also Hainey*, 617 F. Supp. 2d at 677. Midland's agreement to release the debts owed by Brent, Franklin, Johnson and Vassalle that were the subject of the collection lawsuits described in their complaints, offers only illusory relief to all but one of these Named Plaintiffs. Although Brent's collection action is still pending, Franklin's was dismissed when Midland could not establish that she was the proper Defendant who owed the debt. Midland received default judgments in both Johnson and Vassalle's collection actions several years ago. The debts owed by Johnson and Vassalle had already previously been paid to Midland and, therefore, they have no debts to be released and received no benefit.

investigated this case and litigated the matter for over three years.  Counsel were able to assess the strengths and weaknesses of their positions and arrived at a Settlement Agreement, based upon their analysis, and with the Court's assistance.  The mere existence of completing class actions is not sufficient to compel a finding of a reverse auction.  If it was, then "no settlement could ever occur in the circumstances of parallel or multiple class actions – none of the competing cases could settle without being accused by another of participating in a 'collusive reverse auction.'" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314  F.3d 1180, 1189 (10th Cir. 2002).  This Court need not look any further than Class Counsel's complete rejection of any reverse action in a case before this Court, *Everett v. Verizon*, 3:00-CV-7763, where the Defendants were able to secure a more favorable class action settlement in a state court after Class Counsel refused to participate in a reverse auction.  In *Everett*, Verizon sought out present Class Counsel and sought a nationwide class settlement, in part because the matter was first filed in this Court.  In the end, this Court expressed dissatisfaction with the California proceedings that resulted in less class consideration than rejected by Class Counsel, but declined to enjoin those proceedings.  *Everett* is simply a testament to present Class Counsel's wholesale rejection of the reverse auction concept.

This Settlement was accomplished through informed, extensive, and arm's-length negotiations.  The proposed Settlement was reached in good faith.  This factor weighs in favor of approving the settlement.

### 2. The Complexity, Expense and Likely Duration of Continued Litigation

In general, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."  *In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985, 1013 (S.D.Ohio 2001).  In most cases, "unless the settlement is clearly

inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.Cal. 2004), quoting *Newberg*, § 11:50 at 155. Indeed, it has been held proper "to take the bird in hand instead of a prospective flock in the bush." *DIRECTV*, 221 F.R.D. at 526, quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 596, 624 (D.Colo. 1974).

Courts within the Sixth Circuit have described the Fair Debt Collection Practices Act, as "a set of complex laws with many components." *Wess v. Storey*, No. 2:08cv623, 2011 WL 1463609 *4 (S.D. Ohio April 14, 2011)(Watson, J.)(granting final approval class settlement of FDCPA and OCSPA claims). Due to legal and factual complexities, this matter would be very expensive to fully litigate and might take more years to resolve. There is no question that if these cases do not settle, they will surely proceed to trial, and probable appeal, and will involve further expense and greater uses of unique and valuable judicial resources, in addition to all that has already been expended. The trial could last several days and involve the introduction of voluminous documentary and deposition evidence, vigorously contested motions, with the expenditure of enormous amounts of judicial and financial resources. Any additional costs and expenses could well increase the costs and fees, thereby reducing any recovery for the Class.

Additionally, the litigation would likely take several years to finally resolve, considering the length of trial and appeals. Liability and class certification issues could be subjects of appeal by Midland.[8] The issue of damages could be appealed by Plaintiffs. Accordingly, avoiding a

---

[8] For example, many courts, both before and after the *Brent* decision, have granted summary judgment and/or motions to dismiss to defendant debt collectors in cases where the plaintiffs alleged that "false affidavits" were filed in state court collection actions, because the affiant lacked personal knowledge. *See, e.g.*, *Goray v. Unifund*, No.06-00214, 2007 WL 4260017 (D. Hawaii December 4, 2007); *Jenkins v. Centurion Capital*, No. 07cv3838, 2009 WL 3414248 (N.D. Ill. Oct. 20, 2009); *Garigulo v. Forster & Garbus, Esq.*, No.06cv2461, 2009 WL 2868727 (S.D.N.Y., Sept. 3, 2009); *Manaplasz v. Unifund CCR Partners*, No. 08cv6524, 2009 WL 3015166 (N.D. Ill. September 15, 2009); *Meyers v. Asset Acceptance, Inc.,* 750 F.Supp. 2d 864 (S.D. Ohio 2010).

trial and inevitable appeals in this matter strongly weigh in support of approval of the Settlement rather than prolonged and uncertain litigation.  *DIRECTV*, 221 F.R.D. at 527.

