# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MARTHA VASSALLE, <br> 1426 Lindsley Street <br> Sandusky, Ohio 44870 <br><br> and <br><br> JEROME JOHNSON <br> 1601 North Larchmont Drive <br> Sandusky, Ohio 44870 <br><br>       Plaintiffs, <br><br> vs. <br><br> MIDLAND FUNDING, LLC <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> and <br><br> MIDLAND CREDIT MANAGEMENT, INC. <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br> and <br><br> ENCORE CAPITAL GROUP, INC. <br> 8875 Aero Drive <br> San Diego, California 92123 <br><br>       Defendants | Case No. 3:11-cv-0096, N.D. Ohio <br><br> HON. DAVID A. KATZ <br><br> **And Related Cases:** <br> Case No. 3:08-cv-01434, N.D. Ohio <br> Case No. 3:10-cv-0091, N.D. Ohio <br><br> **DEFENDANTS' RESPONSE TO THE OBJECTIONS OF HERRING, CLAWSON, GRAY, AND PELZER** |

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Ladon Herring, Robert Clawson, and Kelli Gray (the "Objectors") are members of the preliminarily approved settlement class before this Court. Each is represented by counsel who filed subsequent class actions based upon this Court's summary judgment in the *Brent* case. Now, they have filed objections to the class settlement. (*Vassalle*, Dkt. #'s 20, 32-35).[1] As an initial matter, the objections violate the Local Rules (along with this Court's Orders), and thus, must be stricken.[2] Even if the Court decides to accept the filing of the objections, pursuant to Sixth Circuit standards, the Objectors bear a "heavy burden" of demonstrating that the class settlement is unreasonable due to this Court's Preliminary Approval Orders. *Williams v. Vukovich*, 720 F. 2d 909, 921 (6th Cir. 1983). Further, the objections must be given no weight because they have been proffered by competing counsel in putative class actions. Indeed, courts have explained that such objections actually militate in favor of approving the class settlement. *See In re Prudential Ins. Co. of America Sales Practices Litigation*, 148 F. 3d 283, 318 (3d Cir. 1998)(the "most vociferous objectors are . . . litigants represented by counsel in cases that

---

[1] Elaine Pelzer also filed objections, which incorporate the Herring and Clawson objections. (Dkt. #42, pp. 11-15). Previously, Pelzer filed a Motion to Intervene in the case, which this Court denied. (Dkt. #56).

[2] Without seeking leave of the Court, Herring and Clawson filed objections exceeding—**by 9 pages**—the allowable limit under Local Rule 7.1(f), which states that non-dispositive memoranda "**must not exceed fifteen (15) pages in length**." (emphasis added). Simply put, there is no excuse for this disregard of the Local Rules by Objectors' counsel. Therefore, as supported by the Local Rules, the Herring and Clawson objections must be stricken. *See Turner v. City of Akron*, No. 5:06CV3023, 2008 WL 45376 *1 (N.D. Ohio Jan. 2. 2008)(striking reply brief over page limit where party did not seek leave of the Court)(Lioi, J.). In addition, the Court previously denied Objector Gray's motion to exceed the page limitations. (Dkt. # 35). Nevertheless, Gray's counsel ignored this Court's Order and submitted a memorandum in support of her objections which is **18 pages over the limit**. (Dkt. #32). Thus, Gray's objections must be stricken as well. At the very minimum, the Court should strike and refuse to consider those pages submitted by the Objectors, which are after page 15 of their objections. *See United States v. Merkosky*, No. 1:02-CR-168, 2008 WL 5169640 *7 (N.D. Ohio Dec. 9, 2008) (Gwin, J.)(striking portions of brief over Local Rule page limit, thereby "disallowing consideration of pages" over page limit, because party ignored Local Rule 7.1)

compete with or overlap [class claims]" a factor weighing in favor of approving settlement); *Smith v. Tower Loan of Mississippi, Inc.,* 216 F. R. D. 338, 370 (S.D. Miss. 2003)(explaining same and rejecting objections by competing class counsel in approving class settlement of state and federal consumer claims, including those brought under the Fair Debt Collection Practices Act).[3]

