# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**MARTHA VASSALLE, et al.**

          Plaintiffs,

vs.

**MIDLAND FUNDING LLC, et al.**

          Defendants.

Case No. 3:11-cv-0096


Judge David A. Katz

**And Related Cases:**

Case No. 3:08-CV-1434, N.D. Ohio
Case No. 3:10-cv-0091, N.D. Ohio

---

## DECLARATION OF DENNIS E. MURRAY, SR. IN SUPPORT OF SETTLING PLAINTIFFS' MOTION FOR ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

---

I, Dennis E. Murray, Sr, declare as follows:

I am a member in good standing of the State Bar of Ohio.  I am a Senior Partner in the law firm of Murray and Murray Co., L.P.A., counsel for the Plaintiffs, Andrea Brent, Hope Franklin, Martha Vassalle and Jerome Johnson in the above titled actions.  The following statements are based on my personal knowledge and a review of the files in this case and, if called on to do so, I could and would testify competently thereto.

I make this declaration in support of the settling Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Award of Attorneys' Fees and Reimbursement of Expenses.  I am responsible for the litigation of these cases and the negotiation of the settlement embodied in the Settlement Agreement ("Settlement"), executed March 7, 2011. I discuss, in the following order:  (a) a summary of the claims in these cases; (b) a chronology of the litigation and settlement negotiations, including a description of the discovery in this matter, motion practice, mediation and negotiation sessions, which will shed light on the complexity of the issues involved and the amount of work required of Class Counsel in this matter; (c) issues relating to preliminary approval, notice and settlement administration; (d) Class Counsel's experience and views of the Settlement; and (e) the time and expense figures underlying Class Counsel's motion for an award of attorneys' fees and reimbursement of expenses.

## I.  SUMMARY OF CLAIMS IN THIS LITIGATION

On the 17th day of April, 2008, this matter proceeded upon the filing of a collection case against Andrea Brent in the Municipal Court of Sandusky, Ohio.

Upon the filing of the counterclaim by Andrea Brent on the 19th day of May, 2008, the matter was removed to this court.

On the 1st day of December, 2008, in the First Amended Complaint in the *Brent* case, the operative complaint in this action, Brent alleges that in the affidavits used by Midland in debt collection lawsuits, falsely state that the Midland employee affiant had personal knowledge of the facts to which he or she swears. Brent further alleges that the use of these false affidavits in court collection actions are an unfair and deceptive practice in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA) and the Ohio Consumer Sales Practices Act, O.R.C. § 1345 et seq. (OCSPA).

Midland denied that there was any falsity to the affidavits. They contended that it was permissible for the debt collector to rely upon the validity of the information provided to it at the time Midland purchased the debt from another debt collector or the original creditor. They also denied that they could be considered a "supplier" under the OCSPA and that the statute did not apply to debt collectors.

Brent alleged that Midland was a "supplier" under the OCSPA and was not entitled to a bona fide error defense. Therefore, the provision of an affidavit to a court containing information that the affiant swears is based upon personal knowledge, when it is not, is an unfair and deceptive practice which is in violation of both the FDCPA and the OCSPA. On March 31, 2009, the Brent court denied a nationwide class certification, based upon the timeliness of the motion for same.

In December 2009, Hope Franklin (along with a co-Plaintiff, Thomas Hyder) filed a related class action lawsuit against Midland. Franklin alleged, on behalf of herself and a nationwide class, that Midland filed affidavits in state courts throughout the United States that contained false attestations of personal knowledge. The *Franklin* action stated common law

claims for "unintentional and/or Intentional Misrepresentations Resulting in Individual and Class Damages" and sought certification of a nationwide class.

Class Counsel conducted considerable research on the consumer protection *statutes* and the common law of the State of California, the principal place of business of the Defendants, in the summer of 2010.  Class Counsel drafted and was prepared to file a class action complaint in the State of California, on behalf of two California residents who had been sued by Midland and in which lawsuits Midland used an affidavit.  Class Counsel located local counsel in California to assist.  Ultimately, however, we decided not to pursue these cases, when further research concluded that we could not maintain a nationwide class action applying California law in order to vacate default judgments.

In January 2011, Martha Vassalle and Jerome Johnson filed a class action lawsuit against Midland.  Vassalle and Johnson alleged that Midland regularly filed affidavits in state courts throughout the United States that contained false attestations of personal knowledge.  The *Vassalle* action sets forth three common law causes of action:  Fraudulent Misrepresentation; Negligence; and Unjust Enrichment.

## II. CHRONOLOGY OF THE LITIGATION AND SETTLEMENT

### A. Discovery

Discovery in these matters was extensive and spanned the course of two years.  Class Counsel deposed Midland witnesses on the relevant issues, including (1) the procedures for printing and signing the affidavits used in collections; (2) the purchase of debts and the information received by Midland upon purchase; (3) the availability of account information in the Midland computer system; (4) how account information in the Midland computer system was utilized; (5) how accounts were referred to collection attorneys for suits through the business

logic component of Midland's computer programming; (6) the role of the affiants in the collection process; and (7) the organizational structure of the Midland defendants. Andrea Brent Schwarzentraub and her husband, Jon Schwarzentraub, each appeared for depositions.

Class Counsel also conducted substantial written discovery.  Class Counsel served four sets of interrogatories on Midland and four sets of requests for production.  In response to these discovery requests, Midland produced more than four hundred documents, which Class Counsel analyzed.  Class Counsel also responded to several sets of written interrogatories and of requests for production from Midland.  Additional discovery was sought and obtained to prepare for mediation and settlement discussions.

The discovery process was protracted and difficult.  The parties had numerous discovery disputes.  Ultimately, the Court was forced to intervene in contested discovery matters.

**B. Motion Practice**

On February 19, 2009 Brent filed a Motion for Summary Judgment on Midland's liability for the asserted FDCPA and OCSPA violations.  On February 20, 2009 Midland filed its Motion for Summary Judgment, asserting that it was not liable under either the FDCPA or the OCSPA.

On August 11, 2009, following extensive briefing the Court denied Midland's requests and found that Midland had violated the FDCPA and OCSPA by attempting to collect a debt using a false affidavit.

In the August 11, 2009 Order, the Court also issued an injunction, enjoining Midland from using false affidavits in attempts to collect debts any place in the United States.

Midland filed a Motion for Reconsideration of the August 11, 2009 decision which Class Counsel opposed.  The Court made some modifications in the August 11, 2009 Order, but nevertheless ordered that the injunction stand.

On January 22, 2010, Midland filed a Motion to Dismiss the *Franklin* Complaint. Class Counsel opposed this motion. However, on October 6, 2010, the Court granted Midland's motion and dismissed the case. Franklin immediately appealed this decision to the Sixth Circuit.

On March 24, 2010, Class Counsel filed a Motion for Class Certification in the Brent case. Midland challenged every aspect of the class certification, asserting that the class proposed could not meet a single element necessary for certification under Fed.R.Civ.P. 23(a) or (b).

On May 26, 2010, Midland next filed a Motion for Partial Summary Judgment as to Brent's claim for actual damages, arguing that any damages Brent incurred were the result of the debt collection action itself. Midland argued that actual damages were not established by this Court's determination of an FDCPA violation. Class Counsel vigorously opposed this motion.

On November 4, 2010, the Court rendered an Opinion certifying a class of individuals who were sued by Midland on or after June 16, 2007, where a form affidavit was filed with a court in which a Midland employee swore that the statements made in the affidavit were based upon personal knowledge.

In the November 4, 2010 Opinion, the Court also granted summary judgment to Midland on the issue of Brent's actual damages. The Court found that any actual damages arose from the lawsuit filed by Midland and were not the result of the false representation in Midland's affidavit that alleged it was based upon the affiant's personal knowledge.

**C. Mediation**

In August 2009, after the decision of the Court on Midland's liability on Summary Judgment, Midland sought to engage in mediation. Class Counsel opposed the suggestion of mediation. The Court ordered the parties into mediation with the Honorable Richard McQuade (Ret.).

The parties first met with Judge McQuade on October 29, 2009.  In preparation for the mediation session, Class Counsel sought additional discovery from Midland.  Class Counsel drafted and submitted an extensive mediation statement to Judge McQuade discussing the strengths and weaknesses of the case with proposals for settlement.

On October 29, 2009 the parties participated in mediation with Judge McQuade.  The parties engaged in intense discussion and negotiations at that session, which lasted the entire day.  The parties left the mediation session without a settlement.  Class Counsel reluctantly agreed to continue to attempt resolution through further mediation.

Additional, all-day mediation sessions with Judge McQuade were held on December 8, 2009, June 29, 2010 and September 10, 2010.  These were all unsuccessful.

In the meantime, the parties in *Franklin* were scheduled for Mediation with the Sixth Circuit Mediator.  Formal mediation discussions began on December 22, 2010 with the Sixth Circuit.

On January 28, 2011, the parties participated in a settlement conference in the courtroom of the Honorable David A. Katz.  These settlement negotiations that had begun at the January 28, 2011 settlement conference continued over the next two weeks, and on Friday, February 11, 2011, the parties reached an agreement-in-principle to resolve the litigation.

After the agreement-in-principle, the parties could not agree to the final settlement agreement.  It required the mediation services of the Court to finally arrive at the final settlement agreement.  This agreement-in-principle was memorialized into a settlement agreement that was presented to the Court on March 9, 2011. Finally, the parties also sought a preliminary injunction enjoining parallel litigation of any claims to be released by the settlement and any attempted mass opt-out.

## III.  PRELIMINARY APPROVAL, NOTICE AND CLAIMS ADMINISTRATION

The Court issued the Preliminary injunction against parallel litigation on March 10, 2011 and granted preliminary approval of the Settlement on March 11, 2011.  The Court approved the Class Notice and appointed Class Action Administration as Settlement Administrator.

