# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| MARTHA VASSALLE,<br>1426 Lindsley Street<br>Sandusky, Ohio 44870<br><br>and<br><br>JEROME JOHNSON<br>1601 North Larchmont Drive<br>Sandusky, Ohio 44870<br><br>        Plaintiffs,<br><br>vs.<br><br>MIDLAND FUNDING, LLC<br>8875 Aero Drive<br>San Diego, California 92123<br><br>and<br><br>MIDLAND CREDIT MANAGEMENT, INC.<br>8875 Aero Drive<br>San Diego, California 92123<br><br>and<br><br>ENCORE CAPITAL GROUP, INC.<br>8875 Aero Drive<br>San Diego, California 92123<br><br>        Defendants | Case No. 3:11-cv-0096, N.D. Ohio<br><br><br>HON. DAVID A. KATZ<br><br><br>**And Related Cases:**<br>Case No. 3:08-cv-01434, N.D. Ohio<br>Case No. 3:10-cv-0091, N.D. Ohio<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE DECLARATION OF STEPHEN GARDNER** |

Defendants Midland Funding, LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc. (collectively, "Midland"), by their counsel, hereby move this Court for an order striking the Declaration of Stephen Gardner and excluding his opinions and expert testimony under Federal Rules of Evidence 702, 703, and 705 on the ground that his opinions are inadmissible, unreliable, wholly speculative, and fail to meet the minimum standards governing admissibility of expert testimony.  A memorandum in support follows.

## I.    INTRODUCTION

The "expert" declaration Stephen Gardner submitted in opposition to the proposed settlement is inadmissible and must be stricken because it does not come close to satisfying the requirements for expert testimony established by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  Gardner is a lawyer[1] who has apparently been hired by the competing class counsel objectors[2] to opine that the proposed settlement is unfair. In *In re Mexico Money Transfer Litig.*, the Northern District of Illinois rejected Gardner's testimony opposing a proposed class action settlement as mere "suspicion" and "not based on any empirical work".  *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1018, 1032 (N.D. Ill. 2000).  The same is true of his testimony here:  All of Gardner's opinions are bald conclusions that contradict the facts, are contrary to law, and are supported by no data of any kind.  In fact, the entire point of Gardner's testimony appears to be to give the imprimatur of expert approval to the meritless legal arguments being advanced by the competing class counsel

---

[1] Gardner recently made headlines by suing McDonalds for including toys in happy meals.

[2] Gardner states in his declaration that he is being paid $500 per hour for his work, but does not disclose who hired him.  However, Midland notes that Gardner's declaration was electronically filed by local counsel for objectors Herring, Clawson, and Gray.  *Vassalle* ECF Dkt. #26.

objectors--who stand to benefit financially if they can convince this Court to reject the settlement.

For example, Gardner opines that the release in the proposed settlement is improper because it requires class members to give up "all of their rights," including the right to assert claims against Midland for alleged practices that have nothing to do with the claims in the settling cases.  However, the release is not that broad.  Consistent with the rule that a class settlement may only release claims based on the same factual predicate as the settled case, the release only releases claims "arising out of or relating to the Released Parties' use of affidavits in debt collection lawsuits."  Settlement Agreement ("Settlement Agt."), § V.D.1, *Brent* ECF Dkt. #107-1 (emphasis added).  It does not bar claims against Midland that are unrelated to affidavits, it does not prohibit class members from challenging judgments for reasons unrelated to affidavits, and it does not prevent class members from defending debt collection lawsuits. Gardner's opinion on this issue is inadmissible because it is an improper legal conclusion and because it is contrary to the facts.

Gardner also contends that the release is improper because it releases third parties. However, the law is clear that a class action settlement can release, on behalf of the class, all claims against third parties that arise from the same factual predicate as the case being settled. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 109 (2d Cir. 2005).  Gardner's opinion on this issue is both an improper legal opinion and contrary to the law, so it must be excluded.

Gardner also opines that the settlement is "inadequate" because (i) "$10 is not enough to compensate a class member for the effort of completing the claim form, and then waiting for and negotiating a $10 check"; and (ii) the settlement payment does not address the "true damages" in this case.  Again, these are just bald conclusions.  Gardner's conjecture that class members would not bother to submit claims is not supported by any facts.  Similarly, Gardner has not

identified any class members who incurred damages as a result of affidavits made without personal knowledge being filed in debt collection lawsuits, nor has he made any attempt to quantify the damages he speculates must have been incurred. Courts routinely exclude this type of unsupported speculation; this Court should exclude it as well.

