\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Martha Vassalle, et. al., : | Case No. 3:11CV0096 |
| Plaintiff : | |
| | And Related Case |
| vs. : | Case No. 3:10CV0091 |
| Midland Funding, LLC, et. al., : | **Kelli Gray's Response Brief Opposition to "Named Plaintiffs' and Defendants' Joint Motion for Order Granting Approval of Class Action Settlement and Memorandum in Support"** |
| Defendants. : | |
| : | |
| : | HON. DAVID A. KATZ |
| : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I.   Introduction

Class counsel and the defendants settled this matter only under the *Vasssalle* case[1] filed January 17, 2011. Defendants are represented by the same attorney as in the *Gray* case filed in 2009. Defendant deliberately concealed settlement negotiation from the Court and Plaintiffs' counsel in *Gray* (requesting continuances of the class certification hearing on phantom grounds) to find a class counsel more amenable to a settlement, more favorable to the defendants in exchange for a large attorney fee. The Virginia counsel also rejected the collusive settlement

offered here. The *Vassalle* settlement is a collusive effort in which class counsel understood the weakness of his case as pleaded and presented to this court. The settlement was not at arm's length due to the lack of viability of the claims made by class counsel. The settlement is designed to protect the defendant from litigating cases in a more favorable litigation posture for the Plaintiffs, which were properly prepared and presented making viable claims within the jurisdiction of the court and the FDCPA.

The court did not ever have subject matter jurisdiction in *Brent*, so all references to the *Brent* matter and efforts in that case are irrelevant since they are void. It was the responsibility of class counsel to bring to the attention of the court the lack of jurisdiction at an early stage in the proceedings. At the time of settlement the court had lost jurisdiction to the court of appeals in *Franklin*. Neither *Franklin* or *Vassalle* alleges an FDCPA violation, and neither could all four named plaintiffs in those two action FDCPA claims are barred via the FDCPA one year statute of limitations.

The FDCPA was enacted because existing laws and procedures were declared by Congress to be inadequate. 15 USC § 1692. The FDCPA has additional remedies beyond those allowed under the rather dubious purely common law claims mad by class Counsel (it is not even clear if state or federal common law is being argued). The nature of the claims settled, the parties released, which class representative will receive what, and what preclusive effect this settlement will have on future litigation are all unsettled and cannot be known without clarification by this court.

II. Burden of the Court to determine whether a proposed settlement is fair, reasonable, and adequate; and motivation of class counsel and Defendants

The Annotated Federal Judicial Center, *Manual for Complex Litigation* § 21.61 (4th ed. 2011) explains the court's role as the gatekeeper and protector of absent class members in

---

[1] The court later acquired jurisdiction for a limited settlement purpose from the court of appeals. The posture of *Franklin* is that it remains dismissed for failure to state a claim.

2

evaluating a class settlement: "To determine whether a proposed settlement is fair, reasonable, and adequate, the court must examine whether the interest of the class are better served by the settlement than by further litigation. **Judicial review must be exacting and thorough**. (emp. added). **The task is demanding because the adversariness of litigation is often lost after the agreement to settle.** The settling parties frequently make a joint presentation of the benefits of the settlement without significant information about any drawbacks. If objectors do not emerge, there may be no lawyers or litigants criticizing the settlement or seeking to expose flaws or abuses. Even if objectors are present, they might simply seek to be treated differently than the class as a whole, rather than advocating for class-wide interests. The lack of significant opposition may mean that the settlement meets the requirements of fairness, reasonableness, and adequacy. On the other hand, it might signify no more than inertia by class members or it may indicate success on counsel's part in obtaining, from likely opponents and critics, agreements not to object. Whether or not there are objectors or opponents to the proposed settlement, the court must make an independent analysis of the settlement terms." David F. Herr, Manual for Complex Litigation § 21.61, p. 487-488 (Ann. 4th ed. 2011).

