IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARTHA VASSALLE et al

    Plaintiffs,                           CASE NO.: 3:11-cv-0096
                Hon. David A. Katz
    vs.

MIDLAND FUNDING LLC, et. al.,         And Related Cases:
                                                        Case No. 3:08-cv-1434, N.D. Ohio
    Defendants.                          Case No. 3:10-cv-0091, N.D. Ohio
                                                       Case No. 3:11-cv-1332, N.D. Ohio

**<u>OBJECTOR ELAINE PELZER'S MOTION FOR ATTORNEY'S FEES</u>**

        Pursuant to Fed.R. Civ. P. 23(h) and 54(d), Objector Elaine Pelzer, through her attorneys, moves for attorney's fees to be paid from the common fund of fees awarded to class counsel.

        This Court preliminarily approved the class settlement among the parties to this litigation. Ms. Pelzer and others, including the thirty-three state Attorney Generals, objected to the revised settlement on grounds that it is still not fair or reasonable to the class members. This petition is submitted in the event that this Court rejects these and issues a final approval order as to the class settlement.

        Ms. Pelzer's work on the class settlement and notice since 2011 has resulted in improvements to these documents, and she submits she should be awarded compensation for fees and expenses. While Counsel for Ms. Pelzer has incurred more than $85,000 in fees and costs from the initial date of objection through the revisions to the class notice, Counsel has exercised billing judgment and requests $35,000 for work during that time period as more fully set forth in the supporting brief along with $942.08 in costs incurred for a total of $35,942.08.

        Respectfully Submitted,


        <u>By: s/ Ian B. Lyngklip</u>
        Ian B. Lyngklip (P47173)
        LYNGKLIP & ASSOCIATES
        CONSUMER LAW CENTER, PLC
        Attorney For Elaine Pelzer
        24500 Northwestern Highway, Ste. 206
        Southfield, MI 48075
        (248) 208-8864
Dated: April 25, 2014        Ian@MichiganConsumerLaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MARTHA VASSALLE et al, | |
|     Plaintiffs, | CASE NO.: 3:11-cv-0096 |
|         Hon. David A. Katz | |
|     vs. | |
| MIDLAND FUNDING LLC, et. al., | And Related Cases: |
| | Case No. 3:08-cv-1434, N.D. Ohio |
|     Defendants. | Case No. 3:10-cv-0091, N.D. Ohio |
| | Case No. 3:11-cv-1332, N.D. Ohio |

**BRIEF IN SUPPORT OF**
**OBJECTOR ELAINE PELZER'S MOTION FOR ATTORNEY'S FEES**

### Introduction

Ms. Pelzer has successfully asserted the rights of the unnamed class members in this case through appeal and continued work before this Court.  Those efforts have resulted in tangible improvements to the class settlement and class notices for the benefit of the class.  Accordingly, she brings this motion under Fed.R.Civ. P. 23(h)  for an award of attorney's fees in the amount of $35,000 and costs in the amount of $941.08.

### Summary of Ms. Pelzer's Work

The underlying facts of the class case are straightforward.  Midland uniformly falsified affidavits that it filed in state court collection actions.  Specifically, this Court found that Defendants routinely used affidavits in debt collection actions that included "false and misleading" statements about the affiants' personal knowledge of the affidavits' facts.  *Midland Funding LLC v. Brent*, 644 F.Supp. 2d 961 (N.D. Ohio, 2009).  Midland used these falsified affidavits to obtain judgmetns

against the class members. Midland entered a default judgment against Ms. Pelzer her based on one of the same false affidavit forms at issue in this case. She is a class member and received class notice.

Ms. Pelzer believed the class settlement was fundamentally flawed and unfair. As such, since 2011, she has worked to improve the class settlement and advance the interests of the class members. This work resulted in tangible improvements to the class settlement and class notice.

