# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Martha Vassalle and Jerome Johnson, | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO.: 3:11-cv-0096 |
| vs. | ) | HON. DAVID A. KATZ |
| | ) | **And Related Cases**: |
| Midland Funding LLC, et. al., | ) | |
| Defendants. | ) | Case No. 3:08-cv-1434, N.D. Ohio |
| | ) | Case No. 3:10-cv-0091, N.D. Ohio |
| | ) | Case No. 3:11-cv-1332, N.D. Ohio |
| | ) | |
| | ) | **JOINT MOTION FOR FINAL** |
| | ) | **APPROVAL OF CLASS** |
| | ) | **SETTLEMENT** |
| | ) | |

Andrea Brent, Hope Franklin, Martha Vassalle, and Jerome Johnson, on the one hand ("Plaintiffs"), and Midland Funding, LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc., on the other hand ("Defendants"),  jointly move this Court for an Order (1) granting final approval of the Revised Class Settlement Agreement preliminarily approved on November 27, 2013 as fair, reasonable, and adequate, (2) certifying the settlement class; (3) authorizing disbursement of the Settlement Fund to the Class Members who have filed valid claims with the Settlement Administrator; and (4) enjoining relitigation of settled claims.  A memorandum in support is attached.

Respectfully Submitted:                                    Respectfully Submitted:


*/s/ Dennis E. Murray, Sr.*                              */s/ Theodore W. Seitz*
Dennis E. Murray, Sr.                                    Theodore W. Seitz

Donna Jean Evans
Murray & Murray Co. LPA
111 East Shoreline Drive
Sandusky, OH 44871-0019
Tele:  (419) 624-3000
dms@murrayandmurray.com

Counsel for Andrea Brent, Hope Franklin,
Martha Vassalle, and Jerome Johnson

Dykema Gossett PLLC
201 Townsend Street, Suite 900
Lansing, MI 48933
Tele:  (517) 374-9149
tseitz@dykema.com

Richard L. Stone (admitted *Pro Hac Vice)*
Amy M. Gallegos (admitted *Pro Hac Vice)*
Jenner & Block LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel: (213) 239-2208
agallegos@jenner.com
rstone@jenner.com

Counsel for Midland Funding, LLC,
Midland Credit Management, Inc., and
Encore Capital Group, Inc.

# TABLE OF CONTENTS

I.    Introduction. ............................................................................................................. 1

II.   Overview of the Litigation and Settlement. .......................................................... 2

    A.    The Litigation Was Hard-Fought and Adversarial. ...................................... 2

        1.    The Brent Lawsuit. ............................................................................ 2

        2.    The Franklin and Vassalle Lawsuits. ................................................ 5

    B.    The Original Settlement Was Only Reached After Multiple Mediations With Judge McQuade and a Settlement Conference With This Court. ........................................... 5

    C.    The Original Settlement and Related Objections. ......................................... 6

    D.    While the Objectors Appealed, the Special Master's Review of Midland's Affidavit Processes Went Forward. ................................................................................................ 7

    E.    The *Vassalle* Opinion. ................................................................................. 9

    F.    The Parties Negotiated a Revised Settlement. ............................................ 11

III.  Summary of Revised Settlement Terms. ............................................................. 12

    A.    Class Definition. ........................................................................................ 12

    B.    Monetary Relief. ........................................................................................ 12

    C.    Provisions for Injunctive Relief. ............................................................... 13

    D.    Other Relief. .............................................................................................. 13

        1.    Payment of Notice Costs and Administrative Fees. ......................... 13

        2.    Compensation for the Class Representatives. .................................. 13

        3.    Payment of Attorneys' Fees and Expenses. .................................... 14

    E.    Release. ...................................................................................................... 14

    F.    Entry of Judgment and Continuing Jurisdiction; Injunction. ..................... 15

    G.    The Class Notice. ....................................................................................... 15

    H.    Settlement Administration. ......................................................................... 16

IV.   The Court Should Grant Final Approval to the Revised Settlement. ................... 17

    A.    Standard for Final Approval. ...................................................................... 17

    B.    All Seven *UAW* Factors Weigh in Favor of Approval. .............................. 19

        1.    There Was No Fraud or Collusion. .................................................. 19

        2.    Litigating to a Final Judgment Would Be a Lengthy, Complex, and Expensive Process. ........................................................................................................... 20

i

3.   Class Counsel Had the Benefit of Substantial Discovery. .................................... 21

4.   The Settlement Is Fair in Light of the Plaintiffs' Likelihood of Success and Potential Recovery. ........................................................................................ 22

5.   Class Counsel and the Class Representatives Support the Settlement. ............... 27

6.   The Reaction of Absent Class Members. ............................................................ 28

7.   The Revised Settlement Is in the Public Interest. .............................................. 30

V.   The Court Should Certify the Settlement Class. ..................................................... 31

A.   The Requirement of Numerosity Is Satisfied. ............................................................ 31

B.   The Requirement Of Commonality Is Satisfied. ........................................................ 31

C.   The Typicality Requirement Is Satisfied. .................................................................. 32

D.   The Adequate Representation Requirement Is Satisfied. ........................................... 32

E.   The Predominance Requirement Is Satisfied. ............................................................ 33

F.   The Superiority Requirement Is Satisfied. ................................................................. 34

VI.   The Notice Program Satisfies Due Process. ........................................................... 36

A.   The Dissemination Plan Satisfies Due Process. ........................................................ 36

B.   The Contents of the Notice Satisfy Due Process. ...................................................... 37

VII.   The Court Should Enjoin Relitigation of Released Claims. ................................... 38

VIII.   Conclusion ............................................................................................................. 39

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abels v. JBC Legal Grp., P.C.*,
  227 F.R.D. 541 (N.D. Cal. 2005) .........................................................26

*Albritton v. Sessoms & Rogers*,
  No. 09-321, 2010 WL 3063639 (E.D.N.C. Aug. 3, 2010).......................24

*Allen v. Decision One Mortg.*,
  No. 07-11669, 2010 WL 1930148 (D. Mass. May 12, 2010)..................39

*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) ..........................................................33, 34

*Bronson v. Bd. of Educ.*,
  604 F. Supp. 68 (S.D. Ohio 1984) ......................................................22

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 894 (S.D. Ohio 2001) ...............................................28

*Carroll v. United Compucred Collections, Inc.*,
  399 F.3d 620 (6th Cir. 2005) .............................................................26

*Catala v. Resurgent Capital Servs. L.P.*,
  No. 08-2401, 2010 WL 2524158 (S.D. Cal. June 22, 2010) ..................26

*Chakejian v. Equifax Info. Servs., LLC*,
  256 F.R.D. 492 (E.D. Pa. 2009).........................................................35

*Clark v. Main Street Acquisition Corp.*,
  — F. App'x —, 2014 WL 274469 (6th Cir. 2014) ................................23

*Cope v. Duggins*,
  203 F. Supp. 2d 650 (E.D. La. 2002) ..................................................26

*Eisen v. Carlisle & Jacqueline*,
  417 U.S. 156 (1974)..........................................................................36

*Franks v. Kroger Co.*,
  649 F.2d 1216 (6th Cir. 1981) ...........................................................36

*Gabriele v. Am. Home Mortg. Serv., Inc.*,
  503 F. App'x 89 (2d Cir. 2012) .........................................................24

iii

*Garigulo v. Forster & Garbus Esqs.*,
    651 F. Supp. 2d 188 (S.D.N.Y. 2009) ..................................................................24

*Goray v. Unifund CCR Partners*,
    No. 06-00214, 2007 WL 4260017 (D. Haw. Dec. 4, 2007) ..................................24

*Granada Investments, Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ............................................................................17

*Hainey v. Parrott*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007) ...............................................................19

*Harvey v. Great Seneca Fin. Corp.*,
    453 F.3d 324 (6th Cir. 2006) ..............................................................................24

*Hemphill v. San Diego Ass'n of Realtors, Inc.*,
    225 F.R.D. 616 (S.D. Cal. 2005) .......................................................................19

*In re Cardizem Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) .....................................................................28

*In re Delphi Corp. Sec. Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................28

*In re DPL, Inc., Sec. Litig.*,
    307 F. Supp. 2d 947 (S.D. Ohio 2004) ...............................................................25

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) .......................................................................10, 18

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) .................................................................25

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................25

*In re Linerboard Antitrust Litig.*,
    2008 WL 4461914 (E.D. Pa. Oct. 3, 2008) ........................................................39

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    261 F.3d 355 (3d Cir. 2001) ..............................................................................38

*In re Reliance Sec. Litig.*,
    No. 99-858, 2003 WL 1943320 (D. Del. Apr. 17, 2003) ....................................39

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ..........................................................20, 21

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)...................................................................21

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................22

*In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*,
  722 F.3d 838 (6th Cir. 2013) ...................................................27, 30, 35

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ............................................9, 17, 18, 36

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) .................................................................17

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*,
  271 F.R.D. 572 (N.D. Ohio 2010) ........................................................26

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*,
  No. 06-1397, 2011 WL 1434679 (N.D. Ohio Apr. 14, 2011) ................23

