# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **MARTHA VASSALLE, et al.** | Case No. 3:11-cv-0096 |
| Plaintiffs, | |
| | Judge David A. Katz |
| vs. | |
| | **And Related Cases:** |
| **MIDLAND FUNDING LLC, et al.** | Case No. 3:08-cv-1434, N.D. Ohio |
| | Case No. 3:10-cv-0091, N.D. Ohio |
| Defendants. | Case No. 3:11-cv-1332, N.D. Ohio |

---

## CLASS COUNSEL'S MOTION FOR APPROVAL OF THE PRIOR AND CURRENT REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND MEMORANDUM IN SUPPORT

---

Class Counsel moves that this Court issue an order and judgment approving payment of attorneys' fees in the amount of one million five hundred thousand dollars. The payment of same was already approved by this Court and is included in the Revised Class Action Settlement Agreement of November 8, 2013. Class Counsel also seeks an award of expenses in the amount of $14,809.

Respectfully submitted,

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
dms@murrayandmurray.com
Donna J. Evans, Esq. (0072306)
dae@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky OH  44870
Telephone: 419-624-3000, Fax: 419-624-0707
Attorneys for Plaintiffs

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION & BACKGROUND

Class Counsel undertook this litigation on a contingent fee basis.  This matter started out as the defense of a collection matter in municipal court.  Instead of a mere defense, Counsel have invested more than $1,392,309 of time and unreimbursed fees and out-of-pocket expenses], on a matter that has stretched across more than six years of hard-fought and highly adversarial litigation, starting with the filing of a Complaint by Midland on May 19, 2008.

Through Class Counsel's efforts and because of the decisions of this Court, Class Counsel has obtained for the benefit of the Class a cash settlement that amounted to five million, two hundred thousand dollars together with valuable injunctive relief.  As compensation for their efforts, Class Counsel again seeks approval of the payment of attorneys' fees in the amount of one million, five hundred thousand dollars.[1]  The requested approval amounts to the reimbursement of fees and expenses and it is well within the range of fee awards typically made in similar cases in the Sixth Circuit and this Court.  It is reasonable in light of the time expended and successful results obtained in the combined aggressively litigated cases, *Brent, Franklin* and *Vassalle*.  Importantly, it is also in accord with the $1.5M that was previously determined, by this Court, to be reasonable. (*Vassalle* Dkt. # 160). Therefore, Class Counsel respectfully requests that the Court grant this motion to approve the requested fees and reimbursement of expenses.  In the final analysis, Class Counsel has worked for zero compensation during the 14 months since the decision by the Sixth Circuit. Class Counsel means Murray and Murray,  Attorney Donna Evans and Dennis Murray Sr.

---

[1] Pursuant to the Revised Class Action Settlement Agreement, Defendants agree not to oppose Class Counsel's application for attorney's fees in an amount not to exceed $1,500,000.  *See* Revised Class Action Settlement Agreement at § C.3.

**Background**

On April 17, 2008, Midland Funding filed a debt collection action against Andrea Brent in the Municipal Court, Sandusky, Ohio.  On May 19, 2008, Brent filed an answer to the Complaint, along with a Counterclaim, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") for the use of false, deceptive and misleading representations in connection with the collection of the debt and seeking to proceed as a class action.  On June 13, 2008, Midland removed the case to the United States District Court for the Northern District of Ohio, Western Division on the basis of Federal Question jurisdiction.

On December 1, 2008, Brent filed an Amended Counterclaim.  Specifically, Brent alleged that Defendants filed debt collection lawsuits using affidavits that contained false attestations of personal knowledge by affiants, and thereby used unfair and deceptive means to attempt to collect debts in violation of the FDCPA and the Ohio Consumer Sales Practices Act ("OCSPA").  Brent sought to recover statutory damages as provided by 15 U.S.C. § 1692k, as well as actual damages.

In December 2009, Hope Franklin (along with a Co-Plaintiff, Thomas Hyder) filed a related class action lawsuit against Midland Funding, Midland Credit Management, Inc. and Encore Capital Group, Inc. in the Erie County Court of Common Pleas, Erie County, Ohio, which was also removed to the United States District Court for the Northern District of Ohio, Western Division.  Franklin alleged, on behalf of herself and a nationwide class, that Midland filed affidavits in state courts throughout the United States that contained false attestations of personal knowledge.  The *Franklin* Action stated common law claims for "Unintentional and/or Intentional Misrepresentations Resulting in Individual and Class Damages" and sought certification of a nationwide class.

