IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARTHA VASSALLE, et al.,                     Case No. 3:11-cv-00096

      Plaintiffs,                                      Hon. David A. Katz

        -vs-

MIDLAND FUNDING, LLC, et. al.,
      Defendants.                                   MEMORANDUM OPINION

On November 27, 2013, this Court granted preliminary approval to the revised nationwide class settlement in three related cases:  *Midland Funding v. Brent* (No. 3:08-cv-1434), *Franklin v. Midland Funding* (No. 3:10-cv-00091), and *Vassalle v. Midland Funding* (No. 3:11-cv-00096).  Case No. 3:11-cv-00096 ("Vassalle Dkt."), Dkt. No. 229 at 2-3.  As part of its order preliminarily approving the settlement, the Court provisionally certified a nationwide class of persons who had been sued by Defendants Midland Funding LLC, Midland Credit Management, Inc., Encore Capital Group, Inc., and related entities (collectively, "Midland") between January 1, 2005 and March 11, 2011 in any debt-collection lawsuit in any court where an affidavit attesting to facts about the underlying debt was used by Midland in connection with the debt-collection lawsuit.  *Id*. at 1.  The Court appointed as Class Counsel the law firm of Murray & Murray, counsel for Andrea Brent, Martha Vassalle, Jerome Johnson, and Hope Franklin, the Named Plaintiffs in these suits, and approved the proposed form of notice to the class.  *Id*. at 2.

This matter is now before the Court on the joint motion of Named Plaintiffs and Defendants for an order finally approving the class-action settlement they have reached (Vassalle Dkt. No. 258), and Class Counsel's motion for an award of attorney's fees (Vassalle Dkt. No. 259).  The Court held a fairness hearing regarding the proposed revised settlement

pursuant to Federal Rule of Civil Procedure 23(e)(2) on May 15, 2014.  Ian Lyngklip and Thomas Domonoske, counsel for Objectors Elaine Pelzer, Guler Probst, Raul Osorio, Diane Frederick, and Patricia Mitchell (collectively, the "Pelzer Objectors"), appeared and were heard. No other objectors or amici appeared at the hearing.

This settlement has been the subject of voluminous briefing, including submissions on the effect of the Sixth Circuit's opinion rejecting the prior settlement and the value of class members' potential state-law claims, the parties' motions for preliminary and final approval and the objectors' oppositions thereto, post-hearing briefing submitted by the parties and objectors, the parties' proposed findings of fact and conclusions of law, and the Pelzer Objectors' objections thereto.  The Court has carefully reviewed all of these memoranda, and, for the following reasons, finds that the settlement satisfies the requirements of Federal Rule of Civil Procedure 23 and that the objections to the settlement should be overruled.  The motions should be granted and the settlement should be approved.

I.    **FINDINGS OF FACT.**

A.    **The Original Settlement And Sixth Circuit Opinion.**

1.    On March 11, 2011 this Court granted preliminary approval to the nationwide class settlement in the above-designated related cases.  Case No. 3:08-cv-1434 ("Brent Dkt."), Dkt. No. 111 (the "Original Settlement").  Among other things, the Original Settlement required Midland to pay $5.2 million and stipulate to injunctive relief that included revising its affidavit practices under the supervision of a Court-appointed Special Master.  After significant briefing and a Fairness Hearing, the Court issued a Memorandum Opinion and Judgment on

2

August 12, 2011 approving the Original Settlement.  Brent Dkt. No. 164 (the "August 12, 2011 Opinion").

2.      Thereafter, the matter was appealed to the Sixth Circuit Court of Appeals by three objectors (Robert Clawson, Kelli Gray, and Elaine Pelzer).  In an opinion issued February 26, 2013, the Sixth Circuit reversed this Court's order approving the settlement, vacated the judgment certifying the nationwide settlement class and the award of attorney's fees, and remanded the case to this Court for further proceedings consistent with that opinion.  *See Vassalle v. Midland Funding, LLC*, 708 F.3d 747 (6th Cir. 2013).