Thus, this factor weighs in favor of approving the proposed Settlement. It secures a substantial benefit for the Class in a complex case, undiminished by further expenses, and without delay, costs, the waste of valuable judicial resources and the uncertainty of protracted litigation.

### 3.   The Amount of Discovery Engaged in by the Parties

To ensure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement, the stage of the proceedings and the discovery taken must be considered.  See *In re Telectronics Pacing Sys.*, 137 F.Supp.2d at 1015; see also *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D Mich. 2000).

The record here justifies approval.   The proposed Settlement was reached after three years of litigation.  Class Counsel conducted extensive discovery regarding each of the relevant issues in the case.   Class Counsel's discovery included obtaining and reviewing voluminous documents related to the allegations in the case; completing interrogatory and document requests; deposing Midland's key witnesses; and spending additional hours researching court documents and decisions to demonstrate class membership issues.   Class Counsel have extensively reviewed public filings of the Defendants to further understand and argue for the full extent of prospective damages as to the Defendants.   Given this extensive discovery, this Court

---

Further, a court recently applied the Sixth Circuit's materiality standards to dismiss FDCPA and state law claims that a false affidavit was used by the defendant debt collector.  *Albritton v. Sessoms & Rogers*, No. 09cv321, 2010 WL 3063639 **3-7 (E.D.N.C. Aug. 3, 2010)(citing *Miller v. Javitch, Block & Rathbone*, 561 F. 3d 588, 596 (6th Cir. 2009).

Finally, the Seventh Circuit recently held that to the extent that a FDCPA violation does not exist where the argument is that a state court filing by a debt collector mislead a state court.  .*See O'Rourke v. Palisades Acquisition XVI, LLC, et al*, ---F.3d---, 2011 WL 905815 (7th Cir. March 17, 2011).   This would provide another avenue for Midland to appeal the liability determination in the *Brent*.

should "defer to the judgment of experienced trial counsel who have evaluated the strength of his case." *Kogan*, 193 F.R.D. at 501, quoting *Bronson,* 604 F.Supp. at 73.

In addition to the thorough discovery, both parties filed a series of motions for summary judgment. Further, at the time the settlement was negotiated, the parties had the benefit of key rulings on class certification as well as those as to motions for summary judgment. Based upon the briefing and the rulings of the Court to date, both parties had a "clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 745 (D.C.N.Y. 1985).

The amount of discovery undertaken in this case and the stage of the proceedings weighs heavily in favor of the Settlement. See *DIRECTV*, 221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). Both sides in this conflict have been afforded an adequate opportunity to conduct a sufficient amount of discovery in order to be fully apprised as to all legal and factual issues. Both sides have made a well-informed decision to enter into the Settlement Agreement.

### 4. The likelihood of Success on the Merits

Brent prevailed on her motion for summary judgment against Midland on liability. In its seminal decision, this Court determined that the use of the Form 400 affidavit by Midland in a debt collection action against Brent *was* an unfair and deceptive act, in violation of the FDCPA and OCSPA. However, the Court also ruled that Brent could not establish actual damages because her alleged damages were the consequences of having a debt collection lawsuit filed against her, and were not caused by the use of an affidavit that falsely attested to be based upon personal knowledge. And the Court also found that the violation was limited to the false attestation of personal knowledge, there was no ruling that the underlying debt was invalid.

Accordingly, only statutory damages were at issue in this litigation after the Court's November 4, 2010 ruling.[9] The *Franklin* case was on appeal in the Sixth Circuit, after having been dismissed by this Court for failure to state a claim upon which relief may be granted. The parties recognized it was uncertain whether Franklin could obtain a favorable decision by the Court of Appeals and accordingly that matter was remanded to this Court for further proceedings, as part of the Settlement. The *Vassalle* case is also properly before this Court.