In sum, the objections by competing class counsel fail for multiple reasons. **First**, the entire premise on which the objections are based is incorrect: the Class Release does not bar all claims against the Defendants, only those solely arising out of the use of an affidavit. **Second**, the settlement amount is fair and reasonable and was arrived at after liability and damage issues had been litigated in this Court. **Third**, the Court approved class notice meets all standards under the Federal Rules and the Due Process Clause. Therefore, the Court should ignore the objections by counsel in competing class actions and grant final approval to the class action settlement.

## II. BACKGROUND

This Court is familiar with the factual and procedural background of the *Brent*, *Franklin*, and *Vassallee* cases, including the circumstances which led to the granting of the Preliminary Approval Orders. In this regard, the Court is also familiar with the history of Court-supervised settlement negotiations between Class Counsel and the Defendants. This included: (1) four

---

[3] The Objectors also incorporate by reference and otherwise the arguments set forth in the amicus brief filed by the various state Attorneys Generals. This should not be a surprise to the Court. Herring's counsel informed the Court during the June 24, 2011 conference call on the curative notice, discovery, and release issues, that he had been working with various Attorneys Generals and the Federal Trade Commission in an effort to get them to oppose the class settlement. (Non-Document Order "Minutes of Proceeding"). Likewise, Herring's counsel also mentioned in correspondence, which he also provided to the Court previous to the June 24, 2011 conference call, that he wanted to circulate "materials to the Attorneys General and other interested third-parties." (Ex. A). Simply put, these tactics are nothing new. Other courts have rejected objections to class settlements proffered by Attorneys Generals where such were solicited by a competing class counsel. *See Hall v. Midland Group and Midfirst Bank*, 2000 WL 1725238 (E.D. Pa. 2000) (approving settlement over objections of state attorneys general, where the objections were solicited by plaintiffs' lawyer opposed to the settlement).

2

mediation sessions with former Federal Judge Richard McQuade as the mediator, which were unsuccessful in resolving the *Brent* and *Franklin* litigation.; (2) a settlement conference with this Court after the filing of the *Vassalle* case and after liability and class certification issues had been decided in the *Brent* and *Franklin* cases; and (3) several mediation sessions with a U.S. Sixth Circuit Court of Appeals Mediator after the *Franklin* appeal was filed.[4]

Further, as this Court was previously made aware, several class actions were filed against Defendants' starting nearly a year after the Court's summary judgment ruling in *Brent* and eight months after the filing of the *Franklin* putative national class action case. A list of these cases was set forth in the Joint Motion for Preliminary Injunction. (*Brent* Dkt. # 108, pp. 2-4). For example, Objector Herring's counsel brought the *Rubio* case, which was filed on July 7, 2010 in the United Stated Court for the Eastern District of Virginia. *Rubio* was brought as a solely a FDCPA case based upon the Court's summary judgment ruling in the *Brent* case. *Rubio* was dismissed on May 12, 2011. As noted in his objection, Clawson's counsel, along with the National Consumer Law Center counsel brought the *Riemann* case on August 5, 2010. Counsel for Gray filed *Lauber* case on November 10, 2010, and it was later consolidated with Gray's earlier filed putative class action (a non-affidavit FDCPA case) filed in the United States Court for the Eastern District of Washington.

### III. ARGUMENT

The Objectors use a shotgun approach in a desperate attempt to overcome the preliminarily approved settlement. However, each objection fails to meet the mark by a wide

---

[4] None of the objections allege any collusion between Class Counsel and Defendants' counsel. Irrespective, as explained by a court within the Sixth Circuit, the "participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F, Supp. 2d 668, 673 (S.D. Ohio 2007)(Beckwith, C.J.)(approving class settlement over several objections)(citing *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005); *In re Toys R Us Antitrust Lit.*, 191 F. R. D. 347, 352 (E.D.N.Y. 2000).

margin. In addition, the Objectors note the standards for final approval of a class settlement, but ignore their own burden. For example, the Sixth Circuit has made clear that when a class settlement has been preliminarily approved "[a]n individual who objects, consequently, has a heavy burden of demonstrating the decree is unreasonable." *Williams*, 720 F. 2d 921 (citations omitted); *see also*, *Bronson v. Board of Education,* 604 F. Supp. 68, 71-72 (S.D. Ohio 1984)(noting the high burden placed on objectors when a class settlement has been preliminarily approved and was the result of arms-length negotiations).