Shortly after the preliminary approval of the Settlement and the issuance of the preliminary injunction, and before the Class Notice had been mailed, Class Counsel began receiving opt-out requests from Class Members in Virginia.  Two of the Virginia Class Members who had prematurely opted-out, Ann Rubio and Gilbert James, filed a Special Appearance in the Court, through Leonard Bennett, an attorney with Consumer Litigation Associates ("CLA"), to contest personal jurisdiction and to file a motion for relief from the preliminary injunction.  Class Counsel discovered that Consumer Litigation Associates had sent solicitation letters to 7,500 individuals in the state of Virginia who had been sued by Midland.  Those individuals who responded to the solicitation letters and entered into a representation agreement with CLA were advised by counsel to opt out of this Class.

Consumer Litigation Associates also filed a motion to intervene on behalf of Ladon Herring, another Virginia resident, along with a motion for clarification of the Order granting the preliminary injunction against parallel litigation.  The State of Minnesota also filed a motion seeking a clarification of the preliminary injunction.

Class Counsel filed responses to each of these motions.  The Court held oral argument on April 6, 2011.  After oral argument, Class Counsel prepared and filed a post-hearing brief. The Court issued an Order clarifying the Preliminary Injunction on May 17, 2011.  Ladon Herring was granted leave to intervene in that same Order.

Intervenor Herring sought discovery from Class Counsel and Midland. The parties also sought disclosure of the nature of the solicitations and the names to whom they were sent in Virginia from Consumer Litigation Associates. These matters were hotly contested and resulted in several telephone conferences with the Court.

### B. Dissemination of Settlement Notice to Class

Between April 12, 2011 and April 20, 2011, CAA caused approximately 1,443,897 copies of the Class Notice, approved by the Court to be sent by mail to Class members identified from Midland's database. See accompanying declaration of Matthew Pohl ("Pohl Decl.") at ¶8, which is attached hereto as **Exhibit 1**. In addition, a Class Notice was published in USA Today on April 18, 2011 and April 21, 2011. See *id.*

Class Counsel worked closely with CAA to ensure the dissemination of the Class Notice in accordance with the Court's order granting preliminary approval.

### C. Claims and Settlement Administration

Class Counsel also directed and supervised the initiation of the settlement website, www.BrentSettlement.com. See Pohl Decl. at ¶6. The website provides Class Members with important dates regarding the Settlement, answers to frequently asked questions, instructions on filing a claim, as well as copies of relevant pleadings. *See id.* at ¶7. Class Members had the option for file a claim on-line on the settlement webpage. *See id.*

Under Class Counsel's direction and supervision, CAA established a toll-free interactive voice response system which provides information regarding the terms of the Settlement, and answers frequently asked questions. See Pohl Decl. at ¶7. Class members could also speak with a live representative of CAA. *See id.* Also per Class Counsel's instructions, CAA placed a box

9

on the website for Class Members to e-mail CAA with any questions or to request additional information.

Class Counsel also expect to expend additional time administering the Settlement, working with CAA to determine valid claims and ensuring that all Class Member claims that are timely and valid are fulfilled, and obtaining an order from the Court for distribution of the cash payments to Class Members who have submitted timely and valid Claim Forms, among other things. Based upon telephone conversations monitored by the Court, it may also be necessary to defend the settlement agreement in the Sixth Circuit Court of Appeals.

### D. Claims Rate/Class Member Responses

To date, CAA has received more than 139,941 Claim Forms. *See* Pohl Decl. at ¶10. There have been 4,547 requests from Class Members for exclusion from the Settlement. *See id.* at ¶11.

To date, Class Counsel has received 57 objections. All objections received have been electronically filed with the Court by Class Counsel.

Class Members who had questions which could not be answered by CAA have contacted Class Counsel. Class Counsel designated Rhonda Rice, a paralegal, with 25 years experience in the firm, to respond to Class Member inquiries. To date, Class Counsel have responded to more than 100 telephone calls, e-mails and letters from Class Members. Class Counsel have responded to all inquiries to date in a timely manner.

## IV. CLASS COUNSELS' EXPERIENCE AND VIEWS OF THE SETTLEMENT

The proposed Settlement provides non-monetary relief that addresses the debt collection violation described in the Complaint, and a fund for cash payments to the Class. This Settlement

represents a fair, reasonable and adequate recovery for the Class, which was achieved as a direct result of the aggressive and effective lawyering skills of Class Counsel.

The defenses proffered by Midland raised additional issues, including whether Class Members had suffered compensable actual damages and the limitation of damages in a class action under the FDCPA and state consumer protection statutes.  If Midland were to prevail on these defenses, the Class could have received substantially less than the Settlement amount.

The Settlement is the result of aggressive and intense litigation against determined and highly competent adversaries, with far greater financial resources.  It was achieved after 16 months of arm's length negotiations.

The Settlement was reached with the assistance of an experienced mediator with further help from the Court.  It was achieved only after Class Counsel had, among other things, conducted extensive discovery, including motion practice before this Court; obtained certification of a Class of Ohio residents, defeated Midland's motion for summary judgment of liability; engaged in extensive arm's length settlement negotiations.

I participated in the settlement negotiations with Midland, which commenced October 29, 2009 and resulted in the Settlement on March 7, 2011,

It is my opinion that the Settlement is, in every respect, fair, adequate and reasonable. My opinion in this regard is based upon the knowledge gained from the extensive investigation, discovery, and motion practice conducted in this case to date.  Attached hereto is **Exhibit 2**, my resume and, **Exhibit 3**, that of Murray and Murray Co. L.P.A.  As the resumes show, Class Counsel have a substantial amount of experience in prosecuting and resolving class actions.  My opinion is also based upon my experience in other class action lawsuits, takes into consideration

the strengths and weaknesses of the claims, defenses and evidence herein, as well as the continued risks of litigation.

By any measure, the Settlement represents a successful conclusion to these cases, accomplished through skillful, aggressive and diligent efforts of Class Counsel.

## V. CLASS COUNSEL'S TIME AND EXPENSE FIGURES

As of June 10, 2011, Class Counsel have expended 2,161 hours in these matters, for a total lodestar of $939,200. Class Counsel have also incurred $10,201.79 in unreimbursed expenses in these matters.

Attached hereto as **Exhibit 4** is the declaration of Fritz Byers, attesting to the reasonableness of the hours expended, the hourly rates, and the amount of attorneys' fees sought by Class Counsel.

For the reasons discussed herein and the accompanying memorandum and declarations, Class Counsel respectfully requests that the Court approve the proposed Settlement as fair reasonable and adequate and that the Court award attorneys' fees in the amount of one million, five hundred thousand dollars and a reimbursement of nine thousand dollars for unreimbursed expenses in the prosecution of these actions.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dennis E. Murray, Sr.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **MARTHA VASSALLE, et al.** | Case No. 3:11-cv-0096 |
| Plaintiffs, | |
| | Judge David A. Katz |
| vs. | **And Related Cases:** |
| **MIDLAND FUNDING LLC, et al.** | Case No. 3:08-CV-1434, N.D. Ohio |
| Defendants. | Case No. 3:10-cv-0091, N.D. Ohio |

## DECLARATION OF MATTHEW E. POHL

I, MATTHEW E. POHL, declare as follows:

1.  I am President of Class Action Administration, Inc. ("CAA"). Except as indicated otherwise, I have personal knowledge of the facts set forth herein.

2.  CAA was retained by counsel for the Class, with the consent and agreement of payment by the Defendants, on or about April 8, 2011 to administer the class action settlement in the above-captioned case (the "Settlement").

3.  On or about March 3, 2011, CAA received class list data from the Defendants. A supplemental list was also provided by the Defendants on or about April 15, 2011. The data included the most current mailing information available from the Defendant's computer systems. For some of the Class Members, a separate address was provided for the law firm currently representing the Class Member in other matters related to the Defendants.

4.  Once combined, the electronic files included a total of 1,443,897 Class Members.

5.  CAA used the US Postal Service's national change of address (NCOA) database to update mailing address information for Class Members, resulting in a final "Class Mailing List".

6.  Prior to April 12, 2011, CAA established a settlement website with the URL

1



www.BrentSettlement.com. Using CAA's EasyClaim website technology, the site allowed Class Members to view important case information as well as file a claim online. As of July 1, 2011, CAA had tracked over 470,900 page views on the website.

7. Prior to April 12, 2011, CAA established a toll-free number which Class Members could call to obtain information about the case and have their questions answered by CAA Associates. As of July 1, 2011, CAA Associates have fielded over 13,600 incoming calls to the toll-free number.

8. Between April 12, 2011 and April 20, 2011, CAA mailed the 1,443,897 Court-approved settlement notice and claim forms ("Notice Packet") to the Class Mailing List. In addition, a Class Notice was published by USA Today on April 18, 2011 and April 21, 2011.

9. As of July 1, 2011, CAA has received 183,362 Notice Packets back as undeliverable. CAA was able to forward 6,314 of the Notice Packets to new addresses provided by the US Postal Service. This means that the net undeliverable rate for the Notice Packet mailing is 12.2%. This rate of undeliverable notices falls within the range of 8% - 12% that CAA typically experiences with consumer class action notice mailings.

10. As of July 1, 2011, a total of 139,941 timely filed claim forms have been submitted, of which 31,741 were submitted online and 108,200 were submitted via the postcard claim form. This represents a 9.6% participation rate, which compares favorably to the following consumer settlements CAA is currently managing:

        a.  Settlement involving internet service subscribers charged an early termination fee with a settlement benefit of $20 to $40. Participation was between 1% and 2%.

        b.  Settlement involving rebate cards for mobile phones with a settlement benefit of $6 per phone affected. Participation rate was less than 1%.