Gardner's opinion as to the stipulated injunction provided for in the proposed settlement fares no better. He opines that the stipulated injunction requiring Midland to revise its affidavit practices under the supervision of a former United States District Judge will be less effective than a flat prohibition on filing lawsuits falsely claiming to be based on the affiant's personal knowledge, but he does not explain why he believes this to be the case and he does not appear to even have any knowledge about Midland's current procedures. His main complaint about the stipulated injunction appears to be that if a former District Judge approves Midland's affidavit practices, Midland will have a strong defense to subsequent lawsuits based on its affidavit practices. Gardner Decl., ¶ 16, *Vassalle* ECF Dkt. #26 ("Armed with a court-ordered procedure that is designed only to create reasonable procedures to avoid recidivism on the part of defendants, they can mount a strong defense to any claim based on the use of a false declaration."). This, of course, is not a valid objection.

Gardner's opinions about the class notice fail as well. Gardner claims that the notice is defective because it does not identify all of the Encore entities, does not use precisely the same language to describe the class as the preliminary approval order, does not specifically name all of the released parties or released claims, and requires the class members to do math to figure out the percentage of the settlement that is being paid to Class Counsel. There is no requirement that a class notice contain all of this information. Rule 23(e) notice "is designed only to be a summary of the litigation and settlement," and it "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposal and

to afford them an opportunity to present their objections."  4 HERBERT B. NEWBERG ET AL., NEWBERG ON CLASS ACTIONS §11:53 (4th ed. 2010).  According to his declaration, Gardner is a contributing editor on the NEWBERG treatise, so he should be well aware of this rule, and he provides no rationale for why this case is an exception to it.

Finally, Gardner also opines that the claim form, which requires class members to provide contact information so they can receive their checks, presents an "obstacle" that will reduce the number of class members who will return the form.  This is rank speculation, as Gardner has conducted no surveys, interviews or analysis to validate his conclusion.  Likewise, his assertion that Midland could theoretically use the class members' contact information to collect delinquent debts is wholly speculative and, if accepted, would mean that no class action against a debt collector could ever be resolved because there would be no way to send the proceeds to the class members.

For all of these reasons, and as detailed further below, Gardner's expert declaration is inadmissible should be stricken.

## II.    GARDNER'S OPINIONS DO NOT COME CLOSE TO MEETING THE *DAUBERT* STANDARDS AND MUST BE EXCLUDED

In *Daubert*, the Supreme Court provided a non-exhaustive list of factors for the trial court to consider in its gatekeeping role over expert testimony.  These factors include: (1) whether the expert's methodology can be, and has been, tested; (2) whether the proposition has been subjected to peer review; (3) whether there is a "known or potential rate of error;" and (4) whether there has been "general acceptance" in the scientific community.  *Daubert*, 509 U.S. at 593-94.

Although *Daubert* discussed the admission only of scientific expert testimony, the Supreme Court in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) subsequently held that a trial judge's "gatekeeping" function applies to all expert testimony, not just testimony

based on science.  *Id.* at 141; *see also Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426 (6th Cir. 2007).  "Non-scientific expert testimony must be evaluated pre-trial with an equal degree of exactitude, <u>ensuring not that the expert's testimony is 'known to a certainty,' but that</u> <u>the expert is basing the testimony on the same level of intellectual rigor that characterizes the</u> <u>practice in the relevant field</u>." *Busch v. Dyno Nobel, Inc.*, 40 Fed. Appx. 947, 960 (6th Cir. 2002) (emphasis added; citation omitted).  "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Gen. Electric Co. v. Joiner*, 522 U.S. 136, 147 (1997).