The Manual warns judges to guard against collusive and unfair settlements "[b]ecause there is typically no client with the motivation, knowledge, and resources to protect its own interest, the judge must adopt the role of a skeptical client and critically examine he class certification elements, the proposed settlement terms, and procedures for implementation." *Id* at § 21.61, p. 310-311. "There are a number of recurring potential abuses in class action litigation that judges should be wary of as they review proposed settlements:

> Conducting a "reverse auction," in which a defendant selects among attorneys for competing classes and negotiates and agreement with the attorney who are willing to accept the lowest class recovery (typically in exchange for generous attorney fees);

3

> Granting class members illusory nonmonetary benefits, such as discount coupons for more of defendants' product, while granting substantial monetary attorney fee awards;
>
> Filing or voluntarily dismissing class allegations for strategic purposes (for example, to facilitate shopping for a favorable forum or to obtain a settlement for the named plaintiffs and their attorneys that is disproportionate to the merits of their respective claims);
>
> Imposing such strict eligibility conditions or cumbersome claims procedures that many members will be unlikely to claim benefits, particularly if the settlement provides that the unclaimed portion of the fund will revert to the defendants;
>
> Treating similarly situated class members differently (for example by settling objectors' claims at significantly higher rates than class members' claims);
>
> Releasing claims against parties who did not contribute to the class settlement;
>
> Releasing claims of parties who received no compensation in the settlement;
>
> Setting attorney fees based on a very high value ascribed to nonmonetary relief awarded to the class.

*Id* at § 21.61, p. 310-311 (Ann. 4th ed. 2011).

    III.    Preclusive Effect of the Settlement if Approved?

Even the "Named Plaintiffs" and Defendants do not agree what claims of putative class members (who have not opted out) will be precluded by the proposed settlement. The release is so overbroad as to be subject to multiple interpretations. The court's clarification of the injunction against parallel litigation is not recognized by these parties as modifying the release. Neither class Counsel nor the defendants presented for final fairness approval a modified or more limited release has been despite the court's order clarifying the injunction to more limited language than the release Dkt. # 8, pp. 9-10. Unresolved questions include (but are not limited to):

4

1. <u>Are Class Members Allowed to show the falsity of the affidavit in a motion to the state court to Vacate state court collection Judgment?</u>

Is a Class member precluded from seeking to vacate the state court judgment entered based on a Midland Credit employee false swearing to "personal knowledge" (necessary in state courts under Rule 56) (and otherwise misrepresenting the facts of the account) in support of Summary judgment or Default based on the falsity of that affidavit or is such a claim precluded?

    a. Defendants say no - Class counsel says it is a non-issue

Significant constitutional concerns of federalism and the parallel court systems are implicated if this court purports to enjoin state courts from their inherent right and duty to vacate judgments entered by a fraud on the court.

Defendants insist that the release include preclusion of mention to the state court that the affidavit supporting a judgment was false and that falsity should be the basis of vacating the judgments. Dkt. # 133, p. 6. (Class members can *only* seek to "vacate judgments on grounds <u>unrelated to the affidavit</u>"). The defendants use syntax and word choice to attempt to obscure the fact that defendants position is that the release precludes class members from seeking to vacate judgments, if they are vacating because to the misrepresentations to the court in these affidavits. But whether judgments based on these false affidavits should be vacated should be a matter of state court concern. Class members should be allowed to inform the state court of the fraud on that state court, and to be able to seek the equitable remedy of vacating the judgment as a remedy for the use of the false affidavit.

Class counsel indicates the issues of "Judgments are not relevant." Dkt. # 127, p. 2. But in

5

order to vacate the judgments the class members must be able to indicate to the state court the misleading nature and falsity of the affidavit used to create those judgments.

Class counsel obtained for the named Plaintiffs the benefit of dismissal of the collection lawsuit as a part of this settlement. The class members did not receive any such benefit. No class representative has a pending collection lawsuit, had to fight the collection lawsuit had a collection judgment entered against them by defendants. Their state court collection cases were dismissed with prejudice as incentive to encourage class representatives to agree to the settlement. No class member has had that benefit. Many have spent thousands of dollars successfully fighting the state court actions which typically is compensated under a federal FDCPA action which would be preclude by this settlement.