Ms. Pelzer's efforts to improve the class settlement began in June 2011 when she moved to intervene to conduct discovery into the fairness of the settlement. Specifically, she challenged the compensation to the class members relative to the release provided to Defendant. (R. 20). She sought to preserve the rights of class members to challenge judgements taken against them and to assert valuable state law claims. (R. 20 at PageID 92-93.). She then objected on the grounds that the offered relief of approximately $10.00 was inadequate in light of the broad release of rights included in the settlement (R. 42) and appeared at the Fairness Hearing through counsel. (R. 152) In addition to filing her own objections, Ms. Pelzer joined (R. 149) Clawson and Herring's joint memorandum in opposition to the motion for approval of class settlement (R. 148).

The Court ultimately approved the settlement over these objections (R. 160). Following approval, Ms. Pelzer appealed to the Sixth Circuit and collaborated with co-objectors to successfully challenge the settlement. (R. 167). Here again she argued that the release of the right to seek to vacate the underlying judgment rendered the class settlement unfair in light of the compensation offered, and waiver of state-based rights of action. Additionally, she argued that the class notice violated due process as it failed to adequately apprise members of the release of these claims against defendants. She appeared and argued at the hearing before the Court of Appeals through the

undersigned counsel on October 2, 2012.    (Docket Sheet for Court of Appeal, Exhibit 5).

The Court of Appeals adopted the Ms. Pelzer' position that the class settlement was unfair. In its opinion, the Sixth Circuit agreed that the settlement was not superior, offered "perfunctory" relief, failed to protect the class members' "most important" interests, and failed to adequately notify the class members. (R. 206).   The court noted that the class representatives received the primary benefit of the settlement, exoneration of the underlying debt, but denied the unnamed class members this "most important" benefit.  As the Court stated, "the settlement actually prevents the unnamed class members from using Midland's use of false affidavits against Midland in any other lawsuit, virtually assuring that Midland will be able to collect on these debts." *Vassalle v Midland Funding, LLC*, 708 F.3d 747, 755 (6th Cir. 2013).  It also adopted Objector/Appellants' position that the notice violated due process as it was "insufficient to notify a non-attorney class member that by not objecting, he or she loses the right to use Midland's false affidavits against Midland in their debt-collection actions." *Id.* p. 759.    The Court of Appeals struck the settlement and remanded for further proceedings. *Id*.

Following the Sixth Circuit opinion, Defendants continued to appeal, ultimately filing an *en banc* petition as well as a petition to the United Stated Supreme Court.  Counsel for Ms. Pelzer continued to monitor these actions and consult with the remaining objectors throughout that process. Ultimately, the Sixth Circuit opinion stood, and the case arrived back in this Court for further proceedings.

On remand, the Court requested additionally briefing from the parties and objectors concerning relief and convened conferences to review these remedies.  (R. 209; R. 211; R.220; Minute entry on July 16, 2013 and September 4, 2013).  Following those briefings, the parties re-

negotiated the class settlement and have proffered that settlement as improved and satisfying the requirements of the Sixth Circuit's mandate. Specifically, they argue that the current settlement, "cures the problems identified by the Sixth Circuit " (R. 227-0, p. 1) by permitting class members to set aside judgments taken by Midland and no longer precludes class members"from raising any applicable defenses or from challenging the admissibility of any affidavit submitted by Midland." (R. 227.0, p. 1). The parties did not, however, proffer any argument concerning the revised notice which the Sixth Circuit found to be in violation of due process.

Following remand of the case, Ms. Pelzer and her counsel continued to monitor the terms of the revised settlement and evaluate the class notice providing requested briefings to the Court and attending Court conferences. After reviewing the class notice tendered with the revised settlement, Ms. Pelzer sent correspondence to the parties on December 8, 2012 regarding deficiencies in that notice. (R.230-1). Specifically, the correspondence identified portions of the notice that failed to adequately inform the class members of their rights, and offered specific ways in which the notice could be improved. Based upon this correspondence, the parties submitted proposed changes to the notice by motion. (R. 230-0). The Court adopted those proposed changes and ordered a corrected notice be sent instead of the notice provided by the parties in the revised settlement. (R. 231).