*Kogan v. AIMCO Fox Chase, L.P.*,
  193 F.R.D. 496 (E.D. Mich. 2000) ..................................................21, 22

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) .................................................................17

*Manlapaz v. Unifund CCR Partners*,
  No. 08-6524, 2009 WL 3015166 (N.D. Ill. Sept. 15, 2009)..................23

*Miller v. Javitch, Block & Rathbone*,
  561 F. 3d 588 (6th Cir. 2009) ...............................................................25

*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) ...........................................................19, 30

*Murray v. GMAC Mortg. Corp.*,
  434 F.3d 948 (7th Cir. 2006) ................................................................35

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)...................................................20, 21, 22

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972)..................................................................25

*O'Rourke v. Palisades Acquisition XVI, LLC*,
  635 F.3d 938 (7th Cir. 2011) ................................................................25

v

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................18

*Olden v. Gardner*,
    294 F. App'x 210 (6th Cir. 2008) ..........................................30

*Oppenlander v. Standard Oil Co.*,
    64 F.R.D. 597 (D. Colo. 1974) .............................................20

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*,
    No. 04-2195, 2006 WL 3681138 (E.D.N.Y. Dec. 11, 2006) ...............26

*Robinson v. Shelby Cnty. Bd. of Educ.*,
    566 F.3d 642 (6th Cir. 2009) ...............................................17

*Shetiwy v. Midland Credit Mgmt., Inc.*,
    — F. Supp. 2d —, 2014 WL 1257235 (S.D.N.Y. 2014) ................24

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) ........................................ passim

*Wess v. Storey*,
    No. 08-623, 2011 WL 1463609 (S.D. Ohio Apr. 14, 2011) ..............20

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ...............................................27

## STATUTES

15 U.S.C. § 1692k ...........................................................13, 14, 23

28 U.S.C. § 1651 ................................................................38

## OTHER AUTHORITIES

ALBERT CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS
    (4th ed. 2002) ........................................................17, 20, 28

Fed. R. Civ. P. 23 ......................................................17, 31, 32, 36

STUART T. ROSSMAN, CHARLES DELBAUM, & ARIELLE COHEN,
    CONSUMER CLASS ACTIONS (8th ed. 2013) ..............................30

# I.    <u>Introduction.</u>

Pursuant to Federal Rule of Civil Procedure 23(e), Named Plaintiffs Andrea Brent, Martha Vassalle, Jerome Johnson, and Hope Franklin, on behalf of themselves and the conditionally certified class, jointly with Defendants Midland Funding LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc., respectfully request that the Court issue an order granting final approval of the Revised Settlement preliminarily approved by the Court on November 27, 2013.

This is the parties' second attempt to settle these related class actions.  The Original Settlement was approved by this Court in August 2011, but the approval order was vacated by the Sixth Circuit.  *Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013).  The Sixth Circuit panel did not disturb this Court's finding that all of the factors of the Sixth Circuit's seven-factor fairness test favored approving the settlement.  *Id.* at 755 (this Court "did not abuse its discretion in its determination of any of the seven listed factors").  However, several objectors convinced the panel — over the Settling Parties' objections — that if not for the release contained in the Original Settlement, class members could and would use the fact that Midland's affidavits were made without personal knowledge to have Midland's judgments against them vacated.  Accordingly, the panel rejected the settlement because it deprived the class members of their "most important interest," i.e., the ability to use the affidavits to individually challenge the judgments against them.  *See id.* at 757-59.

The Revised Settlement Agreement cures the problems identified by the Sixth Circuit.  The revised release contains an express exception permitting class members to use the Midland affidavits to challenge the judgments against them on an individual basis.  Revised Settlement Agreement, Vassalle Dkt. No. 227-1 ("Settlement Agt."), § V.D.  Thus, class members can participate in the settlement without giving up what the panel held was their "most important

1

interest" in this case.  The revised release also confirms that class members currently involved in debt-collection litigation with Midland are not precluded from raising any applicable defenses or from challenging the admissibility of any affidavit submitted by Midland.   The Revised Agreement also extends the length of the stipulated injunction, and resolves the problem of "preferential treatment" for class representatives.   The class representatives are no longer receiving debt relief, or incentive payments beyond the $1,000 expressly provided for in the Fair Debt Collection Practices Act ("FDCPA").   *Id*., § V.C.1.  Additionally, class members who do not wish to participate in the settlement and believe they can obtain a greater recovery by suing individually have the right to opt out of the class.  *See id*. at § XVI.

As noted above, the Sixth Circuit agreed that the Original Settlement was fair and adequate under this circuit's long-established seven-factor test, but rejected it due to discrete defects that the parties have now addressed.  The Revised Settlement is more favorable to the class than the Original Settlement, cures the defects identified by the Sixth Circuit, and is eminently fair by any measure.   The Court should approve the Revised Settlement.

## II.     Overview of the Litigation and Settlement.

### A.     The Litigation Was Hard-Fought and Adversarial.

#### 1.     The Brent Lawsuit.

This nationwide class settlement resolves three pending lawsuits.  The longest-running of the cases is the *Brent* action, which arose as a counterclaim in a debt-collection lawsuit Midland filed against Andrea Brent in 2008.   After a careful review of the Midland Complaint and attachments, Brent filed an answer to the Complaint, along with a Counterclaim, alleging violations of the FDCPA for the use of false, deceptive and misleading representations in connection with the collection of the debt, seeking to proceed on behalf of a class of individuals.

On June 13, 2008, the case was removed to the United States District Court for the Northern District of Ohio, Western Division.

The litigation entered the discovery phase in August 2008.  Class Counsel undertook substantial discovery relating to liability, damages, and class certification issues, which included deposing representatives of Midland and analyzing the documents produced.  As is often the case in litigation such as this, Plaintiffs and Defendants also had numerous discovery disputes.

On December 1, 2008, Brent filed her Amended Counterclaim, which alleged that Defendants filed debt-collection lawsuits using affidavits that contained false attestations of personal knowledge by affiants, and thereby used unfair and deceptive means to collect debts in violation of the FDCPA and the Ohio Consumer Sales Practices Act ("OCSPA").  Brent Dkt. No. 22.  Brent sought statutory damages as provided by 15 U.S.C. § 1692k, as well as actual damages.  *See id*.

On February 19, 2009, Brent filed a motion for summary judgment on her counterclaims. The following day, Midland filed its competing Motion for Summary Judgment.  Brent successfully defeated Midland's request for summary judgment in her action and obtained a favorable decision on her motion for summary judgment.  Brent Dkt. No. 50.  This Court found that Midland had violated the FDCPA and the Ohio Consumer Sales Practices Act (OCSPA) by attempting to collect a debt using an affidavit in which the affiant falsely claimed to have personal knowledge of the account information contained in the affidavit.  The Court found that this was a violation even though there was "no evidence that the amount of the debt, the fact that it is unpaid, or other vital account information, is false," and even though the actual account information set forth in the affidavit "is probably either correct or likely thought correct in good faith by Midland."  *Id*. at 12.  This was the first instance in which a Court held a debt collector

3

accountable for filing affidavits without personal knowledge, and it was followed by a wave of class actions in other states in which the complaints relied on and quoted this Court's summary judgment opinion.  Midland filed a motion for reconsideration, which was opposed by Class Counsel and ultimately denied in all substantive respects.  Brent Dkt. No. 56.

Through discovery taken in the course of the litigation, Class Counsel learned about Midland's use of form affidavits and Midland's standardized policies and practices.  On March 24, 2010, Class Counsel filed a motion for class certification, together with a memorandum of law explaining in detail Midland's business operations and the methodology used in collection efforts, including the generation and use of affidavits in debt-collection litigation.  Brent Dkt. No. 76.  Midland challenged every aspect of the class-certification motion.  Brent Dkt. No. 84.

On May 26, 2010, while the class certification motion was pending, Midland filed a Motion for Partial Summary Judgment as to Brent's claim for actual damages.  Brent Dkt. No. 88.  Midland argued that Brent had suffered no actual damages caused by the fact that the affidavit falsely stated that it was made on personal knowledge.  Class Counsel vigorously opposed this motion.  Brent Dkt. Nos. 95, 101.

On November 4, 2010, this Court issued an opinion certifying a class of individuals in Ohio who were sued by Midland on or after June 16, 2007, where a form affidavit was filed with a court in which a Midland employee swore that the statements made in the affidavit were based upon personal knowledge.  Brent Dkt. No. 104.  The opinion also granted Midland's motion for partial summary judgment on Brent's claim for actual damages.  *See id.* at 11-13.  The Court found that Brent had no compensable damages because any actual damages she alleged arose from the filing of the debt-collection lawsuit, and not from the representation that the affidavit was based upon personal knowledge.  *Id.* at 12-13.