In January 2011, Martha Vassalle and Jerome Johnson filed a class action lawsuit against Midland Funding, Midland Credit Management, Inc. and Encore Capital Group, Inc. in the United States District Court for the Northern District of Ohio.  Vassalle and Johnson alleged that Midland regularly filed affidavits in state courts throughout the United States that contained false attestations of personal knowledge.  The *Vassalle* action set forth three common law causes of action:  Fraudulent Misrepresentation; Negligence; and Unjust Enrichment.

In 2009 and 2010, the parties participated in four mediation sessions with the Hon. Richard McQuade as the mediator, but were unsuccessful in resolving the litigation. On January 28, 2011, the parties participated in a settlement conference with this Court. The settlement negotiations that had begun at the January 28 settlement conference continued over the next two weeks, and on Friday, February 11, 1011, the parties reached an agreement-in-principle settling the case.

This Court preliminarily approved the settlement (the "Original Settlement") on March 11, 2011.  This Court granted final approval on August 12, 2011. Eight class members appealed. On February 26, 2013, the Sixth Circuit reversed the order approving the settlement and remanded the case for further proceedings. After the case was remanded, the parties engaged in further negotiations in an attempt to reach a revised settlement that comported with the Sixth Circuit's ruling. The Revised Class Action Settlement Agreement was the result of these efforts.

Class Counsel will have spent more than six years actively litigating these matters.  A summary of the key work completed by Class Counsel follows.  (See Declaration of Dennis E. Murray, Sr., attached.)

### 1. Discovery

Discovery in this matter was extensive.  It required Class Counsel to review more than four hundred pages of documents.  Class Counsel conducted and defended numerous depositions in Ohio and in Michigan.  In another case against the same Defendants, Class Counsel invested more than one hundred thousand dollars, for experts to gain an understanding of the computer systems of the Defendants.

Class Counsel deposed Midland witnesses on the relevant issues, such as (1) the procedures for printing and signing the affidavits used in collections; (2) the purchase of debts and the information received by Midland upon purchase; (3) the availability of the account information in the Midland computer system; (4) how account information in the Midland computer system was utilized; (5) how accounts were referred to collection attorneys for suits through the business logic component of Midland's computer programming; (6) the role of the affiants in the collection process; and (7) the organizational structure of the Midland defendants.

Class Counsel also conducted a substantial amount of written discovery.  Class Counsel served four sets of interrogatories on Midland and four sets of requests for production.  In response to these discovery requests, Midland produced over four hundred pages of documents, which Class Counsel analyzed.  Class Counsel also responded to two sets of written interrogatories and two sets of requests for production.

Class Counsel secured and reviewed public filings to include annual and quarterly SEC filings of business descriptions, balance sheets and income statements and their press releases in order to better understand the actual business that was engaged in by the Defendants.

Throughout the course of discovery and motion practice, Class Counsel gained access to factual information and were able to review and digest court decisions from throughout the

United States, which allowed them to refine the legal theories regarding the specific FDCPA, OCSPA and common law violations of the Defendants. On December 1, 2008, an Amended Complaint was drafted, refined and eventually filed by Class Counsel (*Brent* Dkt. # 22).

The discovery process was protracted and difficult. The parties had numerous discovery disputes. Ultimately, the Court was forced to intervene in contested discovery matters.

### 2. Motion Practice

In addition to arduous discovery, Class Counsel engaged in extensive motion practice. By Order of this Court on August 11, 2009, Class Counsel successfully defeated Midland's request for summary judgment in the *Brent* action and obtained a favorable decision on the competing motion for summary judgment (*Brent* Dkt # 50).

This Court found that Midland *had* violated the Fair Debt Collection Practices Act *and* the Ohio Consumer Sales Practices Act by attempting to collect a debt using a false affidavit. In fact, this Court's decision was the first robo-signing decision in the United States.

This Court further held that Brent was entitled to a declaratory judgment and to injunctive relief. This Court, for the first time in the United States, enjoined Midland from using false affidavits in their attempts to collect debts, any place in the Unites Stated. Midland filed a motion for reconsideration, which was opposed by Class Counsel. While this Court ordered some modification of the Memorandum Opinion of August 11, 2009, it nevertheless ordered that the injunction stand.

On March 24, 2010, Class Counsel filed a Motion for Class Certification. Counsel drafted, refined and filed the Plaintiff's Memorandum of Law, detailing Midland's business operations and the methodology used in collection efforts, including the generation and use of affidavits in debt collection litigation.