3.      The Court of Appeals' opinion, in short summary, found several reasons to reverse this Court's holding approving the original Settlement Agreement.  The opinion states that this Court "did not abuse its discretion" in determining that the settlement satisfied all seven of the fairness factors under *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*").  *Vassalle*, 708 F.3d at 755.  However, the panel found that the settlement was nonetheless unfair because it "gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members."  *Id.* (internal quotation marks and citation omitted).  In particular, the panel found the original settlement to be unfair because the named plaintiffs received $8,000 to be split among them, as well as debt relief, while the absent class members received a monetary payment and were precluded from challenging Midland's affidavits in

court, "virtually assuring that Midland will be able to collect on these debts." *Id*.
at 755-56 & n.1.

4.      In addition, although the Sixth Circuit found that the settlement
class satisfied four of the six requirements for certification under Rule 23, it held
that the class representatives were inadequate because the release of their debts
meant they did not share the "the unnamed class members' most important
interest — the ability to use the false affidavits against Midland to contest their
debts in court." *Vassalle*, 708 F.3d at 757.  The panel also held that the class did
not satisfy Rule 23(b)(3)'s superiority requirement.  *Id*. at 757-58.  The panel
explained that evaluating superiority requires balancing various considerations,
and it held that the "majority" of considerations weighed in favor of superiority
— i.e., most class members had limited resources, the case was "far more
procedurally advanced" than the competing cases, and the threshold issue of
Midland's liability was common to all class members.  *Id*. at 758.  However, the
panel found that two additional considerations "tilt the scales" in favor of finding
that a class action was not superior.  *Id*.  The first and most important
consideration was that a class action would deprive class members of their
"strongest interest," which was their interest in "individually controlling the
defense of Midland's state court judgments against them."  *Id*.  The second factor
weighing against a class was that "class members could have collected damages
under state law claims that would exceed the value" of the settlement.  *Id*.

4

5.  The Sixth Circuit also found the class notice did not satisfy due process because it did not inform class members that the release would bar them from seeking to vacate judgments based on the faulty affidavits which, the Court reiterated, was "[t]he unnamed class members' greatest interest."  *Vassalle*, 708 F.3d at 759.

**B.  Proceedings In This Court During The Pendency Of The Appeal And Upon Remand.**

**1.  The Implementation Of The Stipulated Injunction.**

6.  The Original Settlement included a stipulated injunction mandating that Midland create and implement procedures for the generation and use of affidavits in debt-collection lawsuits, which "shall be reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit."  Brent Dkt. No. 107-1 at 9.  It also provided that former federal judge Richard  McQuade would be appointed as Special Master to monitor Midland's compliance with the injunction and "make findings as to whether [Midland's] Affidavit Procedures are reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit."  *Id*. at 9-10.  The injunction was effected by an order of this Court entered on August 12, 2011.  Neither the settling parties nor the objectors sought a stay of the injunction pending the Sixth Circuit appeal.

7.  Accordingly, on October 6, 2011, this Court appointed Judge McQuade as Special Master to "[c]onduct a review of the Defendants' Affidavit Procedures . . . , including making findings as to whether the Affidavit Procedures

5

are reasonably assured to prevent the use of affidavits in debt collection lawsuits where the affiant does not have personal knowledge of the facts set forth in the affidavit."  Vassalle Dkt. No. 173 at 2-3.  In a subsequent order, the Court stated, "Defendants shall advise the Special Master of the forms of the affidavits to be employed by Defendants and the legal authority therefore; . . . . Thereafter the Special Master shall make findings as to the sufficiency of the forms of the affidavits."  Vassalle Dkt. No. 174.

8.     On January 19, 2012, the Court issued an order requiring Midland to file a motion seeking approval of its affidavit procedures, and setting a hearing on the motion for April 17, 2012.  Vassalle Dkt. No. 174.  This order provided the date, time and address of the hearing, and was received by all of the objectors and amici through the Court's electronic docket notifications.  *See id.*  None of the objectors or amici appeared at the hearing or objected to the proceedings.

9.     On April 25, 2012, Judge McQuade issued an order setting forth a list of criteria that Midland's affidavits would be required to satisfy.  Vassalle Dkt. No. 186 at 4-6.  That order set a further hearing to occur on May 21, 2012. *Id.* at 7.  Again, no objectors or amici appeared at the hearing or indicated any disagreement with Judge McQuade's requirements.