The statutory damages under the FDCPA are capped in class actions at the *lesser of* $500,000 per action or one percent of the debt collector's net worth. 15 U.S.C. 1692k(a)(2)(B). The $500,000 cap applies, because Midland/Encore's consolidated net worth is greater that $50,000,000. The payment under the Settlement obviously exceeds that amount. The FDCPA also has a provision for payment of actual damages, but class members would have difficulty establishing actual damages since they would have to show the damages were caused by the attestation of personal knowledge in the affidavit, as opposed to the debt collection lawsuit. To the extent that some Class Members may have suffered compensable actual damages, they can and should opt-out. But, as this Court has considerably determined, in the Court's decision of November 4, 2010 (Brent ECF Dkt. # 104), in order to be compensable: the actual damages awarded must result from only the *unlawful* conduct of Midland – the false attestation that the affidavit was based on personal knowledge – not from the initiation of the debt collection lawsuit.

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 369 (S.D.Miss. 2003) quoting *Dunleavy v. Nadler (In re Mego*

---

[9] *Brent* was remanded to the Sandusky, Ohio Municipal Court, after a finding that it had been improperly removed. The jurisdictional defect has now been remedied, and *Brent* is before this Court.

*Fin. Corp. Sec. Litig.*), 213 F.3d 454, 459 (9th Cir. 2000).  This is especially true in class actions under the FDCPA, since the damage cap typically results in low payments for individual class members.  *See, e.g.*, *Catala v. Resurgent Capital Services L.P.,* 2010 WL 2524158 at *3 (S.D. Cal. 2010) (approving FDCPA settlement of $35,000 distributed to *cy pres,* with no payment to class members); *Cope v. Duggins,* 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA class action settlement where class members who returned claim forms would receive $11.90 apiece); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138 at *7 (E.D.N.Y. 2006) (approving FDCPA settlement of $45,000 to cy pres, with no payment to class members); *see also Carroll v. United Compucred Collections, Inc.,* 399 F.3d 620 (6th Cir.2005) (rejecting defendant's assertion that a  class action was not a superior method of adjudicating FDCPA because the estimated 164 members of the putative class would only recover about $60.00); *Jerman v. Carlisle*, 271 F.R.D. 572, 576-77 (N.D.Ohio 2010) (certifying class even though FDCPA damage cap would limit recovery to $3.10 per class member); *Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541 (N.D.Cal.2005) (certifying class even though FDCPA damage cap would limit recovery to 25 cents per class member). Here, in addition to the $5.2 to $5.7 settlement payment, there is significant equitable relief.  The settlement amount to be paid is not unreasonable in light of the uncertain outcome of litigation.

The three interrelated cases that constitute this matter have been combined for settlement purposes, yet they still remain as unique and separate actions.  In the absence of this Settlement, each would be pursued individually.  This would encompass a lengthy time period, additional expense, the use of extremely valuable judicial resources and would subject the Class to substantial risks in ongoing litigation.  Due to the existence of uncertainties inherent in the Named Plaintiffs' claims, the limitation on statutory damages and the uncertainty of the

availability of any actual damages, Named Plaintiffs' likelihood of success on the merits is uncertain.  This factor weighs in favor of approval of the proposed settlement.

### 5.  The Opinions of Class Counsel and Class Representatives

In assessing the adequacy of the terms of the settlement, the trial court is entitled to and should rely upon the judgment of experienced counsel for the parties.  See *DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted).  The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

In this case, both Class Counsel and Midland's Counsel are experienced practitioners.  Counsel for both sides urge final approval of the Settlement Agreement based upon their experience, their knowledge of the strengths and weaknesses of the case, their analysis of the discovery reviewed to date, the likely recovery at trial and on appeal, and other factors considered in evaluating the Settlement Agreement.

Class Counsel is experienced in class action litigation, having been prosecuting class actions for almost 50 years.  Thus, because of prior such experience, Class Counsel's opinion, that the proposed Settlement is fair, reasonable, and adequate is entitled to considerable weight.  *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 852 (E.D.La. 2007).

The Class Representatives have all requested that the Settlement be approved and their interests coincide with the interests of the Class.   It is evident that both parties made a well-informed decision to enter into the proposed Settlement Agreement.   Additionally, the Settlement was reached through mediation with Judge McQuade and through settlement

negotiations through this Court.  Counsel negotiated the details of the Settlement for over a year before a final agreement was reached.  They have weighed the strengths and weaknesses of the claims and have endorsed the Settlement.  Accordingly, this factor weighs in favor of approving the proposed settlement.