> As previously explained by former Chief Judge Lambros from this Court:
>
>> The proponents of the settlement have the burden of persuading the Court that the compromise is fair, reasonable and adequate. *In re General Tire,* 726 F.2d at 1080. **With the Court's preliminary approval of the stipulation, the proponents satisfy this burden and the settlement is presumptively reasonable.** *Williams*, 720 F.2d at 921; *Stotts v. Memphis Fire Department*, 679 F.2d 541, 551 (6th Cir.1982), *cert. granted,* 462 U.S. 1105, 103 S.Ct. 2451, 77 L.Ed.2d 1331 (1983); *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 616 F.2d 1006, 1013 (7th Cir.1980); *United States v. City of Miami,* 614 F.2d 1322, 1333 (5th Cir.1980). **The burden then shifts to the objecting shareholders who have a heavy burden of demonstrating that the decree is unreasonable.** *See Williams*, 720 F.2d at 921; *Stotts,* 679 F.2d at 551; *Village of Arlington Heights*, 616 F.2d. at 1014.

*Granada Investments, Inc. v. DWG Corp.,* 823 F. Supp. 2d 448, 454 (N.D. Ohio 1993)(emphasis added).

It is through this lens that the Objectors' arguments must be examined, as they are addressed in detail below.

**A.     The Objectors Misrepresent The Plain Language and Scope of Class Release.**

In their objections, the Objectors continually misrepresent the plain language of the class release. The class release unambiguously provides that class members who do not opt out of the class will release all claims "arising out of or relating to the Released Parties' use of affidavits in

4

debt collection lawsuits." Settlement Agt., § V.D.1 (emphasis added).[5] In other words, the release only bars class members from asserting claims against the Released Parties where the basis for relief is the affidavit used in the debt collection action. It is not a general release that requires class members to give up all FDCPA and state law claims against Midland.[6] It does not prohibit class members from filing actions to vacate judgments on grounds unrelated to the affidavit (for example, if they did not owe the debt or if they were not served with the complaint). And it does not prevent class members from defending collection lawsuits. Accordingly, the release complies with the well-settled rule that a class action settlement can only release claims by absent class members that arise from the same factual predicate as the settled case, and is therefore not overbroad. *Moulton v. United States Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009); *Olden v. Gardner*, 294 Fed. Appx. 210, 220 (6th Cir. 2008); *In re Worldcom, Inc. Secs. Litig.*, 388 F. Supp. 2d 319, 342, n.36 (S.D.N.Y. 2005).[7]

---

[5] In order to attempt to cloud the plain language of the class release, the Objectors present Stephen Gardner as a purported "expert" to opine on, among other items, the scope of the class release. (Dkt. #25). However, a review of Mr. Gardner's Declaration (Dkt. #26) shows that he fails to meet the Sixth Circuit's expert standards for a variety reasons. Indeed, at least one other court has rejected similar testimony from Gardner. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1018, 1032 (N.D. Ill. 2000) (finding Gardner's testimony opposing class settlement to be mere "suspicion" and "not based on any empirical work"). That court also rejected Gardner's reliance on the NACA class action guidelines, which the Objectors heavily rely upon in their objections before the Court in this case. *Id.* at 1029 (rejecting Gardner's reliance on the NACA guidelines to support his opinion, and finding that the guidelines are "unofficial and have never been adopted by a court," and that they fail to "persuade this court that the settlements proposed here are inadequate."). Thus, the Defendants have filed a Motion to Strike Mr. Gardner's Declaration.