11. As of July 1, 2011, CAA has received 4,547 opt outs from Class Members. Nearly 600 of these opt outs were form letters sent to Class Counsel, which were subsequently forwarded to CAA for processing. (A list of all Class Members who have requested exclusion

from the Settlement will be provided to the Court and the Parties prior to the final fairness hearing.)

12. CAA was forwarded two objections by Class Counsel. No additional objections were received by CAA as of the date of this declaration.

I declare under penalty of perjury under the laws of the United States, and the state of Colorado that the foregoing is true and correct and that this declaration was executed on July 5 , 2011 at Westminster, Colorado.

MATTHEW E. POHL

3

**DENNIS E. MURRAY, SR.**
Murray & Murray Co., L.P.A.
Attorneys at Law
111 East Shoreline Drive
Sandusky, Ohio  44871
E-Mail:  dms@murrayandmurray.com

<u>**Curriculum Vitae**</u>

**Dennis E. Murray, Sr.,** is a senior lawyer and officer in the Sandusky, Ohio, law firm of Murray & Murray.  Murray & Murray is a plaintiffs' trial firm which has, for more than 80 years, focused on complex litigation, but also including litigation related to automobiles and boats; and such diverse issues as toxic torts; security fraud; insurance coverage issues and tort liability, with emphasis on complex discovery issues, including third party discovery; and upon wrongful death and serious injury cases.  Murray & Murray is comprised of 16 lawyers, 11 of whom are members of the Murray family; and, as such, it is believed to be one of the largest and oldest law firms of family origin.

Dennis E. Murray, Sr., is a graduate of the University of Michigan Law School and the College of the Holy Cross.  Mr. Murray is also a Certified Public Accountant.

Mr. Murray has litigated cases in federal and state courts throughout the State of Ohio and in federal courts throughout the United States.  Mr. Murray has had multi-million dollar jury verdicts for trials involving bad faith insurance company misconduct, tortious interference with contractual rights,  negligent training and negligent discharge of firearms; and for automobile and motorcycle liability.  Mr. Murray has been lead counsel in multi-million dollar resolutions of litigation concerning security litigation, leveraged buyouts, insurance litigation, nursing home abuse and, of course, motorcycle, automobile and boating vehicles.  He has litigated numerous class actions in the areas of employment discrimination, securities, toxic



EXHIBIT
2

tort, and commercial litigation in state and federal courts for more than 40 years. Some examples of his class action cases are: *Biechele v. Norfolk & Western Ry. Co.*, 309 F.Supp. 354 (N.D. Ohio 1969) (first environmental class action in Ohio); *Manning v. General Motors Corp.*, 1971 WL 164 (N.D. Ohio 1971) (first civil rights class action in Ohio); *Warner, et al. v. Waste Management, Inc., et al.*, 36 Ohio St. 3d 91 (1988) (first Ohio Supreme Court decision re: environmental and class certification); *Bettis v. Ruetgers-Nease*, No. 4:90-CV-0502 (N.D. Ohio 1990) (environmental contamination); *Miner, et al. v. Figgie, et al.*, No. 93-CV-001575, C.A. No. 94-L-069 (Lake Cty., Ohio 1993) (derivative stockholder litigation); *McConocha v. Blue Cross Blue Shield of Ohio*, No. 3:93-CV-7534 (N.D. Ohio 1993) (consumer insurance); *Shaver v. Standard Oil Co.*, 89 Ohio App. 3d 52 (Huron Cty., Ohio 1993) (consumer; antitrust); *Everett v. Verizon Wireless, et al.,* No. 3:00-CV-7763 (N.D. Ohio 2000) (consumer); *Toledo Blade Pension Plan v. Investment Performance Services,* No. 3:04-CV-7123 (N.D. Ohio 2004) (ERISA violations); *Miller, et al. v. Volkswagen of America,* No. 2004-CV-558, 2008-Ohio-4736 (Erie Cty. Court of Appeals, Ohio 2008) (consumer/automobile protection); *Kreidler v. Western Southern Ins. Co.*, No. 95-CV-157 (Erie Cty., Ohio 1995) (insurance fraud); *Cassidy v. West Marine Products, Inc.,* 2005-CV-564 (Erie Cty. Common Pleas, Ohio 2011) (consumer class action); *Pevits v. Crain Communications, Inc.*, 2009-CV-610H, 2011-Ohio-2700 (Ottawa Cty. Court of Appeals, Ohio 2011) (class action for national subscription agreement) http://apps.co.lucas.oh.us/Courts/Appeals/DecisionsPDF/5055.pdf and *Stammco, L.L.C. v. United Tel. Co. of Ohio,* 2008-Ohio-3845 (Fulton Cty. Court of Appeals, Ohio 2008) (cramming of telephone bills).

Other representative cases in which Dennis Murray, Sr. has litigated are *Phung v. Waste Management* (1994), 71 Ohio St.3d 408; *Zappo v. Homestead Insurance Company* (1994),

71 Ohio St.3d 552; *Leber v. Smith* (1994), 70 Ohio St.3d 548; *Borsick v. State Farm Fire & Cas. Co.* (1994), 68 Ohio St.3d 1221; *Delli Bovi v. Pacific Indemn. Co.* (1999), 85 Ohio St.3d 343; *Polikoff v. Adam* (1993), 67 Ohio St.3d 100; *Borsick v. State Farm Mut. Auto. Ins. Co.* (1993), 68 Ohio St.3d 81; *State, ex. Rel. Ohio Co. v. Maschari* (1990), 51 Ohio St.3d 18; *Crosby v. Beam* (1989), 47 Ohio St. 3d 105; *Miller v. Wikel Mfg. Co., Inc.* (1989), 46 Ohio St.3d 76; *Carney v. McAfee* (1988), 35 Ohio St.3d 52; *Phung v. Waste Management, Inc.* (1986), 23 Ohio St.3d 100; *Yeager v. Local Union 20* (1983), 6 Ohio st.3d 369; *Ruta v. Breckenridge-Remy Co.* (1982), 69 Ohio St.2d 140; *Roberts v. United States Fid. & Guar Co.,* 75 Ohio St. 3d 630 (1996); *Safeco Ins. Co. of Amer. V. White,* 122 Ohio St.3d 562, 2009-Ohio-3718 (Ohio 2009); *Bolling v. Clevepak Corp.,* 484 N.E. 2d 1367 (Ohio App. 6th Dist. 1984); *Phung v. Waste Management, Inc.,* 491 N.E. 2d 1114 (Ohio 1986); *Armstrong v. Marathon Oil Co.,* 513 N.E. 2d 776 (Ohio 1987); *Warner v. Waste Management, Inc.,* 521 N.E. 2d 1091 (Ohio 1988); *Cope v. Metro Life Ins. Co.,* 82 Ohio St.3d 426 (Ohio 1998); *Motorist Mut. Ins. Co. v. Said,* 63 Ohio St.3d 690 (Ohio 1992); *Stepak v. Schev,* 51 Ohio St.3d 8 (Ohio 1990); *Digital v. Analog Design Corp. v. North Supply Co.,* 44 Ohio St.3d 36 (Ohio 1989); *Armstrong v. Marathon Oil Co.,* 32 Ohio St.3d 397 (Ohio 1987); *Weston v. Weston paper & Meg. Co.,* 74 Ohio St.3d 377 (Ohio 1996); *Dowling v. Narragansett Capital Corp.,* 735 F.supp. 1105 (DRI 1990); and more recently class certification in *Cassidy v. West Marine Products, Inc.,* 2005-CV-564 (Erie Cty. Common Pleas, Ohio 2011); *Pevits v. Crain Communications, Inc.,* 2009-CV-610H, 2011-Ohio-2700 (Ottawa Cty. Ct. of App., Ohio 2011) and *Stammco, L.L.C. v. United Tel. Co. of Ohio,* C.A. No. F-07-024 (Fulton Cty. Ct. of App., Ohio 2008).

Mr. Murray is a member of the State Bars of Ohio, Michigan, and Florida and is a member of the Ohio Society of Certified Public Accountants. He is a member of the Bar of the

U.S. District Court Northern District of Ohio, U.S. Court of Appeals Sixth Circuit and U.S. Supreme Court. He is the past president of the Erie County Bar Association; he served five years as a Bar Examiner appointed by the Ohio Supreme Court and on the Committee for the Unauthorized Practice of Law.

Mr. Murray has lectured at seminars in various parts of the State of Ohio concerning class action maintenance as to motor vehicles; security litigation, toxic torts and insurance company duties. Mr. Murray's name appears as lead counsel in numerous cases decided by the Ohio Supreme Court in the last 30 years, including the issues of class certification for many issues, including toxic torts; jury trial entitlement; insurance company duties to insureds and to injured parties; duties owing to minority shareholders; exclusivity of "fair cash value" in squeeze out mergers; whistle blower protection; labor organization liability for tortious misconduct; punitive damage standards and many other extremely significant legal issues.

Dennis E. Murray, Sr. and his wife Peggy were both born and raised in the Sandusky, Ohio area and have been married for more than 50 years. Peggy and Dennis have five children and 13 grandchildren. Four of their five children are lawyers and are also members of Murray & Murray.

**MURRAY & MURRAY CO., L.P.A.**
111 E. SHORELINE DRIVE SANDUSKY, OHIO 44870
www.murrayandmurray.com
(800) 624-3009 (419) 624-3000
Facsimile: (419) 624-0707

The Sandusky law firm of Murray & Murray was founded by brothers, Emmett and Thomas Murray, in 1931. The firm presently has thirteen lawyers exclusively practicing civil complex litigation. Nine of the lawyers are children and grandchildren of the founding partners.