Moreover, <u>it is improper for experts to give legal opinions; expert testimony that</u> <u>expresses legal conclusions must be excluded</u>.  *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994) (recognizing the proper "exclusion of expert testimony that expresses a legal conclusion"); *Grose v. Correctional Medical Services, et. al*., 2009 WL 2741976, *2 (E.D. Mich. Aug. 25, 2009) (same).  <u>It is also improper for experts to give opinions that are contrary to law</u>. *See, e.g., In re Gadolinium-Based Contrast Agents Prods. Liability Litig*., 2010 WL 1796334, *30 (N.D. Ohio 2010) (Polster, J.) (because experts cannot give opinions that are contrary to law, expert would not be permitted to testify that the FDA was responsible for updating the defendant drug manufacturer's safety labeling, when the relevant case law made clear that labeling was the manufacturer's responsibility).  Finally, <u>the Sixth Circuit has long made clear that any opinions</u> <u>by an "expert for hire" should be viewed with suspicion</u>.  *Manitowac Boom Trucks, Inc.*, 484 F.3d at 434; *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 408 (6th Cir. 2006).

### III.    GARDNER'S OPINION THAT THE RELEASE IS OVERLY BROAD IS IMPROPER AND MUST BE EXCLUDED

Gardner's conclusion that the release is overly broad ignores the plain language of the release and therefore is not a proper expert opinion.  *See, e.g., Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1163 (E.D. Wash. 2009) (excluding expert opinion that was based on

speculation and/or erroneous data); *Soldo v. Sandoz Pharmaceuticals Corp.*, 244 F. Supp. 2d 434, 567 (W.D. Pa. 2003) (excluding expert's opinions where they did not fit the facts of the case so did not assist the trier of fact within the meaning of *Daubert* and Rule 702).  As if this were not enough, it also inadmissible because it is an improper legal conclusion, *Berry*, 25 F.3d at 1353-54, and because it is contrary to law, *In re Gadolinium-Based Contrast Agents,* 2010 WL 1796334 at *30.

Gardner opines that the release in the proposed settlement is a "general release" that requires class members to give up "all of their rights" for $10.00, including the right to sue Midland for debt collection practices unrelated to the issues in the settling cases, and the right to vacate the judgments against them for any reason.  Gardner Decl., ¶¶ 35-38, 41.  But this is not what the release says.  Consistent with the rule that a class settlement may only release claims based on the same factual predicate as the settled case, the release was tailored to only release claims "arising out of or relating to the Released Parties' <u>use of affidavits</u> in debt collection lawsuits."  Settlement Agt., § V.D.1 (emphasis added).  It is not a general release.  It does not prevent class members from asserting claims unrelated to the affidavits used in debt collection lawsuits, nor does it prevent class members from challenging the judgments against them on any ground permissible in their jurisdiction other than the ground that an affidavit made without personal knowledge was filed in the case.[3]

Gardner is presumably aware that class action settlements can only release claims by absent class members that arise from the same factual predicate as the settled case.  *TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 460 (2d Cir.1982); *see also Matsushita Electric Indus. Co. v. Epstein,* 516 U.S. 367, 376-77 (1996); *Moulton v. U.S. Steel Corp.,* 581

---

[3] The scope of the release was briefed in Midland's Response to *Amicus Curiae* Brief of the Attorney General of New York, et. al, as well as Midland's Letter Brief dated June 23, 2011. For a more thorough discussion of this issue, Midland respectfully refers the Court to those filings.

6

F.3d 344, 349 (6th Cir. 2009) ("The question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a 'factual predicate' with 'the claims pled in the complaint.'"); *Olden v. Gardner*, 294 Fed. Appx. 210, 220 (6th Cir. 2008) ("Because such [released] claims have an identical factual predicate as the claims pled in the complaint, no problem is posed by their release."). Moreover, there is no risk that the release would be construed to bar claims not based on the same factual predicate as the settling cases because it is "a given that the Release will only be applied insofar as its application conforms to the law." *In re WorldCom Inc. Secs. Litig.*, 388 F. Supp. 2d 319 342, n.36 (S.D.N.Y. 2005) (approving class settlement and rejecting argument that class release could arguably be interpreted as barring claims not based on the same factual predicate as the settled cases). Gardner's opinion as to the scope of the release ignores the plain language of the release and does not take into account the relevant case law regarding the scope of class action releases. His opinion has no discernible foundation whatsoever and therefore must be excluded.