Most of the class members had judgments entered against them without the debtor or the court knowing of the falsity of the affidavit used to support the entry of that judgment. Consumer/Debtor /Class members must have the freedom to go to state court to correct the fraud on those courts that has occurred.

2. Is there a Release of Non-defendant third Parties Including State court Collection Mill Attorneys?

The court clarified in the May 17, 2011 Order that "The Court hereby clarifies that its injunction does not apply to persons or entities that are not affiliated with Encore or Midland." Dkt. # 8, p. 10. The court was explaining that that release was not as broad as the intervenor believed since the ruling was made to address "Herring is concerned that the filing of claims against third parties, such as local 'collection mill' law firm that uses a fraudulent affidavit prepared by Midland in state court, will be barred." Dkt. # 8, p. 10.

Now however, (despite the court's clear and unambiguous explanation of the limitation of

6

the injunction) based on the release, the defendants make exactly the same argument rejected by the court, that "the filing of claims against third parties, such as local "collection mill" law firm that uses a fraudulent affidavit prepared by Midland in state court, will be barred." Dkt. # 8, pp. 9-10. Defendants argue the settlement releases "Midland's debt collection attorneys". Dkt. # 133, p. 6.

3. Are the various states regulatory and law enforcement agencies such as Attorneys General, Collection agency regulatory boards, County Prosecutors, Bar Associations Disciplinary Boards, precluded from pursuing actions including remedies for consumers based on the False Affidavits?

This court concluded that the "preliminary injunction does not apply to the action being pursued by the State of Minnesota." Dkt. # 8, pp. 10-11. The defendants seem to argue that all claims that could be encompassed in this settlement are barred and released. The Attorneys General objecting to the settlement note that they not only have a right to bring their own enforcement action and for remedies allowed under their states' laws but also the duty to protect consumers from unfair and collusive settlements which are inadequate to compensate the consumers affected. The reason CAFA specifically required notice of settlements to Attorneys General is Congress' recognition of the importance of the role they play as a gatekeeper to avoid bad settlements. But even though the Attorneys General are notified of all settlements very seldom do they appear and object. It is instructive that 38 have chosen to join to do so. This is particularly true when the court clarified the injunction allowing them to proceed with their own actions. But, yet again, neither the Class Counsel nor defendants offer a modified Release to correspond with the court's interpretation of the settlement.

4. Are Class Members private right of action for violation of other State's Law's Remedies barred by the release? The remedies under the FDCPA (not pleaded in the pending cases) should not be released.

There is no FDCPA claim pending before this court as a part of this settlement. Defendants and Class Counsel simply choose to ignore the court's ruling remanding *Brent* to the state of Ohio Municipal court (where the collection action was dismissed by agreement of the parties) and argue as though there were an FDCPA claim before this court. There is not.

This court never had and does not now have any jurisdiction over any FDCPA claim. Neither *Franklin* nor *Vassalle* plead the FDCPA. Yet defendants ignore this fact and argue extensively in their memorandum about the FDCPA as applied to this case. The FDCPA is not implicated nor remedies under that Act allowed since it was not pleaded in either of the pending action now before this court. Yet, defendants argue that this settlement would bar other (even) pending FDCPA lawsuits against the defendants.

What is unclear is what, if any, legal or factual basis is underpinning the settlement. Fed Rules Civ. Pro. 23(c)(1)(B); Federal Judicial Center, "Manual for Complex Litigation, 4th (2011) ("Class certification Order must define the class and **identify class claims and defense**"). Class Counsel and Defendants agree that based on this court's prior ruling that the class representatives there are no actual damages, that based on the court' prior rulings that the common law claims require reliance and other facts not in evidence here, and/or that based on the court's prior rulings that class representative claims are barred by an arbitration provision. So what are the valid claims here? In other pending cases against these defendants, the cases were pleaded correctly, pursued correctly, on theories of law with merit, in court with subject matter jurisdiction.

Defendants and Class counsel not only cannot identify any valid claims but also cannot even identify any basis for a class period extending back in time to "January 1, 2005". Dkt. # 7,

8

p.1. Since *Franklin* was filed January 15, 2010, and *Vassalle* filed January 17, 2011, what statute of limitations is more than 5 or more than 6 years justifying a class period of that length? There is no conceivable statute of limitation that would allow the class definition.