Thus, as a result of Ms. Pelzer's objections, appeal, and continued monitoring of the action, the class members received an improved class notice and a less restrictive release. This is an improvement in the result for class members and a textbook example of the important role that objectors play in class action settlements.[1] Counsel for Ms. Pelzer tenders this petition for fees

---

[1] Ms. Pelzer continues to maintain that the improvements to the class are not sufficient to render the settlement approvable. To the extent that this Court finds that the settlement does

which includes her work since 2011 through the date of the her work most recent work on the revised class notice.

## Law & Argument

1. **Objectors who bestow a benefit on the class in the public interest, may recover attorney's fees incurred in tendering their objections.**

Sixth Circuit case law recognizes that awards of attorneys' fees to objectors may be appropriate where the objector provided a benefit to the class by virtue of their objection. *See Bowling v Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) (affirming award of fees to objector); *see also Olden v. Gardner*, 294 Fed. Appx. 210, 221 (6th Cir.2008) ("Fees and costs may be awarded to the counsel for objectors to a class action settlement if the work of the counsel produced a beneficial result for the class." (omitting internal citations)); *In re Cardinal Health, Inc. Sec. Litig.*, 550 F.Supp.2d 751, 753-54 (S.D.Ohio 2008) ("An objector to a class-action settlement is not normally entitled to a fee award unless he confers a benefit on the class. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir.2002); *In re Prudential Ins. Co. of America Sales Practices Litigation*, 273 F.Supp.2d 563, 565 (D.N.J.2003).")

Improvements to the process are also compensable. Attorneys whose actions confer benefits upon class members are entitled to file a claim for reasonable compensation for the attorneys' efforts. *See Great Neck Capital Appreciation Inv.P'ship, L.P. v. Pricewaterhouse Coopers, L.L.P.*, 212 F.R.D. 400, 413 (E.D. Wis. 2002). When such a claim is presented, the court should consider whether the efforts of counsel for the objectors "improved the settlement, assisted the court, and/or

---

satisfy the requirements of the Sixth Circuit as a result of Ms. Pelzer's actions, Ms. Pelzer contends that the Court should award fees for this service to the class.

enhanced the recovery in any discernible fashion." *Id*. (internal quotations omitted).

Moreover, an objector's counsel is entitled to fees and expenses even if the objector continues to object to the modified settlement and that objection is overruled. *See White v. Auerbach*, 500 F.2d 822, 828 (2nd Cir. 1974). If Ms. Pelzer's objections and efforts have benefitted the class, then the Court should award fees. *Manners v American General Life Ins. Co.*, 1999 WL 33581944 (M.D. Tenn. 1999); *see also In re Telectronics pacing Systems, Inc.*, 137 F.Supp 2d 1029, 1037-38 (SD Ohio 2001) *decisions clarified*, 148 F.Supp.2d 936 (SD Ohio 2001 (Lodestar award). If the settlement has been improved and now satisfies the requirements of the mandate, it does so as a result of the efforts of Ms. Pelzer and her counsel, and the Court should grant fees for that services.

**2.    The benefits provided by Objector Pelzer justify the award of fees.**

The work of Ms. Pelzer has benefitted the class in several ways. First by limiting the release required of the unnamed class members.[2] As a result of the appeal, class members no longer give up their right to challenge the judgments against them. As stated by the Court of Appeals, "the interest of the unnamed class members in individually controlling the defense of Midland's state court judgments against them is their strongest interest: under the settlement, they are left without a crucial defense against these judgments." *Vassalle* at 758.

Second, because of Ms. Pelzer's successful appeal, unnamed class members now have the right to use the false affidavits to attack the underlying state court judgments.

Third, through her work, the Court of Appeals struck the deficient class notice which improperly advised the class of the effect of participation in the class.

---

[2] Ms. Pelzer continues to maintain, however, that the settlement remains deficient and continues to assert the objections tendered at R. 245.