4

## 2. The Franklin and Vassalle Lawsuits.

While the Brent litigation was pending, Class Counsel made several attempts to obtain relief for consumers nationwide on a variety of legal theories.  In December 2009, Class Counsel sued Midland on behalf of Hope Franklin (along with a co-Plaintiff, Thomas Hyder).  The Franklin complaint stated a claim for "Unintentional and/or Intentional Misrepresentations Resulting in Individual and Class Damages" against Midland, based on its affidavit practices, and sought certification of a nationwide class.  Franklin Dkt. No. 1.  Midland filed a motion to dismiss, which this Court granted.  Franklin Dkt. No. 18.  Franklin's appeal is pending before the U.S. Sixth Circuit Court of Appeals.[1]

In January 2011, Class Counsel filed a third action against Midland, on behalf of Martha Vassalle and Jerome Johnson.  That lawsuit alleged, on behalf of a putative nationwide class, that Midland and related entities filed affidavits in state courts throughout the U.S. that contained false attestations of personal knowledge.  Vassalle Dkt. No. 1.  The complaint asserts common-law causes of action for fraudulent misrepresentation, negligence, and unjust enrichment, and seeks actual damages, punitive damages, costs, and reasonable attorneys' fees.  *See id.*

## B. The Original Settlement Was Only Reached After Multiple Mediations With Judge McQuade and a Settlement Conference With This Court.

In August 2009, after the Court issued summary judgment, Midland sought to engage in mediation and asked the Court to stay the proceedings.  Over Class Counsel's objections, the Court ordered the parties into mediation with the Honorable Richard McQuade (Ret.) and stayed the proceedings.  The parties first met with Judge McQuade for mediation on October 29, 2009.  They engaged in intense discussions and negotiations at the session, which lasted the entire day.

---

[1] On May 27, 2011, the Sixth Circuit granted the parties' motion for a limited remand and has remanded the case to this Court in order to allow the Court to effectuate this Settlement.

The parties left the mediation session without a settlement, but nevertheless agreed to continue to attempt resolution through Judge McQuade, while the underlying litigation went forward.  The second session took place on December 8, 2009, but that too was unsuccessful.  In June and September of 2010, the parties engaged in two additional day-long mediation sessions with Judge McQuade, but did not resolve the case.  Beginning on December 22, 2010, the parties attempted to resolve the Franklin and Brent litigation with the Sixth Circuit mediator, but were unsuccessful in that forum as well.

On January 28, 2011, the parties participated in a settlement conference in the courtroom of the Honorable David A. Katz.  These settlement negotiations continued over the next two weeks.  On Friday, February 11, 2011, the parties reached an agreement-in-principle to resolve the litigation.  Even then the parties remained as staunch adversaries, and it took another whole month of negotiations, including further assistance from the Court, to finalize the agreement.  This agreement-in-principle was only finally memorialized into an actual Settlement Agreement on March 9, 2011 when it was presented to the Court.

**C.    The Original Settlement and Related Objections.**

The Original Settlement required Midland to pay $5.2 million into an interest-bearing fund for the benefit of the class, and to enter a stipulated injunction mandating that Midland create and implement procedures for the generation and use of affidavits in debt-collection lawsuits, which "shall be reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit."  Brent Dkt. No. 107-1 at 9.  It also provided that Judge McQuade would be appointed as Special Master to monitor Midland's compliance with the injunction and "make findings as to whether [Midland's] Affidavit Procedures are reasonably assured to prevent the use of affidavits

6

in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit."  *Id.* at 9-10.

As the Court is aware, the original settlement was opposed by a number of attorneys who had filed copycat lawsuits in other jurisdictions, as well as the FTC, a number of legal-aid and consumer advocacy groups, and a coalition of state attorneys general ("State AGs").

The fairness hearing in connection with the Original Settlement occurred on July 11, 2011, and this Court granted final approval of the Original Settlement and entered judgment on August 12, 2011.  Vassalle Dkt. No. 160.

> **D.     While the Objectors Appealed, the Special Master's Review of Midland's Affidavit Processes Went Forward.**

Objectors Clawson, Gray, and Pelzer (represented by competing counsel Charles Delbaum, Michael Kinkley, and Ian Lyngklip, respectively) appealed this Court's order approving the Original Settlement on August 29, 2011, but did not move to stay the injunctive relief component of the settlement.  Class Counsel wanted to go forward with the Special Master's review because he believed that Midland's use of affidavits made without personal knowledge was a predatory practice that could not be allowed to continue.  Midland, for its part, had already substantially revised its affidavit practices, and it agreed that going forward with the review to ensure that its processes and forms were unimpeachable was the right thing to do.

Accordingly, on October 6, 2011, this Court appointed Judge McQuade as Special Master to "[c]onduct a review of the Defendants' Affidavit Procedures . . . , including making findings as to whether the Affidavit Procedures are reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit."  Vassalle Dkt. No. 173 at 2-3.  In a subsequent order, the Court stated, "Defendants shall advise the Special Master of the forms of the affidavits to be employed by

Defendants and the legal authority therefore; . . . . Thereafter the Special Master shall make findings as to the sufficiency of the forms of the affidavits." Vassalle Dkt. No. 174.

On January 19, 2012, the Court issued an order requiring Midland to file a motion seeking approval of its affidavit procedures, and setting a hearing on the motion for April 17, 2012. Vassalle Dkt. No. 174. This order provided the date, time and address of the hearing, and was received by all of the objectors and amici, including the State AGs and Mr. Lyngklip, through the Court's electronic docket notifications. *See id.* None of the objectors or amici appeared at the hearing, filed anything, or did anything whatsoever to indicate that they objected to the proceedings.

On April 25, 2012, Judge McQuade issued an order setting forth a list of criteria that Midland's affidavits would be required to satisfy. Vassalle Dkt. No. 186 at 4-6. That order set a further hearing to occur on May 21, 2012. *Id.* at 7. Again, no objectors appeared at or objected to the hearing, nor did they file anything indicating disagreement with Judge McQuade's requirements.

At the two hearings, Judge McQuade and Class Counsel questioned Midland's executives and a legal specialist at length. *See* Vassalle Dkt. No. 204 at 3-4. On July 5, 2012, Judge McQuade issued an order criticizing the language in a number of Midland's affidavits and ordered them to be revised. Vassalle Dkt. No. 190. On August 3, 2012, the Special Master issued another order chastising Midland for resisting his changes to the affidavit language. Vassalle Dkt. No. 193. Further briefing regarding affidavit language occurred over the next month. Class Counsel was a vigorous advocate for consumers throughout the entire process, reviewing the affidavits and seeking additional changes to ensure that consumers were not misled. *E.g.*, Vassalle Dkt. Nos. 199, 201. Charles Delbaum of National Consumer Law Center,

8

who represents former objector Clawson as well as the plaintiffs in a competing class action in California, filed objections to Midland's proposed affidavit language as well, which were considered by the Special Master.  Vassalle Dkt. No. 200.

On October 2, 2012, Judge McQuade issued an order resolving the parties' disputes regarding certain language contained in Midland's affidavits, and ordered Midland to submit a set of revised affidavits for his review.  Vassalle Dkt. No. 203.  Judge McQuade issued detailed findings of fact and conclusions of law approving Midland's affidavit processes and forms on November 16, 2012.  Vassalle Dkt. No. 204.

### E. The *Vassalle* Opinion.

While the parties were battling in front of Special Master McQuade, the objectors' Sixth Circuit appeal was pending.  On appeal, the objectors argued that the settlement was unfair and that the settlement class should not have been certified because, among other things, the release would deprive class members of the right to file individual motions seeking to vacate Midland's judgments against them on the ground that the supporting affidavit was made without personal knowledge.

The Sixth Circuit reversed the order approving the settlement.  Importantly, the panel summarily rejected all of the objectors' arguments that the settlement was unfair under the seven-factor test set out in *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*").   The opinion states that the district court "did not abuse its discretion" in determining that the settlement satisfied all seven of the fairness factors.  *Vassalle*, 708 F.3d at 755.  However, the panel found the settlement unfair under a rule requiring it to consider "whether the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members."  *Id.*

(internal quotation marks and citation omitted). The panel explained that "such inequities in treatment make a settlement unfair." *Id; see also In re Dry Max Pampers Litig.,* 724 F.3d 713, 718 (6th Cir. 2013) (citing *Vassalle* and explaining that the rule against "preferential treatment" ensures that the settlement benefits are fairly allocated among the named plaintiffs, the absent class members, and class counsel).  The panel found the original settlement to be unfair under this rule because the named plaintiffs received preferential treatment in the form of $8,000 to be split among them, as well as debt relief, while absent class members received a monetary payment and were precluded from challenging Midland's affidavits in court, "virtually assuring that Midland will be able to collect on these debts." *Vassalle*, 708 F.3d at 755-56 & n.1.

Notably, the panel wholeheartedly accepted the objectors' argument that the settlement was unfair because it prevented class members from individually seeking to vacate the judgments against them based on the faulty affidavits.  In addition to ruling that the named plaintiffs received preferential treatment, the panel also found that the settlement class should not have been certified for two reasons.  First, the panel held that the class representatives were inadequate because the release of their debts meant they did not share the "the unnamed class members' most important interest — the ability to use the false affidavits against Midland to contest their debts in court." *Vassalle*, 708 F.3d at 757.