Class Counsel examined the prevalence of the use of form affidavits by Midland, along with the standardized policies and practices of the debt collector. This required that Class Counsel engage in a comprehensive review of the entire collection process to gain a thorough understanding of the operations of Midland and to understand the impact of these collection practices on the litigation strategies of the company.

Midland challenged every aspect of the class certification motion, asserting that the class proposed could not meet a single element necessary for certification under Fed.R.Civ. P. 23(a) or (b).

On May 26, 2010, Midland next filed a Motion for Partial Summary Judgment as to Brent's claim for actual damages arguing that any damages Brent incurred were the result of the debt collection action itself. Midland argued that actual damages were not established by this Court's determination of a FDCPA violation. Class Counsel vigorously opposed this motion.

On November 4, 2010, this Court rendered an Opinion (*Brent* Dkt. # 104) certifying a class of individuals in Ohio who were sued by Midland on or after June 16, 2007, where a form affidavit was filed with a court in which a Midland employee swore that the statements made in the affidavit were based upon personal knowledge. However, in this same opinion, Midland's motion that Brent thereby sustained no actual damages, was granted. The Court did so based upon a finding that Brent's damages simply arose from a lawsuit which sought payment for a debt that she did not know about. The Court found that any actual damages were not the result of the false representation in Midland's affidavit that alleged that it was based upon the affiant's personal knowledge.

Franklin's claims were challenged by Midland in a Motion to Dismiss the Complaint. The Court granted Midland's motion on October 6, 2010.  Franklin immediately appealed this decision to the Sixth Circuit, where it still pends.

Upon dismissal and appeal of the *Franklin* action, the *Vassalle* action was filed.  Vassalle was based on virtually the same facts, but asserted different legal theories.  This case remains pending.

### 3.  Mediation

In August 2009, after the decision of the Court on Summary Judgment, Midland sought to engage in mediation and asked the Court to stay the proceedings.  Class Counsel opposed mediation and sought a jury trial on the merits.  The Court ordered the parties into mediation with the Honorable Richard McQuade (Ret.) and stayed the proceedings, over the objection of Class Counsel.

The parties first met with Judge McQuade for mediation on October 29, 2009.  The parties engaged in intense discussions and negotiations at that session, which lasted the entire day and which took weeks to prepare for.  The parties left the mediation session without a settlement, with the Plaintiffs reluctantly agreeing to continue to attempt resolution through further mediation with Judge McQuade.

On December 8, 2009, a second mediation session was held.  This session was also unsuccessful.  Class Counsel thereafter requested that the case be returned to active status on the Court's Docket.  Also on December 8, 2009, Class Counsel sought leave of the Court to file another Amended Complaint, seeking a nationwide class, to reflect their understanding of the research results as of that date.  On December 15, 2009, the Court lifted the stay so that the

motion for leave to file the amended complaint could be decided,[2] as Class Counsel continued to pursue Class Certification.

While the Plaintiffs continued to litigate, at the request of the Defendants, the Plaintiffs met two more times, in full day sessions, with Judge McQuade. The mediations were held on October 29, 2009, December 8, 2009, June 29, 2010 and September 10, 2010. All of those settlement discussions, even with the assistance of Judge McQuade, were unsuccessful. In the meantime, the parties were scheduled for Mediation with the Sixth Circuit Mediator for the *Franklin* appeal. Formal mediation discussions began on December 22, 2010 with the Sixth Circuit.

On January 28, 2011, the parties participated in a settlement conference in the court room of the Honorable David A. Katz. Those settlement negotiations adjourned late in the day and they continued over the next two weeks. Finally, on Friday, February 11, 2011, the parties reached an agreement-in-principle to resolve the litigation. This agreement-in-principle was not memorialized into a settlement agreement until it was presented to the Court on March 9, 2011.

### 4. The Original Settlement

The Original Settlement was preliminarily approved by this Court on March 11, 2011. Nine Objectors filed briefs with this Court and one of those Objectors also moved to intervene in the case. Sixty additional Objectors wrote letters to Class Counsel explaining their objections to the Original Settlement. Class Counsel filed responses to all of the Objectors and the Intervenor. Many of the Objectors opposed the parties' Motion for Final Approval of the Settlement.

A final fairness hearing was held on July 11, 2011. Class Counsel appeared at the hearing and defended the fairness of the settlement. Various Objectors were also given the opportunity to

---

[2] Midland opposed Brent's motion for leave to file her amended Complaint which sought to expand the Class, which the Court later denied, on concerns of timeliness.

explain their positions to this Court. The Court granted final approval to the settlement on August 12, 2011.