10.     At the two hearings, Judge McQuade and Class Counsel questioned Midland's executives and a legal specialist at length.  *See* Vassalle Dkt. No. 204 at 3-4.  On July 5, 2012, Judge McQuade issued an order criticizing the language in a number of Midland's affidavits and ordered them to be revised. Vassalle Dkt. No. 190.  On August 3, 2012, the Special Master issued another

order criticizing Midland for resisting some of his changes to the affidavit language.  Vassalle Dkt. No. 193.  Further briefing regarding affidavit language occurred over the next month.  Class Counsel was a vigorous advocate for consumers throughout the entire process, reviewing the affidavits and seeking additional changes to ensure that consumers were not misled.  *E.g.*, Vassalle Dkt. Nos. 199, 201.  Charles Delbaum of the National Consumer Law Center, who represents former objector Clawson as well as the plaintiffs in a competing class action in California, filed objections to Midland's proposed affidavit language as well, which were considered by the Special Master.  Vassalle Dkt. No. 200.

11.     On October 2, 2012, Judge McQuade issued an order resolving the parties' disputes regarding certain language contained in Midland's affidavits, and ordered Midland to submit a set of revised affidavits for his review.  Vassalle Dkt. No. 203.  Judge McQuade issued detailed findings of fact and conclusions of law approving Midland's affidavit processes and forms on November 16, 2012. Vassalle Dkt. No. 204.  No objections were filed.

**2.     Additional Proceedings Involving The Objectors.**

12.     After this case was remanded from the Sixth Circuit, Midland and Class Counsel resumed negotiations in order to revise the settlement to comport with the Sixth Circuit's mandate.  The District Court held several status conferences, which included Objectors' counsel, for the purpose of discussing whether the settlement agreement could be revised and, if so, what form the revisions should take. *See, e.g.*, Vassalle Dkt. Nos. 209-11, 213-15.  The

Objectors refused to identify any terms on which they would consider a nationwide settlement acceptable.  Because one issue that remained was whether the class members' potential individual state-law claims were so valuable as to preclude class certification, the Court ordered the parties and objectors to submit briefing as to the value of any such state-law claims.  *See* Vassalle Dkt. Nos. 216, 220, 224-25.  The Court has thoroughly reviewed and considered this briefing.

**C.     The Revised Settlement.**

13.     This matter is now before this Court on joint motions of the named Plaintiffs and Defendants for approval of the Revised Class Action Settlement Agreement (hereinafter the "Revised Agreement").

14.     This Court preliminarily approved the proposed Revised Agreement as being within the range of fairness and reasonableness required in such matters.  Vassalle Dkt. No. 229.  At the same time the Court certified the following class:

All natural persons (a) sued in the name of Encore Capital Group, inc., Midland Funding LLC, Midland Credit Management, Inc., or any other Encore and/or Midland-related entity (collectively, "Midland"), (b) between January 1, 2005 and March 11, 2011, (c) in any debt-collection lawsuit in any court (d) where an affidavit attesting to facts about the underlying debt was used by Midland in connection with the debt-collection lawsuit.

15.     The Revised Settlement contains revisions that were designed to address the Sixth Circuit's concerns.  Instead of $8,000 and debt relief, the class representatives will receive $1,000 each pursuant to 15 U.S.C. § 1692k(a)(2)(B), and their debts will not be released.  In addition, the release has been modified and now contains an express exemption allowing individual class members to

8

attempt to seek relief from a judgment in Midland's favor on the ground that an affidavit filed in the underlying debt-collection action was executed by a person who lacked personal knowledge of the facts stated in the affidavit; provided, however, that the action seeking such relief may not be a class action, may not seek relief on behalf of two or more judgment-debtors, and may not seek any relief other than vacatur of the judgment; however, if permissible under applicable law return of any money paid on the judgment may be sought. Settlement Agt., § V.D.

16. The Revised Settlement also contains a stipulated injunction which, among other things, requires Midland to use affidavit procedures and language consistent with Judge McQuade's orders for a period of at least five (5) years.  Settlement Agt., § V.C.2

17. The class administrator, Class Action Administration ("CAA"), caused a copy of the notice and claim form to be sent by first-class mail to the last known postal address of each class member, as updated through the U.S. Postal Service change of address service.  A postage-paid Claim Form, included in the mailing, was used to file a claim or opt out of the settlement.   A copy of the Class Notice was also published in *USA Today* on Wednesday, January 29, 2014, and Thursday, January 30, 2014.  The costs of this second-round notice and administration were paid by Midland and did not reduce the class fund.