### 6.   The Reaction of Absent Class Members

In considering a class action settlement, the Court should look to the reaction of the class members.  *Brotherton v. Cleveland*, 141 F.Supp.2d 894, 906 (S.D. Ohio 2001).  Of course, "[t]he fact that some class members object to the settlement does not by itself prevent the court from approving the agreement."  *Id.*  In fact, numerous class settlements have been approved over objections from many class members.  In affirming approval of a settlement where 82 members of a class of 452 objected, the Third Circuit observed in *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803 (3d Cir. 1974), that a "settlement is not unfair or unreasonable simply because a large number of class members oppose it."  Here, more than 1,250,000 Class Members were provided notice of the proposed Settlement by direct mail.  Additionally, the notice was published two times in USA Today, as well as on the settlement website, www.BrentSettlement.com.  As of June 28, 2011, more than 133,000 Class Members have filed claims.

Of the approximately 1.4 million total class members, only 57 objected and  4,138 opted out.  In other words, less than 0.33% of the class opted out, and less than 0.05% objected to the settlement. It is widely recognized that if only a small number of class members opt out or object, this indicates that the settlement is adequate. *See Brotherton*, 141 F. Supp. 2d at 906; *In re Delphi Corporation Securities Litig.*, 248 F.R.D. 483, 488-89 (E.D. Mich. 2008); *In re Cardizem Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003); Newberg on Class Actions, §

11.48. Notably here, the opt out rate is far lower than the parties anticipated when they agreed that a 2% opt-out rate would permit Midland to withdraw from the settlement. Settlement Agt., § XIX.

Of the class members opting out, almost six hundred submitted a "form letter" type opt-out request, presumably generated by their counsel.[10]  Over half of these "form" opt-outs were from Class Members in Virginia who indicated they are represented by Consumer Litigation Associates.[11]  Consumer Litigation Associates filed an FDCPA action against Midland on July 7, 2010 in the Eastern District of Virginia (the *Rubio* case), based upon Midland's use of affidavits without personal knowledge.  The *Rubio* case was commenced nearly a year after this Court's seminal decision in Brent, and the complaint specifically cited and relied upon the Brent decision.

The majority of objections by counsel raise four general issues:  (1) the Release is so broad that it strips Class Members of all rights relating to Midland's debt collection activities; (2) the amount of the monetary payment to each Class Member is inadequate; (3) the injunctive relief provided is not strong enough; and (4)  the attorneys' fee award is excessive.  These objections, along with all others received, will be addressed by the Parties separately.  Virtually all of the objectors have (or out of an abundance of caution claim to have) a misunderstanding of the Settlement Agreement. There appears to be a considerable dissemination of inaccurate information as to the Release, which is the underlying foundation for all of the objections.  Most, if not all, objectors state a belief that any and all claims they may have against Midland would be barred by this Settlement, which they certainly would not.  Most, if not all, objectors complain that they are entitled to relief for alleged practices that are completely outside the scope of this

---

[10]  84 of these individuals also *submitted a claim* form requesting to be included in the Class.
[11]  Fifty percent of the opt-outs from Virginia were received by the Settlement Administrator prior to the mailing of the Class Notice.

litigation. These unrelated issues do not affect the actual fairness, reasonableness, or adequacy of this settlement.

The objections from individuals deal primarily with the practices of debt collectors and the misery caused by debt collection efforts, not from the affidavits that are the subject matter of this lawsuit.[12]  It is an unfortunate sign of the times that so many people are in financial difficulty and now have to deal with debt collection issues.  Unfortunately, this lawsuit cannot solve all of the problems within the debt collection industry, and it is not intended to do so.

This Court, after hearing from the objectors and carefully reviewing the substance of their written objections, will also doubtlessly conclude that the objections raised do not negatively impact the fairness of the Settlement.  The vast majority of the Settlement Class Members who have responded support the Settlement Agreement.  The vast majority of objections raised are not germane to the issue being settled.  This factor weighs in favor of approving the Settlement Agreement.

### 7.  The Public Interest

The final factor for consideration is the public interest in approving the settlement. Public policy generally favors settlement of class action lawsuits.  The settlement brings closure to a matter that has been pending for over three years.