[6] By contrast, the named plaintiffs are providing a general release; they will release Midland and the other released parties from "all causes of action, suits, claims and demands, whatsoever, known or unknown, in law or in equity, based on state or federal law, under any legal theory." Settlement Agt., § 4.D.2.

[7] The scope of the release was briefed in detail in Midland's June 23, 2011 Letter Brief, and its Response to the Amicus Brief filed by the Attorney General of New York, et. al. Midland respectfully refers the Court to those filings for further discussion of this issue.

5

The Objectors also complain that the release is overly broad and uncertain because it releases "agents" and "affiliates" but does not list, by name, every entity covered by the release. This is standard release language that appears in virtually every settlement agreement and has been consistently approved by courts. *See, e.g.*, *In re Certainteed Corp. Roofing Shingle Prods. Liability Litig.*, 269 F.R.D. 468, 493 (E.D. Pa. 2010); *Alvarado v. Nederend*, 2011 WL 1883188, *3 (E.D. Cal. 2011); *North Star Capital Acquisitions, LLC v. Krig*, 2011 WL 65662, *7 (M.D. Fla. 2011). The Objectors have not cited any cases holding that a settling defendant must identify by name every entity that could conceivably be sued on the released claim, and Midland is not aware of any such cases.

Finally, the Objectors assert that the release "improperly discharges persons that are not before the Court," such as Midland's debt collection attorneys. This is not improper. Under settled law, a class action settlement may release claims against non-parties where "'the claims against the non-party being released were based on the same underlying factual predicate as the claims asserted against the parties to the action being settled." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 109 (2d Cir. 2005) (quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577 at *11 (S.D.N.Y. Nov. 26, 2002)); *see also In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 143, 160-65 (E.D.N.Y. 2000) (approving class settlement with broad releases against non-parties, including insurance carriers, other banks, and Swiss governmental entities); 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 12:16, at 318 (4th ed. 2002) ("A settlement may ... seek to discharge parties who have not been served with process and are therefore not before the court.").

**B.** **Contrary to the Objectors Arguments Otherwise, The Class Settlement Is Fair And Adequately Compensates The Class.**

    **1.** **The Class Payment Is Appropriate Compensation For The Limited Release Being Given By The Absent Class Members.**

6

The Objectors' primary objection to the class payment is based on the same misunderstanding as their objection to the scope of the release. Specifically, they claim that a ten dollar per person payment does not fairly compensate class members who will be bound by judgments for debts not owed. As explained above, however, the release only bars class members from seeking to have judgments vacated based on the defective affidavits – it does <u>not</u> bar them from attempting to vacate judgments on any other grounds permitted by state law. Since class members are only releasing a narrow set of claims that have nothing to do with the validity of the debt, the class payment is not disproportional to the release.[8]

### 2. The Class Payment Is Appropriate.

As the Objectors' counsel should be well-aware, the class payment in this case is not out of line with other FDCPA settlements, because the FDCPA caps statutory damages in class actions at the lesser of one percent of the defendant's net worth or $500,000. 15 U.S.C. 1692k. *See also Wright v Finance Serv. of Norwalk, Inc.,* 22 F. 3d 647 (6th Cir. 1994)(noting the FDCPA limits damages to "per action, not per violation" of the FDCPA, including for class actions).[9] Thus, settlements in FDCPA class actions are typically very low and can result in

---

[8] The Objectors contend that the settlement should have required Midland to send a payment to every class member rather than requiring a claim form. This is not a valid objection, as it is commonplace and reasonable to require class members to fill out a claim form to prevent fraudulent claims. *See, e.g.*, *In re New Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1032 (N.D. Ill. 2000). Further, the Objectors claim that it is improper for class members to provide their address on the claim form. This argument makes no sense and was previously rejected by the Court at the April 6, 2011 hearing with Herring's counsel. (Dkt. # 150, Ex. 1, Hearing Tr. at pp. 8-14), also attached as Ex. B).