Murray and Murray's overall class action work is also extensive. Murray & Murray has been actively involved in class litigation for 40 years. Examples of some of the cases include:

- *Biechele v. Norfolk & Western Railway Co.*, 309 F.Supp. 354 (N.D. Ohio 1969) (environmental)
- *Nemitz v. Norfolk & Western Railway Co.*, 404 U.S. 37, 30 L. Ed. 2d 198, 92 S. Ct. 185, 62 Ohio Op. 2d 29, 78 L.R.R.M. 2721; 66 Lab. Cas. (CCH) ¶12, 183 (1971)
- *Manning v. Int'l Union and General Motors*, 466 F.2d 812 (C.A. 6, 1972) (Title VII)
- *Raschaks v. General Motors*, 9 Fair Empl. Case No. 1406 (N.D. Ohio 1973) (employment)
- *Frank v. Vulcan Materials Co.*, C.A. No. E-81-16 (Erie Co. Ohio 1981) (environmental)
- *Frazier v. Gold Bond Building Products Co.*, Sandusky County Case No. 79-CV-185 (Ohio 1981) (environmental)
- *Clark v. Pfizer, Inc.*, C.A. No. S-84-7 (Sandusky Co. Ohio 1984) (environmental)
- *Sally V. Neff, et al. v. Celanese Piping Systems, et al.*, Franklin County Court of Common Pleas Case No. 85-CV-04-2279 (Ohio)
- *Harrell v. Marathon Oil Co.*, 32 Ohio St.3d 397, 513 N.E.2d 776 (1987) (securities)
- *Nickels, et al. v. Cedar Point, Inc., et al.*, Erie County Court of Common Pleas Case No. 45323 (Ohio 1987) (securities)
- *Gergely, et al. v. VanVoorhis, et al.*, Erie County Court of Common Pleas Case No. 87-CV-469 (Ohio) (securities)
- *Warner, et al. v. Waste Management, Inc., et al.*, 36 Ohio St. 3d 91, 521 N.E.2d 1091 (1988) (environmental)
- *Pippert v. Akron Coca Cola Bottling*, Erie County Court of Common Pleas Case No. 88- CV-070 (Ohio)
- *Limberios v. Vermilion River Resorts*, Lorain County Court of Common Pleas Case No. 88-CV-101212 (Ohio 1988) (consumer)
- *In re Trustcorp Securities Litigation*, U.S. Dist. Court Case No. 3:89CV7139 (N.D. Ohio 1990) (securities, fraud-on-the-market)
- *Schiller v. BancOhio National Bank*, Franklin County Court of Common Pleas Case No. 90CVH07-5340 (Ohio) (duties of indenture trustee)
- *Dowling v. Narragansett Capital Corp.*, 735 F. Supp. 1105 (D.R.I. 1990) (proxy fraud; investment banking negligence in connection with corporate takeover)
- *Bettis v. Ruetgers-Nease*, U.S. Dist. Court Case No. 4:90-CV-0502 (N.D. Ohio 1990) (environmental contamination)
- *Glatz, et al. v. Dublin Securities, Inc., et al.*, Erie County Court of Common Pleas Case No. 91-CV-274 (Ohio 1991) (state securities law)
- *Glatz, et al. v. Beaman, et al.*, Erie County Court of Common Pleas Case No. 92-CV-058 (Ohio 1992) (state securities law)

1

EXHIBIT
3

- *Miner, et al. v. Figgie, et al.*, Lake County Court of Common Pleas Case No. 93-CV-001575, C.A. No. 94-L-069 (Ohio 1993) (derivative stockholder litigation)
- *Vettel v. Bank One Sidney*, Erie County Court of Common Pleas Case No. 93-CV-155 (Ohio 1993) (consumer)
- *McConocha v. Blue Cross Blue Shield of Ohio*, U.S. Dist. Court Case No. 3:93-CV-7534 (N.D. Ohio 1993) (consumer insurance)
- *Shaver v. Standard Oil Co.*, 89 Ohio App.3d 52 (1993) (consumer; antitrust)
- *Kreidler v. Western Southern Ins. Co.*, Erie County Court of Common Pleas Case No. 95- CV-157 (Ohio 1995) (insurance fraud)
- *Kitchen v. Aristech Chemicals*, 769 F.Supp. 254 (S.D. Ohio 1991) (environmental contamination)
- *Polikoff v. Adam*, 67 Ohio St.3d 100 (1993) (shareholder derivative suit)
- *Smolik v. The Lincoln Electric Company*, Cuyahoga County Court of Common Pleas Case No. 288514 (Ohio 1996) (contract)
- *In Re Corrpro Securities Litigation*, U.S. Dist. Court Case No. 5:95 CV 1223 (N.D. Ohio 1997) (securities)
- *Cope, et al. v. Metro Life Ins. Co.*, 82 Ohio St.3d 426 (1998)(establishing the ability to sue for uniform written misstatements in order to satisfy the Rule 23 predominance requirement)
- *Shaver v. The Standard Oil Company*, 135 Ohio App.3d 242 (Huron Co. 1999)(breach of fiduciary duty)
- *Everett v. Verizon Wireless, et al.,* No. 3:00-CV-7763 (N.D. Ohio 2000) (consumer)
- *Gomez v. Towne Bancorp*, 129 F.Supp.2d 1116 (N.D. Ohio 2000) (breach of contract by stock escrow agent in connection with a best efforts securities offering)
- *Toledo Blade Pension Plan v. Investment Performance Services,* No. 3:04-CV-7123 (N.D. Ohio 2004) (breach of contract)
- *Miller, et al. v. Volkswagen of America*, Erie County Court of Common Pleas Case No. 2004-CV-558 (Ohio 2004) (consumer/automobile protection)
- *Hepp, George et al. v. Michael Brown et al.*, Seneca County Court of Common Pleas Case No. 52964 (Ohio 2004) (fraudulent sale of viatical settlements)
- *Johnson, e t al. v.  Midland Credit  Management,  Inc., e t a l.*, 1:05-CV-01094 (N.D. Ohio 2005)
- *NicSand v. 3M Corp.*, 2005 WL 4707988 (N.D. Ohio 2005), *rev'd*, 457 F.3d 534 (C.A. 6, 2006), *vacated pending en banc decision,* 507 F.3d 442 (C.A. 6, 2006) (concerning the illegality of exclusive dealing agreements those foreclose significant percentages of the retail market)
- *Schemmer, et al. v. ChartOne, Inc.*, 2007 WL 1822274 (N.D. Ohio) (fraud)
- *MPW Industrial Services Group, Ltd.* U.S. Dist. Court Case No. 2:07-cv-442 (S.D. Ohio 2007) (proxy and 10b-5 class action securities fraud)
- *Firelands Reg. Med. Ctr. v. Jeavons*, 2008 WL 4408600 (Erie County, Ohio) (uninsured protection)
- *Midland Funding LLC v.  Brent, et al.,* 3:08-CV-01434, 2009  WL 3437243 (N.D. Ohio 2008) (consumer credit)
- *Molesky, et al. v. State Collection & Recovery Services, Inc.*, Erie County Court of Common Pleas Case No. 2008-CV-0828 (Ohio) (F.D.C.P.A.)
- *Pevets v. Crain Communications, Inc.*, 6th Dist. No. OT-10-023, 2011-Ohio-2700

2

Murray & Murray was one of the pioneer firms in wrongful force-placement of collateral protection insurance ("CPI"). The firm commenced its first CPI class action in 1990. See *Logsdon, et al. v. Fifth-Third National Bank of Toledo*, 100 Ohio App.3d 333 (1994). Murray & Murray has represented several other certified classes involving CPI. Examples include:

- *Ralston, et al. v. Chrysler Credit Corp., et al.*, Lucas County Court of Common Pleas Case No. 90-3433 (04/28/1992 Ohio)
- *Zraik v. Ford Motor Credit Co., et al.*, U.S. Dist. Court Case No. 94-CV-7221 (N.D. Ohio 1994)
- *Smith v. Ford Motor Credit Co., et al.*, U.S. Dist. Court Case No. 3:92CV7390 (N.D. Ohio)
- *Boyd, et al. v. Society Bank and Trust Co., et al.*, Lucas County Court of Common Pleas Case No. 91-1165 (Ohio 01/04/1993)
- *Brown and Rooze, et al. v. Bank One, Lafayette, N.A. and TIG Countrywide Insurance Company*, Case No. 79D01-9509-CT-0048 (Tippecanoe County, Indiana)
- *Lewis v. CINCO Federal Credit Union*, U.S. Dist. Court Case No. 1-95-CV-947 (S.D. Ohio)
- *Mallinson and DeBoer v. Colorado National Bank of Denver et al.*, Case Nos. 95-CV-1899 and 1900 (Denver County, Colorado)
- *Pitts, et al. v. Wachovia and American Security Insurance Group*, File No. 96-CVS-658 (Pitt County, North Carolina)

Murray and Murray has been litigating serious automotive product defect cases for more than a decade, involving class actions and individual cases. Most importantly, Murray and Murray has established itself as one of the leaders in the area of sudden acceleration litigation. The firm has litigated more than two dozen sudden acceleration cases since 1996 in over 15 states. Murray and Murray attorneys have litigated and continue to litigate sudden acceleration cases including,