Gardner also believes the release is overly broad because it releases claims against parties who were not defendants in the case, including various Midland entities and Midland's attorneys. Gardner Decl., ¶¶ 34, 39. Gardner seems to be under the impression that the release cannot legally cover claims against the law firms that filed Midland's defective affidavits. However, Gardner completely ignores the rule that a class action settlement may release claims against non-parties where, as here, "'the claims against the non-party being released were based on the same underlying factual predicate as the claims asserted against the parties to the action being settled." *Wal-Mart*, 396 F.3d at 109 (quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *11 (S.D.N.Y. Nov. 26, 2002)); *see also In re Holocaust Victim Assets Litig.,* 105 F. Supp. 2d 139, 143, 160-65 (E.D.N.Y. 2000) (approving class settlement with broad releases

against non-parties, including insurance carriers, other banks, and Swiss governmental entities); 4 HERBERT B. NEWBERG ET AL., NEWBERG ON CLASS ACTIONS § 12:16 (4th ed. 2010) ("A settlement may ... seek to discharge parties who have not been served with process and are therefore not before the court."). Because Gardner's opinion relating to the release of third parties is contrary to the law, it must be excluded. *In re Gadolinium-Based Contrast Agents,* 2010 WL 1796334 at *30.

### IV. GARDNER'S OPINION THAT THE SETTLEMENT IS "FUNDAMENTALLY INADEQUATE" IS IMPROPER AND MUST BE EXCLUDED

Similarly, Gardner's opinion that the settlement is "fundamentally inadequate" fails to satisfy the *Daubert* standard because it is based entirely on unsupported speculation. The Sixth Circuit, along with other courts, have summarily rejected offered with similar filings. *Tamraz v. Lincoln Electric Company, Inc.,* 620 F.3d 665, 668-78 (6th Cir. 2010) (rejecting expert opinion, which was based upon "speculation"). *See also, e.g., American Bearing Co., Inc. v. Litton Industries, Inc.*, 540 F. Supp. 1163 (D.C. Pa. 1982) (expert economist's testimony inadmissible on the grounds that it was too speculative and based on unsupported assumptions); *Higgins v. Diversey Corp.,* 998 F. Supp. 598, (D. Md. 1997) (holding that under *Daubert*, conjecture, hypothesis, subjective belief, or unsupported speculation are impermissible grounds on which to base an expert opinion); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1018 (criticizing expert Gardner's testimony on the grounds that it "was not based on any empirical work").

For example, Gardner opines that "$10 is not enough to compensate a class member for the effort of completing the claim form, and then waiting for and negotiating a $10 check." Gardner Decl., ¶ 6. As a preliminary matter, Gardner's opinion on this point is empirically wrong: over 133,000 class members returned the claim form. Moreover, Gardner plainly has no basis other than his own opinion on which to opine what effort the class members will or will not

put forth to claim the settlement sum.   His opinion on this issue is entirely speculative and therefore inadmissible.   *Floorgraphics Inc. v. News America Mktg. In-Store Services, Inc.*, 546 F. Supp. 2d 155, 179 (D.N.J. 2008) ("'[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony.'") (emphasis added), quoting *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2005).

Gardner also objects to the proposed settlement amount on the grounds that it does not address the "true damages" in this case. Gardner Decl., ¶ 7.   But he does not cite a single example of any class member who suffered "true damages" as a result of an affidavit made without personal knowledge being filed in a debt collection lawsuit, let alone quantify the damages he believes were incurred.   He also does not factor into his conclusion this Court's ruling that although the affidavits may have been made without personal knowledge, there was no evidence that underlying debts were not valid and owed.   *See* Memorandum Opinion (Aug. 11, 2009), p. 12, *Brent* ECF Dkt. #50 ("In finding assertions in the affidavit to be false and misleading, this Court is not concluding that all of the information in the affidavit is incorrect. Brent has provided no evidence that the amount of the debt, the fact that it is unpaid, or other vital account information, is false.").   Similarly, he appears to be unaware of this Court's ruling that Plaintiff Brent had no actual damages as a result of the affidavit.   *See* Memorandum Opinion (Nov. 4, 2010), p. 12, *Brent* ECF Dkt. #104 (Brent's claimed emotional distress appears to have been caused by "the discovery that she was being sued on a debt she did not know about and was unable to pay, and not the representation that the affidavit attached to the Complaint was based on the affiant's personal knowledge.").   In essence, Gardner conducted no analysis of any class member's right to damages, and either ignored or was not told about key rulings from the settling cases that directly bear on the damage issue.   Courts routinely reject this so-called "*ipse dixit* of

the expert" testimony, which has little or no connection to the actual facts. *Jointer*, 522 U.S. at 144-46.