The *Franklin* and *Vassalle* plaintiffs are Ohio residents making Ohio based common law claims in federal court (under CAFA). None of the class members outside the state of Ohio have a right to make those Ohio based common law claims. Instead, all class members outside the state of Ohio have available to them common law claims from their state as well as statutory claims. The class members should be barred only form making any Ohio state common law claims that they may have.

The *Franklin* and *Vassalle* plaintiffs do not plead any FDCPA claims. The reason for that is simple. Class counsel failed to file either of those actions within the one year statute of limitations of the FDCPA. 15 USC 1692k(d).

Franklin. On December 12, 2007, Midland Funding filed the false affidavit (signed by a Midland Credit employee) against Hope Franklin in Sandusky Municipal Court. *Franklin* Dkt # 1-1, p. 3. ll. *Franklin* Dkt # 1-1, p. 3. ll. On March 29, 2007, Midland Funding filed the false affidavit signed by a Midland Credit employee against Thomas Hyde in Ashland Municipal Court. *Franklin* Dkt # 1-1, p. 3. ll. The *Franklin* suit against Midland Funding and Midland Credit was filed December 9, 2009, *more than one year* from the filing of the false affidavit and therefore FDCPA claims were barred by the statute of limitations. Franklin Dkt # 1-1, p. 5. ¶ 6; 15 USC 1692k(d).

*Vassalle*. On December 7, 2007, Midland Funding filed the false affidavit (signed by a Midland Credit employee) against Martha Vassalle in Sandusky Municipal Court. Dkt # 1, p. 3, ¶ 6. On July 30, 2007, Midland Funding filed the false affidavit signed by a Midland Credit

9

employee against Jerome Johnson in Sandusky Municipal Court. Dkt # 1, p. 3, ¶ 7. On January 17, 2011, *more than one year* from the filings of the false affidavits, the *Vassalle* suit against Midland Funding and Midland Credit was filed. Therefore FDCPA claims were barred by the statute of limitations. *Vassalle* Dkt # 1.; 15 USC 1692k(d).

None of the class representative before this court has standing to bring an FDCPA claim since they are barred by the statute of limitations. None of the class representatives before this court have representative FDCPA claims. The FDCPA is in the nature of a statutory tort with specific prima facia elements and specific broader remedies than the Ohio common law claims plead by the class representatives.

Simply because class counsel failed to timely file the *Vassalle* and *Franklin* cases should not burden class members with a weak settlement that does not include the FDCPA, a powerful federal statutory tool when applied properly. The weakness of these cases (as recognized by this court in its dismissal of *Franklin* and the same allegation in *Vassalle*) lead to a weak settlement. The other plaintiffs in other lawsuits who have done it right should be allowed to pursue their own interests and not be bound by the mistakes in these cases of which they were not a part.

Class members should not be barred from bringing their own FDCPA claims since those FDCPA claims have not been made on behalf of the class members. Class members should not be barred form bring statutory and/or common law claims appropriate to the state where the violation occurred rather than Ohio law which does not apply to them. The settlement and release should bar only the claims before the court, i.e. Ohio common law claims which would only be available to persons sued in Ohio.

IV.     Parties claim of comparable "FDCPA" settlements

The defendants claim to have found three comparable FDCPA class settlements in an attempt to justify what defendants seem to recognize is a de minimums settlement for class members. The only three cases cited by the parties only sought statutory damages of 1% defendants' net worth. 15 USC § 1692k(a)(2)(B). The Defendants in those cases had a low net worth. The statutory damages were between $10,000 to $25,000 dollars with a very large number of class members. *See Catala v. Resurgent Capitol Services*, 2010 WL 2524158 (1% net worth of $25,000 divided by 195,000 class members); *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 2006 WL 3681138 (1% net worth of $10,000 divided by 45,000 class members); *Cope v. Duggins*, 203 F.Supp.2d 650 (statutory damages of $8,000 divided by 5,000 class members).