Fourth, as a result of Ms. Pelzer's appeal the Court of Appeals found the class representatives to be inadequate

Finally, the clarity of the class notice has been improved by explicitly detailing the rights class members release. Over and above all its other concerns, the Court of Appeals rejected the original settlement on grounds that class notice failed to satisfy due process. In specific, the notice failed to adequately apprise members of the particular rights that they would release. Those same or similar problems persisted in the class notice following remand. To prevent further difficulties Ms. Pelzer's counsel detailed the infirmities of the class notice in a seven page letter to class counsel. Many of those suggestions were adopted by class counsel. That this work provided value to class members is evident by this Court's wholesale adoption of the notice with Ms. Pelzer's revisions. Simply put, without Ms. Pelzer's participation the notice would remain as it had been submitted to the Court with the revised settlement.

In sum, Ms. Pelzer and her counsel have provided a benefit to the class by virtue of her appeal of the original settlement and continued work to improve it. Her role in objecting has not been that of a neigh sayer, but rather a proactive advocate for appropriate relief and notice to the class. Because of the release in the first settlement, Midland was virtually assured it would be collect on the debts. *Vassalle* at 755. As a result of the successful appeal, class counsel re-negotiated the class settlement so that the false affidavits may be used to attack the underlying judgments. Exoneration of debts owed to Midland could be worth "hundreds or even thousands of dollars" to unnamed class members. *Vassalle* at 755. This is particularly substantial in comparison to the nominal $17 cash payment for the unnamed class members under terms of the original settlement. While Ms. Pelzer continues to seek to improve the terms for the class members through her

objections, there is no doubt that her work benefitted the class. To the extent that the Court finds that the settlement now conforms to the requirements of the Sixth Circuit, the changes in the settlement that have been ameliorated are due in no small part to Ms. Pelzer's involvement.

**3.     The Court should award an adjusted "Lodestar" recovery for Ms. Pelzer's attorney.**

    a.     **Hours Spent By Mr. Lyngklip.**

A calculation of the number of hours reasonably expended can involve consideration of three issues, (1) whether the lawyer actually worked the number of hours claimed, (2) whether the work performed was sufficiently related to the points on which the plaintiff prevailed, and (3) whether the attorney used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel. See *Coulter v. State of Tennessee*, 805 F.2d 146, 150-51 (6th Cir. 1986).

In the course of this litigation, Mr. Lyngklip has expended in excess of $85,000 in fees attempting to resolve the objections to the settlement and notice (see attached Exhibit 2 and 3). The attached billing records provide a chronological listing of those hours, identifying the staff member who expended the time and the amount of time expended. The work performed was necessary, reasonably related to the objections and obtaining an improvement in the class settlement.

At the same time, the detailed email entries (Exhibit 6), Docket Sheet of the this Court (Exhibit 7) and Docket Sheet of the Court of Appeals all reveal the work necessary to coordinate efforts with other objectors, and improve the class settlement.[3] Simply put, given the work that was

---

[3] As is typical in cases involving large groups of attorneys, the bulk of the work is accomplished via email and that work typically encompasses all aspects of litigation including, strategic planning, research, formulation of arguments, logistics, task assignment, and drafting of documents. As reflected in the email log, counsel were in nearly constant communication

actually performed, the hours reflected are reasonable.

    **b.**    <u>**Plaintiff's Rate**</u>

The party seeking an award of fees bears the burden of demonstrating that the request is reasonable. See *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990). To determine a reasonable hourly rate for attorney fees, the courts look to the prevailing market rate for similar services of local attorneys with comparable skill, experience, and reputation. *Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). According to the Sixth Circuit:

> In determining what the level of compensation for each category of service should be, the court should look to the fair market value of the services provided. In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney. For those attorneys who have no private practice, the rates customarily charged in the community for similar services can be looked to for guidance.
>
> Focusing on the fair market value of the attorney's services will best fulfill the purposes of the Fees Awards Act, by providing adequate compensation to attract qualified and competent attorneys without affording any windfall to those who undertake such representation. The entire purpose of the statutes was to ensure that the representation of important national concerns would not depend upon the charitable instincts of a few generous attorneys.