Second, the panel held that the class did not satisfy Rule 23(b)(3)'s superiority requirement.  *Vassalle*, 708 F.3d at 757-58.  The panel explained that evaluating superiority requires balancing various considerations, and it held that the "majority" of considerations weighed in favor of superiority — i.e., most class members had limited resources, the case was "far more procedurally advanced" than the competing cases, and the threshold issue of Midland's liability was common to all class members.  *Id.* at 758.  However, the panel found that two

10

additional considerations "tilt the scales" in favor of finding that a class action was not superior. *Id*. The first and most important consideration was that a class action would deprive class members of their "strongest interest," which was their interest in "individually controlling the defense of Midland's state court judgments against them." *Id*. The second, lesser, factor weighing against a class was that "class members could have collected damages under state law claims that would exceed the value" of the settlement. *Id*.

The Sixth Circuit also found the class notice inadequate because it did not specifically say that the release would bar class members from seeking to vacate judgments based on the faulty affidavits which, the panel reiterated, was "[t]he unnamed class members' greatest interest." *Vassalle*, 708 F.3d at 759. The panel remanded the case for further proceedings consistent with its opinion. *Id*. at 760.

### F.       The Parties Negotiated a Revised Settlement.

After remand, Midland and Class Counsel resumed negotiations directed toward revising the settlement to comport with the Sixth Circuit's ruling. The district court held several status conferences, which included objectors' counsel, for the purpose of discussing whether the settlement agreement could be revised and, if so, what form the revisions should take. The objectors refused to identify any terms on which they would consider a nationwide settlement acceptable. Although the parties circulated a revised memorandum of understanding to objectors' counsel, objectors' counsel refused to provide any substantive input.

Because one issue that remained was whether the class members' potential individual state-law claims were so valuable as to preclude class certification, the Court ordered the parties and objectors to submit briefing as to the value of any such state-law claims. Class Counsel analyzed the briefs submitted by Midland and by the objectors, and undertook his own

independent evaluation of potential individual remedies available to class members.  Class Counsel concluded that the theories on which objectors' counsel claimed they could recover lucrative sums as compensation for Midland's filing of affidavits not made on personal knowledge were speculative and novel, and a nationwide settlement that forced Midland to pay a substantial sum and remedy its past practices was more beneficial to the class and the public than continued litigation to pursue uncertain recoveries on untested legal theories.  Vassalle Dkt. No. 225.  An important part of Class Counsel's analysis was that class members who wanted to pursue relief under novel legal theories would have the opportunity to opt out.  *Id*. at pp. 16-17.

## III.  Summary of Revised Settlement Terms.

### A.  Class Definition.

The Revised Settlement Agreement applies to, and provides relief for, a narrowly defined settlement class consisting of "[a]ll natural persons (a) sued in the name of Encore Capital Group, Inc., Midland Funding LLC, Midland Credit Management, Inc., or any other Encore and/or Midland-related entity (collectively, "Midland"), (b) between January 1, 2005 and March 11, 2011, (c) in any debt-collection lawsuit in any court (d) where an affidavit attesting to facts about the underlying debt was used by Midland in connection with the debt-collection lawsuit." *See* Settlement Agt., § V.A.  Notably, the class period is the same as in the Original Settlement; individuals sued by Midland after March 11, 2011 (approximately three years ago) are not in the class and are not bound by the terms of the Revised Settlement or the release.

### B.  Monetary Relief.

The Revised Settlement incorporates the provision of the Original Settlement requiring Midland to pay $5.2 million into an interest-bearing fund for the benefit of the class. Approximately $1.2 million of that amount has been paid to the Class Administrator for administration costs in connection with the Original Settlement.  The Revised Settlement

12

required Midland to pay the additional notice and administration costs associated with the Revised Settlement, thus ensuring that the second round of notice would not come at the expense of the class members. After Class Counsel's fees and costs are paid, and the named plaintiffs are paid $1,000 each pursuant to 15 U.S.C. § 1692k(a)(2)(B), the remainder of the fund is to be distributed pro rata to eligible class members who timely submit a claim. No money reverts to Midland. The Revised Settlement Agreement requires Midland to pay up to an additional $500,000 if the fund is insufficient to pay at least $10 to each eligible class member who submits a claim.

Based on the number of eligible class members who have filed claims, each class member who filed a claim will receive $18.75. Declaration of Jason Dekdebrun ("Dekdebrun Decl.") ¶ 13.

### C. Provisions for Injunctive Relief.

The Revised Settlement contains a stipulated injunction which, among other things, requires Midland to use affidavit procedures and language consistent with Judge McQuade's orders for a period of at least five (5) years. Settlement Agt., § V.C.2. The term of the injunction was extended from one year to five years to accommodate the concern of the objectors and the Sixth Circuit that a one-year term was too short.

### D. Other Relief.

#### 1. Payment of Notice Costs and Administrative Fees.

The costs of Class Notice and administration incurred in connection with the Revised Settlement shall be paid by Defendants. Settlement Agt., § VII.

#### 2. Compensation for the Class Representatives.

Each class representative shall receive $1,000 from the Settlement Fund, pursuant to 15 U.S.C. § 1692k(a)(2)(B). Settlement Agt., § V.C.1.

### 3. Payment of Attorneys' Fees and Expenses.

The Revised Settlement Agreement provides that Class Counsel will request approval from the Court of payment of attorneys' fees of $1,500,000.00, and Midland will not oppose Class Counsel's application.  Settlement Agt., § V.C.3.  Moreover, in recognition of the fact that the Court previously awarded Class Counsel fees in the amount of $1,500,000 in connection with the Original Settlement, and that this Revised Settlement is of equal or greater benefit to the Class Members than the Original Settlement, the Revised Settlement Agreement provides that the Class Administrator will pay Class Counsel's attorneys' fees within 15 days after entry of the Preliminary Approval Order.  *Id.*  The Revised Settlement Agreement requires Class Counsel to sign a letter agreement making its equity owners jointly and severally liable for the repayment of that amount if this Court does not finally approve the settlement, or if this Court's order finally approving the settlement is reversed on appeal.  *Id.*  The Revised Settlement Agreement also provides for the possibility that Class Counsel is awarded less than $1,500,000, which would require them to repay the difference between $1,500,000 and the amount awarded.  *Id.*

### E. Release.

The Revised Settlement Agreement provides that in exchange for the monetary and injunctive relief provided above, and upon entry of a final order approving the settlement, Defendants and their related entities, affiliates, agents, and attorneys will be released from any claims arising out of or relating to the use of affidavits in debt-collection lawsuits brought by Defendants, where the affidavit used was executed by a person who lacked personal knowledge of the facts stated in the affidavit.  Settlement Agt., § V.D.

To address the Sixth Circuit's requirement that the settlement preserve the class members' interest in "individually controlling the defense of Midland's state court judgments

14

against them," 708 F.3d at 758, the release contains an express exception allowing individual class members to attempt to seek relief from a judgment in Midland's favor on the ground that an affidavit filed in the underlying debt-collection action was executed by a person who lacked personal knowledge of the facts stated in the affidavit; provided, however, that the action seeking such relief may not be a class action, may not seek relief on behalf of two or more judgment-debtors, and may not seek any relief other than vacatur of the judgment and, if permissible under applicable law, return of any money paid on the judgment.  Settlement Agt., § V.D.

Moreover, to the extent that any debt-collection lawsuit filed by Midland against a Class Member has not been reduced to a judgment, the release expressly does not preclude the Class Member from raising any applicable defenses in that action, nor does it preclude the Class Member from challenging the admissibility of any affidavit submitted by Midland.  *Id*., § V.D.

**F.      Entry of Judgment and Continuing Jurisdiction; Injunction.**

If the Court grants final approval of the Revised Settlement, the settling parties will request that the Court enter a final judgment of dismissal.  The Court will retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement, including Midland's compliance with the stipulated injunction, and the settling parties agree to submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement. Additionally, the Revised Settlement provides for an injunction against the litigation of released claims.

**G.      The Class Notice.**

In the Preliminary Approval order, the Court approved the Class Notice to be distributed by publication and mail to the last known address of the Class members as shown on Midland's records.  On December 8, 2013, competing class counsel Ian Lyngklip sent the parties a letter

15

identifying what he claimed were deficiencies in the approved form of class notice. Vassalle Dkt. No. 230, Ex. 1. Although the parties did not agree that the notice was defective, they made numerous revisions in order to accommodate his purported concerns. Vassalle Dkt. No. 230. The Court approved the revised forms of notice on December 23. Vassalle Dkt. No. 231. On January 9, 2013 — a month after he had originally articulated his objections — Mr. Lyngklip filed a motion asking the Court to set a hearing and/or a briefing schedule so that he could present some further objections to the revised notice at some unspecified future time. Vassalle Dkt. No. 232. Mr. Lyngklip's motion did not set forth any actual objections to the notice. *See id*. The Court held a telephone conference on January 21, 2014, after which it denied the motion. Vassalle Dkt. No. 237.