### 5.  **The Sixth Circuit Appeal**

After final approval of the Original Settlement was granted, four separate appeals to the Sixth Circuit were filed by several of the Objectors, along with another appeal filed by Elaine Pelzer, appealing the denial of her motion to intervene in the case.

Class Counsel painstakingly addressed all of the objections and fully briefed the issues before the Sixth Circuit Court of Appeals. Dennis Murray, Sr. also appeared at oral argument on October 2, 2012 on behalf of the class members. On February 26, 2013, the Sixth Circuit reversed the order approving the settlement and remanded the case for further proceedings.

### 6.  **The Injunctive Relief Contained in the Original Settlement**

Even though the fate of the Original Settlement was being challenged on appeal, the parties complied with the terms of that settlement agreement and the order of this Court mandating Midland to "create and implement written procedures for the generation and use of affidavits in debt collection lawsuits" and appointing the Hon. Richard McQuade as Special Master to monitor Midland's compliance with this injunction.

As ordered by this Court, Midland provided the Special Master with its written affidavit procedures for review.  Class Counsel actively participated in this review and approval process. The parties met with the Special Master initially in September 2011 and agreed upon a procedure for the implementation of the review process.

On March 9, 2012, Midland provided copies the proposed revised language of the affidavits to the Special Master and Class Counsel, along with the legal authority supporting the affidavit language used. On March 26, 2012, Class Counsel provided written responses to the

Special Master, questioning the admissibility of some of the proposed affidavit language revisions and the affidavit generation procedures. On April 17, 2012, the Special Master held a hearing on Midland's forms of affidavits. At the hearing, Midland's Senior Vice-President and General Counsel, Gregory Call, testified, was cross-examined by Class Counsel and answered questions from the Special Master regarding Midland's affidavit forms.

On April 25, 2012, the Special Master issued findings and ordered Midland to adopt and incorporate additional requirements into their affidavit templates and to provide the revised templates within thirty days. On May 21, 2012, an additional hearing was conducted, which focused on Midland's processes regarding the verification of the assertions contained in the affidavits. This hearing included testimony and a demonstration of Midland's affidavit procedures by Midland's Business Development Process Manager in the Sales and Acquisition department and a Midland Legal Specialist. All testimony was subject to cross-examination by Class Counsel.

After this hearing, on May 21, 2012, Midland forwarded to the Special Master a complete set of all Midland's revised affidavit forms. On July 5, 2012, Special Master McQuade again issued an order directing Midland to further revise the language of their affidavits. On October 2, 2012, the Special Master approved the modification of the affidavit language.

Throughout the revision process, Class Counsel was actively involved in providing comments, critiques and objections to the proposed affidavit language, resulting in several major revisions of hundreds of the Midland affidavit templates. Class counsel provided the Special Master with briefs containing legal analysis of the affidavit language, and participated in two evidentiary hearings and numerous discussions with the Special Master throughout the process. This entire process extended over a period of 12 months.  All persons who entered an appearance

11

including the objectors and amici, the State Attorneys General and Mr. Lyngklip received notice of the hearings and the briefings through the Court's electronic docket notification.  None of the objectors or the Amici appeared at the hearings.

### 7.  Action By The Sixth Circuit Pursuant to its Order of February 26, 2013

On February 26, 2013, the Sixth Circuit vacated this Court's order approving the original settlement for the following three reasons. *First,* the panel held that the settlement could not be approved because the named plaintiffs received "preferential treatment" that was disproportionate to what the absent class members received, namely an incentive payment of $8,000 to be split among the four named plaintiffs, and debt relief.

*Second,* the panel held that the class representatives were inadequate because their debts were released, which, according to the panel, meant that (i) they had "no interest in vigorously prosecuting the unnamed class members' most important interest – the ability to use the false affidavits against Midland to contest their debts in court"; and (ii) they were antagonistic to the class because they were interested in obtaining approval of the settlement so their debts would be released, while the class members were interested in defeating the settlement so they could "retain the right to challenge Midland's false affidavits in court."