18. Among other things, the notice specifically advises Class Members that if the Settlement is approved, they will give Midland a release, which "means you can't sue or be part of any other lawsuit against Defendants . . . about the claims or

9

issues in this lawsuit."  The notice goes on to explain:  "The release in this case prevents you from filing a lawsuit or counterclaim where you claim that Defendants, Defendants' affiliated companies, and/or Defendants' agents or attorneys, filed an affidavit in a debt-collection lawsuit where the affidavit was executed by a person who lacked personal knowledge of the facts stated in the affidavit."

19. The notice also advises class members:  "If you exclude yourself from the class, you may be able to bring a lawsuit under state or federal law that could entitle you to more than the amount you will receive if you elect to receive your share of the Settlement Fund.  There is no guarantee that such a suit would be successful, or that you would receive anything at all."  Additionally, the notice makes clear that class members retain the right to seek to vacate Midland's judgments against them individually, and that they are not precluded from raising any defenses in pending debt-collection litigation with Midland.

20. Of the approximately 1.4 million class members, more than 133,000 filed claims as of the April 14, 2014 deadline.  Only 1,890 class members opted out, representing approximately 0.1% of the class.  A list of class members who elected to opt out was submitted by the parties.  Vassalle Dkt. No. 273. Additionally, only 13 class members objected to the settlement, which is less than .001% of the class.

21. Two of the three objectors who opposed the original settlement – Kelli Gray and Robert Clawson – have not objected to the revised settlement.  Mr. Clawson's counsel, Charles Delbaum of National Consumer Law Center, filed an application

seeking $225,000 in fees for his contributions to the Revised Settlement.  Vassalle Dkt. No. 250.

22. Elaine Pelzer continues to object to the settlement, and has been joined in her objections by Guler Probst, Raul Osorio, Diane Frederick, and Patricia Mitchell. In written objections, the Pelzer Objectors argued, among other things, that Pelzer and Probst should be added as class representatives, and that their counsel, Ian Lyngklip, should replace Murray & Murray as counsel for the nationwide class. Vassalle Dkt. No. 245.  Pelzer's counsel also filed an application seeking $35,000 in fees for his contributions to the Revised Settlement.  Vassalle Dkt. No. 251.


23. The Court held a final approval hearing on May 15, 2014.  *See* Vassalle Dkt. No. 266.  Pelzer's counsel appeared and was heard, as was his co-counsel.  No other objectors or amici appeared at the hearing.

## II.  CONCLUSIONS OF LAW.

### A.  The Class Settlement Is Fair, Reasonable, And Adequate.

It is axiomatic that the settlement of class-action litigation is favored.  *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); ALBERT CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("NEWBERG") ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise.").  In evaluating settlements, such as this one, courts have recognized that complex litigation is "notoriously difficult and unpredictable."  *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)).  "Absent evidence of fraud or collusion, such settlements are not to be trifled with."  *Granada*, 962 F.2d at 1205.

A class-action settlement should be approved if the court determines that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *UAW*, 497 F.3d at 631.  Courts within the Sixth Circuit must consider the following factors to determine whether this standard is met: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."  *UAW*, 497 F.3d at 631; *see also Vassalle*, 708 F.3d at 754.  Additionally, a settlement can be rejected if it "gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members."  *Vassalle*, 708 F.3d at 755

12

(internal quotation marks and citation omitted); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013).

Ultimately, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a [class-action] lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). As the Sixth Circuit has held: "Our task is not to decide whether one side is right or even whether one side has the better of these arguments. Otherwise, we would be compelled to defeat the purpose of a settlement in order to approve a settlement. The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632. In making that determination, the trial court has "broad discretion" and is not required to "conduct a full evidentiary hearing with live testimony and cross-examination before approving a settlement." *Id.* at 636; *Officers for Justice*, 688 F.2d at 625 (fairness hearing should not be turned into a trial on the merits).