The Settlement and the proceedings which gave rise to it bring relief to a substantial number of Class Members who were affected by Midland's practice of using affidavits in debt collection lawsuits, *over a five year period of time*.  Although many objectors assert that the $5.2 to $5.7 million settlement amount is too low, it is substantial compared to the $500,000 FDCPA

---

[12] Of the 51 objections received by individuals, only 11 even arguably relate to affidavits.  Many of the objections are from individuals who assert that they were subject to calls or letters about their debt, *e.g.*, Dkt. Nos. 60, 64, 65, 100, 101, 103, 107, 109, 110, 115, 116, or who object to having been sued for various reasons not related to the affidavit, but do not assert that they did not owe the debt, *e.g.*, Dkt. Nos. 58, 77, 85, 90, 96, 98, 104, 107, 112, 114, 117.

damage cap and the minimal actual damages caused by an affidavit filed without personal knowledge. Moreover, the settlement provides injunctive relief to assure that policies will be in place to prevent the practice from continuing in the future. The underlying decisions have brought significant benefits to a legion of U.S. residents through the Court's seminal decision rejecting improper affidavit practices. In short, the public interest weighs in favor of approving the proposed Settlement.

## IV. THE CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION UNDER FED.R.CIV.P. 23

In order for the Court to approve the Settlement Agreement, the Court must also certify this action as a class action under Fed.R.Civ.P. 23. This class satisfies the four requirements of Fed.R.Civ.P. 23(a): numerosity, commonality, typicality and adequacy of representation. In addition, the putative class satisfies Fed.R.Civ.P. 23(b)(2) in that injunctive relief is appropriate respecting the class as a whole, and Fed.R.Civ.P. 23(b)(3) by presenting "common questions [that are] a significant aspect of the case and [that] can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998).

The class, with more than 1,400,000 members is sufficiently large such that joinder of all class members would certainly be impracticable. There are also common issues of law and fact that predominate. All class members seek resolution of the common legal question of whether the use of affidavits by Midland attesting to the personal knowledge of the affiant is an unfair and deceptive debt collection practice. Because resolution of this common issue will affect the class as a whole, this common question, necessitating a detailed factual inquiry and legal analysis, can be resolved most efficiently in the context of a class action. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998).

As for the requirement of typicality, the interests of the representatives arise from the same course of conduct that gives rise to the claims of the other class members.  See *In re American Medical Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996).  All Named Plaintiffs were sued by Midland for the collection of a debt, where an affidavit allegedly based upon the personal knowledge of the Midland employee was used in the collection action.

"Adequate representation is essential to a class action because without it there can be no preclusive effect of the judgment."  *Elkins v. Am. Showa, Inc.*, 219 F.R.D. 414, 419 (S.D.Ohio 2002).  To assess the adequacy of the representation, the Court must consider whether the class representatives will "fairly and adequately protect the interests of the class."  Fed.R.Civ.P. 23(a)(4).  There are two prongs to this inquiry:  "(1) The representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  *Senter v. GMC*, 532 F.2d 511, 525 (6th Cir. 1976).

Both prongs are met.  The class representatives share with the putative class members the desire to recover damages from Midland for the use of the false affidavits and to prevent Midland from employing this deceptive debt collection practice in the future.  Further, Class Counsel is adequate.  Class Counsel has almost 50 years of extensive experience litigating class action lawsuits, and has demonstrated a willingness to vigorously pursue the claims of the members of the Class.

In this action, injunctive relief is appropriate for the Class as a whole. The same wrongful conduct alleged by the Named Plaintiffs is the basis for the injunctive relief sought for the benefit of the entire Class.  "An action in which both injunctive relief and money damages are sought may be certified as a class under Rule 23(b)(2), as long as money damages do not

constitute the predominate type of relief requested." *Hoffman v. Honda Manufacturing of America, Inc,* 191 F.R.D. 530, 536 (S.D.Ohio 1999).

In addition, Rule 23(b)(3)'s requirements of predominance and superiority are met. The predominance inquiry tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc. v..Windsor*, 521 U.S. 591, 623 (1997). This requirement is satisfied where the question common to the Class is "at the heart of the litigation." *Powers v. Hamilton County Public Defender Comm.*, 501 F.3d 592, 619 (6th Cir. 2007). The question of the deceptive nature of the affidavits and the fairness of their use predominates over any individual questions.

The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. Fed.R.Civ.P. 23(b)(3). Given the arguably limited resources of each individual class member, there is a strong interest in prosecuting these claims in one particular forum. In addition, although there have been other actions initiated in other fora alleging the same claims, this action was the first filed and is procedurally more advanced than the rest, with extensive motion practice and several decisions rendered on summary judgment regarding liability and damages. Indeed until called out as illegal, using affidavits with false representations of personal knowledge had been the standard practice at Midland and likely for other debt collectors as well. Until this Court's seminal decision no court anywhere in the United States had called this

practice into question. These factors demonstrate that a class action is superior to individual suits.