[9] However, from a review of the *Rubio* complaint, it is apparent the Herring's counsel has little understanding of the FDCPA and the limited damages available in FDCPA class action cases. For example, in *Rubio*, Herring's counsel alleged that the Midland Defendants were "**liable to Plaintiff and each of the putative class members for statutory damages of $1,000.00 per person, and attorney's fees and costs pursuant to 15 U.S.C. 1681n and 1681o.**" (Ex. C, *Rubio* Compl., ¶ 41)(emphasis added). It is interesting—given the arguments in his objection to this Court that the class members should be entitled to more—that Herring's counsel chose not to seek any actual damages for the putative class in *Rubio* (he only chose to pursue individual actual damages for named Plaintiff Rubio). Moreover, it also appears that Herring's counsel

minimal or even nonexistent cash payments to class members. *See, e.g.*, *Catala v. Resurgent Capital Services L.P.,* 2010 WL 2524158 at *3 (S.D. Cal. 2010) (approving FDCPA settlement of $35,000 distributed to *cy pres,* with no payment to class members); *Cope v. Duggins*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA class action settlement where class members who returned claim forms would receive $11.90 apiece); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138 at *7 (E.D.N.Y. 2006) (approving FDCPA settlement of $45,000 to cy pres, with no payment to class members).

Although the plaintiffs in the settled cases asserted damage claims under the FDCPA and state law, and the class could theoretically have as well, it is highly unlikely that any class members suffered significant actual damages as a result of an affidavit containing accurate information about the delinquent debt but unsupported by personal knowledge of the affiant being filed in a debt collection lawsuit. The difficulty of establishing such damages is illustrated by this Court's order granting summary judgment for Midland on Brent's claim for emotional distress damages. Brent's damage claim failed because she was unable to establish that any emotional distress was caused by the affidavit's allegedly false assertion of personal knowledge, as opposed to the fact that she was being sued on a debt. *See* Dkt. # 104, Brent Opinion at 12 (Brent's claimed emotional distress appears to have been caused by "the discovery that she was

---

thought that Fair Credit Reporting Act ("FCRA") damages (the above statutory sections cited from *Rubio* Complaint) applied to his FDCPA class action in *Rubio*, which clearly would not be the case. This confusion between FCRA versus FDCPA damages appears to have led Herring's counsel and then others, to incorrectly rely upon the *Brim* case as an example of potential damage recoveries in class actions against debt collectors. However, as noted in the Defendants' response to the State AG's amicus brief, *Brim* was a FCRA case and has nothing to do with an affidavit or debt collection lawsuit, and therefore has no conceivable relevance to the fairness of the settlement in this case.

8

being sued on a debt she did not know about and was unable to pay, and not the representation that the affidavit attached to the Complaint was based on the affiant's personal knowledge.").[10]

### 3. The Class Members' Other Possible Federal Or State Law Claims Had Little If Any Value.

In a continuing chorus that amounts to looking for something that does not exist, the Objectors speculate that the class members may have more valuable claims under the consumer protection statutes of various states. However, they do little to explain how other states' consumer protection laws would have given rise to claims that were more valuable than the Ohio Consumer Sales Practices Act claims asserted and litigated in the settled cases. The idea that some class members could recover significant damages under state law based on a claim that a debt collector filed an affidavit in a collection lawsuit that contained accurate information about the debt owed but was not based on personal knowledge is highly speculative and does not justify rejecting the proposed settlement. *In re M3 Power Razor System Marketing and Sales Practices Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010) (certifying national settlement class over objections of California plaintiffs; noting that "California consumer protection laws present differences that are, in the context of this case, both minimal and speculative); *In re WorldCom, Inc. Secs. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) ("highly speculative" objection no impediment to approving class action settlement).