- *Manigault v. Ford Motor Co.*, 96 Ohio St.3d 431, 2002-Ohio-5057 (Cuyahoga Cty.)
- *Emert v. Ford Motor Co.*, Circuit Court for Blount County Case No. L-9888, Fifth Judicial Dist. at Maryville (TN)
- *Vaughn v. Ford Motor Co.*, Philadelphia County Court of Common Pleas Case No. 3666 (PA)
- *Arroyo v. Ford Motor Co.*, Circuit Court of Dade County Case No. 02-2866-CA11 (FL)
- *Chapman v. Wal-Mart and Ford Motor Co.*, Circuit Court of Baxter County Case No. CIV 97-144 (AR)
- *Jarvis v. Ford Motor Co.*, 283 F.3d 33 (C.A. 2, 2002)
- *Jones v. Ford Motor Co.*, Circuit Court of Fairfax County Case No. 184070 (VA) *Buck v.*
- *Ford Motor Co.*, U.S. Dist. Court Case No. 3:08-cv-00998 JGC (N.D. Ohio) *Currier v.*
- *Ford Motor Co.*, Superior Court of the State of California, Alameda County Case No. RG07328655
- *George v. Ford Motor Co.*, U.S. Dist. Court Case No. 03CV7643 (S.D.N.Y.)
- *Federico v. Lombardi and Ford Motor Co.*, Superior Court of the Commonwealth of Massachusetts, Middlesex County Case No. 00-03841
- *Friedl v. Ford Motor Co.*, U.S. Dist. Court Case No. 03-4198-KES (S.D.D.)
- *Hopkins v. Ford Motor Co.*, U.S. Dist. Court Case No. 1:07-cv68-M (W.D. Ky.)
- *Knoster v. Ford Motor Co.*, U.S. Dist. Court Case No. 3-01-CV-03168 (D.N.J.)
- *Martin v. Ford Motor Co.*, Queens County Supreme Court Index No. 18319/01 (NY)

3

- *Metzger v. Ford Motor Co.*, 93rd Judicial Dist. Court Case No. C-5336-98-B (TX)
- *Motelson v. Ford Motor Co.*, Richmond County Supreme Court Index No. 12660/01 (NY)
- *Pendleton v. Ford Motor Co.*, Supreme Court of State of California, County of Santa Clara Case No. 1-01-CV791602
- *Perona v. Volkswagen-Audi*, Circuit Court of Cook County Case No. 99CH12640 (IL)
- *Phillip v. Ford Motor Co.*, Bronx County Supreme Court Index No. 20337/04 (NY)
- *Rodriguez v. Ford Motor Co.*, Bronx County Supreme Court Index No. 15703/99 (NY)
- *Russell v. Ford Motor Co.*, U.S. Dist. Court Case No. 98CV306-D (D. Wy.)
- *Schmidt v. Subaru*, Rockland County Supreme Court Index No. 011271-09 (NY)
- *Turker v. Ford Motor Co.*, Common Pleas Court of Cuyahoga County Case No. 1:04-CV-01815 (OH)
- *Watson v. Ford Motor Co.*, Common Pleas Court of Erie County Case No. 2000-CV-365 (OH)
- *Watts v. Ford Motor Co.*, Superior Court of the State of California, County of Sacramento Case No. 99AS04959
- *Williams v. Ford Motor Co.*, 131st Judicial Dist. Court Case No. 96-CI-16377, Bexar County
- *Wooten v. Toyota*, U.S. Dist. Court Case No. 3:10-cv-00229-MJP (D.S.C.)
- *Fogarty v. Toyota*, U.S. Dist. Court Case No. 10-cv-000542 (E.D.N.Y.)
- *Byrnes v. Toyota*, U.S. Dist. Court Case No. 2:10-cv-00947-GW-JEM (C.D. Cal.)
- *Lee v. Toyota Motor North America*, U.S. Dist. Court Case No. 3:10-cv-00280 (N.D. Ohio)

Murray & Murray has a very active appellate practice, including a total of over 50 published cases before the Ohio Supreme Court and over 100 published decisions in Ohio. These cases frequently include issues of great social and public importance. Murray & Murray attorneys appear regularly in the Supreme Court of the State of Ohio, appellate districts throughout the State of Ohio, U. S. District Courts, and U.S. Courts of Appeals.

Murray & Murray has argued before the Ohio Supreme Court as amicus curiae on behalf of ATLA in the decision of *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St 3d 415, an Ohio Supreme Court decision upholding the plaintiffs' breach of contract and tortious interference claims against the bank and insurance company respectively. Murray and Murray also recently successfully presented arguments as amicus curiae in *Safeco Ins. Co. of America v. White*, 122 Ohio St.3d 562, 2009-Ohio-3718.

Given the nature of complex litigation, Murray & Murray has been deeply involved with electronic discovery. We recognize that sudden acceleration cases involve not only the physical vehicles and the documents that exist but also those documents which have been hidden and documents t hat third p arties posse ss that esta blish l iability and the i mportant t imeline, e. g., suppliers, testing companies and the various global agencies.

Our cases involve a variety of subject matters including automotive defects and complex commercial issues. While litigating these cases Murray and Murray has engaged in intensive electronic discovery including the use of computer forensics' experts.

Murray & Murray has been able to accomplish much by remaining at the cutting edge of computer and other technologies that have evolved to serve the legal profession. In this regard, our IT systems allow the lawyers to maintain complete access to their desktop and all files anywhere in the United States. The firm also uses a document management system to organize our files, review and transmit various pleadings, keep track of dates and contacts, and generally to coordinate the work among the lawyers in the firm, as well as communications with experts, opposing counsel and the clients themselves.

Our firm has embraced other technologies that maintain our competitive edge. We have for many years utilized digital transcripts and imaged exhibits which have allowed instantaneous exchange of materials, as necessary, and have sharpened the wa y that our lawyers conduct discovery and communicate with associates and experts. In more recent years, we have found that massive-document cases (100,000 documents and up) have been better managed using third party firms which maintain a database formed from as many sources as are relevant to the litigation, e.g., defendants, documents from the plaintiffs, documents from various third parties, and often from government agencies. These are then electronically organized and housed in both a viewable and associated OCR file which can be read and/or searched by the attorneys at the firm, the paralegals and legal assistants working with Murray & Murray, co-counsel, various experts and sometimes clients. In some instances, client costs have been reduced by sharing access to certain aspects of these files with opposing counsel. The professionalism of the lawyers at Murray & Murray has allowed the firm to enjoy relationships with opposing counsel that also work for the benefit of the respective clients by speeding litigation, lowering costs and reducing some of the less productive and less pleasant aspects of modern litigation.

5

## PROFESSIONAL BIOGRAPHY OF ATTORNEYS OF RECORD

**DENNIS E. MURRAY, SR.** received a Juris Doctor degree from the University of Michigan Law School. He received his undergraduate degree from College of The Holy Cross. He has been a licensed and practicing plaintiffs' trial lawyer since 1963. He is also a licensed Certified Public Accountant. He is a member of the Bars of the States of Ohio, Florida, and Michigan and is a member of the Ohio Society of Certified Public Accountants. He is licensed to practice law in U.S. District Court for the Northern District of Ohio, U.S. Court of Appeals for the Sixth Circuit and U.S. Supreme Court. He has had extensive jury trial practice for more than 25 years. He has received multi-million dollar jury verdict awards for trials involving bad faith insurance company misconduct, tortious interference with contractual r ights, ne gligent t raining and ne gligent di scharge o f f irearms; co mmercial and securities litigation and for automobile and motorcycle liability. He has received the highest jury awards in many categories in the State of Ohio. He has had extensive appellate practice in business litigation and, in particular, on the duties applicable to directors and shareholders as they relate to leveraged buyouts in general and, in particular, to management-led leveraged buyouts. He has been lead counsel in multi-million dollar resolutions of litigation concerning security litigation, leveraged buyouts, insurance litigation and motor vehicles. He has litigated numerous class actions in the areas of employment discrimination, securities, toxic tort, and commercial litigation in state and federal courts for more than 40 years. He has had extensive investment experience for more than 25 years. He is a member of the Committee on the Unauthorized Practice of Law, appointed by the Ohio Supreme Court. He is a former 5-year member of the Ohio Board of Bar Examiners, appointed by the Ohio Supreme Court. He has lectured at seminars throughout the State of Ohio concerning class action maintenance as to motor vehicles; security litigation, toxic torts, insurance company duties, and has co-authored articles concerning the constitutionality of sovereign immunity and insurance bad faith litigation. He appears as lead counsel in numerous cases decided by the Ohio Supreme Court in the last 30 years, including the issues of class certification for many issues including toxic torts; jury trial entitlement; insurance company duties to insureds and to injured parties; duties owing to minority shareholders; exclusivity of "fair cash value" in squeeze out mergers; whistle blower protection; labor organization liability for tortious misconduct; punitive damage standards; and, many other extremely significant legal issues.

**W. PATRICK MURRAY** received a Juris Doctor degree from Ohio Northern University in 1962. He received a Bachelor's Degree from the University of Dayton in 1962. He is licensed to practice law in the State of Ohio, U.S. District Court for the Northern District of Ohio, U.S. Court of Appeals for the Sixth Circuit, and U.S. Supreme Court. He is a member of the Erie County, Ohio and American Bar Associations; American Association for Justice; and Ohio Association of Justice. He was President of the Erie County Bar Association from 1987 to 1988. He practices in Products Liability Law, Medical Malpractice Law, Plaintiffs' Trial Practice, and Environmental Law.

**JOHN T. MURRAY** received a Juris Doctor degree from Ohio Northern University, with the distinction of having the highest cumulative average in the graduating class of 1979. He received a Bachelor of Science degree from the University of Dayton in 1974. He is licensed to practice law in Colorado, New York, Ohio, U.S. District Court for the

Northern District of Ohio, U.S. District Court for the Southern District of Ohio, U.S. District Court for the Southern District of New York, U.S. Court of Appeals for the Sixth Circuit and U.S. Supreme Court. He currently serves as the Vice President of the Erie County Bar Association and has been a Trustee of the Erie County Bar Association since 2006. He is former Chairman of the Erie County Court of Common Pleas, General Litigation Courts Committee. He has also served as the Chairman of the Northern Ohio Chapter of United Shareholders of America. He has been a member of the Ohio State Bar Association's Negligence/Litigation Committee since 1985. He is former Co- ch airman of the Ohio Academy of Trial Lawyers Commercial and Business Litigation section and is a member of the National Association of Consumer Advocates, Ohio Association for Justice and American Association for Justice. He has had extensive trial and appellate practice in complex civil litigation including securities, anti-trust and environmental law. He taught International Human Rights Litigation as a Visiting Professor of Law at the University of Donetsk, Ukraine in Fall 2007. He practices in Consumer Law, Commercial Law, Class Actions, Securities Litigation, and Plaintiffs' Trial Practice.