Gardner also neglects to consider the impact of the fact that this is an opt-out class. The opt-out right is the traditional mechanism for protecting the rights of class members who believe they could recover more individually than as part of a class. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 271 F.R.D. 572, 576-77 (N.D. Ohio 2010). Any class member who believes he or she can obtain a greater recovery by pursuing an individual claim has the right to opt out of the class. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-953 (7th Cir. 2006) ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently."); *Chakejian v. Equifax Info. Services, LLC*, 256 F.R.D. 492, 499-500 (E.D. Pa. 2009) (same). All in all, Gardner's opinion as to the adequacy of the settlement is based on pure speculation and fails to even address key facts and law that undermine his conclusion. Accordingly, his opinion is inadmissible and should be stricken.

## V. GARDNER'S OPINION AS TO THE STIPULATED INJUNCTION IS IMPROPER AND MUST BE EXCLUDED

Gardner complains that the injunctive relief in the settlement is inadequate because all the defendant has to do is establish procedures that are "*reasonably assured* to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit." Gardner Decl. ¶10 (emphasis in original). He asserts that this injunction will be less effective than a flat prohibition on filing lawsuits falsely claiming to be based on the affiant's personal knowledge. *Id.*, ¶ 11.

Gardner's opinion is, again, completely without foundation and impermissibly speculative. He does not appear aware that Midland revised its affidavit procedures in 2009 to comply with the guidelines set out by this Court in its Summary Judgment ruling, and he does not analyze whether Midland's current procedures comply with the law. In complaining that an

injunction directed to Midland's procedures would somehow not address the violations found by the Court, he ignores the fact that this Court expressly found that Midland's <u>procedures</u> were the problem. *See* Memorandum Opinion (Nov. 4, 2010), *Brent* ECF Dkt. #104 ("the unlawful aspects of the form affidavit here at issue were a result of the process by which they were produced pursuant to Midland and MCM's general business practices").

Paragraphs 15 and 16 of his declaration reveal Gardner's real problem with the stipulated injunction: Plaintiffs' lawyers will not be able to continue filing "false affidavit" lawsuits against Midland if its practices comply with the law and have been approved by a former United States District Judge. Gardner Decl., ¶ 16 ("Armed with a court-ordered procedure that is designed only to create reasonable procedures to avoid recidivism on the part of defendants, they can mount a strong defense to any claim based on the use of a false declaration."). This is not a valid basis for objecting to the stipulated injunction. Plaintiffs' lawyers do not have a natural entitlement to continue suing Midland into perpetuity for practices that have been corrected.

## VI. GARDNER'S OBJECTIONS TO THE CLASS NOTICE ARE IMPROPER AND MUST BE EXCLUDED

Gardner's opinions about the class notice are also without foundation and inadmissible. *Henricksen,* 605 F. Supp. 2d at 1163; *Soldo*, 244 F. Supp. 2d at 567. Gardner objects to the class notice in part on the grounds that it omits material facts because it does not mention the Encore defendants, the releasing of claims against the debt collection lawyers, the relative payout of the lawyers relative to the class, the one-year limit of the injunction or the amount to be paid to the class. Gardner Decl., ¶¶ 16, 18, 20, 24. However, the first paragraph of the class notice plainly states that the Encore Capital Group is included in the definition of "Defendants" or "Midland." Notice, ¶ 1, Brent ECF Dkt. #107-2. The class members are further informed that they will get a cash payment that is "anticipated to be $10.00 per class member" and the attorneys' fees are $1.5 million under the terms of the settlement. Notice, ¶¶ 6, 14. They are further directed for more

information to Class Counsel, the class administrator, or the settlement website (www.brentsettlement.com), where they can view the settlement agreement in its entirety. Notice, ¶ 19.  The Settlement Agreement states that the Settlement Fund is $5.2-$5.7 million, identifies lawyers as released parties,  and clearly informs the class that the stipulated injunction is for a 12-month period. Settlement Agmt., §V.C.1, V.C.2.(e), V.D.1.