The net worth of Midland exceeds fifty million dollars. Statutory damages are available *per action*. 15 USC § 1692k(a)(2)(B). The cases cited by the parties were each based on deceptive language in collection letters sent by small local collection agencies and did not include claims for actual damages. The cases are not comparable.

V.      Class Counsel Attorney Fees

The settlement provides more money for Class Counsel's attorney fees than the aggregate of all of the money paid to all 1.44 consumers whose claims were paid or barred by this settlement. There were about 122,000 claim forms filed (out of 1.44 million). At Ten Dollars ($10.00) per claim that equals $1.2 Million. Class counsel is claiming $1.5 Million in attorney fee and cost. Class counsel has not provided a cost bill or affidavit but claims to have spent only approximately $10,000.00. It is unlikely that amount of costs were expended in *Vassalle* filed only in January 2011 with no discovery or *Franklin* which was dismissed at its inception on Fed. Rule Civ. Pro. 12(b)(6) for failure to state a claim. The costs Class counsel are for a case for which this

11

court did not eve have subject matter. It has been remanded to Sandusky municipal court. If any costs are due for a failure to properly analyze the jurisdiction issues, Sandusky municipal court is the forum.

Class counsel has failed to provide any indication, information, or evidence of the hourly rates claimed in order for this court to evaluate the claim for the attorney fee. Class counsel has not filed a detailed affidavit with a description of the time spent or in which case. The court has no basis to evaluate the claim. The lodestar should at a minimum be a cross check against an award of a common fund fee. Class counsel makes a statement of the total hours but does not support it with any documentation. Is class counsel claiming time for the Brent case for which the court has no jurisdiction to award attorney fees? Is class counsel claiming that the five documents pre-settlement in Vassalle (Complaint Dkt #1; Summons Dkt 2; Waiver of Service, Dkt #3; Notice of appearance of Defense Counsel, Dkt # 4; Order transferring the case to Judge Katz, #5) justify a $1.5 Million Dollar attorney fee? In the Franklin case, there was a Summons and Complaint (Dkt. 1, 2) immediately followed by defendants' successful motion for Dismissal (Dkt. 3).

Rule 23(h)(1) calls for the court to fix a time for submission of motions for a fee request. Notice of the fee request must be directed to the class in a reasonable manner. Fed Rule Civ. Proc. 23(h). The notice in this case was of a lump sum request based on a case (now remanded) not properly before the court (lacking subject matter jurisdiction). "The party seeking fees has the burden of submitting sufficient information to justify the requested fees and taxable costs." David F. Herr, Manual for Complex Litigation, p. 559 (Ann. 4th ed. 2011). Class counsel has failed to justify a 1.5 million dollar attorney fee exceeding the actual class recovery of 1.44 million class members.

VI. Conclusion

12

Objection Kelly Gray joins in the filings of objectors Guest (Dkt. # 145), and Herring (Dkt. # 148). Based on the foregoing and the arguments presented by the FTC, State Attorney Generals and the other objectors, Kelli Gray respectfully requests that the Court reject the proposed class settlement in this matter.

        Respectfully submitted,

By  /s/ Michael D. Kinkley
    Michael D. Kinkley
    (*pro hac vice*)
    E-Mail: mkinkley@qwestoffice.net
    /s/ Scott M. Kinkley
    Scott M. Kinkley
    (*pro hac vice*)
    E-Mail: skinkley@qwestoffice.net
    MICHAEL D. KINKLEY, P.S.
    4407 N. Division Suite 914
    Spokane, WA 99207
    Telephone: (509) 484-5611
    Facsimile: (509) 484-5972

    *Counsel for Objector*
    *Kelli Gray*

**PROOF OF SERVICE AND CERTIFICATION**

This is to certify that a copy of the foregoing has been electronically filed with the Court on this 8th day of July, 2011.  Notice of the filing will be sent to the parties by the operation of the court's electronic filing system. The parties may access this filing through the Court's system. Further, this matter has been assigned to the Court's standard track, and the forgoing memorandum complies with the page limitations applicable to the Court's standard track.

                                              By  /s/ Michael D. Kinkley
                                                  *Counsel for Objector Kelli Gray*