*Northcross v. Bd. of Educ.*, 611 F.2d 624, 638 (6th Cir. 1979). The Seventh Circuit has stated: "In order to encourage able counsel to undertake [Fair Debt Collection Practices Act] cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases . . . . Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d

---

concerning the matter at hand.

645 (7th Cir. 1995).

Few attorneys regularly handle consumer law claims in Michigan. Fewer still handle these claims in federal court with any degree of regularity. Mr. Lyngklip has a highly specialized practice, limited exclusively to the protection of consumers through litigation under the many federal and state consumer protection statutes (see attached Exhibit 3, Declaration of Ian Lyngklip setting forth his training, background, experience and skill in this area). Plaintiff's Counsel's history includes a long history of providing training to attorneys in order to attract additional practitioners to this area of law. Additionally, Plaintiff's counsel has over the years conducted training for opposing counsel, judges, and for Members of the Michigan House of Representatives and has been called on by the Federal Trade Commission and Consumer Financial Protection Bureau to participate in official forums concern credit and debt.

In this case, the fee rate for Mr. Lyngklip is well within reason. More importantly, the Court has already established rates for lead counsel in this case. The fee rate of $450 per hour for Mr. Lyngklip and his staff are well within the range for practitioners in this case and throughout the Midwest for an attorney of similar experience, particularly for those engaging in complex class litigation. More importantly, that rate is less than that awarded to class counsel.

    c.    **Counsel has exercised billing discretion in his request for fees.**

The lodestar calculation for Ian B. Lyngklip's attorney's fee currently stands in excess of $85,000 hours, billed at his customary rate and for those of his staff members when working on class cases. While this amount would ordinarily be appropriate for a fee request, case law requires counsel to exercise billing judgment. *See Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) Consequently, Counsel has elected to reduce the requested fees to reflect an overall

reduction for matters on which Ms. Pelzer was not successful in the prior appeal, and overlap between Ms. Pelzer's own case and her work in this matter following remand.[4]

Thus, Ms. Pelzer's request an award of an attorney's fee in the amount of $ 35,000.00.

Additionally, Ms. Pelzer requests an award of costs amounting to $941.08 representing her appeal fees. (R. 167), *pro hac vice* admission (R.15 and 16), and travel expense associated with the appeal in Cincinnati for the appeal.

## Conclusion

In this case, Ms. Pelzer and her attorney have provided a public benefit and expended more than 191.60 hours in bringing these objections forward through the class approval process – not including time for preparation of this brief or anticipated time at the attorney fee hearing. At the time of the initial settlement, Ms. Pelzer had not filed a case of her own and was enjoined from doing so. In order to object, she was required to join the class and forfeit rights to individual compensation or claims. In spite of being overruled, Ms. Pelzer pressed on to the Court of Appeal, even though such appeals rarely succeed. The desire to improve the position of this class has predominated her work on this case thus far, and that work has achieved a tangible public benefit in the form of an improved class notice and a less restrictive release. Based upon the improvement to the class

---

[4]Given the breadth of the procedural and substantive issues raised in these proceedings, as well as the inevitable overlap between Ms. Pelzer's own pending class and this one, it is simply not possible parse the time spent on individuated issues. As such, the discretionary reduction reflects an across the board reduction rather than line by line reductions.

settlement and notice, Ms. Pelzer requests entry of an attorney fee award in the amount of $35.941.08.

        Respectfully Submitted,

        By: <u>s/ Ian B. Lyngklip</u>
        Ian B. Lyngklip (P47173)
        LYNGKLIP & ASSOCIATES
        CONSUMER LAW CENTER, PLC
        Attorney For Elaine Pelzer
        24500 Northwestern Highway, Ste. 206
        Southfield, MI 48075
        (248) 208-8864
        Ian@MichiganConsumerLaw.Com

Dated: April 26, 2014

## Certificate of Service

I hereby certify that on April 26, 2014, I served this document on all parties entitled to notice via the CM/ECF system of the Court

By:  s/ Ian B. Lyngklip
Ian B. Lyngklip (P47173)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Martha Vassalle
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
IanLyngklip@Att.Net

Dated: April 26, 2014