The class administrator, Class Action Administration ("CAA"), caused a copy of the notice and claim form to be sent by first-class mail to the last known postal address of each class member, as updated through the U.S. Postal Service change of address service. Dekdebrun Decl. ¶¶ 3-6. A postage paid Claim Form, included in the mailing, was used to file a claim or opt out of the settlement. *Id*. at ¶ 6. A copy of the Class Notice was also published in *USA Today* on Wednesday, January 29, 2014, and Thursday, January 30, 2014. *Id*. at ¶ 10.

### H. Settlement Administration.

A website was established to provide Class Members with information at www.BrentSettlement.com. Dekdebrun Decl. ¶ 9. The parties elected to keep the same Internet address that was used for the original settlement, so as to minimize the risk of confusion and ensure that class members who went online seeking information about the original settlement would receive the updated information regarding the Revised Settlement. *See id*. The website provided Class Members with important dates regarding the Settlement, answers to frequently

asked questions, and copies of the Class Notice, Preliminary Approval Order, and the Settlement Agreement.  *See id.* at ¶ 9 & Exs. B-C.  Class Members were given the option to file a claim through the website with on-line processing, or to return the postage paid postcard they received with the Class Notice.  *See id.* at ¶ 9.

Under Class Counsel's direction and supervision, CAA established a toll-free number which class members could call to obtain information about the case or have their questions about the Revised Settlement answered by CAA associates.  Dekdebrun Decl. ¶ 8.  Additionally, Class Members who wished additional information could contact CAA through an e-mail box labeled "Contact Us" set up on the settlement website.  *See id.* Ex. B.

## IV.    __The Court Should Grant Final Approval to the Revised Settlement.__

### A.    __Standard for Final Approval.__

It is axiomatic that the settlement of class-action litigation is favored.  *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); ALBERT CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("NEWBERG") ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise.").   In evaluating settlements, such as this one, courts have recognized that complex litigation is "notoriously difficult and unpredictable."  *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)).  "Absent evidence of fraud or collusion, such settlements are not to be trifled with."  *Granada*, 962 F.2d at 1205.

A class-action settlement should be approved if the court determines that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *UAW*, 497 F.3d at 631.  Courts within

17

the Sixth Circuit must consider the following factors to determine whether this standard is met: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631; *see also Vassalle*, 708 F.3d at 754. Additionally, a settlement can be rejected if it "gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Vassalle*, 708 F.3d at 755 (internal quotation marks and citation omitted); *In re Dry Max Pampers,* 724 F.3d at 718.

Ultimately, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a [class-action] lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). As the Sixth Circuit has held: "Our task is not to decide whether one side is right or even whether one side has the better of these arguments. Otherwise, we would be compelled to defeat the purpose of a settlement in order to approve a settlement. The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. In making that determination, the trial court has "broad discretion" and is not required to "conduct a full evidentiary hearing with live testimony and cross-examination before approving a settlement." *Id.* at 636; *Officers for Justice*, 688 F.2d at 625 (fairness hearing should not be turned into a trial on the merits).

### B.  All Seven *UAW* Factors Weigh in Favor of Approval.

When this court approved the Original Settlement, it held that all seven *UAW* factors favored approval.  The Sixth Circuit found no error in this conclusion, holding that "the court did not abuse its discretion in its determination of any of the seven listed factors."  *Vassalle*, 708 F.3d at 755.  Because the Revised Settlement is more favorable to the class members and resolves the problems identified by the Sixth Circuit, all seven of the *UAW* factors continue to weigh heavily in favor of approval.

### 1.  There Was No Fraud or Collusion.

The underlying litigation and settlement negotiations lasted years and were highly contentious.  Both parties vigorously attempted to secure the most desirable outcome for their clients, and could not reach an agreement without the sustained participation of Judge McQuade and this Court.  No reasonable person would contend that there was any collusion here.  *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009) (rejecting allegations of collusion where parties litigated for years before settling, including contested motions and substantial discovery, and where the agreement was the product of months of supervised negotiations, two mediations, and a settlement conference with the court).  Additionally, it is has been widely recognized that "[t]he participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) (citing *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005)).

Even after the settlement was approved, the affidavit review process before Judge McQuade was highly contentious, with Class Counsel vigorously representing the interest of the class and of consumers generally.  And after the Original Settlement was rejected by the Sixth

Circuit, the parties only agreed to the Revised Settlement after several months, multiple conferences with the Court, and additional briefing in which the views of the objectors were sought and considered.

### 2. Litigating to a Final Judgment Would Be a Lengthy, Complex, and Expensive Process.

In general, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (alteration in original) (internal quotation marks and citation omitted). In most cases, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting Newberg, § 11:50 at 155). Indeed, it has been held proper "to take the bird in hand instead of a prospective flock in the bush." *Id*. (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)).

Courts within the Sixth Circuit have described the Fair Debt Collection Practices Act as "a set of complex laws with many components." *Wess v. Storey*, No. 08-623, 2011 WL 1463609, at *4 (S.D. Ohio Apr. 14, 2011) (Watson, J.) (granting final approval of class settlement of FDCPA and OCSPA claims). Due to legal and factual complexities, this matter would be very expensive to fully litigate and might take years to resolve. There is no question that if these cases do not settle, they will surely proceed to trial, and will involve further expense and greater use of judicial resources, in addition to all that has already been expended. The trial could last several days and involve the introduction of voluminous documentary and deposition evidence and vigorously contested motions, with the expenditure of enormous amounts of

judicial and financial resources.  Any additional costs and expenses could well increase the costs and fees, thereby reducing any recovery for the Class.

Additionally, the trial would almost certainly be followed by an appeal.  Liability and class certification issues could be subjects of appeal by Midland.  The issue of damages could be appealed by Plaintiffs.  Accordingly, avoiding a trial and inevitable appeals in this matter strongly weigh in support of approval of the Settlement rather than prolonged and uncertain litigation.  *See DIRECTV*, 221 F.R.D. at 526-27.  Thus, this factor weighs in favor of approving the Revised Settlement.

### 3.    Class Counsel Had the Benefit of Substantial Discovery.

To ensure that Plaintiffs have had access to sufficient information to evaluate their case and assess the adequacy of the proposed settlement, the stage of the proceedings and the discovery taken must be considered.  *See In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1015; *see also Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000).

The record here shows that Class Counsel took extensive discovery which provided him with a substantial appreciation of the merits of the case prior to entering a settlement agreement. *See In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 537 (3d Cir. 2004) (degree of case development and discovery is a factor in evaluating fairness because it helps the court "determine whether counsel had an adequate appreciation of the merits of the case before negotiating") (internal quotation marks and citation omitted).

During discovery, Class Counsel investigated, among other things: (i) Midland's procedures for generating and signing affidavits used in collection actions; (ii) the process by which Midland purchased debts and received information concerning those debts; (iii) the availability of account information in Midland's computer system; (iv) how that account

information was utilized; (v) how accounts were referred to collection attorneys for suit through the business logic component of Midland's computer programming; (vi) the role of the affiants in the collection process; and (vii) Midland's organizational structure. Given this extensive discovery, this Court should "defer to the judgment of experienced trial counsel who have evaluated the strength of his case." *Kogan*, 193 F.R.D. at 501 (quoting *Bronson v. Bd. of Educ.*, 604 F. Supp. 68, 73 (S.D. Ohio 1984)); *DIRECTV*, 221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").

In addition to thorough discovery, both parties filed motions for summary judgment and, at the time the settlement was negotiated, the parties had the benefit of key rulings on class certification, liability, and damages. Based upon the briefing and the rulings of the Court to date, both parties had a "clear view of the strengths and weaknesses of their cases." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). The discovery undertaken in this case and the stage of the proceedings weighs heavily in favor of the Settlement.

### 4. The Settlement Is Fair in Light of the Plaintiffs' Likelihood of Success and Potential Recovery.

The $5.2 million settlement in this case is eminently fair in light of plaintiffs' likelihood of success and potential recovery. First, the district court held that Plaintiff Brent failed to establish any actual damages resulting from the fact that the affidavit filed in the debt-collection lawsuit against her claimed to be based on personal knowledge when it was actually based on business records and data received from Ms. Brent's original creditor. Brent Dkt. No. 104 at 12-13 (11/4/10 Memorandum Opinion). This holding limited the recovery available to Brent and similarly-situated persons to statutory damages under the FDCPA, which are capped at the lesser of one percent of the defendant's net worth or $500,000 per class action. It also underscores the

22

difficulty class members would face trying to prove that Midland's discontinued affidavit practices caused them significant compensable damages under any legal theory.

Second, just because the district court found an FDCPA violation did not mean that even a payout of $500,000 was guaranteed. Courts need not award the maximum statutory damages under the FDCPA and are free to award significantly less than the $500,000 maximum. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, No. 06-1397, 2011 WL 1434679, at *2 n. 5 (N.D. Ohio Apr. 14, 2011) (explaining that the Court has discretion in assessing statutory damages and must consider the factors laid out in 15 U.S.C. § 1692k(b) in determining the specific amount of liability); 15 U.S.C. § 1692k(a)(2)(B). Significantly, one factor in determining the amount of statutory damages is the number of persons actually harmed by the violation. *See Jerman*, 2011 WL 1434679 at *7-8. Where, as here, it is highly unlikely that the violation — the attestation of personal knowledge — caused actual damages to anyone, this factor weighs in favor of a reduced award. *See id*.