*Third,* the panel held that the class did not satisfy Rule 23(b)(3)'s superiority requirement. The panel explained that evaluating superiority requires balancing various considerations, and it held that the "majority" of considerations weighted in favor of superiority – i.e., most class members had limited resources, the case was "far more procedurally advanced" than the competing cases, and the threshold issue of Midland's liability was common to all class members. However, the panel found that two additional considerations "tilt the scales" in favor of finding that the class action was not the superior method of resolving the matter. The first and

most important consideration was that a class action would deprive class members of their "strongest interest," which was their ability to individually seek to vacate Midland's judgments against them. The panel accepted the Objectors' argument that the interest of class members in challenging their judgments individually meant that a class action was not superior to individual actions. The second, lesser, factor favoring individual actions over a class was that "class members could have collected damages under state law claims that would exceed the value" of the settlement.

### 8. **The Revised Class Action Settlement Agreement**

Class Counsel negotiated the Revised Class Action Settlement Agreement with Midland to remedy the concerns stated by the Sixth Circuit. In order to accomplish this, telephone conferences were held with the parties and the Court, sometimes with the participation of several of the former Objectors. Class Counsel extensively briefed the question of the viability of state law causes of action in response to the assertions of the Objectors, to assist the parties, along with the Court, in analyzing the fairness of proposed settlement terms. This culminated in the eventual adoption of the Revised Class Action Settlement Agreement executed by the parties and dated November 8, 2013.

The issues in this case were hotly contested, through litigation and appeals, as this Court is aware from the extensive motion practice and briefing.  This Revised Class Action Settlement Agreement was achieved only after arms-length and very difficult negotiations between the parties and their counsel. The Original Settlement was negotiated over the period of more than 16 months from October 2009 through January 2011. This Revised Settlement took an additional 5 months to complete, with negotiations stretching from May 2013 to November 2013.

13

## II.    ARGUMENT

### A.  Applicable Legal Standard

Counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services.  An attorney's award must be reasonable.  *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  As stated by the United States Supreme Court, "this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing C. v. Van Gemert*, 444 U.S. 472, 478 (1980);  see also *US Airways, Inc. v. McCutchen.*, 133 S.Ct. 1537, 1550 (2013 (citing *Boeing* with approval)..

In a common fund case, the trial court's award of attorney's fees must be reasonable under the circumstances. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed. Appx. 496, 498 (6th Cir. 2011) citing *Rowlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).  Class counsel is entitled to be fairly compensated for the work done and the results achieved.  *Rowlings* at 516.  This action was undertaken and prosecuted on a wholly contingent fee basis.

In *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984), the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed to the class."  The purpose of this doctrine is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).  This rule, known as the "common fund doctrine", is firmly rooted in Sixth Circuit case law.  See

*Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).

The reasoning is that if counsel are not adequately compensated in successful cases, then "effective representation of plaintiffs", by the most experienced and successful attorneys, will not be available in these cases.  As one court has stated:

> The contingent fee and the class action are "the poor man's keys to the courthouse."  Both vehicles allow the average citizen and taxpayer to have their injuries redressed and their rights protected.  Both permit persons of limited resources to obtain competent legal counsel, an essential ingredient in our adversary system of justice.

*Mueher v. Land O'Lakes, Inc.* 617 F.Supp. 1370, 1375 (D. Minn. 1985).

The district court has discretion to award fees in common fund cases based on either a lodestar (the reasonable number of hours expended multiplied by a reasonable hourly rate) or a percentage-of-the-fund method, whichever is more appropriate for the circumstances.  *Rawlings*, 9 F.3d at 516.  Although each method has its advantages, the *Rawlings* court expressed a preference for the percentage of the fund method.  It is the Court's function to determine what the lawyer would receive in the market and to compensate counsel at the fair market value.  *Northcross v. Board of Education.* 611 F.2d 624, 638  (6th Cir. 1979). Generally, the relevant market is "the jurisdiction where the case was tried." *Horace v. City of Pontiac*, 624 F.2d 765, 770 (6th Cir. 1980). However, "district courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases." *Louisville Black Police Officers Organization v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983).

The rationale for compensating counsel in common fund cases on a percentage basis is sound.  First, it is consistent with the practice in the private marketplace where contingent fee

attorneys are customarily compensated with a percentage of the recovery.  Second, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.  Such awards are favored because they directly align the interests of the class and its counsel and provide a powerful incentive for the efficient prosecution and early resolution of litigation.  *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 6 (D.D.C. 2008) (citations omitted).  In addition, "[t]he doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense*." Boeing*, 444 U.S. at 478. Indeed, as an incentive to provide counseling to the poor, it is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, Economic Analysis of Law, 21.9, at 534-35 (3d ed. 1986).