In the August 12, 2011 Opinion approving the Original Settlement, this Court found that all seven *UAW* factors favored approving the settlement – i.e., there was no fraud or collusion; the likely complexity, expense, and duration of the litigation favored settlement; there was substantial discovery; the class relief was fair in light of the class's likelihood of success on the merits; class counsel and the class representatives supported the settlement; the reaction of absent class members favored approval; and the settlement is in the public interest. Brent Dkt. No. 164 at 24-31. In its review of the order approving the Original Settlement, the Sixth Circuit found no abuse of discretion in this Court's analysis of the seven *UAW* factors. *Vassalle*, 708

13

F.3d at 755. Accordingly, the sections of the August 12, 2011 Opinion addressing the seven *UAW* factors are incorporated herein by reference.

With respect to the "preferential treatment" factor, in reviewing the Revised Agreement, this Court finds that it does not grant preferential treatment to the class representatives. Instead of the class representatives receiving a total of $8,000, that amount has been reduced to $1,000 each pursuant to 15 U.S.C. § 1692k(a)(2)(B). The Pelzer Objectors do not object to this amount as exorbitant or unfair. Moreover, the class representatives' debts are no longer being released, so they are on the same footing in this regard as the absent class members. Accordingly, this factor now weighs in favor of approving the settlement.

To the extent that the Objectors contend that the settlement should not be approved because the payment per class member of approximately $18.75 is "perfunctory," they have misunderstood the law. The "preferential treatment" test looks to the relationship between the relief to the class representatives and the relief to the absent class members. *Vassalle*, 708 F.3d at 755 ("such inequities in treatment make a settlement unfair"); *see also In re Dry Max Pampers Litig.*, 724 F.3d at 718 (citing *Vassalle* and explaining that the rule against "preferential treatment" ensures that the settlement benefits are fairly allocated among the named plaintiffs, the absent class members, and class counsel). It is not a bar on class settlements that yield a per-class member payment below a certain threshold. The Court has considered the question of whether the settlement payment of $5.2 million here is fair in light of the class's likelihood of success on the merits and potential recovery, and has concluded that it is, irrespective of the fact that the per-class member payment is not a windfall for the absent class members. *See* Brent Dkt. No. 164 at 9.

## B.   Certification Of The Settlement Class.

Under Rule 23(a), a class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Vassalle*, 708 F.3d at 756. Where, as here, certification is sought under Rule 23(b)(3), the class must satisfy the additional requirements of superiority and predominance. Fed. R. Civ. P. 23(b)(3); *Vassalle*, 708 F.3d at 756. In its review of the Court's Memorandum Opinion approving the original settlement, the Sixth Circuit held that the requirements of numerosity, commonality, and typicality were satisfied under Rule 23(a). *See* 708 F.3d at 756. The Sixth Circuit also held that the settlement class satisfied the predominance requirement of Rule 23(b)(3). *Id.* Accordingly, the sections of the August 12, 2011 Opinion addressing these requirements are incorporated by reference herein. The remaining requirements are addressed below.

### 1. Adequate Representation.

The final requirement of Rule 23(a) is that the proposed class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit applies a two-prong test to determine whether this requirement is met: (1) the representatives must have common interests with the unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Vassalle*, 708 F.3d at 757. In addition, the Court reviews "whether class counsel are qualified, experienced, and generally able to conduct the litigation," and "consider[s] whether the class members have interests that are not antagonistic to one another." *Id.* (internal quotation marks and citation omitted).

Here, all of the factors are satisfied. The class representatives share common interests with the unnamed class members in that they all share a desire to obtain monetary and injunctive relief from Midland. *Vassalle*, 708 F.3d at 757. The class representatives and class counsel

15

have vigorously pursued these interests by prosecuting this action and obtaining a settlement that provides substantial monetary and injunctive relief.  Settlement Agt., § V.D.  Additionally, the Sixth Circuit has held that the unnamed class members' "most important interest" in this case is "the ability to use the false affidavits against Midland to contest their debts in court."  *Vassalle*, 708 F.3d at 757.  The class representatives have vigorously pursued this interest by obtaining an exception to the class release permitting class members to use the defective affidavits to challenge Midland's judgments against them, and permitting class members to challenge the defective affidavits in ongoing debt-collection litigation.  Settlement Agt., § V.D.  It is undisputed that class counsel here is "qualified, experienced, and generally able to conduct the litigation."  *Vassalle*, 708 F.3d at 757 (internal quotation marks and citation omitted).  Finally, the class representatives have no interests that are antagonistic to the class because their debts are not being released by the settlement, so the settlement leaves them in exactly the same position as the absent class members.  *See id.*