None of the Objectors raise any issues pertaining to the maintainability of the Class under Rule 23.  All requirements of Fed.R.Civ.P. 23(a) and (b) are met and this settlement class may properly be certified.

## V.  THE NOTICE PROGRAM SATISFIES DUE PROCESS

Due process requires that Class Members be given notice of a proposed settlement and their right to be heard at the fairness hearing.  "The standard for the adequacy of a settlement notice in a class action under either the Due process Clause or the Federal Rules is measured by reasonableness."  Fed.R.Civ.P. 23(e).  There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must "fairly apprise prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.  *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982).  Notice is "adequate if it may be understood by the average class member."  4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.53 at 167.

### A.  The Dissemination Plan Satisfies Due Process

There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those Class Members who are identifiable through reasonable effort."  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-76 (1974).  Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice.  See *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981).  Here, notice was disseminated via individual mailing to all Class Members identified in the customer data files of Midland and by publication.  This constitutes the best notice

practicable under the circumstances, and fully complies with and satisfies the notice requirements of Rule 23.  As the highest standard of notice, notice here easily satisfies the due process requirement.

### B.  The Contents of the Notice Satisfy Due Process

A settlement notice is a summary, not a complete source of information.  See e.g., *Petrovic v. Amoco Oil Co.*, 200 F.3e 1140, 1153 (8th Cir. 1999).  The Class Notice reasonably apprises the Class Members of the nature and pendency of the Class Action and the Class claims; of all the material elements of the proposed settlement, including, but not limited to, the definition of the Class, the relief available under the proposed settlement and steps necessary to obtain the relief; and of the right, time and manner to exclude themselves from, or object to, the settlement; of the identity of Class Counsel and of information necessary to communicate with Class Counsel; that additional information is available from the Settlement Administrator, Class Action Administration; Class Counsel's intent to apply for a fee award in the amount of $1,500,000; and of the right to appear at the Fairness Hearing, including through an attorney.

The Notice specifically advised Class Members that if the Settlement is approved, they cannot "sue or be part of any other lawsuit against Defendants about the claims or issues in this lawsuit, or any other claims arising out of affidavits attached or executed in support of collection complaints filed against Class Members by Defendants or any of their subsidiaries or affiliates."

Some Objectors have asserted that the Notice does not include enough information about the Release and the rights Class Members are giving up.  These arguments are primarily based upon the Objectors' misunderstanding of the nature of the Release and what it encompasses.  An objector must do something more than offer conclusory assertions that "the absent class members still did not understand what they were giving up."  *Anderson v. Nextel Retail Stores,*

*LLC*, Case No.: CV-07-4480, 2010 U.S. Dist. LEXIS 43377 *34, quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). It is clear from the responses of Class Members that they do understand the information and took the proper steps to act on it. More than 133,000 Class Members filed the appropriate claim forms and over 4,000 Class Members exercised their right to opt-out of the Settlement. Objections were received from 57 Class Members. The scope of the Release provided to Midland in the Settlement is the subject of some misinterpretation by many Objectors. Even though the Class initially asserted in the *Brent* action was for Ohio residents only, "a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." *Anderson*, 2010 U.S. Dist. LEXIS 43377 at *8. Given the informative content of the notice and its comprehensive dissemination, due process has been satisfied. Accordingly, final approval of the Settlement is appropriate.

## VI. INJUNCTION AGAINST RELITIGATION OF RELEASED CLAIMS

The Settlement Agreement provides that at the conclusion of, or as soon as practicable after, the close of the hearing on the fairness, reasonableness, and adequacy of the proposed settlement, Class Counsel and Defendants shall request that the Court enter a Final Order which, among other things, permanently enjoins all class members who did not timely and validly exclude themselves from the class from relitigating released claims. Settlement Agt., § XI.