Perhaps the best evidence that the Objectors significantly overestimate the value of the class members' potential state and federal claims is the fact that most of the lawyers who filed affidavit class actions after this Court entered summary judgment in *Brent* alleged only FDCPA

---

[10] In this regard, the Objectors' continual reliance on *Zimmerman v. Zwicker & Assoc.,* No. 09-3905, 2011 WL 65912 (D.N.J. Jan. 10, 2011), is misplaced on several grounds. First, the court in *Zimmerman* was addressing class settlement issues **prior** to granting preliminary approval. Second, even a cursory reading of the factual and procedural background, along with the proposed class settlement, shows that Magistrate Judge in *Zimmerman* was confronted with a completely different proposed settlement than the preliminarily approved class settlement in this case.

claims. Only three of the other affidavit cases assert state law claims: *Vallow* in Illinois, *Gray/Lauber* in Washington, and *Reimann* in California. *Vallow* recently settled on an individual basis and has been dismissed. The consumer protection claims in the *Gray/Lauber* case were subject to a motion to dismiss for failing to allege a cognizable injury, which is an element of that statute, when this Court enjoined litigation of affidavit claims.[11] The consumer protection claims in *Reimann* are brought under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et. seq*.), which is limited to equitable relief. Moreover, those state law claims are very weak since under well-established California Supreme Court precedent, the contents of all litigation pleadings – including affidavits – are protected by the litigation privilege and may not form the basis of any claim. *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993) (holding that privilege barred claims based on contents of pleadings and amended pleadings and noting that "[f]or well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability"); *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058 (2006) (privilege applies to false or perjurious testimony or pleadings). Similarly, the state law fraud claim asserted in the *Franklin* case was dismissed at the pleading stage for failure to state a claim. (Dkt. #18). Memorandum Opinion, pp. 5-6 *Franklin*.[12]

---

[11] Objector Gray points a Washington statute, RCW 19.16.450 as evidence that Washington state law claims have substantial additional value over the claims litigated in the settling cases. This statute provides for the disgorgement of fees and interest for violations of the Washington Collection Agency Act's Prohibited Practices section, RCW 19.16.250, which identifies specific practices as prohibited, for example, collecting debts without a license and not sending proper validation letters. RCW 19.16.250 does not contain a provision analogous to FDCPA § 1692e, and using affidavits where the affiant lacked personal knowledge would not violate any of the provisions of RCW 19.16.250. Significantly, Gray herself did not even plead that the affidavits filed in Washington violated RCW 19.16.250. *See Gray/Lauber* Cplt., ¶¶ 12.1-12.12, attached as Ex. 2 to the Declaration of Michael D. Kinkley. Dkt. #33.

[12] Likewise, as explained in Defendants' Opposition to Pelzer's Motion to Intervene (Dkt. # 52), numerous Michigan federal courts have rejected the phantom Michigan statutory claims that Pelzer alleges may exist against Defendants and their Michigan collection counsel. *See*, *e.g.*, *Taylor v. Midland Credit Management, Inc.*, No. 1:07-cv-582, 2008 WL 544548 at *6 (W.D. Mich. Feb. 26, 2008) (dismissing plaintiff's MCPA claim after plaintiff dropped claim upon

### 4. Any Class Members Who Believe They Can Obtain A Greater Recovery Have The Right To Opt Out Of The Class.

The Objectors attempt to minimize the fact that this an opt-out class. Nevertheless, the opt-out right is the traditional mechanism for protecting the rights of class members who believe they could recover more individually than as part of a class. *See Jerman*, 271 F.R.D. at 576-77. Any class member who believes he or she can obtain a greater recovery by pursuing an individual claim under the FDCPA, FCRA, state consumer protection statutes, or any other legal theory has the right to opt out of the class. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952-953 (7th Cir. 2006) ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently."); *Chakejian v. Equifax Information Services, LLC*, 256 F.R.D. 492, 499-500 (E.D. Pa. 2009) (same). The fact that only 0.2% of the class has elected to opt out strongly suggests that the class members – the overwhelming majority of whom are likely fully aware they owe the debts – do not view their potential claims in the same positive light that the competing class counsel for the Objectors seem to.[13]