**DENNIS E. MURRAY, JR.** received a Juris Doctor cum laude degree from Georgetown University Law School in 1987. He received a Bachelor of Arts, magna cum laude, from Georgetown University in 1984, Phi Beta Kappa. He is licensed to practice law in the State of Ohio, the District of Columbia, U.S. District Court for the Northern District of Ohio, and U.S. Court of Appeals for the Sixth Circuit. He is the Co-author of *Corporate Constituencies: Whose Corporation Is It Anyway, The Corporate Analyst*, February, 1989; *The Unconstitutionality of Sovereign Immunity in Ohio: Last Stand for the Illegitimate King*, 18 U. Tol. L. Rev. 77 (1986). He has been a Grader f or the Ohio Bar Exa minations since 1995. He served on the Ohio Supreme Court Traffic Rules Committee from 1990 to 1994, and the Erie-Huron Grievance Committee starting from 1992 until 2006. He is the State Representative for the 80th District in the Ohio House of Representatives. He practices in Complex Civil Litigation including investor, antitrust and consumer issues.

**CHARLES M. MURRAY** re ceived a Juris Doctor degree from the University of Dayton in 1991. He received a Bachelor of Arts degree from Xavier University in 1987. He worked as the Assi stant Prosec uting Attorne y in the Adult Felon y T rial Division in Erie County from 1991 to 1993. He is licensed to practice law in the State of Ohio, the U.S. District Court for the Northern District of Ohio, and U.S. Court of Appeals for the Sixth Circuit. He is board c ertified as a Ci vil Tr ial Advoc ate b y the Na tional Bo ard of Tria l Advocacy. He is a member of the Erie County and Ohio State Bar Associations; the Cleveland Academy of Trial Lawyers; American Association for Justice; and Ohio Association for Justice. He is a m ember of the N ational College of Advocacy and the National Board of Trial Advocates. He was appointed by Ohio Supreme Court to service on the Task Force for Jury Service from 2002 to 2004. He is a member of the Erie County Public Defenders' Board, the Sandusky Central Catholic School Board and the State Theatre Board. He practices in Personal Injury, Wrongful Death, Medical Malpractice, and Plaintiffs' Trial Practice.

7

**MARGARET M. MURRAY** received a Juris Doctor degree as a merit scholar from Case Western Reserve in 1996. S he received a Bachelor of Arts degree from College of The Holy Cross in 1993. She is licensed to practice law in the State of Ohio, U.S. District Court for the Northern District of Ohio, U.S. District Court for the Eastern District of Michigan, and U.S. Court of Appeals for the Sixth Circuit. She is a member of the Erie County, Ohio State and American Bar Associations. She is a Trustee of the Ohio Association for Justice and a member of the American Association for Justice. She is also a member of the Amicus Curiae Committee for the Ohio Association for Justice. She worked as an Assistant Prosecuting Attorney for Erie County from 1996 to 1997. Appointed by U.S. Senators Sherrod Brown and George Voinovich, she serves on the United States Senate Judicial Nominations Committee for the Southern District of Ohio. She has lectured on Federal Multi-District Litigation, subrogation, civil procedure, class actions, insurance law and ethics. She is a former president of the Second Harvest Food Bank of North Central Ohio. She is a member of the Ohio State Bar Association Special Committee on Subrogation and a member of the Ohio State Bar Association Subrogation Task Force. She is also a member of the OSBA Legal Ethics and Professional Conduct Committee. She practices in Personal Injury, Complex Litigation, Class Actions, and Wrongful Death.

**JAMES L. MURRAY** received a Juris Doctor degree from Case Western Reserve University in 1997. He received a Bachelor of Arts degree from Boston College in 1994. He is licensed to practice law in the State of Ohio and the U.S. District Court for the Northern District of Ohio. He is a member of the Erie County, Ohio State and American Bar Associations. He is a member of the Ohio Association for Justice and the American Association for Justice. He worked as an Assistant Prosecuting Attorney in the Felony Division of Cuyahoga County from 1998-2002. He is the Vice Chair of the Legal Aid of Western Ohio and Advocates for Basic Equality. He practices in Personal Injury, Discrimination, and Wrongful Death.

**LESLIE O. MURRAY** received a Juris Doctor degree from Case Western Reserve University in 2005 with honors in International Law. She received a Bachelor of Arts degree cum laude from University of Miami in 2002. She is a member of the Ohio Association for Justice, American Association for Justice and the National Association of Consumer Advocates. She is also a member of the Erie County and Ohio Bar Associations and Lawyers without Borders. She serves on the Unlicensed Practice of Law Committee for the Ohio State Bar Association as the District 10 representative. She also serves on the Board of the Boys and Girls Club of Erie County. She worked on the United Nations Mission in Liberia from 2005-2006 in the Department of Peacekeeping Operations: Legal and Judicial Support System Division. She also worked for the Special Court for Sierra Leone in the Office of the Prosecutor in 2004. She also participated in the International Business Studies Program at Westminster University, London, England in 2001 and studied at the Human Rights Center in Galway, Ireland in 2003. She is licensed to practice law in the State of Ohio and U.S. District Courts for the Northern and Southern Districts of Ohio and U.S. Court of Appeals for the Sixth Circuit. She practices in International Human Rights, Consumer Protection, Personal Injury, Class Actions, and Commercial Complex Litigation.

**FLORENCE J. MURRAY** received a Juris Doctor degree from the Ohio State University Moritz College of Law in 2005. She received a Bachelor of Arts from Loyola College of Baltimore in 1991; a Masters in Education from Ashland University in 1995; and a Masters in Business from Case Western Reserve University's Weatherhead School of Management in 1998. Ms. Murray is licensed to practice law in the State of Ohio and the U.S. District Court for the Northern District of Ohio. She is a member of the Erie County and Ohio State Bar Associations and a member of the American Association for Justice and Ohio Association for Justice. She practices Complex Litigation, Commercial, Personal Injury and Class Actions.

**WILLIAM H. BARTLE** received a Juris Doctor degree from Case Western Reserve University in 1975. He received a Bachelor of Arts from Hamilton College in 1971. He attended the Albany Law School of Union University. He is licensed to practice law in the State of Ohio, U.S. District Court for the Northern District of Ohio, Sixth Circuit U.S. Court of Appeals, and U.S. Supreme Court. He is a member of the Erie County and Ohio State Bar Associations, American Association for Justice and Ohio Association for Justice. He practices in Personal Injury Law, Products Liability Law, and Plaintiffs' Trial Practice.

**DONNA JEAN EVANS** received a Juris Doctor degree magna cum laude from Cleveland State University in 2000. She received a Bachelor of Arts degree cum laude from Marian College in 1975. She is licensed to practice law in the State of Ohio and U.S. District Court for the Northern District of Ohio. She is a member of the Erie County, Ohio State and American Bar Associations. She practices in Complex Litigation, Commercial, and Class Actions.

**MICHAEL J. STEWART** received a Juris Doctor degree from University of Cincinnati College of Law in 2007. He is licensed to practice law in the State of Ohio. He practices Appellate Law, Commercial and Consumer Litigation.

**AMANDA AQUINO** received a Juris Doctor degree from Salmon P. Chase College of Law, Kentucky in 2009. She graduated from Miami University in 2005. Ms. Aquino worked as an attorney at Legal Aid of Northwestern Ohio from 2009-2011. She is licensed to practice law in the State of Ohio and the U.S. District Court for the Northern District of Ohio. She is a member of the Erie County, Ohio and American Bar Associations. She practices Personal Injury, Commercial and Consumer Litigation.

**PATRICK O'CONNOR** received a Juris Doctor degree from Cleveland State University College of Law in 2010 after graduating from John Carroll University. He is licensed to practice law in the State of Ohio and the U.S. District Court for the Northern District of Ohio. He is a member of the Erie County and Ohio State Bar Associations. He practices Personal Injury, Appellate Law and Plaintiffs' Trial Practice.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **MARTHA VASSALLE, et al.** | Case No. 3:11-cv-0096 |
| Plaintiffs, | |
| | Judge David A. Katz |
| vs. | |
| | **And Related Cases:** |
| **MIDLAND FUNDING LLC, et al.** | Case No. 3:08-CV-1434, N.D. Ohio |
| | Case No. 3:10-cv-0091, N.D. Ohio |
| Defendants. | |

---

**DECLARATION OF FRITZ BYERS IN SUPPORT OF PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

---



EXHIBIT

4

I, FRITZ BYERS, declare as follows:

     1.     I am over the age of 21 years, of sound mind, and make this declaration based upon my own personal knowledge, or upon information I have obtained as set forth in this Declaration.

     2.     I have been asked by Class Counsel to review and evaluate the propriety and reasonableness of the attorneys' fees and expenses requested by Class Counsel in this Class Action settlement.

     3.     I am an attorney licensed to practice in the State of Ohio and am a member of, among other bars, the bar of the State of Ohio and of the United States District Court for the Northern District of Ohio. My education, work history, bar admissions, publications, appointments, listings, and a sample of legal matters I've handled, resulting in published, are set forth on my Curriculum Vitae, which is attached as an Exhibit to this declaration. I have throughout my career worked from time to time on class-action cases, representing both plaintiffs and defendants.

     4.     As a result of my professional training, study, and experience, I am familiar with the legal standards regarding the determination of an award of reasonable attorneys' fees in the Federal Courts in Ohio in cases in which it is both necessary and proper for such an award to be made. And based on my training, study and experience, I am able to give my professional opinion of the reasonableness of the attorneys' fee and expenses award requested in this action.