Gardner's opinions are also contrary to the law.  It is well-settled that notice of a class settlement need only "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings."  *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, *38 (E.D. Mich. July 13, 2006) *citing Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982); *see also* 4 HERBERT B. NEWBERG ET AL., NEWBERG ON CLASS ACTIONS §11:53 (4th ed. 2010) ("Notice of a proposed settlement under Rule 23(e) must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the Fairness Hearing.").  A class notice "can practicably contain only a limited amount of information," and, therefore, may properly be limited to "very general descriptions of the proposed settlement." *Int'l Union,* 2006 WL 1984363 at *38.  Thus, the mere fact that the notices do not fully explore certain issues or set out arithmetic calculations of the percentages of recovery as between the class and the lawyers is immaterial.  The class notice in this case is sufficiently detailed to apprise class members of the material terms of the settlement, and the parties have complied with all of the notice guidelines under Federal Rule of Civil Procedure 23(e).

Gardner also relies on the NACA standards to argue that the class notice is deficient.  The NACA guidelines are a set of guidelines for plaintiffs' lawyers in class actions, not legal authority.  *See, e.g., In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1029 (rejecting

Gardner's reliance on the NACA guidelines to support his opinion, and finding that the guidelines are "unofficial and have never been adopted by a court," and that they fail to "persuade this court that the settlements proposed here are inadequate.").

## VII. GARDNER'S OPINIONS ABOUT THE CLAIM FORM ARE IMPROPER AND MUST BE EXCLUDED

Gardner opines that the claim form, which asks that class members fill out their address and phone number so they can receive their check, presents an "obstacle" for class members and will reduce the number of class members who will return the form. Gardner Decl., ¶¶ 6, 27-29. He also opines that the claim form is confusing, because class members can elect to participate in the settlement or opt out using the same form. *Id.*, ¶ 30. This is rank speculation; Gardner does not appear to have surveyed class members or done anything else to validate his conclusory assertions. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1032 (rejecting Gardner's opinion that requirement that opt-outs and objectors offer proof of class membership imposed "unnecessarily high burdens" on class members; Gardner's opinion was based merely on "suspicion" and were contrary to the actual requirements set forth in the notice, which the court found were "minimal" and "not burdensome").[4]

Gardner further objects to the claim form on the ground that class members will be reluctant to provide their personal contact information, such as their address or phone number, because Midland might use this information to collect delinquent debts. Gardner Decl., ¶ 31. Again, this is highly speculative, unsupported by any facts, and if accepted as a premise it would mean that no class action based on debt collection practices could ever be resolved since there would be no way to distribute the proceeds to class members.

---

[4] With respect to the "confusion" issue, Midland notes that, contrary to Gardner's speculation, of the claim forms processed thus far, there were only 84 class members who both opted out and elected to participate in the class – and 54 of them were Virginia consumers who were confused by the misleading opt-out campaign.

## VIII.   CONCLUSION

The proposed settlement in this case is fair and adequate, provides substantial benefits to the class, and should be approved.  Gardner's expert declaration lacks any indicia of credibility, is replete with speculation, lacks foundation, is premised on fundamental misperceptions about the facts of the case, and fails to meet the legal requirements mandated by Rule 702.  Accordingly, the Court should strike Gardner's declaration.


Date: July 5, 2011                                  Respectfully Submitted:


                                                    */s/ Theodore W. Seitz*
                                                    Theodore W. Seitz
                                                    Gary P. Gordon (*pro hac vice* pending)
                                                    Dykema Gossett PLLC
                                                    Counsel for Defendants Midland Funding,
                                                    LLC, Midland Credit Management, Inc. and
                                                    Encore Capital Group, Inc.
                                                    Capitol View
                                                    201 Townsend Street, Suite 900
                                                    Lansing, MI 48933
                                                    Tele:  (517) 374-9149
                                                    tseitz@dykema.com

                                                    Richard L. Stone (*pro hac vice* pending)
                                                    Amy M. Gallegos (*pro hac vice* pending)
                                                    Hogan Lovells US LLP
                                                    1999 Avenue of the Stars, Suite 1400
                                                    Los Angeles, CA 90067
                                                    Tele: (310) 785-4600
                                                    richard.stone@hoganlovells.com
                                                    amy.gallegos@hoganlovells.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.  I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

*/s/ Theodore W. Seitz*
Theodore W. Seitz

LAN01\236548.1
ID\TWS - 097356/0045