Third, the certainty that Midland would appeal the district court's summary-judgment opinion cast a shadow of uncertainty over the prospects of the class. The applicable law in this area is far from settled, and other courts have rejected the theory of liability that the Court adopted here. For example, in *Manlapaz v. Unifund CCR Partners*, the Northern District of Illinois dismissed a lawsuit based on identical facts at the pleading stage, reasoning that "the falsity of [the affiant's] statement that she had personal knowledge of facts that she gleaned from a review of business records is a technicality which would not mislead the unsophisticated consumer." No. 08-6524, 2009 WL 3015166, at *5 (N.D. Ill. Sept. 15, 2009). *Manlapaz* was recently cited by the Sixth Circuit with approval in *Clark v. Main Street Acquisition Corp.*, — F. App'x —, 2014 WL 274469, at *4 (6th Cir. 2014) (observing that "multiple courts, including

23

this circuit, have determined that an affiant's statement of 'personal knowledge' regarding a record originally generated by a third party that the attesting party has subsequently reviewed does not violate the [FDCPA]"); *cf. Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330-333 (6th Cir. 2006) (filing a debt-collection lawsuit without the immediate means of proving up the debt does not violate the FDCPA).

Moreover, many courts, both before and after the *Brent* decision, have granted summary judgment and/or motions to dismiss in favor of defendant debt collectors in cases involving allegedly false statements of personal knowledge in affidavits filed in state court collection actions. *See*, *e.g.*, *Shetiwy v. Midland Credit Mgmt., Inc.*, — F. Supp. 2d —, 2014 WL 1257235, at *6 (S.D.N.Y. 2014) (dismissing FDCPA complaint alleging that debt buyers "filed complaints and affidavits without 'personal knowledge' of the underlying debt," because "under Second Circuit law, court filings that do not 'mislead a putative-debtor as to the nature and legal status of the underlying debt, or . . . impede a consumer's ability to respond to or dispute collection' do not violate the FDCPA") (quoting *Gabriele v. Am. Home Mortg. Serv., Inc.*, 503 F. App'x 89, 94-95 (2d Cir. 2012)) (ellipsis in original); *Goray v. Unifund CCR Partners*, No. 06-00214, 2007 WL 4260017, at *9 (D. Haw. Dec. 4, 2007) ("The fact that [the affiant] never saw the complaint and did not personally review the documents to verify the amount owed by Plaintiff does not constitute a violation of the FDCPA"); *Garigulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 191 (S.D.N.Y. 2009) (allegation that law firm associate did not review the referenced documents prior to signing affidavit in support of debt-collection complaint not sufficient to state an FDCPA claim); *Albritton v. Sessoms & Rogers*, No. 09-321, 2010 WL 3063639, at *2-7 (E.D.N.C. Aug. 3, 2010) (allegation that affiant swore to undisputedly accurate debt information without first reviewing the account statement was insufficient to state an FDCPA claim) (citing

24

*Miller v. Javitch, Block & Rathbone*, 561 F. 3d 588, 596 (6th Cir. 2009)); *cf. O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 943-44 (7th Cir. 2011) (false statements to a state court are not actionable under the FDCPA because judges are not "consumers").

The Pelzer objectors and State AGs claim that the settlement is unfair because class members could allegedly recover substantially more than the $5.2 million settlement amount by asserting claims under various states' laws. To the parties' knowledge, the only reported case holding that it violates state law to file an affidavit that purports to be based on personal knowledge when it was really based on business records is this Court's summary-judgment opinion. If generous monetary awards were available under state law to plaintiffs who could prove that a debt collector filed an affidavit that wrongly claimed to be made on personal knowledge, there would be case law and/or evidence of lucrative judgments awarded in such cases. The settling parties are not aware of any such case law or evidence, and neither the Pelzer objectors nor the State AGs have provided any.

Fourth, the approximately $2.5 million being paid to class members here is *more than five times* the maximum statutory damage award under the FDCPA and is therefore well beyond the range that courts have approved. *See, e.g.*, *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972) (settlement award resulting in a recovery of approximately 14% of actual alleged damages deemed fair); *In re DPL, Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 951 (S.D. Ohio 2004) (noting that "the available literature indicates that the average securities fraud class action settles for less than 15% of damages suffered by the class"); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (court approved class-action settlement in which class members would receive approximately 11% of the high-end of the range of damages); *In re Ikon Office Solutions,*

*Inc., Sec. Litig.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (settlement award resulting in a recovery between approximately 5-9% of damages was fair).

Fifth, the per-claimant payment is in line with what courts have approved in other class actions involving debt-collection practices. Because the FDCPA caps statutory damages in class actions at the lesser of one percent of the defendant's net worth or $500,000, settlements in class actions against debt collectors are typically very low and can result in minimal or even nonexistent cash payments to class members. *See, e.g.*, *Catala v. Resurgent Capital Servs. L.P.*, No. 08-2401, 2010 WL 2524158, at *3-4 (S.D. Cal. June 22, 2010) (approving FDCPA settlement of $35,000 distributed to *cy pres,* with no payment to class members); *Cope v. Duggins*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (approving FDCPA class action settlement where class members who returned claim forms would receive $11.90 apiece); *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, No. 04-2195, 2006 WL 3681138, at *7 (E.D.N.Y. Dec. 11, 2006) (approving FDCPA settlement of $15,000 to *cy pres*, with no payment to class members); *see also Carroll v. United Compured Collections, Inc.,* 399 F.3d 620, 625-26 (6th Cir. 2005) (rejecting defendant's assertion that a class action was not a superior method of adjudicating FDCPA because the estimated 164 members of the putative class would only recover about $60 each); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 271 F.R.D. 572, 574-77 (N.D. Ohio 2010) (certifying class even though FDCPA damage cap would limit recovery to $3.10 per class member); *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 546-47 (N.D. Cal. 2005) (certifying class even though FDCPA damage cap would limit recovery to 25 cents per class member).

Sixth, to the extent class members believe they have significant actual damages and/or can recover more under state law theories, their ability to file individual lawsuits is protected by

26

the right to opt out. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 861 (6th Cir. 2013).

As the record before this Court reflects, this case has been hard fought from the beginning and involves numerous legal issues that ultimately may be subject to appeal absent a settlement. Moreover, many factual and legal issues remain. In addition to the inherent risks involved in further litigation as well as any subsequent appeals, there inevitably will be significant delay before any litigated outcome would provide benefits to the Class Members. For all of the foregoing reasons, the Revised Settlement is fair and reasonable and in the best interests of the Class Members.

**5.  Class Counsel and the Class Representatives Support the Settlement.**

The Sixth Circuit has explained that great weight should be afforded to the recommendation of experienced counsel in approving a class settlement, "who has competently evaluated the strength of his proofs." *Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983) (and cases cited therein). This deference also corresponds "to the amount of discovery completed and character of the evidence uncovered," *id.*, which, as noted above, was substantial here.

Notably, in the nearly five years that have elapsed since this court issued its summary-judgment opinion in *Brent*, Class Counsel remains the only attorney who has ever obtained a favorable adjudication on the merits of a "robo-signing" claim against a debt collector. Indeed, at the fairness hearing on the original settlement, Objector Pelzer's counsel, Ian Lyngklip, praised the Murray and Murray firm for their "remarkable" work in this case, stating that: "[t]he work that they did in obtaining this judgment was truly remarkable. What must have been an enormous amount of work, good advocacy, this is really — in all aspects that summary judgment ruling was a real boon to many of us who do this work. And I do this work regularly, and I think

that bears recognition." Vassalle Dkt. 158 (7/11/11 Hrg. Transcript at 66). By virtue of his years of work on this litigation and his decades of experience representing consumers in litigation against debt collectors, Class Counsel is an expert on the merits of this lawsuit and, more generally, on the relief available to consumers who have been sued by debt collectors with affidavits falsely claiming to have been made on personal knowledge. Class Counsel is convinced that this settlement is eminently fair.

### 6. The Reaction of Absent Class Members.

In considering a class action settlement, the Court should look to the reaction of the class members. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). Of course, "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement." *Id.*

Here, of the approximately 1.4 million class members, more than 133,000 have filed claims as of the April 14, 2014 deadline. Dekdebrun Decl. ¶ 12. Only 1,890 class members opted out, representing approximately 0.1% of the class. *Id.* at ¶ 11. Additionally, only 13 class members objected to the settlement, which is less than .001% of the class. It is widely recognized that if only a small number of class members opt out or object, this indicates that the settlement is adequate. *Brotherton*, 141 F. Supp. 2d at 906; *In re Delphi Corp. Sec. Litig.*, 248 F.R.D. 483, 500-01 (E.D. Mich. 2008); *In re Cardizem Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003); NEWBERG, § 11.48. Notably here, the opt-out rate is far lower than the parties anticipated when they agreed that a 2% opt-out rate would permit Midland to withdraw from the settlement. Settlement Agt., § XVII.