### B.  A Fee of Approximately 29% of the Funds Created Is Reasonable

In *Ramey*, the Sixth Circuit identified six factors for consideration in determining the reasonableness of a fee award: (1) the value of the benefit rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1196.

Here Class Counsel prosecuted this case with no guarantee of receiving anything, and paid all costs and expenses.  They expended more than two thousand one hundred sixty one hours in professional services, as of the time of the Original Settlement and have expended 1,102 additional hours in the past three years. Class Counsel has incurred a total of fourteen thousand

16

eight hundred and nine dollars in out-of-pocket expenses to date.  They have obtained a five million two hundred thousand dollar to five million seven hundred thousand settlement plus injunctive relief.

The common fund fee award sought here is approximately 29% of the total $5.2 million settlement amount.  (It is even a lesser percentage if the five hundred thousand dollars of "insurance protection" had been needed).  This amount is comparable to the percentage of recovery approved in other cases.  *Robinson v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 12071 *6 (S.D. Ohio 2006) and *New England Employees Pension Fund v. Fruit of the Loom* 234 F.R.D. 627 (25% awarded); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp.2d 985, 1029 (27% plus expenses); *In re Nord Res. Corp. Sec. Litig.*, No. C-3-90- 380 (S.D. Ohio, Dec. 9. 1994) (30% plus expenses); *Kogan v. AIMCO Fox Chase, LP*, 193 F.R.D. 496, 503-04 (E.D. Mich. 2000) (attorney fees of approximately 30% of the common fund); *In re Southern Ohio Corr. Facility,* 173 F.R.D. 205, 218 (S.D. Ohio 1997), rev'd on other grounds, 24 F. App'x 520 (6th Cir. 2001) (requested amount of 34% of the total amount of the common fund was within the range of reasonableness); *Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. LEXIS 20446 *21 (N.D. Ohio, March 8, 2010) (33 1/3% awarded).

Attorneys' fees awards typically range from 20 to 50 percent of the common fund. *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 902 (S.D. Ohio 2001).; *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1029 (S.D. Ohio 2001)  ("the range of reasonableness has been designated as between twenty to fifty percent of the common fund"). See also MANUAL FOR COMPLEX LITIGATION § 14.121, at 188 (4th ed. 2004) (between 25% and 30% of the common fund);.  4 *Newberg on Class Actions* § 14:6, p. 558 (4th ed. 2002) (citing a 1996 Federal

Judicial Center Study finding that fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement).

If this Court should determine that any fees should be awarded to Objectors, current or prior, such fees should either be paid out of the common fund or by Midland, because of the fact that this Court has already approved, as reasonable the amount of fees that were paid to Class Counsel. As well, Class Counsel has, after such approved award of fees, worked for more than 1,102 hours without any compensation

A review of the *Ramey* factors also supports Class Counsel's fee request as being fair and reasonable.

### 1.  Value of the Benefit to the Class

Courts have recognized that the result achieved is an important factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  The district court necessarily has a "superior understanding of the litigation." *Id.* at 437. Generally, plaintiffs are entitled to an award covering all of their attorneys' fees if they obtained "excellent results". *Id,* at 435-436.  Class Counsel identified and asserted claims concerning the generation and use of affidavits in Midland's debt collection litigation activities, and as a result, secured a change in Midland's affidavit generation process and the language of the affidavits. The settlement is a substantial benefit for Class Members.

Moreover, this case was vigorously pursued before this Court, and in the Sixth Circuit Court of Appeals.  This Court is well recognized for promptly deciding difficult legal matters, thus the critical analysis of robo signing was judicially flagged as completely unacceptable at an earlier time than otherwise would have occurred.

On remand, the Revised Class Action Settlement Agreement still guaranteed that each claimant would receive at least $10, which was more than they would be able to receive with an award only of statutory damages under the FDCPA.  The FDCPA provides that, in a class action, the maximum possible statutory damages that can be awarded to the class is the lesser of 1% of the defendants' net worth or $500,000.

The Original Settlement contained a stipulated injunction requiring Midland to create and implement procedures for the generation and use of affidavits in debt-collection lawsuits that would be reasonably assured to prevent the use of affidavits in debt-collection lawsuits where the affiant lacked personal knowledge of the facts set forth in the affidavit, and would remain in effect for one year. The Revised Class Action Settlement Agreement enhanced such injunctive relief. It even obligates Midland to comply with procedures and affidavit language consistent with Special Master McQuade's orders for a period of at least five years.