The Pelzer Objectors contend that the class representatives are inadequate because none of them have an interest in having his or her judgment vacated.  This contention is without merit.  Vassalle and Johnson both have judgments against them and therefore have an interest in having those judgments vacated.  *See* Vassalle Dkt. No. 1 ¶ 9.  Moreover, Vassalle and Johnson actually have a *heightened* interest in having their judgments vacated because they have paid money to Midland to satisfy the judgments, and vacatur could potentially entitle them to the return of that money.  *See id.* ¶¶ 23, 28.  In any event, the release the class representatives negotiated allows class members to seek vacatur of the judgments against them, so they have preserved this option for the class regardless of whether they themselves intend to, or need to, avail themselves of it.

16

2. **Superiority**

In determining whether a class action satisfies the superiority requirement, the court may look to the following factors:  (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the existence of pending litigation concerning the same controversy; (3) the desirability of concentrating the litigation of claims in this forum; and (4) the difficulties likely to be encountered in the management of a class action.  *Vassalle*, 708 F.3d at 757-58.  Additionally, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."  *Id*. at 758 (alteration in original) (internal quotation marks and citations omitted).  Moreover, "[w]here many individual inquiries are necessary, a class action is not a superior form of adjudication.  However, where a threshold issue is common to all class members, class litigation is greatly preferred."  *Id*. (alteration in original, internal quotation marks and citation omitted).  Finally, if class members are unaware of the violation and unlikely to elect to bring individual lawsuits, this weighs in favor of finding a class action superior.  *Id*.

The considerations here weigh in favor of superiority.  First, there is a strong interest in resolving these claims in a single class action because most class members have limited resources.  *Vassalle*, 708 F.3d at 758.  Second, since the threshold issue of Midland's liability is common to all class members, a class action will not be difficult to manage.  *Id*.  Third, this case is "far more procedurally advanced" than the other actions bringing similar claims.  *Id*.  Fourth, the likelihood that class members will bring individual lawsuits is remote, as evidenced by the fact that "class members here are surely aware of the judgments against them," yet very few class members have filed individual lawsuits.  *See id*.  Fifth, any class member who wishes to

17

pursue an individual recovery is free to opt out of the class. *See In re Whirlpool Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 861 (6th Cir. 2013); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("When a few class members' injuries prove to be substantial, they may opt out and litigate independently."); *Chakejian v. Equifax Info. Servs., LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) (same).

Importantly, the issue that caused the Sixth Circuit to find that a class action was not superior when it considered the Original Settlement is no longer present. The Sixth Circuit found superiority lacking because "[t]he interest of the unnamed class members in individually controlling the defense of Midland's state court judgments against them is their strongest interest." *Vassale,* 708 F.3d at 758. The Revised Settlement preserves the class members' ability to "individually control" the defense of Midland's state-court judgments by excluding individual motions or actions to vacate judgments from the release, and by clarifying that the release does not prevent class members from challenging Midland's affidavits or raising any defense in ongoing debt-collection litigation. Settlement Agt., § V.D.

In addition, the Court has thoroughly considered the briefing by the parties and Objectors with respect to the state-law theories that the Objectors claim are applicable (Vassalle Dkt. Nos. 216, 220, 224-25), and concludes that the potential recoveries available to class members are not so great as to render individual lawsuits superior to a class action. By way of example, the Pelzer Objectors point to a Michigan statute that they claim would allow class members to recover $50-$150 each in an action brought under state law. *See* Vassalle Dkt. No. 220 at 10. A potential recovery of $50-$150 to a plaintiff who prevails on his claim is not sufficient to render individual actions superior to a class action. Individual plaintiffs asserting FDCPA claims can recover statutory damages of $1,000 each, yet the Sixth Circuit has held that FDCPA claims can

18

proceed as class actions even where use of the class device results in class members receiving substantially less than $1,000 each.  *See Carroll v. United Compucred Collections, Inc.,* 399 F.3d 620, 625-26 (6th Cir. 2005).