Such injunctions are common and well-within the Court's authority under the All-Writs Act which provides, in relevant part, that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales*

*Practices Litig.*, 261 F.3d 355, 367-368 (3d Cir. 2001) (upholding injunction against relitigation of claims released by class action settlement and holding that "in its Final Order and Judgment the district court expressly retained exclusive jurisdiction to oversee the implementation of the settlement and the judgment. The court acted quite properly in retaining jurisdiction in that fashion. A district court has the power to enforce an ongoing order against relitigation so as to protect the integrity of a complex class settlement over which it retained jurisdiction."); *Allen v. Decision One Mortgage Co.*, 2010 WL 1930148,*4 (D. Mass. 2010) (approving settlement and enjoining class members from litigating released claims); *In re Linerboard Antitrust Litig.*, 2008 WL 4461914, *6-7 (E.D. Pa. 2008) (Court had authority to enjoin counsel from settled antitrust litigation from relitigating their fee allocations in other courts); *In re Reliance Securities Litig.*, 2003 WL 1943320, *2-3 (D. Del. 2003) (enjoining class members from litigating released claims under the All-Writs Act).

Accordingly, the parties respectfully request the Court issue an order permanently enjoining all class members who did not timely and validly exclude themselves from the class from participating as class members in any lawsuit in any forum, or otherwise filing, intervening in, commencing, prosecuting, continuing and/or litigating any lawsuit in any forum against the Released Parties, arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits.

## VII.    CONCLUSION

The Settlement meets all the requirements for final approval.  The Settlement is the result of hard-fought and adversarial litigation and negotiations.  Further, the Settlement was negotiated by Class Counsel who were thoroughly informed on all issues of liability and damages and was based on the extensive amount of discovery and research undertaken in this case.  Finally, Class

Counsel, who have extensive experience in litigating and resolving class action suits, support the Settlement.  In light of the strengths of the claims, the risk, expense, complexity and duration of continued litigation, the exhaustion of extremely valuable judicial resources, the risks associated with class certification, the discovery and motion practice completed and the stage of the proceedings, the experience and views of Class Counsel, the Named Plaintiffs request that the Court grant the final approval of the Settlement.

Respectfully submitted,

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
dms@murrayandmurray.com
Donna J. Evans, Esq. (0072306)
dae@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky OH  44870
Telephone:     (419) 624-3000
Facsimile:     (419) 624-0707

Attorneys for Plaintiffs

*/s/ Theodore W. Seitz  (w/permission)*
Theodore W. Seitz
Dykema Gossett PLLC
Counsel for Midland Funding, LLC and
Midland Credit Management, Inc.
Capitol View
201 Townsend Street, Suite 900
Lansing, MI 48933
Tele: (517) 374-9149
tseitz@dykema.com

## CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing **Named Plaintiffs' and Defendants' Joint Motion for Order Granting Approval of Class Action and Memorandum in Support** was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic system and a copy has been forwarded to the following by electronic mail:

David M. Cullen
Office of the Attorney General
State of Minnesota
david.cullen@state.mn.us
Ste. 1200
445 Minnesota Street
St. Paul, MN 55101

Daniel E. Birkhaeuser
Bramson, Plutzik, Mahler & Birkhaeuser
dbirkhaeuser@bramsonplutzik.com
Ste. 120
2125 Oak Grove Roas
Walnut Creek, CA  94598

Charles Delbaum
Stuart Rossman
The National Consumer Law Center
cdelbaum@nclc.org
7 Winthrop Square, 4th Fl.
Boston, MA 02110

Ian D. Chowdhury
Law Offices of Ian Chowdhury
ian@ianchowdhury.com
8853 Fullbright Avenue
Winnetka, CA 91306

Michael D. Kinkley
Scott M. Kinkley
Law Office of Michael D. Kinkley
mkinkley@qwestoffice.net
Ste. 914
4407 North Division Street
Spokane, WA 99207

A copy of the forgoing has also been forwarded by ordinary mail to the following:


Anamaria Segura
Carolyn E. Coffey
MYF Legal Services
4th Floor
299 Broadway
New York, NY  10007

Karuna B. Patel
Center for Responsible Lending
Ste. 500
910 17th Street, NW
Washington, DC  20006

Tashi T. Lhewa
Legal Aid Society of New York
120-46 Queens Blvd.
Kews Garden, NY  11415

On this 5th day of July, 2011.


/s/Dennis E. Murray, Sr.
Dennis E. Murray, Sr., Esq. (0008783)
Donna J. Evans, Esq. (0072306)

Attorneys for Plaintiffs


/s/Theodore W/ Seitz
Theodore W. Seitz

Counsel for Defendants