### 5. The Benefits To The Named Plaintiffs Are Appropriate.

Finally, the Objectors also assert that the settlement is suspect because the named plaintiffs are receiving $8,000 collectively as well as a complete release of the debts they owe to

---

filing of summary judgment motion making clear that Midland Credit Management was not a "regulated person" under the MCPA); *Calkins v. Midland Funding NCC-2 Corp.*, 412 F. Supp. 2d 699, 709–11 (E.D. Mich. 2006) (granting summary judgment in favor of Midland entities in putative FDCPA/MCPA class action because, among other reasons, Midland Funding's filing of lawsuits did not constitute "doing business" under Michigan law); *Stolicker v. Muller, Muller, Richmond, Harms, Meyers and Sgroi, P.C.*, No. 1:04-cv-733, 2005 WL 2180481 at **7-8 (W.D. Mich. Sept. 9, 2005)(granting summary judgment to defendant debt collection law firm on MCPA claim in false affidavit case, because it was not included within the definition of a "regulated person" under the MCPA.)

[13] Of the opt-outs processed to date, approximately 400 were the result of Mr. Bennett and his firm's misleading opt out campaign. As the Court is aware, Mr. Bennett was ordered to send a second, curative class notice to the class members he purports to represent, in order to remedy the confusion caused by his misleading campaign.

Midland. This argument has no merit. As a preliminary matter, it is well-settled that incentive payments of a few thousand dollars to class representatives are appropriate and will not invalidate a class settlement. *See, e.g.*, *Huguley v. Gen. Motors Corp.*, 128 F.R.D. 81, 85 (E.D. Mich. 1989) *aff'd*, 925 F.2d 1464 (6th Cir. 1991) (holding that named plaintiffs are entitled to more consideration than class members generally); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving $2,000 incentive awards to named plaintiffs); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive awards of $5,000 each to named plaintiffs).

Moreover, unlike the absent class members, the named plaintiffs in this case are providing a <u>general release</u> that gives up <u>all known and unknown claims</u> against the Released Parties. Settlement Agt., § D.2. Unlike the absent class members, the named plaintiffs do not have the option of seeking to vacate their judgments on the ground that the debts were not owed. The named plaintiffs are getting more because they are giving up more.[14]

### 6. The Injunctive Relief Provision Provides A Substantial Benefit To The Class.

The Objectors, relying solely upon Mr. Gardner's subjective opinion, disapprove of the substance of the Stipulated Injunction, which they assert is inadequate. This objection is, again, based on a misunderstanding of the facts of this case. In September 2009, this Court enjoined Midland from "using form affidavits that falsely claim to be based on the affiant's personal

---

[14] The Objectors insinuate that the only acceptable resolution in this case would have been vacatur of all of the judgments Midland obtained against the class members. This is contrary to this Court's rulings in the *Brent* case (upon which the Objectors' counsel built their competing class actions). *See* Brent MSJ Op. at 12 ("In finding assertions in the affidavit to be false and misleading, this Court is not concluding that all of the information in the affidavit is incorrect. Brent has provided no evidence that the amount of the debt, the fact that it is unpaid, or other vital account information, is false."). Further, relief from the judgment or underlying debt is not a required element of an FDCPA settlement, since FDCPA claims have to do with the method of collecting the debt, not whether the underlying debt is valid. *See Azar v. Hayter,* 874 F. Supp. 1314, 1317 (N.D. Fla. 1995) ("Plaintiff's FDCPA claim has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting the debt.").

knowledge." Memorandum Opinion and Order, *Brent* Dkt. #56. In the related summary judgment opinion, the Court provided guidance on what Midland needed to do to make its affidavits FDCPA-compliant: "Midland, MCM, or JBR could easily prepare a form affidavit that achieved the same goals without being misleading by reflecting the truth, plain and simple. Rather than basing the affidavit on false personal knowledge, they could base it on the accuracy of the records kept and the accuracy of the data." (*Brent* Dkt. #50).

In 2009, Midland had already completely revised its process for generating affidavits so as to be consistent with the Court's order. Once the Stipulated Injunction is in place, Judge McQuade will have the opportunity to review Midland's procedures and determine whether additional modifications are necessary to ensure compliance. Midland respectfully submits that a one-year term for the stipulated injunction is reasonable and sufficient to ensure that the nearly two year old changes in its business practices are indeed permanent, and to make any modifications required by the Judge McQuade. The term is also consistent with stipulated injunctions entered in other cases involving debt collection practices. *See Bellows v. NCO Financial Systems, Inc*., 2009 WL 35468 (S.D. Cal. 2009) (court approved settlement with 12-month stipulated injunction requiring defendant to implement a formal, company-wide training program to ensure compliance with statute governing debt collection).

C. **The Court Approved Notice Meets Applicable Standards.**

Given the history of this case since the Court entered its Preliminary Approval and Preliminary Injunction Orders, it is ironic that the Objectors now offer objections to the notice provided to the class. As this Court is aware, Herring's counsel sent out competing class notice to Virginia class members even before the Court approved class notice was sent by the Class Administrator. This was a tactic designed to stir up opt-outs and create confusion among the class members. However, the Court has already held that any opt-out gained through such

13

improper means is ineffective. (Dkt. # 8). In this regard, the Court ordered Herring's counsel to send out curative notice with Court approved language. Thus far, Herring's counsel has failed to send the notice.

Irrespective, there is nothing to support that the Court approved notice in this case was inadequate or failed to meet Due Process standards. It is axiomatic that '[t]he court has "virtually complete discretion" in determining what constitutes reasonable notice of a class settlement under Rule 23(e), in form as well as method. *International Union et al v. Ford*, 2009 WL 3757040 (E.D. Mich. Nov. 9, 2009) (Cleland, J.), citing 7B Wright & Miller, Federal Practice & Procedure § 1797.6 (3d ed. 2005)." All that the notice must do is 'fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Int'l Union, UAW v. Ford Motor Co.,* 2006 WL 1984363 (E.D. Mich. July 13, 2006)). Such notice "should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Leonhardt v. ArvinMeritor, Inc.*, 581 F.Supp.2d 818, 831 (E.D. Mich. 2008)).

Nevertheless, the Objectors also object to the class notice because they claim it did not inform class members they were losing rights relating to challenge the debts upon which the Defendants may have filed suit. Not only is this objection based on a misreading of the class release, it is contrary to settled law. "[T]here is no principle of law that requires a settlement notice to list every conceivable claim or cause of action that could have been asserted in the litigation." *Mangone v. First USA Bank*, 206 F.R.D. 222, 234 (N.D. Ill. 2001). To the contrary, Rule 23(e) notice is designed to be only "a summary of the litigation and the settlement." 2 *Newberg on Class Actions*, § 8.32, at 8–109; *see also Grunin v. International House of Pancakes,* 513 F.2d 114, 122 (8th Cir.) ("Class members are not expected to rely upon the

14

notices as a complete source of settlement information"), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124 (1975).  Thus, this objection fails as well.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' respectfully request that Objectors' objections be stricken, or in the alternative, rejected and the Class Settlement approved.

Date: July 5, 2011                                              Respectfully Submitted:


*/s/ Theodore W. Seitz*
Theodore W. Seitz
Gary P. Gordon (*pro hac vice* pending)
Dykema Gossett PLLC
Counsel for Defendants Midland Funding, LLC, Midland Credit Management, Inc. and Encore Capital Group, Inc.
Capitol View
201 Townsend Street, Suite 900
Lansing, MI 48933
Tele:  (517) 374-9149
tseitz@dykema.com

Richard L. Stone (*pro hac vice* pending)
Amy M. Gallegos (*pro hac vice* pending)
Hogan Lovells US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tele: (310) 785-4600
richard.stone@hoganlovells.com
amy.gallegos@hoganlovells.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record. I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

>   */s/ Theodore W. Seitz*
>   Theodore W. Seitz

LAN01\236549.1
ID\TWS - 097356/0045