     5.     I hold the opinions stated in this declaration to a reasonable degree of professional certainty based upon my education, training, and experience, and on the documents and other information I reviewed in this matter.

6.      In order to render an opinion on the reasonableness of the attorneys' fees and expenses requested, I have reviewed and considered the following:

    a.    Pleadings on file in the United States District Court for the Northern District of Ohio;

    b.    November 4, 2010 Order of the Court granting class certification and dismissing actual damages claim of Brent;

    c.    Memorandum Opinion of October 6, 2010 dismissing the *Franklin* case;

    d.    Draft of a Complaint prepared by Class Counsel for potential filing in California alleging violations of California consumer protection law and common law for use of false affidavits;

    e.    Settlement Agreement of the parties, dated March 7, 2011;

    f.    March 9, 2011 Order of the Court Preliminarily Approving Settlement;

    g.    May 17, 2011 Opinion of the Court granting intervention and deciding other motions;

    h.    *Amicus* brief filed by Attorneys General on June 1, 2011;

    i.    Objection to the Settlement, filed by Kelli Gray on June 3, 2011;

    j.    Objection to the Settlement, filed by Clawson and Herring on June 1, 2011;

    k.    The declaration of Dennis E, Murray, Sr. in Support of Settling Plaintiffs' Motion for Order Granting Final Approval of Class Action Settlement And Award of Attorneys' Fees and Reimbursement of Expenses, filed contemporaneously with this Declaration; and

    l.    Reports of claims made and opt-outs received by Class Action Administration.

7.      As described in the documents I've reviewed, the Named Plaintiffs have asserted claims against Midland for use in debt-collection cases of affidavits containing false representations by Midland employees that the affidavits were based upon personal knowledge of the affiants.  Named Plaintiffs assert that the use of these affidavits violates the Fair Debt Collection Practices Act, various state consumer-protection statues, and the common law.  I

understand from Class Counsel that, as is common in complex class actions, the parties have agreed to settle the Class claims in this litigation in light of the many factual and legal issues remaining, the inherent risks involved in further litigation, including any subsequent appeals, and the desire to avoid a delay in providing benefits to Class Members.

8.      According to Class Counsel: this Court ordered this matter to mediation.  The Honorable Richard McQuade (Ret.) held four day-long mediation sessions over a one-year period.  When this mediation was unsuccessful, the Court engaged the parties in further settlement discussions, which eventually produced the Settlement Agreement that was presented to the Court for approval on March 9, 2011.  Only after the parties had reached an agreement on the substantive terms of the Settlement did they negotiate the matter of attorneys' fees up to one million, five hundred thousand dollars.  Additional reimbursement of expenses up to nine thousand dollars and incentive awards for the Named Plaintiffs totaling eight thousand dollars were agreed upon, but only if there should there be sufficient funds in the Settlement Fund.  For purposes of this Declaration, I am assuming the truth of these statements.

9.      The Settlement provides to each Class Member who submits a Claim Form a monetary payment, anticipated at the time to be approximately $10.00.  The Settlement Agreement provides that Midland will make available an additional five hundred thousand dollars to the Settlement Fund if the fund is insufficient to pay $10.00 to each claimant.

10.      The Settlement also provides that the parties will jointly request this Court issue a "Stipulated Injunction" ordering Midland to create and implement written procedures for the generation and use of affidavits in debt collection lawsuits and appointing Hon. Richard McQuade as a Special Master to monitor Midland's compliance.

11.     Attorney-fee awards in class-action cases are conceptually founded on the "common-fund" or "common-benefit" doctrine.  This doctrine, which originated in common law long before the advent of modern-day class action practice, is premised on the equitable theory, derived from principles of quantum meruit and the related doctrine of unjust enrichment, that the attorneys whose work benefits the class by creation of a common fund or benefit for the class should be compensated based on the aggregate value of the common benefit achieved.

12.     The two dominant methods of determining the reasonableness of an attorney-fee award in a class-action case are, first, the percentage-of-value method, and, second, the "lodestar" approach, which begins with consideration of an appropriate hourly rate for the hours expended, adjusted to take into account other factors, such as the novelty and difficulty of the factual and legal issues involved and the quality of the result obtained.  Based on my knowledge and experience, it appears to me that courts often consider both methods in evaluating a class-action fee request, with each method providing a framework for checking the reasonableness of the fee award produced by the other.

13.     According to Class Counsel, the Contingent Fee Contracts with the Named Plaintiffs provide for attorney fees in the amount of one-third of the total amount recovered.  If that percentage were used, the attorneys' fees to be recovered by Class Counsel would exceed the amount proposed.

14.     According to information I received from Dennis E. Murray, Sr. regarding the work performed by attorneys of that firm in connection with the filing, prosecution, and resolution of this matter, Dennis E. Murray, Sr. spent a total of 1,124 hours and Donna Jean Evans spent a total of 1,037 hours.  I accept the truth and accuracy of those totals and of the description of work performed.  The total hours spent appear to be reasonable in light of the

magnitude of the work described. Mr. Murray indicates his hourly rate is $475 and for Ms.

Evans an hourly rate of $380. Based on my familiarity with the skill and experience of Mr.

Murray and Ms. Evans, I believe these hourly rates to be reasonable.

15.     Assuming a Settlement Fund of $5.2 million dollars, the attorneys' fees

requested is approximately 29% of the total fund. An award of 29% of the value of the fund is,

in my opinion, reasonable in this case under the factors to be considered in determining the

reasonableness of a fee award. Likewise, using the lodestar method, a fee award of $1.5

Million, reflecting a multiplier of approximately 1.5 applied to the amount of $939,200 as

calculated by the lodestar approach, is, in my opinion, reasonable in this case under the factors to

be considered in determining the reasonableness of a fee award. See, e.g., *Lonardo v. Travlers

Indem. Co*, 706 F. Supp. 766 (N.D.. Ohio 2010), following *Ramey v. Cincinnati Enquirer, Inc.*

508 F.2d 1188 (6th Cir. 1974)(applying the *Ramey* factors to a class-action fee request to evaluate

the reasonableness of a lodestar multiplier)

16.     In particular, in evaluating a class-action fee award, the trial court should "seek

guidance" from the following factors: the value of the benefit rendered to the class, society's

stake in rewarding attorneys who produce such benefits in order to maintain an incentive to

others, whether the services were undertaken on a contingent fee basis, the value of the services

on an hourly basis, the complexity of the litigation, and the professional skill and standing of

counsel on both sides. Class Counsel undertook and managed a class action on behalf of over a

million Class Members and achieved extremely favorable results. The information available to

me suggests that Midland is one of the nation's largest debt collectors, with debt collection

activities throughout the United States. Named Plaintiffs challenged the debt collection

procedures used by Midland and were successful in obtaining an injunction and having

Midland's practices of generating and using affidavits in collection lawsuits declared to be in violation of the FDCPA and Ohio statute.  The monetary value of the settlement creates an immediate benefit to the class.  And the prospective injunctive relief, with defendant's compliance to be monitored by a former federal judge, creates significant societal benefits to be realized into the future.

17.     In summary, it is my opinion that the agreed-to fee of one million, five hundred thousand dollars and expense payment of nine thousand dollars is reasonable for the reasons stated in this Declaration.

18.     Under 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Affiant says nothing further.

Date: 4 July 2011          Fritz Byers

7

# FRITZ BYERS

**BUSINESS ADDRESS**

The Spitzer Building, Suite 824
520 Madison Avenue
Toledo, Ohio  43604
Telephone - (419) 241-8013
Telecopier - (419) 241-4215
E-Mail: fritz@fritzbyers.com

**EDUCATION**

### Legal

Harvard Law School, Cambridge, Massachusetts, J.D. 1981

Honors:     Director, Civil Rights Action Committee
            Book Review Editor, Harvard Law Record
            Board of Student Advisors

### Undergraduate

Duke University, Durham, North Carolina, B.A. 1977 (American History and English)

Honors:  Summa Cum Laude, with Distinction in History
         Phi Beta Kappa
         William T. LaPrade Prize in History

**EMPLOYMENT**

-     Solo Practice, Toledo, Ohio (March 1987 - Present)
      Concentration in Communications, Health Care, and Education;
      Appellate litigation

-     Partner, Nathan & Roberts, Toledo, Ohio (February 1983-March 1987)

      Law Clerk to the Honorable William Wayne Justice, Chief Judge, United
      States District Court, Eastern District of Texas (June 1981-August 1982)

<u>**Faculty Appointments**</u>

- Visiting Professor of Constitutional Law, University of Toledo College of Law
  Spring 2008

- Adjunct Professor, University of Toledo College of Law – Communications Law
  2001 to present

## ADMITTED TO PRACTICE:

Supreme Court of Ohio
Supreme Court of Texas
Supreme Court of United States
U S. Court of Appeals for the Sixth Circuit
U.S. Court of Appeals for the District of Columbia
U.S. District Court for the Northern District of Ohio
U.S. District Court for the Southern District of Ohio
U.S. District Court for the Eastern District of Michigan
U.S. District Court for the District of Columbia
U.S. District Court for the District of New Mexico

## PUBLICATIONS

"Consensus Prison Reform: A Possible Dream", <u>Impossible Jobs in Public Management</u>, Hargrove and Glidewell, eds., (University of Kansas Press, 1990)

"Special Masters and Prison Reform: Real and Imagined Obstacles", Ohio State Journal on Dispute Resolution, Spring 1988, Volume 3, No. 2

Contributor, <u>Conference on the Use of Special Masters</u>, Edna McConnell Clark Foundation, Woods Hole, MA, May 1985

"An Egalitarian Interpretation of the First Amendment" Harvard Civil Rights-Civil Liberties Law Review, Vol 16, No. 2 (Fall 1981) (with John Shattuck)

Book in Preparation: <u>The Rights of Access to Public Records, Meetings and Proceedings in Ohio</u>

<u>**Professional Appointments**</u>

- Appointed by the Ohio Supreme Court to the Ohio Board of Bar Examiners; appointed in 1987; reappointed 1992; Chairman 1989-1991

- Member, Board of Development, <u>Oxford Law Dictionary</u>, a joint project of Oxford University Press and the University of Texas Law School to produce a comprehensive legal dictionary, modeled on the historical and lexicographical principles of the <u>Oxford English Dictionary</u>.

- Appointed in March 1986 by United States District Judge Juan M. Perez-Gimenez to serve as Court Monitor in <u>Morales Feliciano v. Barcelo Romero</u> (D.P.R.), litigation involving constitutionality of conditions at all correctional institutions in Puerto Rico.

- Appointed in April 1984 by United States District Judge J. Owen Forrester to serve as Court Monitor in <u>Fambro v. Fulton County</u> (N.D. Ga.), litigation involving the constitutionality of conditions at the Fulton County Jail in Atlanta, Georgia.

- Appointed June 1983 by U.S. District Judge Juan G. Burciaga to serve as Special Master in <u>Duran v. Anaya</u>, litigation involving the constitutionality of conditions at medium, close and maximum security prisons

- Appointed in October 1982 by United States District Judge Anthony Alaimo to serve as Assistant Special Monitor in <u>Guthrie v. Evans</u>, (S.D. Ga.), litigation involving the constitutionality of conditions at Georgia State Prison in Reidsville, Georgia.

## **Professional Listings**

*Best Lawyers in America* –
Listed continuously for fifteen years. Currently listed in six practice areas
Communications Law, First Amendment Law, Media Law, Bet-the-Company
Litigation, Commercial Litigation, and White-Collar Criminal Defense

4

**Sample of Legal Matters Handled - Published Decisions**

*KindHearts for Charitable Humanitarian Development, Inc. v. Geithner*, -___ F. Supp. 2d ___, 2009 WL 251457 (N.D. Ohio 1009)

> Counsel for domestic charity in civil action challenging the actions of the Office of Foreing Assets control in provisionally designating charity as a Specially Designated Global Terrorist and blocking (seizing) the charity's assets pending OFAC's full investigation.  Trial court ruled that OFAC's blocking of charity's assets was an unconstitutional seizure and that OFAC had denied charity of its constitutional due-process right by failing to give the charity adequate notice and an opportunity to defend itself against the government's charges

*In Re Searchf of KindHearts fo Charitable Humanitarian Development*, 594 F. Supp. 2d 855 (N.D. Ohio 2009)

> Lead counsel for domestic charity, challenging an *ex parte* protective order that restricted the charity's and its counsel's access to material seized from charity as part of Office of Foreign Assets Control's investigation into whether charity should be designated a specially-designated global terrorist organization.  Trial court ruled that protective order imposed unjustified burdens on charity's due-process and Sixth Amendments rights to fair and adequate representation of counsel.

*State ex rel Toledo Blade Co. v Seneca Cty Bd of Commrs*, 120 Ohio St. 3d 372

> Original action for writ of mandamus in the Supreme Court of Ohio to obtain access to public records, including emails that governmental officials claimed had been deleted and rendered permanently unrecoverable.  Court issued a writ, requiring the governmental officials to undertake forensic efforts to recover deleted emails.  This holding is the first of its kind in the United States.

*Golden v. Rossford Exempted Village School Dist.* 445 F. Supp. 2d 820 (N.D Ohio 2006)

> Defended school district against claim that district's decision not to permit Christian-themed rock band to play during instructional time violated the band members' free-speech and free-exercise-of-religion rights.  Court granted summary judgment to defendant school district.

*State ex rel. Toledo Blade Co. v. Ohio Bur. Of Workers' Comp.* 106 Ohio St 3d 113 (2005)

> Original action for writ of mandamus in the Supreme Court of Ohio to obtain access to records related to the investment of Bureau of Workers' Compensation funds in rare coins and related activities.  Supreme Court issued peremptory writ of mandamus ordering release of the records.  These

records were the foundation of *The Blade's* Coingate reporting, which was a finalist for the 2006 Pulitzer Prize for Public Service Reporting

*Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004); *Sandusky County Democratic Party v. Blackwell*, 340 F. Supp. 2d 815 (N.D. Ohio 2004); *Sandusky County v. Blackwell*, 361 F. Supp. 2d 688 (N.D. Ohio 2005)

Lead counsel for Sandusky County Democratic Party in suit against Ohio Secretary of State, challenging various actions of the Secretary that violated the federal Help America Vote Act; obtained injunctive relief in the trial court, which was affirmed on appeal, protecting the right of Ohioans to vote in the 2004 presidential election

*State v. Reiner*, 89 Ohio St. 3d. 342 (2000), rev'd and remanded 532 U.S. 12 (2001), on remand 93 Ohio St. 3d 601

Criminal appeal in Supreme Court of Ohio; Ohio Supreme Court reversed conviction on federal constitutional ground; U.S. Supreme Court reversed and remanded for consideration of state-law issues; on remand Ohio Supreme Court again reversed the conviction in a case of first impression involving state constitutional principles

*Ballenger v. State*, 761 So. 2d 214 (Miss. S. Ct. 2000)

Habeas corpus action in Mississippi Supreme Court on behalf of a death-row prisoner.  Court reversed Ms. Ballenger's conviction and death sentence and remanded for new trial on the ground of an improper jury instruction on felony murder

*State ex rel Toledo Blade Co. v. Bd. of Hancock County*, 82 Ohio St. 3d 34 (1998)

Mandamus action in Supreme Court of Ohio to obtain access to records reflecting the terms of a putative confidential settlement of civil-rights litigation against a board of county commissioners

*Early v. The Toledo Blade Company*, 130 Ohio App. 3d 302 (1998)

Defense of libel and invasion-of-privacy suit brought by ten police officers and two civilians, challenging Toledo Blade reports regarding the Toledo Police Internal Affairs Unit's handling of complaints of police misconduct; appellate court affirmed trial court's grant of summary judgment

*Berdyck v. Shinde*, 128 Ohio App.3d 68 (1998)

Claim for prejudgment interest against a hospital for failure to act in good faith in settling a claim of medical negligence; appellate court affirmed trial court's award of prejudgment interest

6

*News Herald v. Ruyle*, 949 F. Supp 519 (N.D. Ohio 1996)

> Injunctive action in federal court to prohibit enforcement of a state-court judge's orders purporting to prohibit news organizations from publishing information about a matter pending in state juvenile court

*Sheets v. Norfolk S. Corp.*, 109 Ohio App.3d 278 (1996)

> Wrongful death claim against railroad company arising out of rail-crossing accident; appellate court affirmed multi-million dollar jury verdict

*Time Warner Entertainment Co., L.P., et al.  v. F.C.C.*, (D.C.Cir. 1995)

> Lead counsel for cable company in multi-plaintiff challenge to rate and other cable-television regulations promulgated by FCC

*State, ex rel. Toledo Blade Co. v. University of Toledo Foundation*, 65 Ohio St. 3d 258, 602 N.E. 2d 1159, 20 Med. L. Rep. 2220 (1992)

> Mandamus action in Supreme Court of Ohio to obtain access under state public records law to records of university foundation; leading case in Ohio on the application of public records law to private entities that discharge public functions

*Fred Powell v. The Toledo Blade, et al.*, 19 Med. L. Rep. (1991)

> Defense of action for defamation and invasion of privacy filed against The Blade by Toledo Police Officer; case arose from Blade's unknowing publication of wrong photograph inadvertently supplied by Police in response to public records request; defense involved determination of application of "actual malice" standard and resolution of claims for false light and misappropriation

*State, ex rel. Toledo Blade Co. v. Economic Opportunity Planning Association*, 61 Ohio Misc. 2d 631, 582 N.E. 2d 59 (1990)

> Mandamus action to obtain access under state public records and public meetings law to records and meetings of private, non-profit corporation to which the State and City had delegated a range of governmental functions; until case cited above, leading case in area

*State, ex rel. Toledo Blade Co. v. Telb*, 50 Ohio Misc. 2d 1, 552 N.E. 2d 243, 18 Med. L. Rep. 1081 (1990)

> Mandamus action to obtain access under state public records law to personnel records of Sheriff's Department; leading case on issues regarding confidentiality of personnel records

*State v. Sanchez*, 79 Ohio App. 3d, 133, 606 N.E. 2d 1058 (1992)

> Successful defense of municipal employee against criminal charges arising from the disclosure of governmental records; established that state law precludes criminal liability for disclosure of public records

*United States v. Barry*, 888 F.2d 1092 (6th Cir. 1989)

> Court of Appeals affirmed trial court's dismissal of indictment; case of first impression, establishing that the Travel Act, 18 U.S.C. §1952, does not apply to purely intrastate use of mail

*Transportation Institute, et al. v. U.S. Coast Guard*, 727 F.Supp. 648 (D.D.C 1989)

> Represented Marine Engineers Beneficial Association, seeking injunction against enforcement of Coast Guard regulations requiring random drug testing of all employees on commercial vessels; trial court enjoined enforcement of regulations as they would apply to MEBA members

*State v. Adams*, 43 Ohio St. 3d 67, 538 N.E. 2d 1025 (1989)

> Retained for Supreme Court appeal involving state speedy trial statute; leading case on application of speedy trial statute to serial indictments for same conduct

*State v. Collins*, 54 Ohio App.3d 134, 561 N.E.2d 954 (1988)

> Successful defense of governmental employees against criminal charges arising out of police "sting" operation; case establishes that the common-law defense of legal impossibility survived the codification of Ohio criminal law.