The Original Settlement drew over 60 objectors, a number of whom were represented by legal aid groups or competing class counsel, and attracted opposition from amici such as the FTC

and the Center for Responsible Lending.  The overwhelming majority of individuals and interest groups who objected to the Original Settlement have not objected to the Revised Settlement.  Of the objections, seven were submitted by individuals and consist of descriptions of the particular class members' experiences with Midland or other creditors and/or requests that the absent class members be awarded substantial sums of money.  These objections reflect the aggravation caused by debt-collection efforts, not the affidavits that are the subject matter of this lawsuit.  It is an unfortunate sign of the times that so many people are in financial difficulty and now have to deal with debt-collection issues.  Unfortunately, this lawsuit cannot solve all of the problems within the debt-collection industry, and it is not intended to do so.

One of the objectors — Clifford Cain — objected out of concern that the settlement would bar his unrelated action; both Midland and Class Counsel have confirmed on the record in filings with this Court that Mr. Cain's existing lawsuit, as currently pled, is not covered by the settlement.  *See* Vassalle Dkt. Nos. 248, 252.

The only competing class counsel who continues to object is Ian Lyngklip.  He represents the remaining five objectors, and has asked this Court to appoint him as Class Counsel instead of the Murray & Murray firm — or, in the alternative, award him $35,000 if the settlement is approved.  Vassalle Dkt. Nos. 245, 246, 251.  Mr. Lyngklip's primary objection appears to be that the settlement is unfair because the release would bar class members from filing individual lawsuits under the FDCPA or analogous state statutes against Midland based on Midland's filing of affidavits made without personal knowledge.  According to Mr. Lyngklip, the release is unfair because lawyers (like Mr. Lyngklip) will not be willing to file motions to vacate judgments on behalf of class members unless they can also file an FDCPA or state-law claim based on the affidavit, which would allow them to recover attorneys' fees.  Although Mr. Lyngklip's

objections will be addressed more fully in the parties' responses, the parties note that in virtually every class action settlement, the class releases the defendant from all claims that were actually brought in the class action, and all other claims based on the same factual predicate. This is unquestionably allowed. *See, e.g.*, *Moulton*, 581 F.3d 344 at 349 ("The question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a 'factual predicate' with 'the claims pled in the complaint.") (citing *Olden v. Gardner*, 294 F. App'x 210, 220 (6th Cir. 2008)). Class members who wish to assert individual claims have the right to opt out. *In re Whirlpool*, 722 F.3d at 861.

Moreover, as former-objector-turned-fee-seeker Charles Delbaum correctly observed in his treatise, it would not be possible to settle most class actions at all if the defendant could not obtain a release that would prevent class members from continuing to sue for the same conduct that was the subject of the settlement. Stuart T. Rossman, Charles Delbaum, & Arielle Cohen, Consumer Class Actions § 17.7.10.1 (8th ed. 2013) (recognizing that class-action settlements normally release all claims arising from the specific transactions alleged in the complaint, and explaining that, for example, "if the complaint alleges that a charge . . . violates the Truth in Lending Act, the defendant is not buying peace with the settlement if after the settlement, it is sued on the theory that the same charge violates a state UDAP statute").

### 7.    The Revised Settlement Is in the Public Interest.

The final factor for consideration is the public interest in approving the settlement. Public policy generally favors settlement of class-action lawsuits. The settlement brings closure to a matter that has been pending for over five years.

The Settlement and the proceedings which gave rise to it bring relief to a substantial number of Class Members who were affected by Midland's affidavit practices. Although Mr.

Lyngklip argues that the $5.2 to $5.7 million settlement amount is too low, it is substantial compared to the $500,000 FDCPA damage cap and the minimal actual damages caused by an affidavit filed without personal knowledge. Moreover, the settlement provides injunctive relief to assure that policies will be in place to prevent the practice from continuing in the future, effective for five years. The underlying decisions have brought significant benefits to a legion of U.S. residents through the Court's seminal decision rejecting improper affidavit practices. In short, the public interest weighs in favor of approving the proposed Settlement.

## V. The Court Should Certify the Settlement Class.

In order to grant final approval to the Revised Settlement, the court must certify the settlement class pursuant to Rule 23. Under Rule 23(a), a class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Vassalle*, 708 F.3d at 756. Where, as here, certification is sought under Rule 23(b)(3), the class must satisfy the additional requirements of superiority and predominance. Fed. R. Civ. P. 23(b)(3); *Vassalle*, 708 F.3d at 756. The settlement class here meets the prerequisites for certification, for settlement purposes only.

### A. The Requirement of Numerosity Is Satisfied.

The first prerequisite of class certification is numerosity, which requires that "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The settlement class here has approximately 1.4 million members, and therefore satisfies the numerosity requirement. *Vassalle*, 708 F.3d at 756 (affirming this court's prior finding of numerosity).

### B. The Requirement Of Commonality Is Satisfied.

The second prerequisite for class certification is commonality, which requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). All class members

31

here seek resolution of a common legal question:  whether Midland's use of affidavits which state that they are based on the affiant's personal knowledge but are actually based on Midland's data and records is an unfair and deceptive debt-collection practice.  *Vassalle*, 708 F.3d at 756 (affirming this court's prior finding of commonality).

### C.      The Typicality Requirement Is Satisfied.

The third prerequisite for class certification is typicality, which requires that the claims of the class representatives be typical of the class.   Fed. R. Civ. P. 23(a)(3).   The class representatives' claims here are typical of the class because they arise from the same factual predicate, i.e., being sued by Midland using an affidavit that purported to be based on the affiant's personal knowledge when it was actually based on Midland's data and records. *Vassalle*, 708 F.3d at 756 (affirming this court's prior finding of typicality).

### D.      The Adequate Representation Requirement Is Satisfied.

The final Rule 23(a) prerequisite requires that the proposed class representatives "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit applies a two-prong test to determine whether this requirement is met:  (1) the representative must have common interests with the unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.  *Vassalle*, 708 F.3d at 757.  In addition, the Court reviews "whether class counsel are qualified, experienced, and generally able to conduct the litigation," and "consider[s] whether the class members have interests that are not antagonistic to one another."  *Id.* (internal quotation marks and citation omitted).

Here, all of the factors are satisfied.  The class representatives share common interests with the unnamed class members in that they all share a desire to obtain monetary and injunctive

relief from Midland. *Vassalle*, 708 F.3d at 757. The class representatives and class counsel have vigorously pursued these interests by prosecuting this action and obtaining a settlement that provides substantial monetary and injunctive relief. Settlement Agt., § V.D. Additionally, the Sixth Circuit has held that in this case the unnamed class members' "most important interest" is "the ability to use the false affidavits against Midland to contest their debts in court." *Vassalle*, 708 F.3d at 757. The class representatives have vigorously pursued this interest by obtaining an exception to the class release permitting class members to use the defective affidavits to challenge Midland's judgments against them, and permitting class members to challenge the defective affidavits in ongoing debt-collection litigation. Settlement Agt., § V.D. It is undisputed that class counsel here is "qualified, experienced, and generally able to conduct the litigation." *Vassalle*, 708 F.3d at 757 (internal quotation marks and citation omitted). Finally, the class representatives have no interests that are antagonistic to the class because their debts are not being released by the settlement so the settlement leaves them in exactly the same position as the absent class members. *See id.*

Mr. Lyngklip contends that the class representatives are inadequate because none of them have an interest in having his or her judgment vacated. This is wrong. Vassalle and Johnson both have judgments against them and therefore have an interest in getting those judgments vacated. Moreover, Vassalle and Johnson actually have a *heightened* interest in getting their judgments vacated because they have paid money to Midland to satisfy the judgments, and vacatur could entitle them to the return of that money.

### E. The Predominance Requirement Is Satisfied.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554,

564 (6th Cir. 2007) (internal quotation marks and citation omitted).  "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof."  *Id.* (alteration in original) (internal quotation marks and citation omitted).

The predominance requirement is met here because, as this Court found when it certified the nationwide class in connection with the original settlement:

> The question of whether affidavits used by Midland were deceptive and unlawful lies at the heart of this litigation, and is susceptible to classwide proof.  As the Court found in its previous opinion on class certification in *Brent*, "the unlawful aspects of the form affidavits here at issue were a result of the process by which they were produced pursuant to Midland and MCM's general business practices. Liability questions are thus amenable to class-wide proof."

8/12/11 Memorandum Opinion and Judgment, Vassalle Dkt. No. 160 at 19 (citation omitted); *Vassalle*, 708 F.3d at 756 (affirming finding of predominance).

## F.    The Superiority Requirement Is Satisfied.

In determining whether a class action satisfies the superiority requirement, the court may look to the following factors:  (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the existence of pending litigation concerning the same controversy; (3) the desirability of concentrating the litigation of claims in this forum; and (4) the difficulties likely to be encountered in the management of a class action.  *Vassalle*, 708 F.3d at 757-58.  Additionally, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."  *Id.* at 758 (alteration in original) (internal quotation marks and citations omitted).  Moreover, "[w]here many individual inquiries are necessary, a class action is not a superior form of

34

adjudication. However, where a threshold issue is common to all class members, class litigation is greatly preferred." *Id.* (alteration in original) (internal quotation marks and citation omitted). Finally, if class members are unaware of the violation and unlikely to elect to bring individual lawsuits, this weighs in favor of finding a class action superior. *Id.*

The considerations here weigh in favor of superiority. First, there is a strong interest in resolving these claims in a single class action because most class members have limited resources. *Vassalle*, 708 F.3d at 758. Second, since the threshold issue of Midland's liability is common to all class members, a class action will not be difficult to manage. *Id.* Third, as detailed in the briefs submitted by Midland and Class Counsel, the potential recoveries available in individual lawsuits are small, even when one takes into account potential state-law claims. *See* Dkt. Nos. 216, 224, 225. Fourth, this case is "far more procedurally advanced" than the other actions bringing similar claims. *Vassalle*, 708 F.3d at 758. Fifth, the likelihood that class members will bring individual lawsuits is remote, as evidenced by the fact that "class members here are surely aware of the judgments against them," yet very few class members have filed individual lawsuits. *See id.* Sixth, any class member who wishes to pursue an individual recovery is free to opt out of the class. *See In re Whirlpool*, 722 F.3d at 861; *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently."); *Chakejian v. Equifax Info. Servs., LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) (same).

Finally, the issue that caused the Sixth Circuit to find that a class action was not superior when it considered the Original Settlement is no longer present. The Sixth Circuit found superiority lacking because "[t]he interest of the unnamed class members in individually controlling the defense of Midland's state court judgments against them is their strongest

interest." *Vassalle,* 708 F.3d at 758. The Revised Settlement preserves class members' ability to "individually control" the defense of Midland's state-court judgments by excluding individual motions or actions to vacate judgments from the release, and by clarifying that the release does not prevent class members from challenging Midland's affidavits or raising any defense in ongoing debt-collection litigation. Settlement Agt., § V.D.

## VI. **The Notice Program Satisfies Due Process.**

Due process requires the class notice to be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Vassalle*, 708 F.3d at 759 (quoting *UAW*, 497 F.3d at 629)). Due process, however, "does not require the notice to set forth every ground on which class members might object to the settlement." *Id.* (internal quotation marks and citation omitted). Rather, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (alteration in original) (internal quotation marks and citation omitted).

### A. **The Dissemination Plan Satisfies Due Process.**

There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 175 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981). Here, notice was disseminated via individual mailing to all Class Members identified in the customer data files of Midland, and also by publication. *See* Dekdebrun Decl. ¶¶ 3-6, 10. This constitutes the best notice practicable under the circumstances, and fully complies with and

36

satisfies the notice requirements of Rule 23.  As the highest standard of notice, notice here easily satisfies the due process requirement.

      **B.**      **The Contents of the Notice Satisfy Due Process.**

      A settlement notice is a summary, not a complete source of information.  *See e.g.*, *Vassalle*, 708 F.3d at 759.  The Class Notice reasonably apprises the Class Members of the nature and pendency of the Class Action and the Class claims; of all the material elements of the proposed settlement, including, but not limited to, the definition of the Class; the relief available under the proposed settlement and steps necessary to obtain the relief; the right, time and manner to exclude themselves from, or object to, the settlement; of the identity of Class Counsel and of information necessary to communicate with Class Counsel; that additional information is available from the Settlement Administrator, Class Action Administration; Class Counsel's intent to apply for a fee award in the amount of $1,500,000; and of the right to appear at the Fairness Hearing, including through an attorney.  *See* Dekdebrun Decl. Ex. A.  The notice also informs class members they can receive more information from the settlement website, www.BrentSettlement.com.  *Id.*  On the website, class members can view summary information about the Revised Settlement, and can access the complete settlement agreement and other court documents, including the Sixth Circuit's opinion in Vassalle.  *See id.* Exs. B-C.

      The Notice also specifically advises Class Members that if the Settlement is approved, they will give Midland a release, which "means you can't sue or be part of any other lawsuit against Defendants . . . about the claims or issues in this lawsuit."  The notice goes on to explain: "The release in this case prevents you from filing a lawsuit or counterclaim where you claim that Defendants, Defendants' affiliated companies, and/or Defendants' agents or attorneys, filed an

affidavit in a debt-collection lawsuit where the affidavit was executed by a person who lacked personal knowledge of the facts stated in the affidavit."  *See* Dekdebrun Decl. Ex. A.

The notice also specifically advises class members:  "If you exclude yourself from the class, you may be able to bring a lawsuit under state or federal law that could entitle you to more than the amount you will receive if you elect to receive your share of the Settlement Fund.  There is no guarantee that such a suit would be successful, or that you would receive anything at all."  *See* Dekdebrun Decl. Ex. A.  Additionally, the notice makes clear that class members retain the right to seek to vacate Midland's judgments against them individually, and that they are not precluded from raising any defenses in pending debt-collection litigation with Midland.  *Id*.

## VII.    The Court Should Enjoin Relitigation of Released Claims.

The Revised Settlement provides that at the conclusion of, or as soon as practicable after the close of the hearing on the fairness, reasonableness, and adequacy of the proposed settlement, Class Counsel and Defendants shall request that the Court enter a Final Order which, among other things, permanently enjoins all class members who did not timely and validly exclude themselves from the class from relitigating released claims.  Settlement Agt., § IX.

Such injunctions are common and well within the Court's authority under the All Writs Act which provides, in relevant part, that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig*., 261 F.3d 355, 367-68 (3d Cir. 2001) (upholding injunction against relitigation of claims released by class action settlement and holding that "in its Final Order and Judgment the district court expressly retained exclusive jurisdiction to oversee the implementation of the settlement and the judgment. The court acted quite properly in retaining jurisdiction in that

38

fashion. A district court has the power to enforce an ongoing order against relitigation so as to protect the integrity of a complex class settlement over which it retained jurisdiction." (citations omitted)); *Allen v. Decision One Mortg.*, No. 07-11669, 2010 WL 1930148, at *4 (D. Mass. May 12, 2010) (approving settlement and enjoining class members from litigating released claims); *In re Linerboard Antitrust Litig.*, 2008 WL 4461914, at *5-7 (E.D. Pa. Oct. 3, 2008) (Court had authority to enjoin counsel from settled antitrust litigation from relitigating their fee allocations in other courts); *In re Reliance Sec. Litig.*, No. 99-858, 2003 WL 1943320, at *2-3 (D. Del. Apr. 17, 2003) (enjoining class members from litigating released claims under the All-Writs Act).

Accordingly, the parties respectfully request the Court issue an order permanently enjoining all class members who did not timely and validly exclude themselves from the class from participating as class members in any lawsuit in any forum, or otherwise filing, intervening in, commencing, prosecuting, continuing and/or litigating any lawsuit in any forum against the Released Parties, any claim that is released by the Revised Settlement.

## VIII.   Conclusion

The Revised Settlement meets all the requirements for final approval. It is the result of hard-fought and adversarial litigation and negotiations; it was negotiated by Class Counsel who were thoroughly informed on all issues of liability and damages and was based on the extensive amount of discovery and research undertaken in this case; and Class Counsel, who have extensive experience in litigating and resolving class action suits, support the Settlement. In light of the strengths of the claims, the risk, expense, complexity and duration of continued litigation, the exhaustion of extremely valuable judicial resources, the risks associated with class certification, the discovery and motion practice completed and the stage of the proceedings, and the experience and views of Class Counsel, the Revised Settlement is eminently fair. In addition, all of the concerns that caused the Sixth Circuit to vacate the order approving the Original

Settlement have been fully addressed.  The parties respectfully request that the Court grant final

approval to the Revised Settlement.


Respectfully Submitted:                              Respectfully Submitted:


/s/ Dennis E. Murray, Sr.                            /s/ Theodore W. Seitz
Dennis E. Murray, Sr.                                Theodore W. Seitz
Donna Jean Evans                                     Dykema Gossett PLLC
Murray & Murray Co. LPA                              201 Townsend Street, Suite 900
111 East Shoreline Drive                             Lansing, MI 48933
Sandusky, OH 44871-0019                              Tele:  (517) 374-9149
Tele:  (419) 624-3000                                tseitz@dykema.com
dms@murrayandmurray.com

                                                     Richard L. Stone (admitted *Pro Hac Vice*)
Counsel for Andrea Brent, Hope Franklin,             Amy M. Gallegos (admitted *Pro Hac Vice*)
Martha Vassalle, and Jerome Johnson                  Jenner & Block LLP
                                                     633 West 5th Street, Suite 3600
                                                     Los Angeles, CA 90071
                                                     Tel: (213) 239-2208
                                                     agallegos@jenner.com
                                                     rstone@jenner.com

                                                     Counsel for Midland Funding, LLC,
                                                     Midland Credit Management, Inc., and
                                                     Encore Capital Group, Inc.