In addition to the injunctive relief, the settlement proceeds, in the amount of five million, two hundred thousand dollars were paid by Midland on final approval of the Original Settlement and were placed in an interest bearing fund. Approximately $1.2 million of that amount has been paid to the Class Administrator for administration costs in connection with the Original Settlement.  Midland has assumed the responsibility to pay for all costs of administration of the Revised Settlement.  The remainder of the fund, after the fees paid to Class Counsel and the costs and expenses are paid, as well as $1,000 to each named Plaintiff, will be distributed pro rata to the Class Members. These funds have been obtained through the efforts of Class Counsel without the necessity or the risks associated with trial.  Class Counsel obtained monetary and important equitable relief as part of the settlement.

While, in the end, it was no longer necessary, Class Counsel did secure a valuable insurance sum  of five hundred thousand dollars, to be paid in the event that a greater number of class members were to seek a recovery. The overall efforts of Class Counsel should be considered, because this case was settled in a manner that was favorable to the Class. *Nature Conservancy, Inc. v. Sims*, 680 F.3d 672, 678-679 (6th Cir. 2012).

### 2.   Society's Stake in Providing An Incentive

There is a public interest in ensuring that attorneys, who will be willing to represent low-income persons in fair debt and consumer protection cases, are adequately paid in order that they and others like them will continue to take on such cases.  Adequate compensatory fee awards in successful class actions promote private enforcement of compliance within important areas of federal law.  *Wess v. Storey*, 2011 U.S. Dist. LEXIS 41050 *30 (S.D. Ohio, April 14, 2011) citing *Bateman Rochler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985).  Protecting low-income persons from unfair collection of debts is of genuine public interest and, thus, supports a full compensatory fee award.  *Id.*

### 3.   Services Undertaken on Contingent Fee Basis

Numerous cases have recognized that risk is an important factor in determining a fair fee award.  Uncertainty that an ultimate recovery would be obtained is highly relevant in determining risk.  *In re First Fidelity Bancorporation Sec. Litig.*, 750 F.Supp. 160, 163 (D.N.J. 1990) (risk is evaluated by considering uncertainties at the time the attorneys undertook representation).  Class Counsel devoted significant amounts of time and money to prosecute this case, with no guarantee of even a reimbursement of their out-of-pocket cash payments.

Although Class Counsel achieved a summary judgment decision in favor of the class as to liability of Midland, the issue of actual damages had been vigorously disputed.  Indeed

Midland was successful in proving to this Court that Andrea Brent had no actual damages. The arguments pertaining to actual damages, raised by Midland in briefs and in numerous negotiations, if successful, would have foreclosed or, at a minimum diminished, any recovery for actual damages to Class Members. This would have left the Class with statutory damages only, in an amount to be determined by the Court, which would have been considerably less than the five million, two hundred thousand dollar to five million, seven hundred thousand dollar settlement amount. It may well have been limited to $500,000 because the FDCPA, combined with Rule 23, may have capped statutory damages at $500,000. Any claims brought under the FDCPA would have limited the class to only those persons who had affidavits filed by Midland in their debt collection cases from June 17, 2007 to the present, based upon a one-year statute of limitations for FDCPA actions. The revised settlement extended relief to any person with a Midland lawsuit containing an affidavit from January 1, 2005 to March 11, 2011, the date the Original Settlement was preliminarily approved.

These risks, on balance with the benefits obtained, further substantiate Class Counsel's fee request. Class Counsel undertook this litigation on a contingent basis despite these risks and obstacles, and respectfully suggests that they should be compensated for their hard work and their diligence in these proceedings.

### 4.  Value of Services on an Hourly Basis

The propriety of the requested fee under a percentage-of-the-fund approach is confirmed by a cross-check of Class Counsel's lodestar. In this Circuit, the lodestar figure is used to confirm the reasonableness of the percentage of the fund award. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

The lodestar in this case amounts to one million three hundred seventy-seven thousand five hundred dollars ($1,377,500).  The requested fee thus constitutes a multiplier of less than 1.1, which is well within the acceptable range of multipliers awarded.  A multiplier between approximately 1.75 and 2.5 existed in the fee awards.  *In re: Oral Sodium Phosphate Solution – Based Products Liability Action*, Case No. 1:09-SP-80000 (MDL Docket No. 2066), 2010 U.S. Dist. LEXIS 128371 (N.D. Ohio, Dec. 6, 2010) (multiplier of 2.0); *Barnes v. Cincinnati*, 401 F.3d 729 (6th Cir. 2005) (upholding the use of multiplier of 1.75); *Rowlings v. Prudential – Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) (multiplier of 2.0 granted); *In re Revco Sec. Litigation*, Case No. 89CV593, 1992 U.S. Dist. LEXIS 7852 (N.D. Ohio, May 5, 1992) (approving multiplier of 2.5).

A risk multiplier, applied to a basic lodestar, is appropriate to reward attorneys for taking the risk of non-payment by providing a premium over their normal hourly rates for winning what otherwise would be a contingent case.  The resultant increase is a time honored way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis.

### 5. Complexity of the Litigation

A case pursuant to the Fair Debt Collection Practices Act and the various consumer protection statutes, in the setting of a large class action, and as defended by the Defendants in these cases, does present fairly complex factual and legal issues.  *Wess*, 2011 U.S. Dist. LEXIS 41050 at *30.  These cases' legal and factual complexity have taken over six years to resolve, and if not settled, would have proceeded much longer.   If this revised settlement had not been reached it would have resulted in the expenditure of many additional hours of effort and additional expense, still with no guarantee of fees and reimbursement.

### 6. Professional Skill and Standing of Counsel

Class Counsel faced determined and resourceful opponents who denied any wrongdoing. To state that Midland's counsel was vigilant in defending their cause, would be a gross understatement. Class Counsel faced a formidable task in prosecuting this case against Defendants with far greater resources and extremely competent and highly motivated defense counsel. The Original Settlement, also presented Class Counsel with determined Objectors, who challenged various aspects of the settlement all the way through the appellate process.

Class Counsel are experienced practitioners in complex and class action litigation and have been so for over fifty years. (See Declaration of Dennis E. Murray, Sr.) Class Counsel vigorously prosecuted this case against worthy opponents from one of the country's most highly skilled law firms. Class Counsel have experience in class action litigation that goes back to a time when Rule 23 was first instituted, having initiated class proceedings for female civil rights under the late Judge Don Young *even before* Ohio adopted its equivalent of Rule 23.

### C. Class Counsels' Expenses Were Necessarily Incurred to Achieve the Benefit Obtained.

Class Counsel incurred out-of-pocket expenses in excess of fourteen thousand eight hundred and nine dollars in prosecuting this litigation. The declaration of Class Counsel detailing these expenses is attached.

It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance for their class. See *In re American Bank Note Holographics, Inc.* 127 F.Supp.2d 418, 430 (S.D.N.Y. 2001); *Brown v. Pro Football*, 839 F.Supp. 905, 916 (D.D.C. 1993). The appropriate analysis to apply in deciding which expenses are compensable in a common fund case is whether the particular costs are of the type typically

billed by attorneys to paying clients in the marketplace.  These typical expenses of Class Counsel include filing fees, transcripts of depositions and mediation fees.

In addition, Class Counsel were required to travel in conjunction with this litigation for depositions, hearings, settlement negotiations, oral argument and mediation sessions.  The expenses in this category are reasonable in amount and are properly charged against the fund created.  Other expenses for which Class Counsel seek reimbursement (*i.e.* copying costs, postage, long-distance telephone charges) are also customarily charged to paying clients and are reasonable under the circumstances.

The expenses incurred in this litigation are described in greater detail in the accompanying declaration(s).  Class Counsel submit that the expenses were all reasonably incurred, are reasonable in amount, and reimbursement of fourteen thousand eight hundred and nine dollars ($14,809) should be made out of the Settlement Fund.

## III.    CONCLUSION

The District Court has considerable discretion to determine the reasonableness of attorneys' fees because it has the greatest familiarity with the case and is in the best position to scrutinize the attorneys' work.  *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988).  For the foregoing reasons, Class Counsel and the Settling Plaintiffs respectfully request that this Court grant their motion for an award of fees and reimbursement of expenses.  Through their hard work, and because of the decisions by this Court, Class Counsel and Plaintiffs have achieved a substantial benefit to the Class for which they should be compensated by the granting of this motion.  Class Counsel further request that should this Court determine that fees should be awarded for the benefits obtained through the work of any objectors' counsel, that either such additional fees be paid from the common fund or that Defendants be ordered to pay those fees.

Respectfully submitted,

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
dms@murrayandmurray.com
Donna J. Evans, Esq. (0072306)
dae@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky OH  44870
Telephone: 419-624-3000
Facsimile: 419-624-0707
Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

    This is to certify that a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic system on this 7th day of May, 2014.

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
Donna J. Evans, Esq. (0072306)
Attorneys for Plaintiffs