Finally, class members who wish to assert state-law claims are free to opt out of the class.  *See In re Whirlpool*, 722 F.3d at 861.  Indeed, the class notice expressly informs class members that "if you exclude yourself from the Class, you may be able to bring a lawsuit under state or federal law that could entitle you to more than the amount you will receive if you elect to receive your share of the Settlement Fund.  There is no guarantee that such a suit would be successful, or that you would receive anything at all."

For the foregoing reasons, the settlement class satisfies the requirements for class certification under Rule 23(b)(3).

### C.      Notice To The Class

Due process requires the class notice to be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Vassalle*, 708 F.3d at 759 (quoting *UAW*, 497 F.3d at 629)).  Due process, however, "does not require the notice to set forth every ground on which class members might object to the settlement."  *Id*. (internal quotation marks and citation omitted).  Rather, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests."  *Id*. (alteration in original, internal quotation marks and citation omitted).

### 1.     Dissemination of the Notice

There is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 175 (1974).  Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice.  *See Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981).  Here, notice was disseminated via individual mailing to all Class Members identified in the customer data files of Midland, and also by publication.  This constitutes the best notice practicable under the circumstances, and fully complies with and satisfies the notice requirements of Rule 23.  As the highest standard of notice, notice here easily satisfies the due-process requirement as well.

### 2.     Contents of the Notice

A settlement notice is a summary, not a complete source of information.  *See, e.g.*, *Vassalle*, 708 F.3d at 759.  The Class Notice reasonably apprises the Class Members of the nature and pendency of the Class Action and the Class claims; of all the material elements of the proposed settlement, including, but not limited to, the definition of the Class; the relief available under the proposed settlement and steps necessary to obtain the relief; the right, time and manner to exclude themselves from, or object to, the settlement; of the identity of Class Counsel and of information necessary to communicate with Class Counsel; that additional information is available from the Settlement Administrator, Class Action Administration; Class Counsel's intent to apply for a fee award in the amount of $1,500,000; and of the right to appear at the Fairness Hearing, including through an attorney.  The notice also informs class members they can receive more information from the settlement website, www.BrentSettlement.com.  On the

website, class members can view summary information about the Revised Settlement, and can access the complete settlement agreement and other court documents, including the Sixth Circuit's opinion in *Vassalle*.

The notice specifically advises Class Members that if the Settlement is approved, they will give Midland a release, which "means you can't sue or be part of any other lawsuit against Defendants . . . about the claims or issues in this lawsuit."  The notice goes on to explain:  "The release in this case prevents you from filing a lawsuit or counterclaim where you claim that Defendants, Defendants' affiliated companies, and/or Defendants' agents or attorneys, filed an affidavit in a debt-collection lawsuit where the affidavit was executed by a person who lacked personal knowledge of the facts stated in the affidavit."

The notice also specifically advises class members:  "If you exclude yourself from the class, you may be able to bring a lawsuit under state or federal law that could entitle you to more than the amount you will receive if you elect to receive your share of the Settlement Fund. There is no guarantee that such a suit would be successful, or that you would receive anything at all."  Additionally, the notice makes clear that class members retain the right to seek to vacate Midland's judgments against them individually, and that they are not precluded from raising any defenses in pending debt-collection litigation with Midland.  The notice satisfies due process and the requirements of Rule 23.  In addition, the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, have been met.

### D. Attorneys' Fees

The attorneys' fees for class counsel remain in the same amount of $1,500,000 and are reasonable, particularly in light of the length and breadth of this matter.  Motions for attorneys' fees filed by Mr. Clawson's counsel, Charles Delbaum of the National Consumer Law Center

(Vassalle Dkt. No. 250) and the Pelzer Objectors for their counsel, Ian Lyngklip (Vassalle Dkt. No. 251), will be addressed separately by this Court.  Should any fees be awarded, they will not come from the common fund and will not reduce the amount to be distributed to Class Members.

**III.**     **CONCLUSION.**

The Court concludes that final approval of the settlement of this class-action litigation is warranted as outlined hereinabove.

IT IS SO ORDERED.

  S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE